**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

PINNACLE HOLDING COMPANY, LLC and
PINNACLE EMPLOYEE SERVICES, LLC,

                       Plaintiffs,

      v.

MICHAEL ALLEN and PINNACLE EMPLOYEE
SERVICES, INC.,

                    Defendants.

Civil Action No. _5:24-cv-239_ (GTS/TWD)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION**

**HANCOCK ESTABROOK, LLP**
James P. Youngs, Esq.
*Attorneys for Petitioner*
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202
Telephone:    (315) 565-4558

{H5413923.2}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS ......................................................................................................3

ARGUMENT ..........................................................................................................................3

I.      STANDARD OF REVIEW FOR A PRELIMINARY INJUNCTION ...................3

II.     PES LLC WILL SUFFER IRREPARABLE HARM IN THE
FORM OF LOSS OF REPUTATION AND GOOD WILL, LOSS OF
POTENTIAL CUSTOMERS AND LOSS OF THE REACH OF ITS
MARKETING AND BRANDING IF MR. ALLEN IS NOT ENJOINED
FROM CARRYING OUT HIS THREATS OF CONTINUING TO
"EMBARRASS" PES LLC ....................................................................................6

III.    IT IS SUFFICIENTLY LIKELY THAT THE PLAINTIFFS' CLAIMS
WILL BE SUCCESSFUL – OR THERE IS A SUBSTANTIAL
ENOUGH QUESTION ON THE MERITS GIVEN THE
EQUITIES – TO JUSTIFY THE NARROWLY TAILORED
INJUNCTIVE RELIEF BEING SOUGHT ............................................................9

     A.     Balancing of Equities tips decidedly in the Movant's favor ......................11

     B.     Likelihood of Success/Substantial Question on the Merits ........................14

           1.     Defamation ......................................................................................14

           2.     False Advertising and Unfair Competition,
Lanham Act § 42(a)(1)(B) and N.Y. Gen. Bus.
Law § 350 .......................................................................................16

           3.     Unfair Business Practices, N.Y. Gen. Bus. Law
§ 349 and False Advertising, N.Y. Gen. Bus.
Law § 350 .......................................................................................17

CONCLUSION .....................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*,
   146 F.3d 350 (6th Cir.1998) ............................................................................9

*Bildstein v. MasterCard Intern., Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004) .........................................................17

*Boule v. Hutton*,
   328 F3d 84 (2d Cir. 2003) ...........................................................................16

*Capstone Logistics Holdings, Inc. v. Navarrete*,
   736 Fed. App'x 25 (2d Cir. 2018) .................................................................3

*Celle v. Filipino Reporter Enterprises Inc.*,
   209 F.3d 163 (2d Cir. 2000) ..............................................................6, 7, 14

*Chobani, LLC v. Dannon Co., Inc.*,
   157 F. Supp. 3d 190 (N.D.N.Y. 2016) .........................................................15

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F3d 30 (2d Cir. 2010) .....................................................................3, 4, 5

*DG New York CS, LLC v. Norbut Solar Farm, LLC*,
   1:23-CV-971, 2024 WL 81308 (N.D.N.Y. Jan. 8, 2024) .............................4

*Doe v. Vassar Coll.*,
   No. 19-cv-9601, 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019) ..................4

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017) ..........................................................................13

*Envtl. Services, Inc. v. Recycle Green Services, Inc.*,
   7 F. Supp. 3d 260 (E.D.N.Y. 2014) ..............................................................5

*Exec. Trim Constr., Inc. v. Gross*,
   2020 WL 5232049 (N.D.N.Y. Sept. 2, 2020) ...............................................3

*Exec. Trim Constr., Inc. v. Gross*,
   525 F. Supp. 3d 357 (N.D.N.Y. 2021) ........................................................13

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
   314 F.3d 48 (2d Cir. 2002) ..........................................................................16

*Gazzola v. Hochul*,
   645 F. Supp. 3d 37 (N.D.N.Y. 2022) ......................................................................5

*Geiger v. C&G of Groton, Inc.*,
   424 F. Supp. 3d 276 (D. Conn. 2019) ...................................................................16

*Gristede's Foods, Inc. v. Unkechauge Nation*,
   532 F. Supp. 2d 439 (E.D.N.Y. 2007)....................................................................17

*Hamilton Watch Co. v. Benrus Watch Co.*,
   206 F.2d 738 (2d Cir. 1953) ....................................................................................4

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010) .................................................................................................5

*Hunter v. Cortland Hous. Auth.*,
   2024 WL 340775 (N.D.N.Y. Jan. 30, 2024)............................................................4

*Hustler Magazine v. Falwell*,
   485 U.S. 46 (1988) ...................................................................................................6

*ITEX Corp. v. Glob. Links Corp.*,
   90 F. Supp. 3d 1158 (D. Nev. 2015) ......................................................................16

*Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*,
   103 F. Supp. 3d 244 (N.D.N.Y. 2015) .....................................................................5

*Regeneron Pharm., Inc. v. United States Dept. of Health and Human Services*,
   510 F. Supp. 3d 29 (S.D.N.Y. 2020) .......................................................................5

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ................................................................................5, 7

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ......................................................................................3

*Sanders v. City of Saratoga Springs*,
   122-CV-01154, 2023 WL 5563386 (N.D.N.Y. Aug. 29, 2023) ............................13

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995) ....................................................................................17

*Van-Go Transp. Co., Inc. v. New York City Bd. of Educ.*,
   971 F. Supp. 90 (E.D.N.Y. 1997) ............................................................................7

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*,
   No. 123 cv-01599, 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024) ........................4, 11

**State Cases**

*City of New York v. Smokes-Spirits.Com, Inc.*,
    12 N.Y.3d 616 (2009) ................................................................................................17

*Karlin v. IVF Am., Inc.*,
    93 N.Y.2d 282 (1999) ................................................................................................17

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) ................................................................................................13

**Federal Statutes**

15 U.S.C. § 1057 ................................................................................................................9

25 U.S.C. § 1125 ..............................................................................................10, 15, 16

**State Statutes**

N. Y. Gen. Bus. Law § 350 .........................................................................................10, 17

N.Y. Gen. Bus. Law § 349 ..........................................................................................11, 17

## PRELIMINARY STATEMENT

Plaintiffs Pinnacle Holding Company, LLC ("PHC") and Pinnacle Employee Services, LLC ("PES LLC") bring this motion for a preliminary injunction against the Defendants Miachel Allen and Pinnacle Employee Services, Inc. ("PES Inc.").  The Plaintiffs request an order directing the Defendants and their representatives to remove from the internet defamatory videos, online posts and statements, and thereafter refrain from publishing statements, that the Plaintiffs are "imposters," "posing as the Defendants" or otherwise engaging in deceptive, misleading or fraudulent conduct in connection with the PES LLC's use of the trademark PINNACLE EMPLOYEE SERVICES.  The Plaintiffs further request that the Defendants withdraw all complaints filed with third parties such as Facebook and YouTube, and be required to cooperate with efforts to reinstate PES LLC's social media accounts.

Plaintiff PHC and its related companies are headquartered in Syracuse, New York, and began using the trademark PINNACLE decades ago with respect to services such as financial advising, investment services, retirement benefits, and pension planning.  PHC's wholly owned subsidiary, PES LLC has been openly, publicly, and in good faith operating as a professional employer organization since 2014, using the trademarks PINNACLE and/or PINNACLE EMPLOYEE SERVICES.  That same year, PES LLC registered the domain name www.PinnacleEmployeeServices.com to advertise its services to the public and has done so ever since.

The parties are now embroiled in a dispute over their respective use of and rights to the name PINNACLE EMPLOYEE SERVICES.  The Plaintiffs bring this lawsuit to seek a judicial declaration conclusively establishing their extensive common law rights in a family of trademarks using the common word PINNACLE and, in particular, the name PINNACLE

EMPLOYEE SERVICES.  Defendant Michael Allen is the owner of Defendant PES, Inc. and holds a U.S. Patent and Trademark Office registration for the words PINNACLE EMPLOYEE SERVICES, Registration No. 6,696,685 ( the "'685 Registration") in connection with services similar to those PES LLC provides, with a filing date of December 11, 2020 – more than six years *after* the Plaintiffs first began its use of PINNACLE EMPLOYEE SERVICES, and decades after PHC and its predecessors began using the PINNACLE family of marks.  Because the Defendants applied for and received that registration long after PHC and PES LLC had established extensive common law trademark rights in a range of geographic territories for similar services, the Plaintiffs are entitled to (at a minimum) continued use of the PINNACLE EMPLOYEE SERVICES mark in at least those territories.[1]

The Defendants refuse to acknowledge the Plaintiffs' common law rights and have demanded PES LLC discontinue use of its name.  These demands culminated in the Defendant bringing an infringement lawsuit against the Plaintiffs and related entities in federal District Court for the Eastern District of California. That case was dismissed with prejudice for lack of personal jurisdiction on February 1, 2024.

After the Defendants' lawsuit was dismissed, Mr. Allen made a series of false, defamatory and misleading statements and videos on the internet.  The Defendant falsely claimed in written posts and a video that PES LLC was an "imposter" and that it was "posing as" PES Inc.  Mr. Allen published these statements not only on his own social media accounts, but also *on the Plaintiffs'* social media accounts, including LinkedIn and Facebook.  Further, within a day of

---

[1] On similar grounds, Plaintiffs in their Complaint ask this Court to hold the Defendants liable for infringement arising from use of its trademark in those territories where its rights are junior to the Plaintiffs' and to cancel the '685 Registration on multiple grounds. However, Plaintiffs to not ask for immediate injunctive relief on these issues.

these posts appearing, PES LLC's YouTube and Facebook accounts were suspended based on "anonymous" complaints that those accounts were impersonating another business.

Though the parties have an active trademark dispute, the Plaintiffs have never "posed" as PES, Inc., never suggested, implied or stated any affiliation, association or relationship between PES LLC and PES Inc., and never misled any consumer regarding the source of its services. The Defendant's malicious and false statements were made directly on forums where they were certain to be seen by the Plaintiffs' customers, employees, business associates, prospective customers and consumers in general. They have therefore harmed the Plaintiffs' reputation, created a likelihood that they have lost potential customers, and conveyed to the purchasing public that PES LLC is illegitimate or otherwise lied to consumers. These irreparable harms are nearly impossible to identify or quantify and are therefore properly the focus of injunctive relief.

## STATEMENT OF FACTS

The facts of this case are set forth at length in the Complaint and are not repeated herein.

## ARGUMENT

### I.   STANDARD OF REVIEW FOR A PRELIMINARY INJUNCTION

To receive a preliminary injunction, the plaintiff must show (1) "a likelihood of success on the merits, (2) that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in the plaintiff's favor, and (4) that the public interest would not be disserved by the issuance of the injunction." *Capstone Logistics Holdings, Inc. v. Navarrete*, 736 Fed. App'x 25, 25-26 (2d Cir. 2018) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). Court in the Second Circuit follow a flexible approach to injunctive relief by applying an inverse relationship to these elements. Specifically, the more the

equities weigh in favor of the injunction, the lower the standard for assessing likelihood of merits is applied. *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F3d 30, 36 (2d Cir. 2010). Thus, this Court has enunciated the rule:

> A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied. In addition, the movant must show that a preliminary injunction is in the public interest, and that the balance of equities tips in his favor.

*Exec. Trim Constr., Inc. v. Gross*, 2020 WL 5232049, 120-CV- 544, at *5 (N.D.N.Y. Sept. 2, 2020) (D'Agostino, D.J.).

"With regard to the first part of the first element, a 'likelihood of success' requires a demonstration of a 'better than fifty percent' probability of success." *Hunter v. Cortland Hous. Auth.*, 2024 WL 340775, 523CV1540GTSML at *6 (N.D.N.Y. Jan. 30, 2024) (Suddaby, D.J.). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits." *Id.* Thus, where the comparative equities between the parties fall decidedly in the movant's favor, it need not demonstrate a likelihood of success on the merits, but rather "show[] a serious question going to the merits to make them a fair ground for trial." *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, No. 123 cv-01599, 2024 WL 406490, at *10 (N.D.N.Y. Feb. 2, 2024) (Nardacci, D.J.) (quoting *Doe v. Vassar Coll.*, No. 19-cv-9601, 2019 WL 6222918, at *7 (S.D.N.Y. Nov. 21, 2019)). "A sufficiently serious question as to the merits of the case to make it a fair ground for litigation means a question that is so substantial, difficult and doubtful as to require a more deliberate investigation." *Hunter*, 2024 WL 340775, at *6 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)). A heightened standard applies where the movant

requests a "mandatory" injunction, which would compel the non-movant to take an affirmative act. In such cases, "the movant must show a 'substantial' likelihood of success on the merits, and must make a 'strong showing' of irreparable harm." *DG New York CS, LLC v. Norbut Solar Farm, LLC*, 1:23-CV-971, 2024 WL 81308, at *3 (N.D.N.Y. Jan. 8, 2024) (Hurd, D.J.).

Courts are permitted to enter "an injunction in cases where a factual dispute renders a fully reliable assessment of the merits impossible." *Citigroup Glob. Markets, Inc.*, 598 F.3d at 36. As the Second Circuit has noted, flexibility is a touchstone of injunctive relief and courts have wide discretion to enter injunctions tailored to navigate the comparative equities implicated by the order. Thus, the requisite likelihood of success may be weighed against and adjusted as necessary to address the relative harms to the parties. *Id.* at 38, n. 8 (*citing Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)).

With regard to the second element of a preliminary injunction, "[a] company's loss of reputation, good will, and business opportunities can constitute irreparable harm, because these damages are difficult to establish and measure." *Gazzola v. Hochul*, 645 F. Supp. 3d 37, 56 (N.D.N.Y. 2022) (Sannes, C.J.), *aff'd* 88 F.4th 186 (2d Cir. 2023) (quoting, *inter alia, Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)). Plausible assertions that reputational harm could lead to the loss of potential new customers support a finding of irreparable harm. *E.g.*, *Regeneron Pharm., Inc. v. United States Dept. of Health and Human Services*, 510 F. Supp. 3d 29, 40 (S.D.N.Y. 2020) (granting injunction against changes to Medicare pharmaceutical pricing based on allegations that manufacturers would suffer harm to reputation by being forced to renegotiate contracts with customers); *Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 261 (N.D.N.Y. 2015) (Hurd, D.J.) ("[T]he loss of potential business opportunities, such as relationships with customers and

business partners, may constitute irreparable harm.").  For example, in *Envtl. Services, Inc. v. Recycle Green Services, Inc.*, 7 F. Supp. 3d 260, 279 (E.D.N.Y. 2014), the court held that the movant had "established irreparable harm, absent a preliminary injunction, through the loss of good will" by demonstrating that the movant's customers were not doing business with the movant and posted bad reviews of it online as a result of the non-movant's conduct.  That sort of reputational loss was impossible to quantify,  therefore irremediable through damages and sufficient to justify an injunction to stop the non-movant from interfering with the movant's contracts and provision of its services to clients.  *Id.* at 278-83.

II.     **PES LLC WILL SUFFER IRREPARABLE HARM IN THE FORM OF LOSS OF REPUTATION AND GOOD WILL, LOSS OF POTENTIAL CUSTOMERS AND LOSS OF THE REACH OF ITS MARKETING AND BRANDING IF MR. ALLEN IS NOT ENJOINED FROM CARRYING OUT HIS THREATS OF CONTINUING TO DEFAME PES LLC**

PES LLC will suffer harm to is reputation, loss of goodwill and loss of business opportunities and potential customers if the Defendants are not enjoined from publishing false statements that PES LLC is deceiving customers or posing as PES Inc.  In light of the prior reach and scope of the Plaintiffs' social media presence and the engagement they enjoy with customers and potential customers, as set forth in the accompanying Declaration of the Plaintiffs' Marketing and Branding Manager, Elizabeth Conklin, the loss of reputation and potential customers is not speculative.  Moreover, the very nature of social media sites such as LinkedIn and Facebook, where businesses engage with their customers, potential clients, community and business partners, employees and potential employees, means that statements impugning the honesty, integrity or identity of a brand or business are certain to cause loss of good will and reputation.  In today's marketplace, robust and professional social media interaction with clients and potential clients has become the expectation for high quality companies such as PES LLC.

See generally Conklin Decl.  Disparaging comments, controversy or harassing activity of any kind associated with a company's online presence, regardless of the truth, falsity or justification for such controversy, it in itself harmful to a business's good will and reputation.  *Id.*; *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 171 (2d Cir. 2000) ("False statements of fact are particularly valueless; they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective.") (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1988)).

Professional integrity and truthfulness toward consumers and clients is critically important to a business.  Accordingly, the law is particularly focused on harm to a party's professional reputation, providing a lower scienter standard and a presumption of injury in such cases.  *E.g., id.* at 179 ("If a statement is defamatory *per se*, injury is assumed. . . . [A] writing which tends to disparage a person in the way of his office, profession or trade is defamatory *per se* and does not require proof of special damages.") (citations and internal quotation omitted); *Van-Go Transp. Co., Inc. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 98 (E.D.N.Y. 1997) ("Reputational injury to a person's business, or to a company, [which] consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties.").  Accordingly, preliminary injunctions are appropriate where the conduct to be enjoined harm a business's reputation and goodwill.  *E.g., Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("[T]he district court did not abuse its discretion in finding that, unless specific relief were granted, Verio's actions would cause Register irreparable harm through loss of reputation, good will, and business opportunities.").

PES LLC sees substantial traffic and activity on its social media accounts.  Conklin Decl. ¶¶ 24-35.  While PES LLC took immediate steps to delete those posts, Mr. Allen's intentional

actions in posting the tortious statements on the PES LLC platform directly, were obviously targeted at PES LLC's customer and stakeholders.  Though Mr. Allen's conduct in disseminating the tortious statements on his own platforms or website might be (dubiously) characterized as an effort to assert and clarify PES Inc.'s purported trademark rights to its own customers, any such argument is nullified by Mr. Allen's placement of these false statements on PES LLC's own social media accounts.

Mr. Allen has further threatened to "publicly embarrass" PES LLC.  Youngs Decl. ¶ 6. He has also acknowledged the harm that his conduct has caused, stating to the Plaintiffs that if they want to "stop the bleeding" they will settle this dispute.  *Id*. at ¶ 5, Ex. A.  This conduct has nothing to do with the assertion of trademark rights, but rather evinces a malicious intent to injure PES LLC.  It is respectfully submitted that the absence of any plausible justification for Mr. Allen's false claims that PES LLC is defrauding or deceiving consumers balance the equities heavily in PES LLC's favor.

Statements impugning PES LLC's integrity, honesty and truthfulness with consumers are defamatory *per se*, and harm PES LLC's goodwill, reputation and potential to maintain existing and attract new clients.  Dissemination of such statement on PES LLC's social media platforms that are created and maintained for the sole purpose of such client engagements is particularly damaging.  Moreover, the Defendant has used tortious means to suspend PES LLC's accounts, further degrading the Plaintiffs' commercial reach and impression.  Mr. Allen has threatened to continue this campaign of misinformation and to disparage PES LLC's reputation if they do not acquiesce to his demands.  Youngs Decl. ¶¶ 5 and 6 (reflecting communications from Mr. Allen stating that PES LLC can "make the bleeding stop" by settlement talks and that PES LLC "can

start settlement talks or face public embarrassment:").  As such, there a concrete and imminent threat of further irreparable harm to PES LLC's business reputation.

### III.   IT IS SUFFICIENTLY LIKELY THAT THE PLAINTIFFS' CLAIMS WILL BE SUCCESSFUL – OR THERE IS A SUBSTANTIAL ENOUGH QUESTION ON THE MERITS GIVEN THE EQUITIES –  TO JUSTIFY THE NARROWLY TAILORED INJUNCTIVE RELIEF BEING SOUGHT.

The Plaintiffs have a substantial likelihood of success on the merits or, at a minimum, there "exists a serious question going to the merits to make them a fair ground for trial" and the equities of the requested relief fall decidedly in favor of the Plaintiffs in this matter, to sustain a preliminary injunction.  The Complaint's claims generally fall under two categories: (1) asserting common law rights in a suite of trademarks that have priority over, or at least establish non-infringement of, the Defendants' alleged trademark rights; and (2) challenging the Defendant's tortious statements that the Plaintiffs are misleading or defrauding consumers and "posing" as the Defendant.  While the injunctive relief speaks to the second category of claims, they must viewed within the context of the first.

The Plaintiffs' trademark case is predicated on the foundational trademark law concept that "federal registration [of a trademark] does not give priority over persons who had used and had not abandoned the mark prior to [the registrant's] filing." *Dudley v. Healthsource Chiropractic*, Inc., 883 F Supp 2d 377, 389 (W.D.N.Y. 2012) (citing 15 U.S.C. § 1057(c)(1)). Thus, "[a] senior user retains common law rights to exclusively use the mark within its territory of prior use[ and] can accrue rights even if the initial uses of the mark are not extensive and do not result in widespread recognition." *Id.* (*citing Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir.1998)). In other words, "[t]he nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior

user." 2 McCarthy on Trademarks and Unfair Competition § 16:18.50 (5th ed.). This concept has been characterized as "a bedrock principle of trademark law." *Id.*

Plaintiffs claim priority over the Defendants' alleged PINNACLE EMPLOYEE SERVICES mark on several grounds, which can be reduced to two general concepts. First, Plaintiff PHC began using the mark PINNACLE in or around 1995 in connection with investment and business services that are similar to the Defendant's services and that are often marketed to and consumed by the same consumers. PHC used the trademarks PINNACLE, PINNACLE INVESTMENTS, PINNACLE CAPITAL MANAGEMENT, and PINNACLE SOLUTIONS prior to the date that the Defendant has claimed to have begun using its trademark in or about 2013. Complt. ¶ 65. The Complaint alleges that is has priority over the Defendant by way not only of those marks individually, but further over any similar use of PINNACLE generally through the family of marks doctrine. *See generally* 2 McCarthy on Trademarks and Unfair Competition § 23:61 (5th ed.).

Second, and cumulatively, Plaintiff PES LLC claims that it began using the mark PINNACLE EMPLOYEE SERVICES in or about 2014 in connection with services similar to the Defendant's. Complt. ¶¶ 39-43; 120. The Complaint alleges that PES LLC started using its trademark in good faith, without knowledge of the Defendants' existence, and as part of the longstanding PINNACLE family of trademarks. It further alleges that it established common law trademark rights through its use in various geographic territories, including at least New York and other areas of the Eastern United States, prior to the Defendants' application to register its trademark.

Though the Plaintiffs will be put to their proof with respect to these claims, they are based on their own business activities and are not dependent on resolution of facts outside the

Plaintiffs' control. Rather, the parties' longstanding dispute over the name PINNACLE EMPLOYEE SERVICES is based on the Defendants' persistent refusal to acknowledge even the basic concept of common law trademarks. That legal position is baseless and will be dispensed with easily enough, turning the case instead to establishing the scope and nature of the parties' respective common law trademarks based on actual use (even assuming, arguendo, that the Defendants' registration is valid, which is another subject of this dispute).

It is against this background that Mr. Allen's egregious statements that the Plaintiffs have impersonated his company or deceived and defrauded consumers must be assessed. Plaintiffs allege Defendants statements are defamatory and constitute false advertising and unfair competition in violation of the Lanham Act and N.Y. Gen. Bus. § 350, and deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349. Complt. Fourth through Seventh causes of action.

**A.     Balancing of Equities tips decidedly in the Movant's favor**

As set forth above, where the balance of hardships between granting or denying the requested relief falls markedly in the movant's favor, then the movant needs not show a likelihood of success on the merits, but only a "serious question going to the merits." *Variscite NY Four, LLC*, 2024 WL 406490, at *10. Plaintiffs submit that the equities or hardships between the parties fall markedly in the Plaintiffs' favor.

First, the Plaintiffs will suffer impossible to remedy injuries to their business reputation is the Defendant is permitted to continue making false statements that the Plaintiffs are "imposters" or "posing" as PES Inc. The Defendant has stated that the Plaintiffs are deceiving and defrauding customers and trying to mislead consumers into believing that PES LLC is actually PES Inc. Allegations of that nature could lead to the loss of goodwill and lost potential

customers, which are injuries nearly impossible to quantify and thus compensate through money damages.  There is already concrete harm by way of the suspension of PES LLC's Facebook and YouTube accounts.  Conklin Decl. ¶¶ 11-15.  Those suspensions are, on information and belief, based on false statements the Defendant made to those social media platforms.  *Id.*  The loss of those marketing and advertising channels, which connect PES LLC directly to consumers, has already created a loss of reach to customers and potential customers, the harm of which is largely unknowable.

Additionally, the Defendant has engaged in a pattern of threats and evinced a malicious intent not simply to assert its own perceived rights, but to harm the Plaintiffs.  Mr. Allen has threatened that if the Plaintiffs do not "settle" this dispute with him, he intends to continue to "publicly embarrass" them.  Youngs Decl. ¶ 6.  He has said that if the Plaintiffs want to make the "bleeding stop" then they need to settle this case.  *Id.*  Mr. Allen unquestionably intends to continue his campaign of online harassment and disparagements of the Plaintiffs' business and its reputation.

Compared to these irreparable and harmful consequences, there will be effectively no harm to the Defendant if ordered to take down the false statements from the internet, refrain from making those statements during pendency of this lawsuit and withdrawn its claims against PES LLC's social media accounts.  First, while assessment of the parties rights requires consideration of the likelihood of consumer confusion, they do not involve questions of whether PES LLC has actively deceived or defrauded customers into believing that it is PES Inc.  That is an entirely separate question.  There is a difference between trademark infringement arising from an objective likelihood of confusion analysis and the Defendants statements the PES LLC is actively impersonating PES Inc. and engaging in fraudulent conduct.  As such, the Defendants

should not be heard to claim that its trademark claims somehow justify their defamatory statements, or that the requested preliminary injunction would affect or chill their ability to vindicate or assert their purported trademark rights.

Second, the Plaintiffs merely request an injunction to stop the Defendant from carrying through on his threat to continue to "embarrass" and harm the Plaintiffs' business. Mr. Allen can continue to go about his business, use his purported trademark, and communicate clarifying information to his customers – as he presumably did for nearly a decade before deciding to sue the Plaintiffs for trademark infringement in California. The Plaintiffs merely ask that he be precluded from stating that PES LLC is an imposter, deceives, defrauds or misleads consumers or "stolen" his customers, and that he stop publishing comments to PES LLC customers and social media outlets that PES LLC is posing as his company. PES LLC has no interest in being confused with PES Inc. and does not object to statements that PES Inc. is not PES LLC and that there is no affiliation between the parties. Indeed, the Plaintiffs themselves wish to clarify that their exceptional services, reputation and brand recognition are in no way associated with Mr. Allen or his company.

This Court has the flexibility to hold the movant to a lower showing on the likelihood of winning on the merits where, as here, the potential harm to be avoided by the preliminary injunction significantly outweighs the potential harm its imposition works on the non-movant. Because the reputational harm PES LLC seeks to avoid is irremediable and certain in light of Mr. Allen's threats and promises to continue his public smear campaign, and Mr. Allen will not be harmed at all if directed to stop calling PES LLC an "imposter," the balance of the equities falls clearly in the Plaintiffs favor and it thus need not establish even a likelihood of success on the

merits to justify the injunction. Nonetheless, PES LLC believes is has a greater than 50% chance of success on the merits.

### B.    Likelihood of Success/Substantial Question on the Merits

#### 1. *Defamation*

To state a claim for defamation under New York law, a plaintiff must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Sanders v. City of Saratoga Springs*, 122-CV-01154, 2023 WL 5563386, at *10 (N.D.N.Y. Aug. 29, 2023) (Sannes, C.J.) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)).  As stated above, a statement is defamatory per se and harm is presumed if it is of kind "that tends to injure another in his or her trade, business or profession . . .." *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 369 (N.D.N.Y. 2021) (*citing Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)). The Second Circuit has also explained that "statements that impugn the basic integrity, creditworthiness and competence of the business are defamatory *per se*" and that "words are libelous if they affect a person in his profession, trade, or business by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise thereof." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 180 (2d Cir. 2000) (quoting New York cases).

The Plaintiffs allege that the Defendants' statements that PES LLC is "posing as" PES Inc. or an "imposter" are defamatory.  It alleges that they are false because even though the entities share the same name, the Plaintiffs have never defrauded, deceived or mislead consumers into believing the PES LLC is PES Inc., or that they are related in any way.  They Plaintiffs also claim that the statement that PES LLC is "unregistered" when taken in the context of Mr. Allen's

other statements, is defamatory because it implies to consumers that PES LLC is unauthorized to do business in some manner, which is patently untrue.

It is undisputable that these statements were published to third parties because they were posted across PES LLC's social media accounts, including Facebook and LinkedIn, and the Defendant's social media accounts.  The challenged video, which contains defamatory statements in it and disseminates written defamation through its title and description, has been viewed over 100 times.  Conklin Decl. ¶ 3 and linked noted therein.  There can be no claim of privilege in publicly available and disseminated statements of these kind.  As set forth above, these statements are defamatory per se because they impugn PES LLC's business and professional reputation and expressly impute to it deception, fraud, dishonesty, and/or misconduct in PES LLC's business and, more damaging, in its conduct toward consumers.

Though determining the truth or falsity of statements requires a fact-intensive inquiry, the background of this dispute has already been largely set forth from each parties' perspective, through the Plaintiffs' Complaint and submissions on this motion, and through the Defendants' complaint in the parties' prior lawsuit .  This is a run of the mill trademark case, where the parties are so geographically dispersed that PES Inc. was unable to secure personal jurisdiction over the Plaintiffs in California.  There was no allegation in that case that PES LLC intentionally posed as PES Inc. or attempted to mislead PES Inc.'s customers or consumers that they were dealing with PES Inc. when they were, in fact, dealing with PES LLC.

Accordingly, there is a likelihood that PES LLC will succeed on the merits of its defamation claim and, at a minimum, a substantial question as to the merits of the claim to sustain the requested injunction.

2.  *False Advertising and Unfair Competition, Lanham Act § 42(a)(1)(B) and N.Y. Gen. Bus. Law § 350*

Plaintiffs are suing the Defendant for False Advertising and Unfair Competition under the Lanham Act § 42(a)(1)(B) based on the same conduct.

The Lanham Act "imposes liability on anyone who, 'in connection with any goods or services uses in commerce any false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *Chobani, LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 199 (N.D.N.Y. 2016) (Hurd, D.J.) (quoting 25 U.S.C. § 1125(a)(1)(B)).  To constitute "commercial advertising or promotion, as that phrase is used in the Lanham Act,[, it] must be (1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Boule v. Hutton*, 328 F3d 84, 90-91 (2d Cir. 2003) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56–58 (2d Cir. 2002)).  As such, false advertising claims are not limited to conventional or traditional advertising, but extend to any statement of a commercial nature that is disseminated to a large number of potential consumers.  Courts have consistently held that social media posts constitute commercial advertising within the Lanham Act's ambit. *E.g.*, *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 293 (D. Conn. 2019) ("Plaintiffs also adequately allege that Defendants published the alleged false advertisements [and put] them into interstate commerce [by a]lleging the images were posted on social media . . .."); *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1171 (D. Nev. 2015) ("The various statements were

published on the Internet on websites and social media . . . . Thus, the statements constitute

commercial advertisement" under the Lanham Act).

The Defendants dissemination of the disparaging and false statements on Plaintiffs'

social media accounts, particularly LinkedIn, as well as through their own social media accounts

and on YouTube, constitute commercial advertising or promotion sufficient to meet the false

advertising elements of the Lanham Act.  They were obviously of a type to influence the relevant

consuming public, and were in fact directed at both the Plaintiffs' and the Defendants' customer

and clients.  Youngs Decl. ¶ 4 (Mr. Allen began his second video by expressly directing it to PES

LLC "staff, clients, [and] stakeholders.). The Defendants did not simply make these statements

and allow them to be accessed passively, or simply send them to their own customers; rather,

they affirmatively disseminated them publicly and on PES LLC accounts to directly reach PES

LLC's customers and consumers.

It is therefore likely that the Plaintiffs will succeed on the false advertising claim, or there

is at least a substantial question on the merits, to sustain the requested injunction.

### 3.  Unfair Business Practices, N.Y. Gen. Bus. Law § 349 and False Advertising, N.Y. Gen. Bus. Law § 350

The New York Court of Appeals has explained that

> Pursuant to General Business Law § 349(a), it is unlawful to perform deceptive
> acts or practices in the conduct of any business, trade or commerce or in the
> furnishing of any service in this state. The scope of General Business Law § 350
> is equally broad, prohibiting the promulgation of false advertising in the conduct
> of any business, trade or commerce or in the furnishing of any service in this
> state. Advertising is 'false' if it 'is misleading in a material respect' Gen. Bus.
> Law § 350–a(1). These statutes on their face apply to virtually all economic
> activity, and their application has been correspondingly broad

Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 290 (1999).  Section 349, the New York Deceptive

Practices Act, is violated when "a defendant has engaged in (1) consumer-oriented conduct that

is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

deceptive act or practice." *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621

(2009).  Courts have held that a materially misleading claim is one that is likely to affect

consumers' choice of or conduct regarding a product or service.  *Bildstein v. MasterCard Intern.,*

*Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004)).  Sections 349 and 350 tend to be interpreted

together and the standards for pleading claims under both statues are "substantively identical."

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 450 (E.D.N.Y. 2007).  "The

Second Circuit has noted that corporate competitors have standing to bring a claim so long as

some harm to the public at large is at issue."  *Id.* at 451 (quoting *Securitron Magnalock Corp. v.*

*Schnabolk*, 65 F.3d 256, 257 (2d Cir. 1995)).

The above facts also support these State law consumer protection statutes.  The

Defendants' consumer-directed statements were false and of a kind that would negatively affect

a consumer's impression of and decision to engaged in commerce with PES LLC.  They were

also directed to consumers through channels expressly created to connect with consumers,

including PES LLC's social media accounts and YouTube.  The Complaint alleges that the

Plaintiffs have been injured because they will or have lost business as result of these misleading

statements and advertisements.  Accordingly, there is a sufficient question as to these New York

consumer protections laws to sustain an injunction.

### 4.  *Declaratory Judge for Non-infringement*

As set forth at length above, the Plaintiffs allege – and the Defendants will be unable to

dispute – that the Plaintiffs had extensive common law trademark rights prior to the Defendants'

application to register its trademark.  Even if the scope of those rights is limited to just the State

of New York, the Plaintiffs are entitled to a declaration of non-infringement.  As such, it is

respectfully submitted that there a substantial likelihood of success on the merits on the substance of the Plaintiffs' trademark claims.  Further, though the requested relief does not go specifically to trademark use, the strength and likelihood of success on those claims is part and parcel of the parties overall dispute and counsel in favor of granting the requested injunction.

## CONCLUSION

The Plaintiffs therefore respectfully request that the Court enter and Order directing that:

1.      the Defendants remove from YouTube (a) a video dated February 6, 2024 entitled the "PSA - Beware of this IMPOSTER…" and (b) a video dated February 9, 2024 entitled "My Response to NY PES Cease & Desists Letter – I'M NOT LEAVING!!", which were posted on PES Inc.'s YouTube channel making statements regarding the Plaintiffs and specifically calling the Plaintiffs an "imposter" and stating that the Plaintiffs were "impersonating" the Defendants (the "Videos");

2.      the Defendants remove the Videos from all of the Defendants' personal and business social media accounts, including but not limited to Facebook and LinkedIn;

3.      the Defendants remove and permanently delete all posts, articles, comments and all other online or print publications referring to PES, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their corporate affiliates, parents, subsidiaries, agents, employees or representatives as "imposters", "posing as" the Defendants, or stating or suggesting that the Plaintiffs have engaged in deceptive, fraudulent, or misleading activity with respect to the trademarks PINNACLE, PINNACLE EMPLOYEE SERVICES or any related trademarks;

4.      the Defendants and their employees, representatives, agents, affiliates, corporate parents or subsidiaries or any other person acting on their behalf, refrain from further disseminating, publishing, or posting the Videos pending further order of this Court;

5.      the Defendants and their employees, representatives, agents, affiliates, corporate parents or subsidiaries or any other person acting on their behalf, refrain from making any false, misleading or defamatory statements about Pinnacle Employee Services, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their corporate affiliates, parents, subsidiaries, agents, employees or representatives, including but not limited to statements referred to the Plaintiffs as "imposters", "posing as" the Defendants, or stating or suggesting that the Plaintiffs have engaged in any deceptive, fraudulent, or misleading activity with respect to the trademarks PINNACLE, PINNACLE EMPLOYEE or any related trademarks, pending further order of this Court;

6.      the Defendants contact all third parties to which the Defendants have made complaints regarding the Plaintiffs' use of PINNACLE and/or PINNACLE EMPLOYEE SERVICES, including but not limited to YouTube and Facebook, and withdraw those complaints, and request that all of the Plaintiffs' accounts, posts, and activities be restored;

7.      Michael Allen, individually and as owner and CEO of Pinnacle Employee Services, Inc. file with this Court and serve on all parties to this action a sworn statement within 24 hours of the execution, entry and service of such Order attesting to his compliance therewith; and

8.      Upon the Plaintiffs' request, those with notice of the Order, including third party social media providers, shall within seven (7) calendar days after receipt of such notice, reinstate any accounts, postings, and related material that was previously removed due to facts or complaints related to such Order, including but not limited to complaints by the Defendants.

**DATED:**   February 16, 2024                    **HANCOCK ESTABROOK, LLP**

By: _____
James P. Youngs, Esq., Bar Roll No. 515029
*Attorneys for Petitioner*
1800 AXA Tower I
100 Madison Street
Syracuse, New York    13202
Telephone:     (315) 565-4558
jpyoungs@hancocklaw.com