**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF NEW YORK**

---

PINNACLE HOLDING COMPANY, LLC and
PINNACLE EMPLOYEE SERVICES, LLC,

Plaintiffs,

v.

MICHAEL ALLEN and PINNACLE EMPLOYEE
SERVICES, INC.,

Defendants.

---

**AMENDED COMPLAINT**

Civil Action No. 5:24-cv-239
(GTS/TWD)

**Jury Trial Demanded**

---

Plaintiffs Pinnacle Holding Company, LLC and Pinnacle Employee Services, LLC, by and through their attorneys, Hancock Estabrook, LLP, allege as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiffs bring this action with respect to the priority of and rights in trademarks that they use and/or own, including PINNACLE and PINNACLE EMPLOYEE SERVICES.

2.      The Defendants have claimed and continue to claim that the Plaintiffs' use of the mark PINNACLE EMPLOYEE SERVICES infringes on the Defendants' alleged trademark for PINNACLE EMPLOYEE SERVICES and brought a trademark infringement suit against the Plaintiffs in the United Stats District Court for the Eastern District of California that was dismissed on personal jurisdiction grounds.

3.      The Defendants then engaged in a campaign of online harassment against the Plaintiffs, making and disseminating false and defamatory statements that the Plaintiffs are "imposters" and "impersonating" the Defendants and, upon information and belief, making

such false claims to social media outlets in an effort to interfere with and suspend the Plaintiffs' accounts.

4.      The Plaintiffs bring this action seeking (a) judgment against the Defendants for infringement of the Plaintiffs' common law trademarks and awarding attendant injunctive and monetary relief, (b) declaratory judgment establishing the scope, nature and extent of the Plaintiffs' common law trademark rights and clarifying that the Plaintiffs' conduct does not infringe upon the Defendants' alleged trademarks, (c) cancellation of the Defendants' registration for the mark PINNACLE EMPLOYEE SERVICES with the United States Patent and Trademark Office ("PTO"), Registration No. 6,696,685 (the "'685 Registration") based on its likelihood of confusion with the Plaintiffs' pre-existing common law trademarks and their failure to identify the owner of the trademark in their PTO application, and (d) judgement for damages and injunctive relief related to the Defendants' false or defamatory statements about the Plaintiffs' business, reputation, and name.

## **PARTIES**

5.      Plaintiffs Pinnacle Holding Company, LLC ("PHC") and Pinnacle Employee Services, LLC ("PES LLC") are Delaware limited liability companies with principal places of business in East Syracuse, New York and Syracuse, New York, respectively.

6.      PES LLC is a wholly owned subsidiary of PHC.

7.      Upon information and belief, Defendant Michael Allen is an individual residing in California.

8.      Upon information and belief, Defendant Pinnacle Employee Services, Inc. ("PES Inc.") is a California corporation with its primary place of business at 2377 Gold Meadow Way, Ste 100, Gold River, California, 95670.

## JURISDICTION AND VENUE

9.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the trademark laws of the United States, 15 U.S.C. § 1051 *et seq*.

10.    This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1119, 1121, and 1125(a)(1)(A), 28 U.S.C. §§ 1331,1332(a), 1338(a) and (b), 2201, and 2202, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

11.    Personal jurisdiction over the Defendants is proper in this District because they have availed themselves of the rights and benefits of the laws of New York and conducted business relating to and pursued enforcement of its alleged rights under the '685 Registration in New York.

12.    Upon information and belief, the Defendants have engaged in business under the name PINNACLE EMPLOYEE SERVICES in New York.

13.    Upon information and belief, the Defendants have marketed and offered for sale their services under the name PINNACLE EMPLOYEE SERVICES.

14.    Upon information and belief, the Defendants have published defamatory statements and false advertising about the Plaintiffs to New York residents in New York.

15.    Upon information and belief, the Defendants knew and intended that their defamatory statements, false advertisements, and deceptive business activities would be viewed or received by and affect New York residents in New York, including the Plaintiffs' customers.

16.    Upon information and belief, the Defendants knowingly and specifically targeted New York consumers with their false advertising and deceptive business practices.

17.    At the time the Defendants made the defamatory and deceptive statements, the

Defendants knew that the Plaintiffs are headquartered and have customers in New York.

18.     At the time the Defendants made the defamatory and deceptive statements, the Defendants knew that any claims of trademark infringement by the Defendants against the Plaintiffs could not be brought in California due to lack of personal jurisdiction but could be brought in New York.

19.     Upon information and belief, the Defendants have made false statements to various social media platforms, resulting in the suspension, deletion or limitation of the Plaintiff's social media accounts that are based in and managed from New York, and that target, *inter alia*, potential New York clients.

20.     Upon information and belief, the Defendants knew and intended that the injurious consequences of their defamatory statements and deceptive practices would be felt in New York by New York residents, including the Plaintiffs.

21.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district.

## BACKGROUND

**I.     The PINNACLE Common Law Family of Trademarks**

22.     On or about August 3, 1995, Baldwin Securities, Inc. was incorporated in New York State.

23.     On or about February 13, 1996, that entity amended its name to Pinnacle Investments, Inc.

24.     On or about May 30, 1996, Pinnacle Investments registered with the National Association of Securities Dealers ("NASD"), now known as the Financial Industry Regulatory Authority ("FINRA").

25.     In or about 2002, Pinnacle Investments registered with the U.S. Securities and Exchange Commission ("SEC") as a nationally Registered Investment Adviser ("RIA").

26.     On or about December 25, 1996, Pinnacle Investments registered the internet domain name www.PinnacleInvestments.com.

27.     From its inception to the present time, Pinnacle Investments has continuously provided a full suite of investment and financial services, including brokerage services, personal and business financial planning, investment advising, management of corporate pension and employee benefit plans, as well as private placements and alternative investments, all under the names PINNACLE and/or PINNACLE INVESTMENTS.

28.     By 2012, Pinnacle Investments was registered as an investment broker and, upon information and belief, had customers in 39 U.S. states.

29.     On or about June 29, 2006, the owners and operators of Pinnacle Investments formed Pinnacle Capital Management, LLC.

30.     From its inception to the present time, Pinnacle Capital Management has continuously provided investment portfolio creation and management services to businesses, pensions, trusts, and other clients, all under the names PINNACLE and/or PINNACLE CAPITAL MANAGEMENT.

31.      On or about July 5, 2006, the owners and managers of Pinnacle Investments formed Plaintiff Pinnacle Holding Company, LLC ("PHC").

32.     On or about July 5, 2006, the owners and managers of PHC formed Pinnacle Investments, LLC as a successor to Pinnacle Investments, Inc.

33.     In 2006, Pinnacle Investments, Inc. amended its name to F.K.A.P.I., Inc. (Formerly Known As Pinnacle Investments, Inc). This entity became the majority

shareholder of PHC.

34.     Shortly thereafter, ownership of Pinnacle Investments, LLC and Pinnacle Capital Management, LLC, including ownership of the registration for the www.PinnacleInvestments.com domain, was transferred to PHC, which became the holding company for those companies.

35.     On or about October 2007, PHC acquired and began operating another company that provided life insurance, fixed annuities, long-term care insurance, estate planning, retirement planning and investment brokerage services to individuals, business owners and others.

36.     Shortly thereafter, PHC changed the business name of that entity to Pinnacle Solutions.

37.     From that time to the present, Pinnacle Solutions has continued to operate and serves customers, including businesses and individuals, as a general insurance agency, all under the names PINNACLE and/or PINNACLE SOLUTIONS.

38.     On our about September 26, 2011, PHC registered the domain name www.Pinnacle-LLC.com.

39.     On or about September 26, 2011, PHC registered the domain name www.PinnacleHoldingCo.com.

40.     On or about July 17, 2014, PHC formed Plaintiff Pinnacle Employee Services, LLC ("PES LLC").

41.     From its inception to the present time, PES LLC has continuously provided services as a professional employer organization or "PEO," all under the names PINNACLE and/or PINNACLE EMPLOYEE SERVICES.

42.     A PEO provides its clients with employee administration services, human

resources services, employee payroll and benefits administration, administration of workers' compensation claims, and payroll/employment tax and legal compliance services.

43.     On or about October 21, 2014, PHC registered the internet domain name www.PinnacleEmployeeServices.com for PES LLC's use in connection with the foregoing services.

44.     On or about October 21, 2014, PHC registered the internet domain name www.PinnaclePays.com for PES LLC's use in connection with the foregoing services.

45.     PHC and/or its subsidiaries have continuously used the name PINNACLE in interstate commerce since approximately February 1996.

46.     PHC's family of marks all share the word PINNACLE as a common, distinctive characteristic.

47.     The PINNACLE family of marks has been consistently used in advertising and branding, often with related logos, typeface and through common exposure to the marketplace.

48.     Consumers have been exposed to the PINNACLE family of trademarks for a suite of business and financial services and is recognized by the relevant consuming public as an indication of the source of the services offered thereunder.

49.     Consumers recognize the PINNACLE family of marks as indicating a source of financial and business services generally, specifically including investments, insurance, payroll, employee benefits, retirement benefits, pension plans and related services.

50.     The nature of the services provided under the names PINNACLE, PINNACLE INVESTMENTS, PINNACLE CAPITAL MANAGEMENT, and PINNACLE SOLUTIONS are such that consumers would expect the owners of the PINNACLE mark to also provide PEO services under the PINNACLE name.

51.     PEO services are within the zone of natural expansion for the Plaintiffs' use of the mark PINNACLE, which dates back decades.

52.     Consumers would expect human resources management, payroll, and employee benefits services to emanate from the same type of business that provides general financial and investments services, including retirement benefits and pension planning, such as those provided under the PINNACLE family of marks even before the PES LLC was formed and began using the PINNACLE EMPLOYEE SERVICES mark.

53.     While based primarily in New York, PHC and its subsidiaries have serviced clients through the United States under the PINNACLE family of marks.

54.     Upon information and belief, the geographic scope of the PINNACLE family of marks was nationwide at the time that the Defendants began using the mark PINNACLE EMPLOYEE SERVICES.

55.     The geographic scope of PES LLC's use of its PINNACLE EMPLOYEE SERVICES mark from its inception included at least New York.

56.     Upon information and belief, at the time the Defendant applied for and obtained the '685 Registration, PES LLC was servicing customers and directly using the PINNACLE EMPLOYEE SERVICES mark in the eastern United States generally, including but not limited to the States of New York, Connecticut, Maryland, Ohio and South Carolina.

57.     At the time PES LLC began using its name, it was not aware of the existence of the Defendants, their business, or their alleged trademark.

58.     The Plaintiffs were not aware of the existence of the Defendants until many years after PES LLC had begun using the name PINNACLE EMPLOYEE SERVICES.

59.     PES LLC chose and used its trademark in good faith and without knowledge of

any trademark claim to that name by the Defendants.

## II. PHC's application to register the mark PINNACLE EMPLOYEE SERVICES with the PTO

60.     On October 28, 2020, PHC filed an application with the PTO to register a composite mark comprised of the words PINNACLE EMPLOYEE SERVICES and a design element.  That application was assigned Serial No. 90284799.

61.     The application identified the services of "payroll administration and management services" in International Class 35 and "administration of employee benefit plans concerning insurance and finance; claims administration in the field of workers' compensation" in International Class 36 in connection with the mark.

62.     On April 9, 2021, the USPTO issued an initial Office Action, denying registration on the basis of a likelihood of confusion with two trademarks owned by a third-party.

63.     PHC did not respond to that Office Action and its application was deemed abandoned on October 22, 2021.

## III. The Defendant's Application and Registration with the PTO

64.     On December 11, 2020, Michael Allen filed an application to register a trademark for PINNACLE EMPLOYEE SERVICES, which eventually matured into the '685 Registration.

65.     The USPTO assigned the application Serial No. 90376137.

66.     The application lists a date of first use of August 6, 2013, and a date of first use in commerce of September 1, 2013.

67.     Upon information and belief, neither Defendant was using the trademark as of

the asserted dates of first use.

68.     The application listed Michael Allen, an individual, as the Owner of the trademark.

69.     This application was filed over a month after PHC filed its application to register its mark.

70.     Upon information and belief, at the time the application was filed, Mr. Allen was aware of the Plaintiffs' use of the name PINNACLE EMPLOYEE SERVICES.

71.     Mr. Allen had been in contact with the Plaintiffs regarding their common name and discussed a referral or other relationship or effort to accommodate one another's use of the same name.

72.     Mr. Allen's application sought to cover the services of "Human resources consultation [and] Payroll preparation" in International Class 35.

73.     On June 10, 2021, the USPTO issued a Suspension Notice, identifying PHC's prior-filed application as a potential bar to registration on likelihood of confusion grounds.

74.     The Suspension Notice stated that if the USPTO registered the mark applied for by PHC, it may refuse to register the Defendants' mark due to a likelihood of confusion with that registration.

75.     When PHC's application became abandoned, the suspension was lifted, and Defendants' application proceeded.

76.     On April 12, 2022, the USPTO issued the '685 Registration, a copy of which is attached here as **Exhibit A**.

IV.     **The Defendants' Cease and Desist Letters against the Plaintiffs and Infringement Lawsuit in the Eastern District of California**

77.     Nine days after the '685 Registration was issued, attorneys for the Defendants sent a Cease and Desist letter dated April 21, 2022 to PHC, demanding that PHC "immediately cease using the trade name "Pinnacle Employee Services" in conjunction with the offering, marketing or provision of employee benefits services, payroll, and human resources." A copy of the letter is attached here as **Exhibit B**.

78.     PHC responded to the letter through a letter of counsel, pointing out that PHC's use of the PINNACLE mark long preceded the Defendants' use of the PINNACLE EMPLOYEE SERVICES mark and the Plaintiffs' use of the mark PINNACLE EMPLOYEE SERVICES long predated the Defendants' '685 Registration.

79.     The Plaintiffs sought to delineate the geographic scope of the Defendants' purported common law trademark rights predating its PTO registration, but the Defendants refused to consider any resolution of the matter short of the Plaintiffs' uncompensated and complete discontinuance of its longstanding PINNACLE EMPLOYEE SERVICES mark or a cash payment to "buy" the Defendants' trade name.

80.     On August 1, 2022, the Defendants filed a trademark infringement lawsuit against PHC in United States District Court for the Eastern District of California, bearing Index No. 2:22- cv-01367. A copy of the Complaint is attached here as **Exhibit C**. The case was assigned to Chief Judge Kimberly J. Mueller.

81.     PHC moved to dismiss the Complaint for lack of personal jurisdiction.

82.     By order dated April 17, 2023, Chief Judge Mueller agreed with the Defendant that the Plaintiffs had failed to establish personal jurisdiction over PHC but granted the

Plaintiffs' request for limited jurisdictional discovery.

83.     After conducting jurisdictional discovery, the Plaintiffs sought leave to amend their Complaint to add PES LLC and Pinnacle Investments, LLC as defendants and make jurisdictional allegations. A copy of the Amended Complaint is attached here as **Exhibit D**.

84.     Chief Judge Mueller granted the Plaintiffs' leave to amend their complaint and PHC, PES LLC and Pinnacle Investments moved to dismiss the Amended Complaint for lack of personal jurisdiction.

85.     By order dated January 31, 2024, and filed on February 1, 2024, Chief Judge Mueller granted the motion, and the case was dismissed in its entirety without leave to amend. A copy of the order dismissing the case is attached here as **Exhibit E**.

**V.     Defendants' Harassment and Defamation of the Plaintiffs**

86.     On Tuesday, February 6, 2024, five days after disposition of the Eastern District of California lawsuit, Michael Allen posted a video on YouTube, referred to herein simply as the "February 6 Video." A copy of the February 6 Video will be produced to the Court by thumb-drive and referred to as **Exhibit F.**

87.     The February 6 Video was posted on the Pinnacle Employee Services YouTube account.

88.     The February 6 Video was entitled "PSA – Beware of this IMPOSTER. A company is posing as US."

89.     The description of the video that was published on the YouTube page stated:

> PSA: Please be aware of this company posing as us "Pinnacle Employee Services". We have been providing businesses with payroll, HR, and benefits since 2005. Pinnacle Employee Services is impersonating our

company. We are federally trademarked with the USPTO. Please do not be fooled by this company.

90.     The February 6 Video depicted a person who identifies himself as Michael Allen, the founder and owner of PES Inc.

91.     Mr. Allen went on to claim that "for the past nine years, a company named PES out of Syracuse, New York . . . has been impersonating [his] company and offering the same services."

92.     Mr. Allen also characterized PES, LLC and "Pinnacle Holding" as "unregistered," implying that those entities are somehow illegitimate or unauthorized to do business.

93.     On information and belief, an appreciable number of reasonable consumers and potential clients of the Plaintiffs would interpret the statements from the Video to mean that the Plaintiffs are illegitimate or unauthorized to do business.

94.     The same day, social media accounts bearing Mr. Allen and/or PES Inc.'s name, logo and/or image posted links to the Video multiple times on PES LLC's LinkedIn page and PES LLC's Facebook pages.

95.     When Mr. Allen or PES Inc. posted the Video as a comment on PES LLC's social media pages, the comment included a link to the YouTube page where the Video was posted, a screen shot of the video showing Mr. Allen, and contained the title of the Video, "PSA – BEWARE of this IMPOSTER.  A company is posing as US."

96.     Mr. Allen and/or PES Inc. posted the video six times on PES LLC's LinkedIn and Facebook pages on February 6.

97.     By posting on PES LLC's social media pages, the Defendants published the

Video and its title to the public generally, PES LLC's customers specifically and anyone who might view or search for PES LLC's social media accounts.

98.     The Defendants posted the Video on PES Inc.'s LinkedIn account and "tagged" PES LLC's LinkedIn account.

99.     By "tagging" PES LLC's account in LinkedIn, the Defendants rendered the Video and its title visible and accessible to those searching for PES LLC.

100.    The next day, Mr. Allen continued publishing and disseminating the false and defamatory statements, posting the Video on PES LLC's LinkedIn and Facebook page seven times.

101.    Also on February 8, PES LLC's YouTube account was suspended based on an anonymous report that it violated YouTube's "impersonation policy."

102.    Upon information and belief, Mr. Allen submitted a false report that PES LLC's accounts or content "impersonated" PES, Inc.

103.    That day, February 8, counsel for PES, LLC sent a Cease and Desist letter to counsel for the Defendants, demanding that they discontinue making and disseminating defamatory statements that PES, LLC is "impersonating" PES Inc. or otherwise somehow unauthorized to do business. A copy of that letter is attached here as **Exhibit G**.

104.    The same day, PHC filed an appeal with YouTube disputed the suspension of its account.  YouTube denied that appeal by e-mail dated February 8, 2024.

105.    The following day, February 9, PES LLC's Facebook account was deleted without notice or explanation.

106.    That same day, Mr. Allen responded to the Cease and Desist letter, sending an e-mail to PES LLC's counsel, with a link to yet another YouTube video (the "February 9 Video").

A copy of the e-mail is attached here as **Exhibit H**.

107.    In the e-mail, Mr. Allen states that PHC and PES, LLC "can make the bleeding stop, by settlement talks."

108.    Upon information and belief, the February 9 Video was also generally available to the public. A copy of the February 9 Video will be produced to the Court by thumb-drive and referred to as **Exhibit I**.

109.    The February 9 Video depicted Mr. Allen responding to the Cease and Desist letter.

110.    The February 9 Video contained a litany of false and defamatory statements about PHC LLC, PES LLC and their representatives.

111.    For example, Mr. Allen stated in the February 9 Video that PES LLC "is impersonating my company and is deceiving others [for] gain fraudulent."

112.    Mr. Allen has stated to PES LLC that it must "start settlement talks or face public embarrassment."

113.    Mr. Allen published another video containing false statements and defamatory statements about PES, LLC and its counsel to PES, Inc.'s Instagram page on March 6, 2024. A copy of the March 6 Video will be produced to the Court by thumb-drive and referred to as **Exhibit J.**

114.    In the March 6 Video, Mr. Allen falsely claimed that the Chief Judge Mueller labeled PES, LLC a "liar" and insinuates that PES, LLC or its related entities were sanctioned pursuant to Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

115.    More specifically, Mr. Allen falsely stated in his March 6 Video:

 I want you to know that a federal judge in the Eastern District here in California

15

has pointed out that this company and their lawyer are a liar [*sic*] and again I have proof of that because they made false statements and they violated Federal Rule of Civil Procedure 11(b) and that's a big no no.

116.    Mr. Allen went on to state that he will provide or has provided by way of links on the YouTube page, to material "proving" that the Defendants were found by the Eastern District of California to have lied to the Court and/or violated Fed. R. Civ. P. 11.

117.    Mr. Allen further urged "social media companies" to "look at" his purported proof.

118.    At no point during the Eastern District of California lawsuit were PES, LLC, its related entities or their counsel subject to a Fed R. Civ. P. 11 motion, directive or sanction, nor were they otherwise deemed "liars" by Chief Judge Mueller, as claimed by Mr. Allen.

119.    Mr. Allen published yet another video containing false statements and defamatory statements about PES, LLC on March 7, 2024. A copy of the March 7 Video will be produced to the Court by thumb-drive and referred to as **Exhibit K.**

120.    In that video, Mr. Allen again stated that the Plaintiffs and their employees were held to be "liars" by "Judge Mueller" in the Eastern District of California.

121.    Mr. Allen repeats the defamatory statement that PES, LLC is "impersonating" PES, Inc., directing a statement to the Plaintiffs that "you are impersonating my company, you're not the real Pinnacle Employee Services, I am."

### FIRST CAUSE OF ACTION
**Trademark Infringement of the Common Law PINNACLE family of trademarks**
**Lanham Act § 43(a), 15 USC § 1125**

122.    Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

123.    PHC is the owner of the PINNACLE family of trademarks, including

4895-7510-7526, v. 5

PINNACLE, PINNACLE INVESTMENTS, PINNACLE CAPITAL MANAGEMENT, PINNACLE SOLUTIONS, and PINNACLE EMPLOYEE SERVICES.

124.    Each of the foregoing trademarks, both individually and as part of the PINNACLE family of trademarks, is distinctive.

125.    Many of the foregoing trademarks were in use in commerce prior to the Defendants' use of their mark PINNACLE EMPLOYEE SERVICES and have been used continuously.

126.    All of the foregoing trademarks were used in connection with financial, business and benefits services that are similar to the services the Defendants later provided under their mark.

127.    Upon information and belief, the PINNACLE family of marks was in use throughout the United States prior to the Defendants' use of their mark and, in any event, within at least some of the geographic territories in which the Defendants began using their trademark.

128.    Upon information and belief, the Defendants have used and continue to use their mark in geographic territories where the Plaintiffs had previously secured common law rights to the PINNACLE family of marks and/or each of them individually.

129.    The Defendants' use of their mark PINNACLE EMPLOYEE SERVICES is likely to cause consumer confusion with the PINNACLE family of trademarks, and/or each of them individually, as to the affiliation, connection or association of the parties, and/or the origin, sponsorship, or approval of the Defendants' services.

130.    The Defendants have thus infringed on the Plaintiffs PINNACLE family of trademarks, and/or each of them individually.

131.    By reason of the foregoing, the Plaintiffs have been injured, will continue to be injured in amounts not yet ascertained, and will be irreparably injured, entitling Plaintiffs to the remedies provided for in 15 U.S.C. §§ 1116 to 1118 of the Lanham Act.

**SECOND CAUSE OF ACTION**
**Trademark Infringement of the Common Law PINNACLE EMPLOYEE SERVICES trademark – Lanham Act § 43(a), 15 USC § 1125**

132.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

133.    The Plaintiffs are the owners or authorized user of the trademark PINNACLE EMPLOYEE SERVICES.

134.    The Plaintiffs began using the PINNACLE EMPLOYEE SERVICES trademark in interstate commerce in or about 2014.

135.    The Plaintiffs' use of the PINNACLE EMPLOYEE SERVICES trademark predates the Defendants' '685 Registration, which was filed on December 11, 2020 and issued on April 12, 2022.

136.    The Plaintiff used PINNACLE EMPLOYEE SERVICES within a geographic territory that, upon information and belief, encompassed as least the State of New York by December 11, 2020.

137.    Upon information and belief, the Plaintiffs' continuous use of the mark PINNACLE EMPLOYEE SERVICES has given rise to common law trademark rights that are, in at least some geographic territories, senior to the Defendant's pre-registration rights, if any, in their PINNACLE EMPLOYEE SERVICES trademark.

138.    The Defendants' use of their mark PINNACLE EMPLOYEE SERVICES is likely to cause consumer confusion with the Plaintiff's PINNACLE EMPLOYEE SERVICES

trademark as to the affiliation, connection or association of the parties, and/or as to origin, sponsorship, or approval of the Defendants' services.

139.    By reason of the foregoing, the Plaintiffs have been injured, will continue to be injured in amounts not yet ascertained, and will be irreparably injured, entitling Plaintiffs to the remedies provided for in 15 U.S.C. §§ 1116 to 1118 of the Lanham Act.

## THIRD CAUSE OF ACTION
### Declaratory Judgment for No Trademark Infringement

140.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

141.    As a result of the Plaintiffs' superior common law trademark rights to the marks PINNACLE EMPLOYEE SERVICES in at least some geographic territories, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that the Plaintiffs have not infringed and are not infringing on the Defendants' alleged trademark rights in the PINNACLE EMPLOYEE SERVICES mark.

142.    A judicial declaration is necessary so that PES LLC can ascertain its right to continue using its mark PINNACLE EMPLOYEE SERVICES in connection with human resources, payroll administration and management services, personnel management services and administration of employee benefit plans, and related financial services.

143.    A judicial declaration is also necessary to determine the geographic scope of the parties' respective common law trademarks rights to the mark PINNACLE EMPLOYEE SERVICES predating the Defendant's '685 Registration, assuming that registration is not cancelled in this proceeding.

144.    A judicial declaration that the Plaintiffs have the right to use the mark

4895-7510-7526, v. 5

PINNACLE EMPLOYEE SERVICES, and that such use does not infringe any rights of the Defendants, is necessary in order to prevent the irreparable harm being caused by the Defendants' false allegations.

**FOURTH CAUSE OF ACTION**
**False Advertising and Unfair Competition – Lanham Act § 42(a)(1)(B), 15 USC § 1125**

145.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

146.    The Defendants falsely stated in the Video, as well as in the title and description of the Video, which was published on the internet, including on the Plaintiffs' and the Defendants' social media pages, that the Plaintiffs are "imposters" and are "posing" as PES Inc.

147.    The Defendants also stated that the Plaintiffs themselves are "unregistered" – not that their trademarks are unregistered – and thus falsely stated that the Plaintiffs are not authorized to do business or otherwise not in compliance with legal or regulatory requirements.

148.    Upon information and belief, the Defendants submitted false statements to YouTube, Facebook and perhaps other social media social media platforms that PES LLC's accounts were fake or not connected with a real business, or otherwise created or used in contravention of the Defendants' trademark rights.

149.    The Plaintiffs have never deceived or attempted to deceive anyone into believing that the PES LLC is PES Inc., or that the Plaintiffs are affiliated with or have any relationship whatsoever with PES Inc. or Mr. Allen.

150.    The Plaintiffs have longstanding common law trademark rights in and to the names PINNACLE and PINNACLE EMPLOYEE SERVICES and have exercised those

4895-7510-7526, v. 5

trademark rights in good faith.

151.    The Plaintiffs have suffered and continue to suffer harm through the loss of their social media accounts, the dissemination and publication of false statements that they are pretending to be PEC Inc. or otherwise engaging in conduct that is deception to consumers.

152.    The Defendants' false statements that the Plaintiffs are "imposters" or that they are "posing" as PES, Inc. were made on the Plaintiffs' commercial social media accounts that are designed solely for the purpose of engaging with the Plaintiff's clients, potential clients and consumers in general.

153.    As such, the Defendant's publication of those false statements was likely and intended to cause consumer deception and is of a kind likely to influence a consumer's purchasing decision.

154.    The Defendants made the false statements in the context of commercial communications, statements and advertisements about their own services, including on their own social media accounts, that were designed to reach clients, potential customers and consumers in general.

155.    As a direct result of the Defendants' conduct, the Plaintiffs have lost, will lose, or is likely to lose customers and/or suffer irreparable harm to their business reputation and other commercial interests.

156.    By reason of the foregoing, the Plaintiffs have been injured, will continue to be injured in amounts not yet ascertained, and will be irreparably injured, entitling Plaintiffs to the remedies provided for in 15 U.S.C. §§ 1116 to 1118 of the Lanham Act.

## FIFTH CAUSE OF ACTION
### Deceptive Trade Acts and Practices – New York Gen. Business Law § 349

157.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

158.    The Defendants' statements described above were deceptive and directed to consumers.

159.    The Defendants acts are misleading, stating directly to consumers that the Plaintiffs are "imposters" or otherwise engaging in illegal or deceptive conduct.

160.    The Plaintiffs have been injured as a result of the Defendants' deceptive acts.

161.    By reason of the foregoing, the Plaintiffs are entitled to recover damages from the Defendants in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### False Advertising – New York Gen. Business Law § 350

162.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

163.    The Defendants' false statement that the Plaintiffs were "imposters" or "posing" as PES Inc. across both their own and the Plaintiffs' social media accounts, including on YouTube, are commercial statements and/or advertisements directed to consumers.

164.    The Defendants' statements were false and designed to mislead consumers regarding the Plaintiffs' business and trademark rights.

165.    The Plaintiffs have been injured as a result of the Defendants' false advertising.

166.    By reason of the foregoing, the Plaintiffs are entitled to recover damages from the Defendants in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Against Defendant Allen
### Defamation – New York Common Law

167.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

168.    Allen falsely stated in the February 6 Video, the title, and description of the video and in post or comments on the internet, including on the Plaintiffs' and the Defendants' social media pages, that the Plaintiffs are "imposters" and that they are "posing" as PES Inc.

169.    Allen falsely stated in the February 6 Video that the Plaintiffs themselves are "unregistered" – not that their trademarks are unregistered – and thus falsely stated that the Plaintiffs are not authorized to do business or otherwise not in compliance with some legal or regulatory requirements.

170.    Upon information and belief, Allen published false statements to YouTube, Facebook and perhaps other social media companies that PES LLC's accounts were fake, not connected with a real business, or otherwise created or used in contravention of the Defendants' trademark rights.

171.    These statements were published to third parties across many social media platforms and accounts.

172.    These statements were not rendered as statements of opinion, but rather as categorical fact.

173.    Allen knew or should have known that these statements were false when there were made, and/or made them with the intent to injure the Plaintiffs.

174.    The false statements were of a kind that tends to injure the Plaintiffs in their trade, business and/or profession.

175.     The false statements state and/or imply that the Plaintiffs have engaged in misconduct, deception or otherwise unauthorized or illegal acts, specifically with respect to consumers.

176.     These statements were of a kind that harm the Plaintiffs' professional, business and commercial reputation, and were specifically directed toward platforms where they would be seen by Plaintiffs' customers, employees, professional partners and the consuming public at large.

177.     By reason of the foregoing, the Plaintiffs are entitled to recover damages from Defendant Allen in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
**Against Defendant Allen**
**Defamation – New York common law**

178.     The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

179.     Allen falsely stated that Plaintiffs were found to be "liar[s]" or sanctioned under or otherwise found to have been in violation of Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

180.     The Plaintiffs were not subject to a Fed. R. Civ. P. 11 motion in the Eastern District of California lawsuit.

181.     The Plaintiffs were not sanctioned under Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

182.     The Plaintiffs were not found by a Court to have violated Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

183.     The Plaintiffs were never deemed "liars" when in fact, Plaintiffs were not subject

to a Rule 11 motion or sanctions and never held to have violated Rule 11, much less deemed "liars" by Chief Judge Mueller.

184.    These statements were published to third parties across many social media platforms and accounts.

185.    These statements were not rendered as statements of opinion, but rather as categorical fact.

186.    Allen knew or should have known that these statements were false when there were made, and/or made them with the intent to injure the Plaintiffs.

187.    The false statements were of a kind that tends to injure the Plaintiffs in their trade, business and/or profession.

188.    These statements were of a kind that harm the Plaintiff's professional, business and commercial reputation.

189.    By reason of the foregoing, the Plaintiffs are entitled to recover damages from Defendant Allen in an amount to be determined at trial.

## <u>NINTH CAUSE OF ACTION</u>
**Cancellation of '685 Registration based on Likelihood of Confusion with the Plaintiffs' Common Law marks – 15 U.S.C. §§ 1119 and 1052(d)**

190.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

191.    PHC is the owner of the PINNACLE family of trademarks, including PINNACLE INVESTMENTS, PINNACLE CAPITAL MANAGEMENT, PINNACLE SOLUTIONS, and PINNACLE EMPLOYEE SERVICES.

192.    PHC and its subsidiaries have used all of those trademarks in commerce continuously.

193.    PHC has used the PINNACLE family of trademarks prior to the Defendants' use of the confusingly similar trademark, PINNACLE EMPLOYEE SERVICES.

194.    PHC has used at least some of the foregoing marks individually prior to the Defendant's use of its mark.

195.    At the time of the Defendants' application to register the '685 Mark, PHC had acquired significant common law rights in and to the foregoing trademarks.

196.    At the time of Mr. Allen's application to register the '685 Mark, he knew of PHC's PINNACLE family of trademarks.

197.    At the time of Mr. Allen's application to register the '685 Mark, he knew of PES LLC's existence and use of the PINNACLE EMPLOYEE SERVICES trademark.

198.    The Plaintiffs' common law trademarks had priority over Mr. Allen's trademark at the time he filed to register the mark.

199.    The Defendants' mark so resembles the Plaintiffs' common law trademarks that it is likely to cause confusion, mistake or deception among consumers when used on or in connection with the Defendants' services.

200.    By reason of the foregoing, Plaintiffs request that the Court cancel the '685 Registration due to its likelihood to cause confusion with the Plaintiffs' common law trademarks, pursuant to 15 U.S.C. § 1052(d).

## TENTH CAUSE OF ACTION
### Cancellation of '685 Registration because Applicant was not the Rightful Owner of the Mark – 15 U.S.C. §§ 1119; 37 C.F.R. § 2.7(d); TMEP § 1201.02; § 309.03(c)(1)

201.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

202.    The application to register the '685 Mark listed Michael Allen as the owner of the

26

mark. The PTO file history for the '685 Registration as of February 16, 2024, is attached here as

**Exhibit L.**

203.    Mr. Allen prosecuted the application as the purported owner of the mark and the

registration was ultimately issued in Mr. Allen's name.

204.    Upon information and belief, Mr. Allen was not the owner of the mark at the

time of the application.

205.    Upon information and belief, PES, Inc. was the owner of the trademark at the

time of the application.

206.    This is reflected by the Assignment Agreement filed by Mr. Allen with the

USPTO purporting to assign the '685 Registration to PES Inc.

207.    That document, rather than assigning anything, reflected that PES Inc. has been

using the '685 Registration prior to the date of the application and that the mark's function as a

brand identifier and repository of goodwill inured to PES Inc. as a corporate entity and not Mr.

Allen as an individual.

208.    When an application is filed in the name of the wrong party, this defect cannot be

cured by amendment or assignment. TMEP §§ 1201.02(b), 803.06; 37 C.F.R. §2.7(d).

209.    As set forth in TMEP § 1201.02(c), "If the president of a corporation is

identified as the owner of the mark when in fact the corporation owns the mark, and there is no

inconsistency in the original application between the owner name and the entity type (such as a

reference to a corporation in the entity section of the application), the application is void as filed

because the applicant is not the owner of the mark."

210.    The application to register the '685 Registration listed Michael Allen not as the

Chief Executive Officer or another corporate representative of the corporate entity that owned

27

the trademark, but rather solely as the owner in his individual capacity.

211.    Because PES Inc., and not Michael Allen as an individual, was the owner of the trademark at the time of the application, the application to register the mark was void ab initio and the '685 Registration must be cancelled.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs PINNACLE HOLDING COMPANY, LLC and PINNACLE EMPLOYEE SERVICES, LLC, pray for relief as follows:

a.   An order granting an injunction against the Defendants, their parent companies, subsidiaries, related company, and all person or entities acting on their behalf, from using the words PINNACLE or PINNACLE EMPLOYEE SERVICES or any similar mark that is likely to violate the Plaintiffs' common law rights as set forth in this Complaint;

b.   An order directing the Defendants to account for and pay over to the Plaintiffs all gains, profits, and advantages related from the sale of goods and services in connection with the infringement marks;

c.   An order directing the Defendants to:

    i.   Permanently delete the defamatory videos referenced herein from (a) YouTube, PES, Inc.'s website, (b) all social media accounts controlled or operated by Michael Allen and/or PES, Inc., and (c) anywhere else that it has been posted or disseminated;

    ii.   Permanently delete all posts, articles, comments and all other online or print publications referring to PES, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their agents, employees or representatives;

    iii.   Contact all third parties to which the Defendants have made complaints regarding the Plaintiffs' use of PINNACLE and/or PINNACLE EMPLOYEE SERVICES, and withdraw those complaints, and request

28

that all of the Plaintiffs' accounts and activities be restored;

    iv.   Permanently refrain from making defamatory statements about PES, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their agents, employees or representatives;

    v.   Permanently refrain from taking any steps to interfere with, render complaints against, demand the takedown of or otherwise affect any website or social media account of PES, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their agents, employees or representatives;

d.  An order providing that upon the Plaintiffs' request, those with notice of the order, including third party social media providers, shall within seven (7) calendar days after receipt of such notice, reinstate any accounts, postings, and related material that was previously removed due to facts or complaints related to the order, including but not limited to complaints by the Defendants.

e.  An order awarding actual damages suspected by the Plaintiffs as a consequence of the Defendants' conduct, including the costs of addressing and attempting to mitigate the Defendant's defamatory statements and false advertisements;

f.  An order directing the United States Patent and Trademark Office to cancel the '685 Registration, or in the alternative, to amend the registration to cover only geographic areas not covered by the Plaintiff's common law rights;

g.  Judgment that the Plaintiffs do not infringe any trademark right of the Defendants, and that no right of the Defendants prevents the Plaintiffs from using the trademark PINNACLE EMPLOYEE SERVICES throughout the United States, or in the alternative east of the Mississippi river, or in the second alternative in the State of New York; and

h.  Such other and further relief as the Court deems just and proper.

4895-7510-7526, v. 5

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated**:      June 21, 2024                              **HANCOCK  ESTABROOK, LLP**

By:  s/ *James P. Youngs*
James P. Youngs, Esq., Bar Roll No. 515029
Amanda C. Nardozza, Esq.
Attorneys *for Plaintiffs*
1800 AXA Tower I
100 Madison St.
Syracuse, NY 13202
Tel: (315) 565-4558
*jyoungs@hancocklaw.com*

4895-7510-7526, v. 5