# EXHIBIT B



**KROGH & DECKER, LLP**

ATTORNEYS AT LAW

**Via Overnight Mail**

April 21, 2022

Gregg A. Kidd
Eric D. Krouse
Pinnacle Holding Company, LLC
5845 Widewaters Parkway, Suite 300
East Syracuse, NY 13057

    **Re:    Cease and Desist/Trademark Infringement**
            **Pinnacle Employee Services**

Dear Messrs. Kidd and Krouse:

Our firm represents Pinnacle Employee Services, Inc. ("Pinnacle"), a California corporation, and Michael Allen, the Chief Executive Officer and owner of Pinnacle. Please direct any future communications for our clients to our office.  The purpose of this letter is to demand that Pinnacle Holding Company ("PHC") immediately cease using the trade name "Pinnacle Employee Services" in conjunction with the offering, marketing, or provision of employee benefits services, payroll, and human resources.

Mr. Allen has owned and operated Pinnacle since 2013.  Pinnacle has at all times used the name "Pinnacle Employee Services" in conjunction with the services offered by our client:  employee benefit services, payroll, and human resources. Mr. Allen is the owner of U.S federal trademark no. 90376137 for "Pinnacle Employee Services", Class 35 for human resources consultation and payroll services.  A copy of Mr. Allen's federal trademark certificate is enclosed with this letter.   The date of first use of the name Pinnacle Employee Services was September 1, 2013.

It has come to our clients' attention that PHC is blatantly infringing on Mr. Allen's trademark by operating an identical business using the identical name. Specifically, PHC is operating a service business that offers the same services as Pinnacle: employee benefit services, payroll, and human resources. A review of each company's website and services shows that they are largely indistinguishable and any consumer looking to purchase the offered services would be unable to ascertain which company is which.

The use of a trademark in connection with the sale of a good or services constitutes unlawful infringement if it is likely to cause consumer confusion as to the source of those goods or as to the sponsorship or approval of such goods. In deciding whether consumers are likely to be confused, courts routinely look to the

Gregg A. Kidd
Eric D. Krouse
April 21, 2022
Page 2 of 3

following factors: (1) the strength of the mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the similarity of marketing channels used; (6) the degree of caution exercised by the typical purchaser; (7) the defendant's intent; (8) Likelihood of expansion. Polaroid Corp. v. Polarad Elect. Corp., 287 F.2d 492 (2d Cir.) (1961). See also 15 U.S.C. §§ 1114, 1125 [If a party owns the rights to a particular trademark, that party can sue subsequent parties for trademark infringement].

Analysis of these factors lead to an overwhelming conclusion that PHC is unlawfully infringing on Pinnacle's federal trademark:

(1) "Pinnacle Employee Services" is a suggestive mark. "Pinnacle" is an arbitrary word and has no connection to employee services. "Employee services" is suggestive as it does not describe the specific services offered by our clients'. The mark is entitled to protection. Further, Pinnacle has worked with hundreds of companies in multiple states, and our client's name and reputation are well-known.

(2) The services offered by each company are identical. This factor heavily weighs in favor of our clients, and caselaw has repeatedly held that if the products compete directly and the marks are sufficiently similar, then confusion is considered likely.

(3) The names used by each company are identical, meaning confusing is very likely. This factor weighs heavily in favor of our clients.

(4) Our client has received multiple telephone calls from clients looking for PHC, including individuals from Supercuts. It is strongly suspected that PHC has also received communications from Pinnacle's clients confused between the two companies.

(5) Both companies have a heavy internet presence, and as stated above the two websites present identical companies to consumers. Both companies also operate throughout the U.S as Pinnacle operated in multiple states other than California. Competition between each company is likely. Confusion is also likely from this factor.

(6) Clients seeking payroll or human resources services are likely to seek out information based on an internet search. There is insufficient information to distinguish between the two companies without investigation that consumers of the services are unlikely to engage in. It is highly probable that typical consumers would be confused.

(7) PHC is undoubtedly aware of Pinnacle and Pinnacle's use of the trade name "Pinnacle Employee Services" as an internet search would easily uncover our client's business and services. Moreover, a USPTO trademark search would locate their federal trademark. The fact PHC is continuing to infringe on Pinnacle's trademark is evidence of bad faith.

(8) As indicated above, Pinnacle has clients in multiple states and offers services throughout the U.S. As both companies grow it is very likely that they will continue to expand their customer base such that consumer confusion becomes even more likely.

Gregg A. Kidd
Eric D. Krouse
April 21, 2022
Page 3 of 3

Accordingly, this is a formal demand that no later than seven (7) days from the date of this letter that PHC cease using the name "Pinnacle Employee Services" in any manner. At a minimum, this will require PHC to remove the infringing name from its website, social media, client and customer communications, information and portals, and any marketing or advertising.

If PHC does not stop using the infringing name Pinnacle will have no choice but to file litigation in California against PHC and move to obtain prompt injunctive relief preventing use of our client's trademarked name. If litigation is necessary, our client will also seek to recover all available damages including disgorgement of PHC's profits during the period of unlawful use of the name. See Romag Fasteners, Inc. v. Fossil Inc. (590 US (2020) [Disgorgement of defendant's profits available without showing of willful infringement]. Additionally, Pinnacle will seek recovery of any attorney's fees and costs expended given the clear evidence PHC is copying Pinnacle's exact name and business. Lanham Act §1117(a).

The only alternative our clients are willing to entertain other than complete cessation of use of the infringing name would be a buy-out of Pinnacle's name and trademark rights by PHC. In that regard, Pinnacle has spent nearly a decade building its business, and its trade name is incredibly valuable to our client. If PHC is inclined to negotiate a purchase any offer would need to acknowledge this fact.

If you would like to discuss any of these issues do not hesitate to contact me.

Sincerely,

*Derek Decker*

DEREK C.DECKER

DCD:cs
Enclosures


cc: client
    file

# United States of America
## United States Patent and Trademark Office

## PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.