# EXHIBIT C

TRADEMARK,CIVIL

# U.S. District Court
## Eastern District of California – Live System (Sacramento)
## CIVIL DOCKET FOR CASE #: 2:22–cv–01367–CKD

Pinnacle Employee Services, Inc., et al, v. Pinnacle Holding Co., LLC
Assigned to: Magistrate Judge Carolyn K. Delaney
Cause: 15:44 Trademark Infringement

Date Filed: 08/01/2022
Jury Demand: Plaintiff
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Plaintiff**

**Pinnacle Employee Services, Inc.**
*a California Corporation*

represented by **Cagil Arel**
Krogh & Decker, LLP
555 Capitol Mall
Ste 700
Sacramento, CA 95814
415–579–8796
Email: cagilarel@kroghdecker.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Allen**
*an individual*

represented by **Cagil Arel**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Pinnacle Holding Company, LLC**
*a Delaware Limited Liability Company*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2022 | 1 | COMPLAINT against All Defendants by Pinnacle Employee Services, Inc., Michael Allen. Attorney Arel, Cagil added. (Filing fee $ 402, receipt number ACAEDC–10358517) (Attachments: # 1 Exhibits, # 2 Civil Cover Sheet)(Arel, Cagil) (Entered: 08/01/2022) |
| 08/02/2022 | 2 | SUMMONS ISSUED as to *Pinnacle Holding Company, LLC* with answer to complaint due within *21* days. Attorney *Cagil Arel* *Krogh & Decker, LLP* *555 Capitol Mall, Ste 700* *Sacramento, CA 95814*. (Rodriguez, E) (Entered: 08/02/2022) |
| 08/02/2022 | 3 | TRADEMARK NEW CASE DOCUMENTS ISSUED as to Trademark #1:* Reg.No.6,696,685 * * 04/12/2022 * * Michael Allen * ; copy of Complaint and Trademark Report emailed to U.S. Office of Patents and Trademarks. (Attachments: # 1 Consent Form, # 2 Trademark Report, # 3 VDRP) (Rodriguez, E) (Entered: 08/02/2022) |

**KROGH & DECKER, LLP**
DEREK C. DECKER, SBN 232243
   *derekdecker@kroghdecker.com*
ÇAĞIL AREL, SBN 333564
   *cagilarel@kroghecker.com*
555 Capitol Mall, Suite 700
Sacramento, California 95814
Telephone: 916.498.9000
Facsimile: 916.498.9005

Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, Inc.
MICHAEL ALLEN

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pinnacle Employee Services, Inc., a California Corporation; Michael Allen, an individual,<br><br>            Plaintiffs,<br><br>      v.<br><br>Pinnacle Holding Company, LLC, a Delaware Limited Liability Company,<br><br>            Defendant. | Case No.: _____<br><br>**COMPLAINT**<br><br>**(1) Federal Trademark Infringement 15 U.S.C. §1114;**<br><br>**(2) Federal Unfair Competition and False Designation of Origin 15 U.S.C. §1125(a);**<br><br>**(3) Violation of Anti-Cybersquatting Consumer Protection Act 15 U.S.C. §1125(d)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs PINNACLE EMPLOYEE SERVICES, INC., and MICHAEL ALLEN (collectively "Pinnacle"), by and through counsel, hereby bring the present action against Defendant PINNACLE HOLDING COMPANY, LLC ("Defendant") and allege, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### Preliminary Statement

1.      This is an action for trademark infringement under Section 32 (1) of the Lanham Act, 15 U.S.C., Section 1114; unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a); and violation of the

Anti-Cybersquatting Consumer Protection Act under 15 U.S.C. Section 1125 against Defendant to protect the rights and substantial goodwill of Pinnacle's federally-registered trademark PINNACLE EMPLOYEE SERVICES.

2.    Pinnacle's trademark PINNACLE EMPLOYEE SERVICES (the "Pinnacle Trademark") is on the principal register of the United States Patent and Trademark Office in connection with Pinnacle's business of offering employee benefits, human resources assistance, and payroll preparation services. The Pinnacle Trademark has a registration that is valid, subsisting, and has never been canceled.

3.    Despite Pinnacle's established rights, Defendant adopted and continues to make use of the Pinnacle Trademark in a manner that is identical and confusingly similar, specifically in offering the same class of goods and services as Pinnacle and using the Pinnacle Trademark in a domain name without Pinnacle's authorization.

4.    By exploiting Pinnacle's rights and creating customer confusion, Defendant has acquired and continues to gain unfair income, profits, and goodwill. These actions have harmed Pinnacle and still continue to cause irreparable injury to Pinnacle in both the goodwill of business and reputation.

5.    Pinnacle is seeking damages for the injuries Defendant caused; an injunction to enjoin Defendant from further violating and exploiting Pinnacle's intellectual property rights; and other relief as deemed appropriated by this Court.

**Jurisdiction And Venue**

6.    This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332(a), and 1338(a). The Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because plaintiff Pinnacle Employee Services Inc. is a citizen of the state of California, plaintiff Michael Allen is a citizen of the state of California, while defendant Pinnacle Holding Company, LLC is a citizen of the state of Delaware, and the amount in controversy exceeds $75,000.

7.    This Court has personal jurisdiction over Defendant because Defendant

2

does sufficient business in California and this judicial district by directly targeting its business activities towards consumers in the United States and California citizens through direct customer relationships and contracts, solicitation for business opportunities, and at least one, fully interactive website and a smartphone application.

8.      Specifically, Defendant provides detailed and personalized services in the United States and California by managing its customers' businesses and employees directly from the customer's work site and by assuming its customers' contractual and legal rights and responsibilities under the laws of the state where the customer's business is located.

9.      By conducting business in the State of California, Defendant purposefully avails itself to California laws through continuous and systemic contacts, or otherwise intentionally makes its services available in California, so as to render jurisdiction over itself by this Court consistent with traditional notions of fair play and substantial justice.

10.      Upon information and belief, Defendant remains in direct contact with customers located in California. Defendant has and continues to commit tortious acts in California, is engaging in interstate commerce, and has wrongfully caused Pinnacle substantial injury in the State of California.

11.      Venue in this judicial district is proper under 28 U.S.C. §§1391(b) and (c), and 1400(a), in that a substantial part of the events giving rise to Pinnacle's claims occurred in this judicial district. The services at issue are available for sale in this district and therefore Defendant resides and may be found in this judicial district within the meaning of 28 U.S.C. § 1391(c).

**Parties**

12.      Plaintiff Pinnacle Employee Services, Inc., a corporation formed under the laws of California, and Plaintiff Michael Allen serves as its chief corporate officer and president. Plaintiffs (collectively "Pinnacle") are one of the leaders in the employee benefits industry in Northern California, and provide payroll services and human resources support to many business owners. Pinnacle is the registered owner of the

Pinnacle Trademark.

13.     Upon information and belief, Defendant Pinnacle Holding Company, LLC is a limited liability company formed under the laws of Delaware and uses the Pinnacle Trademark in its entirety; "Pinnacle Employee Services" in connection with its business of providing employee benefits and payroll services.

14.     Defendant belongs to an unknown makeup of family companies who own and/or operate at least one employee benefits services entity. Pinnacle is informed and believes and based thereon alleges that Defendant operates one or more business entities to provide the same and/or substantially similar services under the Pinnacle Trademark. Defendant's method of interconnecting their company networks makes it impossible for Pinnacle to discover Defendant's true identities and the exact operations. In the event that Defendant provides additional credible information regarding their identities, Pinnacle will take appropriate steps to amend the Complaint.

### Allegations Common to All Claims for Relief

### The Pinnacle Trademark

15.     Plaintiff Michael Allen ("Allen") is the owner and registrant of the valid and subsisting United States trademark, the Pinnacle Trademark, consisting of the phrase "PINNACLE EMPLOYEE SERVICES", Registration No. 6,696,685 on Principal Register in the United States Patent and Trademark Office ("USPTO,") under which it provides human resources consultation, and payroll and employee benefits preparation. Attached as **Exhibit 1** is a true and correct copy of the registration certificate for the Pinnacle Trademark, as issued by the United States Patent and Trademark Office.

16.     Plaintiff Pinnacle Employee Services, Inc. was assigned the Pinnacle Trademark by Plaintiff Allen on or around April 12, 2022; the assignment is recorded with the United States Patent and Trademark Office, a true and correct copy of which is attached herein as **Exhibit 2**.

17.     The U.S. registration for the Pinnacle Trademark by Pinnacle, with its registration certificate shown in **Exhibit 1**, is valid, subsisting, in full force and effect. The

registration for the Pinnacle Trademark constitutes prima facie evidence of its validity and of Pinnacle's exclusive right to use the Pinnacle Trademark pursuant to 15 U.S.C. § 1057(b).

18.     Pinnacle has used the Pinnacle Trademark in commerce continuously since the date of September 1, 2013, in connection with the offering, marketing, advertising, and promotion of comprehensive and cost-effective human resources assistance and consultation, payroll, and benefits services to small and medium-sized businesses. As a result of this long-standing use, strong common law trademark rights have amassed in the Pinnacle Trademark. Pinnacle's use of the mark has also built substantial goodwill in and to the Pinnacle Trademark, which has made the Pinnacle Trademark a valuable asset of Pinnacle. Pinnacle uses the Pinnacle Trademark in advertising and promoting its business on online platforms. Attached hereto as **Exhibit 3** is a representative sample of the Pinnacle Trademark, showing Pinnacle's use of the Pinnacle Trademark in connection with employee benefits services.

19.     Pinnacle has invested significant time, energy, and money in advertising, promoting and selling services featuring the Pinnacle Trademark, as well as ensuring the high quality of services offered under the Pinnacle Trademark. Pinnacle has provided its comprehensive employee benefits services over the years to minimize the administrative burden on business owners across the entire spectrum of the matters of payroll, tax, human resources support, and benefits, and also to assist businesses with increased compliance requirements resulting from the rapidly evolving legislation. The intuitive and modern approach of Pinnacle has made Pinnacle a commercial success within the employee benefits industry. The goodwill associated with Pinnacle's brand and the Pinnacle Trademark is of incalculable and inestimable value to Pinnacle.

**Defendant's Unlawful Conduct and Infringement of the Pinnacle Trademark**

20.     Pinnacle's modern approach and success in assisting businesses with their employees have resulted in significant popularity. Due to the administrative and documentary nature of employee management, most of the services sold, specifically



the services pertaining to payroll, are typically provided through online platforms. As a result, Pinnacle regularly investigates suspicious internet activity to protect the Pinnacle Trademark and the goodwill of Pinnacle's business.

21.    Specifically, Pinnacle has identified Defendant as a fully interactive, e-commerce service provider, offering the exact same employee benefits, payroll, and human resources assistance related services on online platforms under the Pinnacle Trademark and using a domain name that is identical and therefore confusingly similar to the exact makeup of the Pinnacle Trademark.

22.    Pinnacle discovered the unauthorized use of Defendant's use of Pinnacle's Pinnacle Trademark within the content, text, and/or meta tags of its internet platforms to attract various search engines online relevant to consumer searches for employee and payroll management.

23.    Defendant has never been authorized by Pinnacle to use the Pinnacle Trademark, or designation, or any imitation thereof, in any way.

**Defendant's Use of the Domain Name**

24.    Defendant facilitates the sales of its services by using the Pinnacle Trademark and the domain name "PinnacleEmployeeServices.com" (the "Domain Name" or the "Infringing Domain Name"), which is confusingly similar and entirely identical to the Pinnacle Trademark. Defendant advertises and offers Defendant's services using the Pinnacle Trademark on the Domain Name without authorization, a sample of which is attached hereto as **Exhibit 4**.

25.    Defendant's business and the Domain Name appear to unknowing customers to be authorized providers of the employee benefits services offered by Pinnacle. The internet website operated under the Domain Name by Defendant appears sophisticated and accepts customer contact and sign-up, and upon information and belief, the option to tender direct payment to provide such services within the website. Further, Defendant operates a smartphone application, visible nationwide, which is advertised by Defendant as providing direct access to Defendant and its services from

the customer's physical location.

26.     Although the WHOIS record does not disclose the identity of the Domain Name registrant, Pinnacle was able to identify Defendant as the party in control of the Domain Name by the information available on the websites used by Defendant and/or its affiliates.

27.     Pinnacle has notified Defendant of Defendant's infringement and unlawful use of the Pinnacle Trademark and the Domain Name on numerous occasions. Defendant refused to settle the matter amicably and since then, has continued to make use of Pinnacle's registered federal trademark, and continues to do so.

28.     The acts of Defendant constitute a willful infringement of the registered Pinnacle Trademark in violation of 15 U.S.C. § 1114, constitute an infringement of Pinnacle's trademark, and constitute a violation of the federal trademark laws.

29.     Pinnacle's rights precede Defendant's any claim over the Pinnacle Trademark in priority of both registration and use. Pinnacle owns a valid and active federal registration for the Pinnacle Trademark. Defendant does not. However, Defendant concurrently employs and benefits from the Pinnacle Trademark, and even uses the complete and identical terms contained in the Pinnacle Trademark, PINNACLE EMPLOYEE SERVICES, to provide services virtually identical to those already being provided by Pinnacle under the Pinnacle Trademark.

30.     Despite Pinnacle's enforcement of its federal trademark, Defendant's operations provide goods and/or services that are directly related and encompass the same services provided by Pinnacle. Defendant's operations use the same method of providing direct access to payroll on-site of the customer, the same personalized-to-customer benefits services, the same methods of an online portal for payment and account information, the same compliance assistance, and most importantly, the same wording of the Pinnacle Trademark. The relatedness of Defendant's operations to the services offered by Pinnacle suggests to the public that the services are offered by and

**COMPLAINT**

come from a common source –a conclusion which is incorrect and harmful to Pinnacle's business and goodwill of the Pinnacle Trademark.

31.   Defendant's unauthorized use of the Pinnacle Trademark in connection with the advertising, promotion, offering, and performing of employee benefits services in the United States, including California, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Pinnacle.

**COUNT I**

**Federal Trademark Infringement (15 U.S.C. §1114)**

32.   Pinnacle hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33.   This is a trademark infringement action against Defendant based on their unauthorized use in commerce of the federally registered Pinnacle Trademark in connection with the sale of the same type of services offered by Pinnacle.

34.    Defendant has sold, offered to sell, marketed, advertised, and is still selling, offering to sell, marketing, and advertising employee benefits and payroll services using Pinnacle's Pinnacle Trademark without Pinnacle's permission.

35.   Pinnacle is the exclusive owner of the Pinnacle Trademark. Pinnacle's United States Registration for the Pinnacle Trademark is in full force and effect.

36.   Defendant has knowledge of Pinnacle's rights in the Pinnacle Trademark, and is willfully infringing and intentionally using the Pinnacle Trademark to offer the same class of services as Pinnacle. Defendant's willful, intentional and unauthorized use of the Pinnacle Trademark Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin of the services provided by Pinnacle among the general public and further enables Defendant to re-direct the stream of commerce to its own business by the unlawful use of the Pinnacle Trademark. These actions have caused and continue to cause injury to Pinnacle.

37.   Defendant's use of the Pinnacle Trademark to offer confusingly similar services represents Defendant's services as emanating from or being authorized by

Pinnacle and places beyond Pinnacle's control the quality of services bearing the Pinnacle Trademark.

38.    At all relevant times, Defendant had actual and direct knowledge of Pinnacle's ownership and registration of the Pinnacle Trademark. Defendant's conduct is therefore willful and reflects Defendant's intent to exploit the goodwill and brand recognition associated with the Pinnacle Trademark.

39.    Defendant's activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.    As a result of Defendant's wrongful conduct, Pinnacle has suffered, and will continue to suffer, substantial damages. Under 15 U.S.C. § 117(a), Pinnacle is entitled to recover its damages, which include the profits incurred by Defendant as a result of the wrongful use of the Pinnacle Trademark.

41.    Defendant's conduct entitles Pinnacle to injunctive relief under 15 U.S.C. § 116(a). Pinnacle's remedy at law is not adequate as Defendant's infringement of Pinnacle's federally protected trademark constitutes harm to Pinnacle such that Pinnacle cannot recover in full by a monetary award alone –if Defendant's unauthorized use of the Pinnacle Trademark were to persist, it would cause further confusion to the general public as to the source, origin, or authenticity of the infringing services. Defendant's wrongful conduct, and the resulting damage to Pinnacle still continue on this date.

42.    Pinnacle is further entitled to recover its attorneys' fees and costs of suit under 15 U.S.C. § 1117.

## COUNT II

### Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))

43.    Pinnacle hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.    Defendant's foregoing wrongful acts constitute unfair competition in violation of 15 U.S.C. § 1125(a). Defendant's use of the confusingly similar Pinnacle name

has caused and is likely to cause, a likelihood of confusion, deception, and mistake by creating the false and misleading impression that Defendant's services are provided by Pinnacle, that Defendant is affiliated to Pinnacle, and/or that Defendant has authorization by Pinnacle.

45.     By using the Pinnacle Trademark in connection with its employee benefits services, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the employee benefits services offered by Defendant under Pinnacle's Mark with intentional, willful and malicious intent.

46.     Defendant's false designation of origin and misrepresentation of fact as to the origin of services to the general public involves the use of federally registered Pinnacle's Mark and therefore, is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47.     Defendant's conduct has caused and is likely to continue causing, substantial injury to Pinnacle. Pinnacle is entitled to injunctive relief and to recover Defendant's profits, actual damages, and reasonable attorneys' fees under 15 U.S.C. §§ l 125(a) and 1117.

**COUNT III**

**Violation of Anti-Cybersquatting Consumer Protection Act (15 U.S.C. §1125(d))**

48.     Pinnacle hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

49.     Upon information and belief, Defendant has registered, trafficked in, and used the Domain Name with the registrar Network Solutions, LLC. The Domain Name consists entirely of the Pinnacle Trademark word by word, and therefore, it is identical to Pinnacle's federally registered intellectual property.

50.     Without Pinnacle's authorization and, upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in the Pinnacle, Defendant operated a live website at the Domain Name, which remains active as of the filing of this Complaint. Attached hereto as **Exhibit 4** is the true and correct screenshot of the website

Defendant maintains at the Domain Name as of July 31, 2022.

51.    Defendant has engaged in such actions with a bad faith intent to profit from the Pinnacle Trademark. Such bad faith is demonstrated, in part, by the fact that, prior to Pinnacle filing this action, Pinnacle informed Defendant that the Domain Name consists entirely of Pinnacle's registered trademark and that Defendant was not permitted to use the Pinnacle Trademark in any manner. Defendant did not cease using the Domain Name. At present, the Domain Name points to Defendant's website that makes unlawful use of the Pinnacle Trademark, and provides services that are competitive with Pinnacle's services in connection with the Pinnacle Trademark.

52.    Upon information and belief, Defendant has no rights in or to any trademark or phrase contained in the Domain Name, and had no legitimate purpose for the continued use of the Domain Name.

53.    The Infringing Domain Name was confusingly similar, if not identical, to Pinnacle Trademark at the time Defendant registered the domain name, and it remains so today.

54.    The Infringing Domain Name does not resolve to any website or websites owned by Pinnacle. Rather, it resolves to a website or websites controlled by Defendant, who profits from its use.

55.    Defendant did not believe and could not reasonably believe its use of the Infringing Domain Name constituted or constitutes fair use or was or is otherwise lawful.

56.    Because the Infringing Domain Name is confusingly similar and identical to the Pinnacle Trademark, and the website Defendant operates at the Infringing Domain Name provides, promotes, and depicts goods and services that are identical and related to Pinnacle's services under the Pinnacle Trademark,  consumers are likely to be confused into thinking that Pinnacle authorized, approved, or is affiliated or connected with Defendant's website and the services offered on the Infringing Domain Name, when that is not the case.

57.    Upon information and belief, a significant amount of internet traffic



11
**COMPLAINT**

pursuant to a search of the Pinnacle Trademark "Pinnacle Employee Services" is directed to Defendant, enabling Defendant to profit from the intellectual property rights and goodwill established by Pinnacle. Defendant's unauthorized use of the Pinnacle Trademark and Infringing Domain Name carries a possibility of confusion in the marketplace and has likely caused actual consumer confusion.

58. Upon information and belief, Defendant's acts alleged herein are willful, with the deliberate intent to trade on the goodwill of the Pinnacle Trademark, cause confusion and deception online and in the marketplace, divert internet users looking for Pinnacle's website or Pinnacle's services under the Pinnacle Trademark to Defendant's website, and divert potential sales of Pinnacle's services to Defendant and third-parties from whom Defendant receives revenues.

59. As a result of Defendant's wrongful registration and use of the Infringing Domain Name, Pinnacle has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Pinnacle in its mark. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Pinnacle has no adequate remedy at law. Pinnacle will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct and orders that the infringing domain name be transferred to Pinnacle.

60. Pinnacle is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Name to Pinnacle or the cancellation of Defendant's registration of the Domain Name.

61. Pinnacle is further entitled to recover its damages and Defendant's profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Pinnacle is entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

62. Pinnacle is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.



**PRAYER FOR RELIEF**

WHEREFORE, Pinnacle prays for judgment against Defendant as follows:

1) That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. Section 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(d);

2) Ordering Defendant, within ten (10) days of the entry of final judgment, upon Pinnacle's election, either transfer to Pinnacle or cancel the registration of the Domain Name and registrations of any other domain names owned or controlled by Defendant that are confusingly similar to the Pinnacle Trademark;

3) Defendant and its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. Using the Pinnacle Trademark in any manner in connection with the offering, marketing, advertising, promotion, and performance of any services pertaining to employee benefits, human resources, payroll management, and any related service thereof, that is not authorized by Pinnacle to be offered in connection with the Pinnacle Trademark;

    b. Using the Pinnacle Trademark or source designation of any kind in connection with Defendant's services that is likely to cause confusion, mistake, deception, or public misunderstanding that such services are produced or provided by Pinnacle, or are sponsored or authorized by Pinnacle, or are in any way connected or relate to Pinnacle;

    c. owning, registering, trafficking in, or otherwise using the Domain Name;

    d. further infringing the Pinnacle Trademark and damaging Pinnacle's goodwill;

    e. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (d);

    f. granting such other and further relief as the Court may deem just and

13

**COMPLAINT**

proper to prevent the public and trade from deriving the false impression that any website operated by or any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Pinnacle or constitute or are connected with Pinnacle's services.

4) Entry of an Order that, upon Pinnacle's request, those with notice of the injunction, including, without limitation, any online platforms, specifically but not limited to the Infringing Domain Name https://www.pinnacleemployeeservices.com/ shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the employee benefits services offered under the Pinnacle Trademark,

5) Awarding Pinnacle, upon Pinnacle's election, either:

    a.  an amount up to three times the amount of its actual damages and all of Defendant's profits realized by its wrongful acts alleged herein, enhanced as appropriate to compensate Pinnacle for the damages caused thereby, in accordance with 15 U.S.C. § 1117; or

    b.  maximum statutory damages in the amount of $100,000 for Defendant's violation of 15 U.S.C. § 1125(d), in accordance with 15 U.S.C. § 1117(d).

6) That Pinnacle be awarded all damages caused by the acts forming the basis of this Complaint,

7) That Defendant be required to pay Pinnacle the costs and reasonable attorneys' fees incurred by Pinnacle in this action,

8) For punitive and exemplary damages according to proof and the time of trial and in such sum as the trier of fact deems to be appropriate,

9) That Pinnacle be awarded prejudgment and post-judgment interest on all monetary awards; and



1    10) Pinnacle to be granted an award of any and all other further relief as the Court

2  may deem just and proper.

3

4                          **DEMAND FOR JURY TRIAL**

5      Plaintiff demands a trial by jury in this action.

6

7

8  DATED: August 1, 2022                Respectfully submitted,

9                                       **KROGH & DECKER, LLP**

10

11                                      By: _____

12                                          DEREK C. DECKER
                                            ÇAĞIL AREL
13                                          Attorneys for Plaintiffs
                                            PINNACLE EMPLOYEE SERVICES, INC.
14                                          MICHAEL ALLEN

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**COMPLAINT**

# EXHIBIT 1

# United States of America

## United States Patent and Trademark Office

## PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen  (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO
ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as
shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

# EXHIBIT 2

## TRADEMARK ASSIGNMENT AGREEMENT

This Trademark Assignment Agreement ("Trademark Assignment"), dated as of April 12, 2022, is made by MICHAEL ALLEN ("Assignor"), an individual; and PINNACLE EMPLOYEE SERVICES, INC., a California Corporation, located at 2377 Gold Meadow Way, Ste 100 Gold River, CA 95670 ("Assignee.") Assignor and Assignee may collectively be referred to as Parties.

WHEREAS, Assignor owns the entire right, title, and interest in and to certain trademarks, registered and unregistered, filed with the United States Trademark Office ("USPTO") as listed in attached **Schedule A** (the "Assigned Trademarks;")

WHEREAS, Assignor is the Chief Executive Officer of the Assignee;

WHEREAS, as of the date of this Trademark Assignment, Assignee has been and continues to conduct business and operations in connection with the name "Pinnacle Employee Services" with consistency, and as a result, has inured certain past, present, and future intellectual property rights, trademark rights, and the associated goodwill throughout the world, whether arising under federal law, state law, common law, foreign law or otherwise;

WHEREAS, Assignor acquired the right, title, and interest in the Assigned Trademark, as registered with the USPTO and identified further in **Schedule A** with the intent to provide for the federal protection and registration of the Assignee's use of the name "Pinnacle Employee Services;"

WHEREAS, Assignor now wishes to convey, transfer, and assign to Assignee the Assigned Trademarks of Assignor, and has agreed to execute and deliver this Trademark Assignment, for recording with the United States Patent and Trademark Office;

WHEREAS, Assignee desires to acquire all of Assignor's right, title, and interest, in and to the Assigned Trademarks together with all the goodwill of the business symbolized thereby, and Assignor desires to assign all such right, title, and interest in and to the Assigned Trademarks to Assignee, upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.       **Assignment.** For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably conveys, transfers, and assigns to Assignee, and Assignee hereby accepts, all of Assignor's right, title, and interest in and to the following:

   a.   The trademark registrations and trademark applications set forth in **Schedule A** hereto and all issuances, extensions, and renewals thereof, collectively the Assigned

Trademarks, together with the goodwill of the business connected with the use of, and symbolized by, the Assigned Trademarks;

b.   All rights of any kind whatsoever of Assignor accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world;

c.   Any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; and

d.   Any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

2.      **Recordation and Further Actions.** Assignor hereby authorizes the Commissioner for Trademarks in the United States Patent and Trademark Office, and the officials of corresponding entities or agencies in any applicable jurisdictions to record and register this Trademark Assignment upon request by Assignee. Following the date hereof, Assignor shall take such steps and actions, and provide such cooperation and assistance to Assignee and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be necessary to effect, evidence, or perfect the assignment of the Assigned Trademarks to Assignee, or any assignee or successor thereto.

3.      **Representations and Warranties of Assignor.** Assignor represents and warrants to Assignee that the statements contained herein are true and correct as of the date hereof. For purposes of this section, "Assignor's knowledge," "knowledge of Assignor," and similar phrases shall mean the actual or constructive knowledge of Assignor himself or his authorized representative.

a.   **Authority of Assignor; Enforceability.** Assignor has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignor have been duly authorized by all necessary organizational action of Assignor, and when executed and delivered by both Parties, this Agreement will constitute a legal, valid, and binding obligation of Assignor, enforceable against Assignor in accordance with its terms and conditions.

b.   **No Conflicts; Consents.** The execution, delivery, and performance by Assignor of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

      i.    violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignor,

      ii.    violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation,

      iii.    conflict with, or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement or any of the Acquired Rights are subject, or

      iv.    result in the creation or imposition of any encumbrances on the Assigned Trademarks.

      v.    No consent, approval, waiver, or authorization is required to be obtained by Assignor from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignor of this Agreement, or to enable Assignee to register, own, use, and enforce the rights of the Assigned Trademarks.

    c.    **Registrations and Applications.** Attached to this Trademark Assignment, **Schedule A** contains a correct, current and complete list of all registrations owned by Assignor in the Assigned Trademarks, specifying as to each, as applicable: the word mark and/or design, the record owner, the jurisdiction in which it has been granted or filed, the registration or application serial number, and the registration or application date. All required filings and fees related to the trademark registrations listed on **Schedule A** have been timely filed with and paid to the USPTO and other relevant governmental authorities and authorized registrars, and all such trademark registrations and applications have at all times been and remain in good standing. Assignor has provided Assignee with true and complete copies of all documents, certificates, correspondence, and other materials related to all such trademark registrations and applications.

    d.    **Validity and Enforceability.** Assigned Trademarks are valid, subsisting, and enforceable in all applicable jurisdictions. No event or circumstance (including any failure to exercise adequate quality control or any assignment in gross without the accompanying goodwill) has occurred or exists that has resulted in, or would reasonably be expected to result in, the abandonment of any Assigned Trademarks.

4.    **Representations and Warranties of Assignee.** Assignee represents and warrants to Assignor that the statements contained in this Section are true and correct as of the date hereof.

    a.    **Authority of Assignee; Enforceability.** Assignee has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignee have been duly authorized by all necessary organizational action of Assignee, and when executed and delivered by both parties, this

Agreement will constitute a legal, valid, and binding obligation of Assignee enforceable against Assignee in accordance with its terms and conditions.

b.  **No Conflicts; Consents.** The execution, delivery, and performance by Assignee of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

    i.  violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignee,

    ii.  violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation, or

    iii.  conflict with or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement is subject.

    iv.  No consent, approval, waiver, or authorization is required to be obtained by Assignee from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignee of this Agreement.

5.  **Counterparts.** This Trademark Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Trademark Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Trademark Assignment.

6.  **Successors and Assigns.** This Trademark Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

7.  **Severability.** Any provision of this Trademark Assignment that is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions of this Trademark Assignment in such jurisdiction or rendering that or any other provision of this Assignment invalid, illegal or unenforceable in any other jurisdiction.

8.  **Governing Law.** This Trademark Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Trademark Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of California, without giving effect to any choice or conflict of law provision or rule of any other jurisdiction.

9.    **Amendment and Modification.** This Trademark Assignment may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto.

IN WITNESS WHEREOF, Parties has duly executed and delivered this Trademark Assignment as of the date first written above.

Sign.: _Michael P Allen_

**ASSIGNOR**
MICHAEL ALLEN

Sign.: _Michael P Allen_

**ASSIGNEE**
PINNACLE EMPLOYEE SERVICES, INC.,
a California Corporation

By:   MICHAEL ALLEN
Title: CHIEF EXECUTIVE OFFICER

TRADEMARK ASSIGNMENT AGREEMENT
PINNACLE EMPLOYEE SERVICES, INC.

**TRADEMARK ASSIGNMENT AGREEMENT**
**SCHEDULE A**

| Mark | Place of Registration | Registration No. | Registration Date |
|---|---|---|---|
| PINNACLE EMPLOYEE SERVICES | UNITED STATES PATENT AND TRADEMARK OFFICE | 6,696,685 | April 12, 2022 |

| Type | Address | Registry | First Use in Commerce |
|---|---|---|---|
| Service Mark Class 35: Human resources consultation; Payroll preparation | 2377 Gold Meadow Way Ste 100 Gold River, CA 95670 | Principal | September 1, 2013 |

TRADEMARK ASSIGNMENT AGREEMENT

PINNACLE EMPLOYEE SERVICES, INC.

EXHIBIT 3



PAYCHECK LOGIN | HR LOGIN | PAYROLL LOGIN | 1-888-353-2976

PAYROLL | HUMAN RESOURCES | EMPLOYEE SCREENING | ABOUT | SUPPORT

FORMS | BLOG



## A Full Service HR Provider

Pinnacle Employee Services is a full-service HR Management company. We are dedicated to assisting businesses with increased compliance requirements resulting from the rapidly evolving legislation. Our goal is to minimize your administrative burden across the entire spectrum of payroll, tax, HR and benefits, so that you can focus on running your business.

You will be impressed by how smoothly your payroll and HR functions will run when they are handled by Pinnacle. We provide the best-in class solutions that help you run your business better. These solutions allow you to focus on growing your business without the stressful and time consuming tasks of Payroll and Human Resource compliance.

With our cutting – edge technology, our services provide businesses an intuitive and comprehensive solution that delivers trouble free payroll services and strategic HR Outsourcing services. No matter what industry or size your business is, we have a solution for you.

To get started, contact Pinnacle Employee Services and we will put an action plan together to relieve you of those stressful and daunting payroll and human resource tasks.



# EXHIBIT 4



## Owning a business shouldn't mean paying more for Employee Benefits, Payroll, and Human Resources tools.

We founded Pinnacle Employee Services to streamline these processes for you so you can focus on what's important: growing your business.



### Employee Administration

Our specialists pride themselves on becoming a trusted partner by learning your business, aligning with your goals, and being directly accessible.



### Payroll

You provide the wages and hours and we take care of the rest.



### Benefits

Strength in numbers through "economies of scale." We group small businesses together to get the purchasing power of a large group.



### Human Resources / Compliance

Fulltime HR presence at a fraction of the cost.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

**Pinnacle Employee Services, Inc. , et al. ,**

vs.

**Pinnacle Holding Company, LLC ,**

**CASE NO: 2:22–CV–01367–CKD**

## SUMMONS IN A CIVIL CASE

TO:  **Pinnacle Holding Company, LLC**

Defendant's Address:

**YOU ARE HEREBY SUMMONED** and required to serve on:

> **Cagil Arel**
> **Krogh & Decker, LLP**
> **555 Capitol Mall, Ste 700**
> **Sacramento, CA 95814**

an answer to the complaint which is served on you with this summons, **within 21 days after service of this summons on you**, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**KEITH HOLLAND**
_____
CLERK

**/s/  E. Rodriguez**
_____
(By) DEPUTY CLERK



**ISSUED ON 2022–08–02 11:00:33**
**CLERK, USDC EDCA**

**RETURN OF SERVICE**

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me (1) | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of bode with a person of suitable age and discretion then residing therein.

☐ Name of person with whom the summons and complaint were left:_____

☐ Returned unexecuted:_____

_____

_____

☐ Other (specify) :_____

_____

_____

**STATEMENT OF SERVICE FEES**

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

**DECLARATION OF SERVER**

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.


Executed on        _____        _____
                              Date                                    *Signature of Server*


                                                      _____
                                                         *Address of Server*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PINNACLE EMPLOYEE SERVICES, INC., ET AL.,** | No. **2:22–cv–01367–CKD** |
| Plaintiff, | <u>INITIAL SCHEDULING ORDER, CASES ASSIGNED UNDER APP. A, SUB (M)</u> |
| v. | |
| **PINNACLE HOLDING COMPANY, LLC,** | |
| Defendant(s). | |

_____/

This action has been assigned to a Magistrate Judge under the court's automated case assignment plan. <u>See</u> Local Rules, Appendix A, subsection (m).

Should the parties wish to consent to the jurisdiction of the Magistrate Judge for all purposes, including for the entry of final judgment, they may do so using the "Consent to Assignment or Request for Reassignment" form. <u>See</u> 28 U.S.C. § 636(c). There is no obligation to consent, and the judges will not be notified of a party's designation unless all parties have consented. <u>See</u> Fed. R. Civ. P. 73(b)(1). If any party requests reassignment to a United States District Judge, the Clerk of the Court will assign a random District Judge as presiding judge, with the Magistrate Judge continuing for those purposes anticipated by the Local Rules. <u>Because a consent designation assists the court in determining how the action will be administratively processed, the parties are instructed to make their election promptly and notify the Clerk of the Court as soon as practicable.</u>

/////

Under Federal Rule of Civil Procedure 16 and Local Rule 240, IT IS HEREBY ORDERED:

1.  When serving process under Rule 4, plaintiff(s) shall provide each defendant with a copy of this order and the consent information attached to this order. Within 10 days after service of process on a given defendant, plaintiff(s) shall file a certificate stating that the defendant was served under Rule 4.[1]

2.  **Each party shall return the "CONSENT / DECLINE OF U.S. MAGISTRATE JUDGE JURISDICTION" form to the Clerk within 90 days from the date the action was filed, or within 14 days of removal from state court.** The parties are strongly encouraged to submit their consent forms before the filing of any motion, so the motion can be noticed before the proper judge. Failure to do so may result in the court vacating a hearing or declining to resolve the motion until all consent designations have been submitted.

3.  Within 30 days of the filing of an answer to the complaint, the parties shall file a joint status report addressing the relevant portions of Local Rule 240(a) to facilitate the entry of a pretrial scheduling order. Therein, the parties may propose dates for a hearing based on the court's available hearing dates or may agree the court can enter a scheduling order without the need for a hearing.

4.  The parties are directed to the undersigned's Standing Orders, located on the court's web page at www.caed.uscourts.gov. The parties should take note of the page limits assigned to civil motions and discovery joint statements. The parties are responsible for knowing and complying with the court's standing orders.

5.  The parties are reminded of their continuing duty to notify chambers immediately of any settlement or other disposition. See Local Rule 160.

  _/s/_  CAROLYN K. DELANEY
  UNITED STATES MAGISTRATE JUDGE

---

[1]Alternatively, if this action was removed from state court, the removing party shall immediately serve upon each of the other parties, and upon all parties subsequently joined, a copy of this order, and shall file with the Clerk a notice that the parties have been served.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### 501 I STREET, SUITE 15–220
### SACRAMENTO, CA  95814

Chambers of
**KIMBERLY J. MUELLER**                                                                    (916) 930–4260
Chief United States District Judge

### Magistrate Judge Consent in Civil Cases: Know Your Rights!

Delay, congestion, uncertainty, and expense are concerns often expressed by civil litigants.  These concerns have reached a crisis level in the Eastern District of California.

Despite the population of our District nearly doubling since 1979 and a corresponding tremendous increase in case filings, for the past 40 years our court has only 6 authorized District Judgeship positions.  The U.S. Judicial Conference, the policy–making arm of the federal courts, has recommended for decades that Congress authorize between 5 and 11 new judgeships for this court. While the court is doing what it can to ensure Congress is fully informed regarding our current proposed allocation of 5 new judgeships, we cannot at this point say there is a realistic hope of new District Judgeships in the foreseeable future.

Compounding our challenges, while we have welcomed one new District Judge as of December 2021, we continue to have one vacancy among our 6 authorized judgeships.  The Sacramento Division has experienced a net loss of one District Judge's services, with Senior District Judge Garland E. Burrell's taking inactive senior status and District Judge Morrison C. England's taking active senior status and reducing his caseload.  Our Fresno courthouse has been even harder hit, with former Chief District Judge Lawrence J. O'Neill's taking inactive senior status at the end of January 2020; for nearly two years the Fresno District Court operated with only one active Article III judge to handle all criminal cases and a heavy share of civil cases, and one senior Article III judge who assists the court by taking a half civil caseload.  The Eastern District has been significantly congested for many years, consistently carrying average weighted caseloads equal or close to twice the national average for federal trial courts.  Given our current more dire circumstances, civil litigants are having to vie for less and less District Judge time and attention.  Civil litigants therefore may wish to consider consenting to Magistrate Judge jurisdiction, given that the court has a full complement of experienced Magistrate Judges available to preside to the full extent allowed by law.

The Magistrate Judge consent process can help bring about the "just, speedy, and inexpensive determination" of federal cases. Fed. R. Civ. P. 1.  Although their title has changed periodically, Magistrate Judges, as they currently are known, have had a role in the federal courts since passage of the Judiciary Act of 1789.  Over time, Congress has expanded and enhanced the position in the interests of maximizing judicial efficiency.  Specifically, Magistrate Judges are authorized "to conduct any or all proceedings in a jury or non–jury civil matter and order the entry of judgment in the case" with the consent of the parties. 28 U.S.C. § 636(c).  Consent can maximize access to the courts and ease court congestion through effective use of judicial resources.  It can provide numerous benefits to litigants including the prospect of an early and firm trial date, when District Judges may not be available to try a civil case given the need to prioritize felony criminal cases.

In civil cases, the assigned Magistrate Judge already is responsible for resolving discovery disputes, deciding other non–dispositive motions and in some instances handling pre–trial proceedings; as a result that judge may be intimately familiar with the case history.  Consenting in any civil case allows the Magistrate Judge to decide dispositive motions and preside over trial, and so can avoid the

uncertainty parties may face while waiting for the District Judge to identify time on his or her calendar for trial. Just as with a judgment issued by a District Judge, a judgment issued by a Magistrate Judge to whom the parties in a civil case have consented is appealable directly to the Ninth Circuit Court of Appeals.

As their professional biographies posted on our court's website show, our Magistrate Judges are well–qualified to preside over the cases assigned them. They are experienced, high–caliber judges with diverse experiences in civil and criminal litigation who have been selected on the merits, taking into account their education, experience, knowledge of the court system, personal attributes and other criteria. Our Magistrate Judges are well–qualified to preside over the civil cases brought in our court.

To consent to magistrate judge jurisdiction, a party simply signs and files a consent form. The form is available on the court's website, at this link:

http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/.

Parties may consent or withhold consent without any adverse consequences. Once all parties to a case consent, then the assigned District Judge is notified and considers whether to approve the consent. Once the District Judge accepts, then the Magistrate Judge determines whether to accept consent jurisdiction, taking the opportunity to consider any conflicts or bases for recusal.

All litigants before the federal courts deserve justice delivered in a fair, prompt, and efficient manner. Our Magistrate Judges play a critical role in providing essential access to justice, particularly in our overburdened court. Consenting to Magistrate Judge jurisdiction in civil cases may represent one of the best ways to secure "just, speedy, and inexpensive determination" of your case, which is why we want to be sure you are fully aware of your right and ability to consent, and the means of doing so.


CHIEF UNITED STATES DISTRICT JUDGE

**NOTICE OF AVAILABILITY OF A MAGISTRATE JUDGE**

**TO EXERCISE JURISDICTION AND APPEAL INSTRUCTIONS**

You are hereby notified in accordance with 28 U.S.C §636(c), F.R.Civ.P.73 and Local Rule 305, the United States Magistrate Judges sitting in Sacramento and Fresno are available to exercise the court's case–dispositive jurisdiction and to conduct any or all case–dispositive proceedings in this action, including motions to dismiss, motions for summary judgment, a jury or non jury trial, and entry of a final judgment.  Exercise of this jurisdiction by a Magistrate Judge is however, permitted only if all parties voluntarily consent.  You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's case–dispositive jurisdiction from being exercised by a Magistrate Judge.

Any appeal from a judgment entered by a Magistrate Judge is taken directly to the United States Court of Appeals for the Ninth Circuit or, where appropriate, for the Federal Circuit in the same manner as an appeal from any other judgment of a District Court.

Whether or not the parties consent pursuant to 28 U.S.C. § 636(c), the assigned Magistrate Judge will hear all motions except those case–dispositive motions set forth in 28 U.S.C. § 636(b)(1)(A).

A copy of the Form for "Consent to / Decline of Jurisdiction of United States Magistrate Judge" is attached hereto for pro per use and attorney information.  This form is available in fillable .pdf format on the court's web site at www.caed.uscourts.gov for all attorney ECF filers.  This form may be filed through CM/ECF or by pro se litigants at the appropriate Clerk's Office location.

Office of the Clerk                              Office of the Clerk
501 I Street, Room 4–200                    2500 Tulare Street, Suite 1501
Sacramento, CA  95814                        Fresno, CA  93721

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**


**PINNACLE EMPLOYEE SERVICES, INC. , ET AL. ,**
          Plaintiff(s) / Petitioner(s),

        vs.

**PINNACLE HOLDING COMPANY, LLC ,**
          Defendant(s) / Respondent(s).

CASE NO:   **2:22–CV–01367–CKD**


**CONSENT / DECLINE OF U.S.**
**MAGISTRATE JUDGE JURISDICTION**

---

**IMPORTANT**

**IF YOU CHOOSE TO CONSENT OR DECLINE TO CONSENT TO JURISDICTION OF**
**A UNITED STATES MAGISTRATE JUDGE, CHECK AND SIGN THE APPROPRIATE**
**SECTION OF THIS FORM AND RETURN IT TO THE CLERK'S OFFICE.**

---

☐   **CONSENT TO JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of Title 28, U.S.C Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.


Date: _____          Signature: _____

                                Print Name: _____
                                      ( ) Plaintiff / Petitioner   ( ) Defendant / Respondent
                                Counsel for_____*

---

☐   **DECLINE OF JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but hereby declines to consent.


Date: _____          Signature: _____

                                Print Name: _____
                                      ( ) Plaintiff / Petitioner   ( ) Defendant / Respondent
                                Counsel for_____*

---

*If representing more than one party, counsel must indicate the name of each party responding.*

| TO:<br><br>**Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313–1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Eastern California on the following ☐ Patents or ☑ Trademarks:

| DOCKET NO.<br>**2:22–CV–01367–CKD** | DATE FILED<br>**8/2/22** | **US District Court Eastern California**<br>**Sacramento** |
|---|---|---|
| PLAINTIFF<br><br>**PINNACLE EMPLOYEE SERVICES, INC., ET AL.,** | | DEFENDANT<br><br>**PINNACLE HOLDING COMPANY, LLC,** |

| **PATENT OR**<br>**TRADEMARK NO.** | **DATE OF PATENT**<br>**OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
|---|---|---|
| **1** Reg.No.6,696,685 | April 12, 2022 | Michael Allen |
| **2** | | |
| **3** | | |
| **4** | | |
| **5** | | |

In the above–entitled case the following patents(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleadings |
|---|---|

| **PATENT OR**<br>**TRADEMARK NO.** | **DATE OF PATENT**<br>**OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
|---|---|---|
| **1** | | |
| **2** | | |
| **3** | | |
| **4** | | |
| **5** | | |

In the above–entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**NOTICE OF AVAILABILITY**

**VOLUNTARY DISPUTE RESOLUTION**

Pursuant to the findings and directives of Congress in 28 U.S.C. §§ 651 *et seq.,* and in recognition of the economic burdens and delay in the resolution of disputes that can be imposed by full formal litigation, Local Rule 271 governs the referral of certain actions to the Voluntary Dispute Resolution Program ("VDRP") at the election of parties.  Plaintiff or removing party is to provide all other parties with copies of the notice at the time service is effected or, for parties already served, no more than fourteen (14) days after receiving notice from the Court.  After filing of the original complaint or removal action, any party who causes a new party to be joined in the action shall promptly serve a copy of the notice on the new party.

It is the Court's intention that the VDRP shall allow the participants to take advantage of a wide variety of alternative dispute resolution methods.  These methods may include, but are not limited to, mediation, negotiation, early neutral evaluation and settlement facilitation.  The specific method or methods employed will be determined by the Neutral and the parties.

**PLEASE TAKE NOTICE** that pursuant to Local Rule 271, *this Local Rule applies to* all civil actions pending before any District Judge or Magistrate Judge in the District except that actions in the following categories are exempt from presumptive inclusion: (i) prisoner petitions and actions, including habeas corpus petitions, (ii) actions in which one of the parties is appearing pro se, (iii) voting rights actions, (iv) social security actions, (v) deportation actions, (vi) Freedom of Information Act actions, and (vii) actions involving the constitutionality of federal, state or local statutes or ordinances.  The fact that a case falls in a category that is exempt from the presumptive applicability of this Local Rule neither (1) precludes the parties to such a case from agreeing to participate in an Alternative Dispute Resolution ("ADR") process, nor (2) deprives the Court of authority to compel participation in an appropriate ADR proceeding.

Parties may elect Voluntary Dispute Resolution with the Court indicating that all parties to the action agree to submit the action to VDRP pursuant to Local Rule 271. Actions may not be assigned to VDRP over the objection of a party. (Copy of sample stipulation attached hereto.) **At the time of filing, a copy of the stipulation shall be provided to the VDRP Administrator designated below:**

| Sacramento Cases | Fresno Cases |
|---|---|
| Voluntary Dispute Resolution | Voluntary Dispute Resolution |
| Program Administrator | Program Administrator |
| United States District Court | United States District Court |
| 501 "I" Street, Suite 4–200 | 2500 Tulare Street, Suite 1501 |
| Sacramento, CA  95814 | Fresno, CA  93721 |
| (916) 930–4278 | (559) 499–5600 |

1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

**PINNACLE EMPLOYEE SERVICES, INC. ,
ET AL.,**

12

Plaintiff(s)

13

v.

14

**PINNACLE HOLDING COMPANY, LLC ,**

15

Defendant(s)

16 ——————————————————————

NO: **2:22–CV–01367–CKD**

STIPULATION TO ELECT REFERRAL
OF ACTION TO VOLUNTARY DISPUTE
RESOLUTION PROGRAM (VDRP)
PURSUANT TO LOCAL RULE 271

17      Pursuant to Local Rule 271, the parties hereby agree to submit the above–entitled action to

18 the Voluntary Dispute Resolution Program.

19

20 DATED:      **AUGUST 2, 2022**

21

22                                            ————————————————————
Name:
Attorney for Plaintiff(s)
23

24

25                                            ————————————————————
Name:
Attorney for Defendant(s)
26