# EXHIBIT D

1

**KROGH & DECKER, LLP**
DEREK C. DECKER, SBN 232243
derekdecker@kroghdecker.com
MICHAEL D. CRODDY, SBN 198489
michaelcroddy@kroghdecker.com
555 Capitol Mall, Suite 700
Sacramento, California 95814
Telephone: 916.498.9000
Facsimile: 916.498.9005

2

3

4

5

6

Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, INC. and
MICHAEL ALLEN

7

8

9

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

10

11

| | |
|---|---|
| PINNACLE EMPLOYEE SERVICES, INC., a California Corporation; MICHAEL ALLEN, an individual; | Case No.: 2:22-CV-01367-KJM-CKD |
| | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | **(1) Federal Trademark Infringement (15 U.S.C. §1114)** |
| v. | **(2) Federal Unfair Competition and False Designation of Origin (15 U.S.C. §1125)** |
| PINNACLE HOLDING COMPANY, LLC, a Delaware Limited Liability Company; PINNACLE EMPLOYEE SERVICES, LLC, a Delaware Limited Liability Company; PINNACLE INVESTMENTS, LLC, a New York Limited Liability Company; DOES 1-50, inclusive; | **(3) Violation of Anti-Cybersquatting Consumer Protection Act (15 U.S.C. §1125)** |
| | **(4) Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.)** |
| Defendants. | |
| | **JURY TRIAL DEMANDED** |

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiffs PINNACLE EMPLOYEE SERVICES, INC., and MICHAEL ALLEN (collectively "Pinnacle" or "Plaintiffs"), by and through counsel, hereby bring the present action against Defendants PINNACLE HOLDING COMPANY, LLC, PINNACLE EMPLOYEE SERVICES, LLC, and PINNACLE INVESTMENTS, LLC (collectively "Defendants") and allege, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

24

25

26

27

28



**PRELIMINARY STATEMENT**

1.  Plaintiffs' trademark PINNACLE EMPLOYEE SERVICES (the "Pinnacle Trademark") is on the principal register of the United States Patent and Trademark Office in connection with Plaintiffs' business of offering employee benefits, human resources assistance, and payroll preparation services. The Pinnacle Trademark has a registration that is valid, subsisting, and has never been canceled. Despite Plaintiffs' established rights, Defendants adopted and continues to make use of the Pinnacle Trademark in a manner that is identical and confusingly similar, specifically in offering the same class of goods and services as Plaintiffs and using the Pinnacle Trademark in a domain name without Plaintiffs' authorization.

2.  By exploiting Plaintiffs' rights and creating customer confusion, Defendants has acquired and continues to gain unfair income, profits, and goodwill. These actions have harmed Plaintiffs and still continue to cause irreparable injury to Plaintiffs in both the goodwill of business and reputation. Plaintiffs are seeking damages for the injuries Defendants caused; an injunction to enjoin Defendants from further violating and exploiting Plaintiffs' intellectual property rights; and other relief as deemed appropriated by this Court.

**PARTIES**

3.  Plaintiff PINNACLE EMPLOYEE SERVICES, INC., is a corporation formed under the laws of California. Plaintiff Michael Allen serves as its chief corporate officer and president. Plaintiffs are one of the leaders in the employee benefits industry in Northern California, and provide payroll services and human resources support to many business owners. Plaintiffs are the registered owner of the trademark subject to this suit.

4.  Defendant PINNACLE EMPLOYEE SERVICES, LLC ("PES") is a limited liability company formed under the laws of Delaware. PES is an affiliate of Defendant Pinnacle Investments, LLC and a wholly owned subsidiary of Defendant Pinnacle Holding Company, LLC.

5.  Defendant PINNACLE INVESTMENTS LLC ("PI") is a limited liability company formed under the laws of New York. PI is an affiliate of PES and a wholly owned subsidiary of Defendant Pinnacle Holding Company, LLC.

/ / /



FIRST AMENDED COMPLAINT

6.      Defendant PINNACLE HOLDING COMPANY, LLC ("PHC") is a limited liability company formed under the laws of Delaware, and it wholly owns and controls Defendants PES and PI.

7.      The identities of Does 1 through 50 are not presently known to Plaintiffs. Defendants' method of interconnecting their company networks makes it impossible for Plaintiffs to discover Defendants true identities and the exact operations. In the event Plaintiffs discovery credible information regarding their identities, Plaintiffs will take appropriate steps to amend this complaint.

8.      Upon information and belief, Defendants are a collection of affiliated entities and belong to an unknown makeup of family companies who participate in and/or have the right and ability to supervise, direct, and control, and derive financial benefit from the conduct described herein.

9.      On information and belief, each Defendant acted as the principal, agent, or joint venture of, or for other Defendants with respect to the acts, violations, and common course of conduct alleged herein. On information and belief, Defendants had the advance knowledge, acquiesced in, or subsequent ratified each other's acts. On information and belief, each Defendant, and their subsidiaries, affiliates and agents operated as a single unified entity.

10.     Various persons and/or firms not named as Defendants herein may have participated as coconspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

11.     Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, respondent superior, vicarious liability, and/or contributory infringement.

## JURISDICTION AND VENUE

12.     This Court has original and subject matter jurisdiction over the Lanham Act claims (15 U.S.C. §§ 1051 et seq.) and the Anti Cyber-Squatting claim (15 U.S.C. §1125) pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332(a), and 1338(a).

/ / /



13.     The Court has supplemental jurisdiction over the California Unfair Competition claim pursuant to 28 U.S.C. § 1367(a) as the claim arises under a set of operative facts that are common to the federal claims.

14.     Venue in this judicial district is proper under 28 U.S.C. §§1391(b) and (c), and 1400(a), in that a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

15.     This Court has personal jurisdiction over Defendants because Defendants regularly transact business in the State of California, committed tortious acts within and directed to the State of California, and Plaintiffs' claims arise from those activities.

16.      Defendants are a multi-company enterprise that provide financial services as a collective group; Defendant PI is a dually registered broker-dealer/Investment Advisor; Defendant PES provides payroll, human resources, and employee benefits assistance; and Defendant PHC is the parent company that owns and manages Defendants' business.

17.     Defendants do sufficient business here by directly targeting its business activities towards consumers in the United States and California citizens through direct customer relationships and contracts, solicitation for business opportunities, and at least one, fully interactive website and a smartphone application.

18.     Defendants actively engaged in business in California and did so with their unlawful conduct by using Plaintiffs' intellectual property to promote, advertise, market, and/or offer their services.

19.     Defendants collectively solicit business in California, transact a significant amount of business in California, and provide their services in California, which includes ensuring compliance with California state laws and regulations.

20.     Defendant PI carries a brokerage license in California. PI has been registered with the state of California since June 13, 2007.

21.     Since as early as August 3, 2016, PI reports and directs its Securities and Exchange Commission ("SEC") notice filings to the State of California.

/ / /

22.     PI's custodian has custody over and holds approximately $600 million of PI's assets under management at its San Francisco, California custodial office location.

23.     PHC's Chief Operating Officer ("COO") Eric Krouse has been actively licensed in California as a broker since September 10, 2007. He is registered in California through PI as a broker and listed as agent of PI in California.

24.     PI's Chief Executive Office ("CEO") Benjamin Quilty, who is also the Chief Compliance Officer of PHC's other subsidiary Pinnacle Advisors, LLC ("PA"), is PI's financial advisor and California agent. He has been registered in the State of California as a broker through PI since March 15, 2018.

25.     Defendant PHC wholly owns and controls Defendant PI and PES, and has committed, or facilitated the commission of tortious acts in California, and wrongfully caused Plaintiffs substantial injury in California.

26.     PHC's website provides access to the websites of its subsidiaries PI and PES. According to PHC's subsidiary PI's website, PI is "nationwide" and has at least one physical branch office located in California. Attached as **Exhibit 1** is the true and correct copy of the website screenshot showing the California office.



27.     PI has numerous broker and investment advisors serving as California agents for PI, and licensed and registered in California through PI.

/ / /

FIRST AMENDED COMPLAINT

28.     At least one agent of PI has been maintaining physical presence in California on behalf of PI since June 26, 2019.

**THOMAS E. BROOKHOUZEN**
CRD# 1751693

Currently employed by and registered with the following Firm(s):

**PINNACLE INVESTMENTS, LLC**
514 N. DIAMOND BAR BLVD
SUITE B
DIAMOND BAR, CA  91765
CRD# 142910
Registered with this firm since: 06/26/2019

29.     Defendants provides detailed and personalized services in the United States and California by managing its customers' businesses and employees directly from the customer's work site and by assuming its customers' contractual and legal rights and responsibilities under the laws of the state where the customer's business is located.

30.     Defendant PES is contractually authorized to affect payment from client companies to client company employees as part of payroll. PES provides payroll, tax preparation and employee benefits services to at least one client company with a California employee.

31.     Defendants maintain an interactive online portal that allows people in the United States, including within California, to exchange information with Defendants.

32.     After the filing of the original complaint, Plaintiffs have conducted jurisdictional discovery and found that PES has at least five client employees that reside in California who can access and/or logged in from California to PES's online portal. PES's online portal is a platform exclusive to the employees of PES's clients for the employees to view their paystubs and benefits, update personal information, and update California state tax withholdings. PES has set up the California payroll and California state tax account for at least one client company.

33.     Upon information and belief, at all times relevant to this Complaint, Defendants have purposefully maintained contacts within the State of California for the purpose of conducting business here. By conducting business in the State of California, Defendants purposefully avails itself to California laws through continuous and systemic contacts, or otherwise intentionally

makes its services available in California, so as to render jurisdiction over itself by this Court consistent with traditional notions of fair play and substantial justice.

34.     Upon information and belief, Defendants remain in direct contact with customers located in California. Defendants has and continues to commit tortious acts in California, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of California. Defendants have committed acts within California that constitute Unfair Business Practices.

35.     Defendants are further subject to personal jurisdiction in California because Defendants have committed tortious acts within and directed to the State of California that are at issue in this suit. Defendants have made unlawful use of Plaintiffs' registered Pinnacle Trademark to actively conduct their business. As described more thoroughly below, each Defendant has sold, offered to sell, and/or participated in providing Defendants' services in California by using Plaintiffs' registered Pinnacle Trademark.

36.     Defendants have substantially interjected themselves into this jurisdiction and engaged in wrongful conduct giving rise to this suit in this jurisdiction, this Court's exercise of personal jurisdiction is proper.

**Allegations Common to All Claims for Relief**

**Pinnacle Trademark "Pinnacle Employee Services"**

37.     Plaintiff Michael Allen ("Allen") is the owner and registrant of the valid and subsisting United States trademark, the Pinnacle Trademark, consisting of the phrase "PINNACLE EMPLOYEE SERVICES", Registration No. 6,696,685 on Principal Register in the United States Patent and Trademark Office ("USPTO"), under which it provides human resources consultation, and payroll and employee benefits preparation. Attached as **Exhibit 2** is a true and correct copy of the registration certificate for the Pinnacle Trademark, as issued by the United States Patent and Trademark Office. Plaintiff Pinnacle Employee Services, Inc. was assigned the Pinnacle Trademark by Plaintiff Allen on or around April 12, 2022; the assignment is recorded with the United States Patent and Trademark Office, a true and correct copy of which is attached herein as **Exhibit 3**.

38.     The U.S. registration for the Pinnacle Trademark by Plaintiffs, with its registration certificate shown in **Exhibit 2**, is valid, subsisting, in full force and effect. The registration for the Pinnacle Trademark constitutes prima facie evidence of its validity and of Plaintiffs' exclusive right to use the Pinnacle Trademark pursuant to 15 U.S.C. § 1057(b).

39.     Plaintiffs has used the Pinnacle Trademark in commerce continuously since the date of September 1, 2013, in connection with the offering, marketing, advertising, and promotion of comprehensive and cost-effective human resources assistance and consultation, payroll, and benefits services to small and medium-sized businesses.

40.     As a result of this long-standing use, strong common law trademark rights have amassed in the Pinnacle Trademark. Plaintiffs' use of the mark has also built substantial goodwill in and to the Pinnacle Trademark, which has made the Pinnacle Trademark a valuable asset of Plaintiffs. Plaintiffs use the Pinnacle Trademark in advertising and promoting its business on online platforms. Attached hereto as **Exhibit 4** is a representative sample of the Pinnacle Trademark, showing Plaintiffs' use of the Pinnacle Trademark in connection with employee benefits services.

41.     Plaintiffs has invested significant time, energy, and money in advertising, promoting, and selling services featuring the Pinnacle Trademark, as well as ensuring the high quality of services offered under the Pinnacle Trademark. Plaintiffs have provided its comprehensive employee benefits services over the years to minimize the administrative burden on business owners across the entire spectrum of the matters of payroll, tax, human resources support, and benefits, and also to assist businesses with increased compliance requirements resulting from the rapidly evolving legislation. The intuitive and modern approach of Plaintiffs have made Plaintiffs a commercial success within the employee benefits industry.

42.     The goodwill associated with Plaintiffs' brand and the Pinnacle Trademark is of incalculable and inestimable value to Plaintiffs.

**Defendants' Unlawful Conduct**

43.     Plaintiffs' modern approach and success in assisting businesses with their employees have resulted in significant popularity. Due to the administrative and documentary



8

nature of employee management, most of the services sold, specifically the services pertaining to payroll, are typically provided through online platforms. As a result, Plaintiffs regularly investigate suspicious internet activity to protect the Pinnacle Trademark and the goodwill of Plaintiffs' business.

44.     Specifically, Plaintiffs have identified Defendants, directly or through entities subject to their direction and control, as a fully interactive, e-commerce service provider, offering the exact same employee benefits, payroll, and human resources assistance related services on online platforms under the Pinnacle Trademark and using a domain name that is identical and therefore confusingly similar to the exact makeup of the Pinnacle Trademark.

45.     Plaintiffs discovered the unauthorized use of Defendants' use of Plaintiffs' Pinnacle Trademark within the content, text, and/or meta tags of its internet platforms to attract various search engines online relevant to consumer searches for business management services.

46.     Defendants are a multi-company enterprise that provide financial services as a collective group; Defendant PI is a dually registered broker-dealer/Investment Advisor; Defendant PES provides payroll, human resources and employee benefits assistance; and Defendant PHC is the parent company that owns and manages Defendants' business.

47.     Without permission, authorization, or consent from Plaintiffs, Defendants have used in commerce the Pinnacle Mark in connection with the advertising, marketing, promoting, sale, and/or offer the sale of Defendants' services.

48.     Without permission, authorization, or consent from Plaintiffs, Defendants have registered and used the domain name "PinnacleEmployeeServices.com" (the "Domain Name"), which is identical or confusingly similar to Plaintiffs' distinctive and federally registered Pinnacle Trademark. Defendants advertise and offer Defendants' services using the Pinnacle Trademark and on the Domain Name without authorization, a sample of which is attached hereto as **Exhibit 5**.

49.     Although the WHOIS record does not disclose the identity of the Domain Name registrant, Plaintiffs were able to identify Defendants as the party in control of the Domain Name by the information available on the websites used by Defendants and/or its affiliates.

50.     Defendants use the same method of providing direct access to payroll on-site of the customer, the same personalized-to-customer benefits services, the same methods of an online portal for payment and account information, the same compliance assistance, and most importantly, the same wording of the Pinnacle Trademark.

51.     Defendants market and provide services that are confusingly similar to Plaintiffs' through the Domain Name. Consumers searching for Plaintiffs by way of using the Pinnacle Trademark "Pinnacle Employee Services" are redirected to Defendants' business because the Domain Name contains the exact wording as Plaintiffs' registered trademark.

52.     Defendants have no trademark or intellectual property rights to the Domain Name.

53.     Defendants benefit from Plaintiffs trademark rights, including by drawing internet users through online searches to Defendants' website.

54.     Redirected consumers are likely to be confused or deceived into believing that Defendants' business is sponsored, authorized, or endorsed by Plaintiffs, or that Defendants' business is associated or affiliated with Plaintiffs, resulting in lost revenue by Plaintiffs and ill-gotten profits for Defendants.

55.     Defendants' business and the Domain Name appear to unknowing customers to be authorized providers of the employee benefits services offered by Plaintiffs. The internet website operated under the Domain Name by Defendants appears sophisticated and accepts customer contact and sign-up, and upon information and belief, the option to tender direct payment to provide such services within the website.

56.     The relatedness of Defendants' operations to the services offered by Plaintiffs suggests to the public that the services are offered by and come from a common source –a conclusion which is incorrect and harmful to Plaintiffs' business and goodwill of the Pinnacle Trademark.

57.     Defendants operate a smartphone application, visible nationwide, which is advertised by Defendants as providing direct access to Defendants and its services from the customer's physical location.

58.     After the filing of the original complaint, Plaintiffs have conducted jurisdictional

discovery and found that PES has at least five client employees that reside in California who can access and/or logged in from California to PES's online portal. PES's online portal is a platform exclusive to the employees of PES's clients for the employees to view their paystubs and benefits, update personal information, and update California state tax withholdings. PES has set up the California payroll and California state tax account for at least one client company.

59.    Plaintiffs' rights precede Defendants' any claim over the Pinnacle Trademark in priority of both registration and use. Plaintiffs own a valid and active federal registration for the Pinnacle Trademark. Defendants do not. However, Defendants concurrently employ and benefit from the Pinnacle Trademark, and use the complete and identical terms contained in the Pinnacle Trademark, PINNACLE EMPLOYEE SERVICES, to provide services virtually identical and/or confusingly similar to those already being provided by Plaintiffs under the Pinnacle Trademark.

60.    Plaintiffs have notified PHC of the infringement and unlawful use of the Pinnacle Trademark and the Domain Name on numerous occasions. PHC refused to settle the matter amicably and since then, has continued to make use of Pinnacle's registered federal trademark, and continues to do so, as described in detail below.

**Defendants' Agency**

61.    On information and belief, Defendants operated in concert with one another in their advertising, marketing, offering, distributing, and providing Defendants' confusingly similar services through the unlawful use of Plaintiffs' Pinnacle Trademark. Defendants intentionally induce one another to infringe or continue to provide confusingly similar services.

62.    Defendants are associated with one another through common physical addresses, financial accounts, employees, financial advisors, shareholders, attorneys, and other factors.

63.    PI's sole managing member is PHC. PHC's shareholders also serve as financial advisors on behalf of PI. PI is considered a disregarded entity for tax purposes and files income taxes with PHC LLC.

64.    PHC's COO Eric Krouse is also the COO of PI; the Options Principle of PI; maintains his multi-state brokerage license through PI; he is a registered Investment Advisor for PI; registered Broker for PI; according to 2023 FINRA reports; he is PHC's Chief Financial Officer

("CFO"); a member of PHC's Board of Directors; PI's former CEO; PI's former Chief Compliance Officer; and the CEO of at least one other subsidiary of PHC, Pinnacle Capital Management LLC ("PCM").

65.     Mark Pietrowski is both the CEO of PES and the Board Member of PHC, as well as the founder of PES, the Board Member of PES, and the former head of management for PHC in launching PHC's subsidiary PES.

66.     PI's financial advisors also act as advisors for PCM. PI's parent company PHC is also the parent company for Pinnacle Advisors LLC (PA) and PCM, which are the advisory affiliates for PI and have the same physical location and supervisory staff as PI.

67.     PA's COO is concurrently the CEO of PI; the financial advisor on behalf of PA LLC; the Vice President of PA LLC; the shareholder of PA LLC; the CFO of at least one other PHC subsidiary and PI advisory affiliate.

68.     PHC's subsidiary PCM's CEO is also employed by PHC, PI and PA.

69.     PHC wholly owns and controls PCM, and PI is the adviser and sponsor for PCM, and shares with PI further the entity PA LLC as an advisory affiliate, financial advisors, supervisory personnel, and management team.

70.     PCM LLC's CEO of money management is also PCM LLC's COO and PI's former business Analyst.

71.     PHC, PES and PI intentionally use and display the infringing name Pinnacle Employee Services in advertising and providing services on behalf of Defendants and other subsidiaries of Defendants.

72.     Defendants have, without permission, authority, or license from Plaintiffs, commit, participate in, or otherwise knowingly contribute to using the Pinnacle Trademark to represent services confusingly similar to those provided by Plaintiffs.

73.     According to PI's website, PHC's "Pinnacle Employee Services" is an employee benefits provider that often works in conjunction with PI's services and PES and PI are a "perfect union" that are "energized by one another" and "unstoppable."

/ / /

74.     Defendants each have the ability to control the actions of one another, fund the advertising activities of one another, and derive a direct financial benefit from the illegal acts of one another. In 2022, PI paid PHC over $600,000 in management fees; PI paid PHC over $800.000 in occupancy and shared administrative expenses; PES paid PI approximately $19,000 in commissions; PI paid PES approximately $30,000 in payroll and human resources administration fees.

75.     According to PHC, PHC oversees more than $2 Billion in client assets.

76.     PHC directs and/or remains complicit in the unlawful use of Plaintiffs' Pinnacle Trademark.  PHC's CEO Gregg Kidd owns PA, is a financial advisor for PI, and is the California agent and broker for PI since at least 2007. In an interview in 2022, he stated that PES is an opportunity for PHC and that it "smooths out profits for the company overall." According to Mr. Kidd, Defendants' adviser representatives are also encouraged to introduce and advertise PES within the scope of their duties.

**Defendants' Subsequent Infringement**

77.     Despite Plaintiffs' attempts at enforcing their rights over the Pinnacle Trademark, Defendants continue use the Pinnacle Trademark on their website and as their domain name to attract clients and to provide services and/or information on services.

78.     After Plaintiffs filed the original complaint in this action against PHC for unlawfully using Plaintiffs' Pinnacle Trademark "Pinnacle Employee Services" in providing confusingly similar services, on November 29, 2022, PHC submitted a secondary trademark application to the USPTO to register the rights to "Pinnacle Employee Services" (Serial No. 97695962).

79.     On November 30, 2022, the COO for both Defendant PHC and Defendant PI, Eric Krouse, signed a declaration under penalty of perjury and falsely stated that PHC does not use the trademark in question "Pinnacle Employee Services." But one day prior, on November 29, 2022, PHC submitted its trademark application to the USPTO and listed its company name PHC as the owner and applicant for the name "Pinnacle Employee Services." In its application, PHC certified to the USPTO that "[t]he applicant is using the mark in commerce on or in connection with the



identified goods/services."

80.    Despite Defendants' actual awareness that Plaintiffs owned and used an existing trademark for "Pinnacle Employee Services" Defendant PHC falsely certified the following to the USPTO in its trademark application:

> To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

> To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

81.    On February 22, 2023, USPTO Deputy Commissioner issued a memo and found that Plaintiffs' registration and this instant lawsuit constitute relevant evidence for refusal and/or requirements on the following:

- Possible likelihood of confusion under Trademark Act Section 2(d) with U.S. Registration No. 6696685 for the mark PINNACLE EMPLOYEE SERVICES.
- Possible suspension of the application in light of the court proceeding in the United States District Court for the Eastern District of California, Case 2:22-cv-01367-CKD.

82.    Defendants' actions make this an exceptional case under 15 U.S.C. § 1117(a). Plaintiffs are entitled to, and hereby seek, an award of attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a).

83.    This is not the first time Defendants have made intentional misrepresentations. On May 5, 2023, the Securities and Exchange Commission ruled that Defendant PI, the wholly owned subsidiary of Defendant PHC, willfully violated federal by, among other conduct, making false and misleading statements and failing to disclose conflicts of interest from 2015 to 2022. SEC imposed sanctions on Defendant for over $390,000 (Case No. 3-21405).

84. On September 22, 2015, FINRA charged, and Defendant PI consented to FINRA's findings that Defendant PI failed to preserve business related communications and maintain/enforce a relevant supervisory procedure. FINRA imposed a monetary fine and censure on the Defendant. (2014038901201).

85. To date Defendants continue to use the Pinnacle Trademark without Plaintiffs' authorization or consent.

86. Defendants unauthorized use of the Pinnacle Trademark in connection with the advertising, promotion, offering, and performing of Defendants' services, specifically employee benefits services, in the United States, including California, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Pinnacle.

87. The acts of Defendants constitute a willful infringement of the registered Pinnacle Trademark in violation of 15 U.S.C. § 1114, constitute an infringement of Plaintiffs' trademark, and constitute a violation of the federal trademark laws.

## COUNT I

### Federal Trademark Infringement (15 U.S.C. §1114)

### (by Plaintiffs against all Defendants)

88. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

89. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of the federally registered Pinnacle Trademark in connection with the sale of the same and/or confusingly similar type of services offered by Plaintiffs.

90. Defendants have sold, offered to sell, marketed, advertised, and is still selling, offering to sell, marketing, and advertising employee benefits and payroll services using Plaintiffs' Pinnacle Trademark without Plaintiffs' permission.

91. Plaintiffs are the exclusive owners of the Pinnacle Trademark. Plaintiffs' United States Registration for the Pinnacle Trademark is in full force and effect.

92. Defendants have knowledge of Plaintiffs' rights in the Pinnacle Trademark and is willfully infringing and intentionally using the Pinnacle Trademark to offer the same and/or

confusingly similar class of services as Plaintiffs. Defendants' willful, intentional, and unauthorized use of the Pinnacle Trademark Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin of the services provided by Plaintiffs among the general public and further enables Defendants to re-direct the stream of commerce to their own business by the unlawful use of the Pinnacle Trademark. These actions have caused and continue to cause injury to Plaintiffs.

93.    Defendants' use of the Pinnacle Trademark to offer confusingly similar services represents Defendants' services as emanating from or being authorized by Plaintiffs and places beyond Plaintiffs' control the quality of services advertised through the Pinnacle Trademark.

94.    Defendants' activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114. At all relevant times, Defendants had actual and direct knowledge of Plaintiffs' ownership and registration of the Pinnacle Trademark. Defendants' conduct is therefore willful and reflects Defendants' intent to exploit the goodwill and brand recognition associated with the Pinnacle Trademark.

95.    As a result of Defendants' wrongful conduct, Plaintiffs have suffered, and will continue to suffer, substantial damages. Under 15 U.S.C. § 117(a), Plaintiffs are entitled to recover its damages, which include the profits incurred by Defendants as a result of the wrongful use of the Pinnacle Trademark.

96.    Defendants' conduct entitles Plaintiffs to injunctive relief under 15 U.S.C. § 116(a). Plaintiffs' remedy at law is not adequate as Defendants' infringement of Plaintiffs' federally protected trademark constitutes harm to Plaintiffs such that Plaintiffs cannot recover in full by a monetary award alone – if Defendants' unauthorized use of the Pinnacle Trademark were to persist, it would cause further confusion to the general public as to the source, origin, or authenticity of the infringing services. Defendants' wrongful conduct, and the resulting damage to Plaintiffs still continue on this date.

97.    Plaintiffs are further entitled to recover its attorneys' fees and costs of suit under 15 U.S.C. § 1117.

/ / /

**COUNT II**

**Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))**

**(by Plaintiffs against all Defendants)**

98.     Plaintiffs hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

99.     Defendants' foregoing wrongful acts constitute unfair competition in violation of 15 U.S.C. § 1125(a). Defendants' use of the confusingly similar name has caused and is likely to cause, a likelihood of confusion, deception, and mistake by creating the false and misleading impression that Defendants' services are provided by Plaintiffs, that Defendants is affiliated to Plaintiffs, and/or that Defendants have authorization by Plaintiffs.

100.     By using the Pinnacle Trademark in connection with its same and/or similar services, including employee benefits services, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the services offered by Defendants under Pinnacle's Trademark with intentional, willful, and malicious intent.

101.     Defendants' false designation of origin and misrepresentation of fact as to the origin of services to the general public involves the use of federally registered Pinnacle's Trademark and therefore, is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

102.     Defendants' conduct has caused and is likely to continue causing, substantial injury to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a) and 1117.

**COUNT III**

**Violation of Anti-Cybersquatting Consumer Protection Act (15 U.S.C. §1125(d))**

**(by Plaintiffs against all Defendants)**

103.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

104.     Upon information and belief, Defendants has registered, trafficked in, and used the Domain Name with the registrar Network Solutions, LLC. The Domain Name consists entirely of the Pinnacle Trademark word by word, and therefore, it is identical to Plaintiffs' federally

registered intellectual property.

105.    Without Plaintiffs' authorization and, upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in the Pinnacle Trademark, Defendants operated a live website at the Domain Name, which remains active as of the filing of this Complaint. Attached hereto as **Exhibit 5** is the true and correct screenshot of the website Defendants maintain at the Domain Name as of July 31, 2022.

106.    Defendants have engaged in such actions with a bad faith intent to profit from the Pinnacle Trademark. Such bad faith is demonstrated, in part, by the fact that, prior to filing this action, Plaintiffs informed Defendants that the Domain Name consists entirely of Plaintiffs' registered trademark and that Defendants was not permitted to use the Pinnacle Trademark in any manner. Defendants did not cease using the Domain Name. At present, the Domain Name points to Defendants' website that makes unlawful use of the Pinnacle Trademark and provides services that are in competition with Plaintiffs' services in connection with the Pinnacle Trademark.

107.    Upon information and belief, Defendants have no rights in or to any trademark or phrase contained in the Domain Name and had no legitimate purpose for the continued use of the Domain Name.

108.    The Domain Name was confusingly similar, if not identical, to Pinnacle Trademark at the time Defendants registered the domain name, and it remains so today.

109.    The Domain Name does not resolve to any website or websites owned by Plaintiffs. Rather, it resolves to a website or websites controlled by Defendants, who profits from its use.

110.    Defendants did not believe and could not reasonably believe its use of the Domain Name constituted or constitutes fair use or was or is otherwise lawful.

111.    Because the Domain Name is confusingly similar and identical to the Pinnacle Trademark, and the website Defendants operates at the Domain Name provides, promotes, and depicts goods and services that are identical and related to Plaintiffs' services under the Pinnacle Trademark, consumers are likely to be confused into thinking that Plaintiffs authorized, approved, or is affiliated or connected with Defendants' website and the services offered on the Domain Name, when that is not the case.

112.    Upon information and belief, a significant amount of internet traffic pursuant to a search of the Pinnacle Trademark "Pinnacle Employee Services" is directed to Defendants, enabling Defendants to profit from the intellectual property rights and goodwill established by Plaintiffs. Defendants' unauthorized use of the Pinnacle Trademark and Domain Name carries a possibility of confusion in the marketplace and has likely caused actual consumer confusion.

113.    Upon information and belief, Defendants' acts alleged herein are willful, with the deliberate intent to trade on the goodwill of the Pinnacle Trademark, cause confusion and deception online and in the marketplace, divert internet users looking for Plaintiffs' website or Plaintiffs' services under the Pinnacle Trademark to Defendants' website, and divert potential sales of Plaintiffs' services to Defendants and third parties from whom Defendants receive revenues.

114.    As a result of Defendants' wrongful registration and use of the Domain Name, Plaintiffs has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiffs in its mark. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Pinnacle has no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct and orders that the Domain name be transferred to Plaintiffs.

115.    Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Name to Plaintiffs or the cancellation of Defendants' registration of the Domain Name.

116.    Plaintiffs are further entitled to recover its damages and Defendants' profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiffs are entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

117.    Plaintiffs are further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

/ / /

/ / /

/ / /

**COUNT IV**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code § 17200 et seq.)**

**(by Plaintiffs against all Defendants)**

118.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

119.    Defendants' conduct as alleged herein constitutes unfair and deceptive acts or practices in the course of a business, trade, or in commerce, in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500, et seq.

120.    On information and belief, as a direct and proximate result of Defendants' wrongful conduct as described above, Defendants have gained revenues properly belonging to Plaintiffs.

121.    Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Plaintiffs, for which they have no adequate legal remedy.

122.    Plaintiffs seek restitution and injunctive relief restraining Defendants, their officers, agents, and employees, and all persons acting in concert with them, from further engaging in acts of unfair competition and/or fraudulent business acts against Plaintiffs and Plaintiffs' intellectual property.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for judgment against Defendants as follows:

1) That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

2) That the Court enter an order requiring Defendants, within ten (10) days of the entry of final judgment, upon Plaintiffs' election, either transfer to Plaintiffs or cancel the registration of the Domain Name and registrations of any other domain names owned or controlled by Defendants that are confusingly similar to the Pinnacle Trademark;

3) That the Court enter an order permanently enjoining Defendants, their affiliates, officers, representatives' agents, employees, successors, assigns, and all others in active concert or participation with them from:

a.  Using the Pinnacle Trademark and any reproduction, counterfeit, copy or imitation of the Pinnacle Trademark in any manner in connection with the offering, marketing, advertising, promotion, and performance of any services pertaining to employee benefits, human resources, payroll management, and any related service thereof on any platform or in any medium;

b.  Using the Pinnacle Trademark, any reproduction, counterfeit, copy or imitation of the Pinnacle Trademark, and source designation of any kind in a manner is likely to cause confusion, mistake, deception, or public misunderstanding that such services are produced or provided by Pinnacle, or are sponsored or authorized by Pinnacle, or are in any way connected or relate to Pinnacle;

c.  owning, registering, trafficking in, or otherwise using the Domain Name;

d.  further infringing the Pinnacle Trademark and damaging Plaintiffs' goodwill;

e.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (d) above; and

f.  granting such other and further relief as the Court may deem just and proper to prevent the public and trade from deriving the false impression that any website operated by or any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Pinnacle or constitute or are connected with Plaintiffs' services.

4) That the Court enter an order impounding and permitting destruction of all infringing products and material bearing the Pinnacle Trademark or otherwise infringe on the Pinnacle Trademark, including related materials, business records, signs, prints, advertisements, the domain name, and other internet material, in Defendants' possession and under Defendants' control,

5) That the Court enter an order requiring Defendants to abandon the USPTO trademark applications;



6) That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

7) That the Court enter an order requiring Defendants to pay all general, special and actual damages which Plaintiffs have sustained or will sustain as a consequence of Defendants' unlawful acts, Defendants' profits from the unlaw conduct described herein, and together with its statutory damages; and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117, 15 U.S.C. § 1125, or otherwise allowed by law, and that Plaintiffs' damages, plus Defendants' profits, in connection with the unlawful conduct described herein, be enhanced, doubled, or trebled as provided by 15 U.S.C. § 1117, 15 U.S.C. § 1125,  or otherwise allowed by law;

8) That the Court enter an order requiring Defendants to pay Plaintiffs the costs of this action and reasonable attorneys' fees Plaintiffs have incurred in prosecuting this action in accordance with 15 U.S.C. § 1117 or otherwise allowed by law;

9) That the Court enter an order imposing punitive and exemplary damages on Defendants;

10) That the Court enter an order requiring Defendants to pay the maximum prejudgment interest allowed by law; and

11) That the Court grant Plaintiffs any further and additional relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury in this action.

Dated: 8/24/2023

Respectfully submitted,

**KROGH & DECKER, LLP**

By: 

Michael D. Croddy
Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, INC. and
MICHAEL ALLEN



22

FIRST AMENDED COMPLAINT

# EXHIBIT 1



Find an Advisor    Why Pinnacle    Contact    Client Login

# Pinnacle is Nationwide

The best thing about working with Pinnacle Investments is you get the attention and service of a local firm while also taking advantage of our global reach. If you are an advisor looking to start an independent branch, please contact us for more information.

Locations shown on the map are both registered and non-registered branches to illustrate we have reps in cities across the country that are available to assist you wherever you are!





Fax: 518-514-1085

**Williamsville, NY**
5500 Main Street, Williamsville, NY 14221, USA
Phone: 716-633-2900
Fax: 716-633-2988

**Diamond Bar, CA**
920 North Diamond Bar Boulevard, Diamond Bar, CA 91765, USA
Phone: 800-982-0241

**East Granby, CT**
East Granby, CT, USA
Phone: 800-982-0241

**Ave Maria, FL**
Ave Maria, FL, USA
Phone: 800-982-0421

**Boca Raton, FL**
7601 North Federal Highway, Boca Raton, FL 33487, USA
Phone: 561-961-4044

**Estero, FL**
Estero, FL, USA

# EXHIBIT 2

# United States of America

## United States Patent and Trademark Office

## PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen  (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



# EXHIBIT 3

# TRADEMARK ASSIGNMENT AGREEMENT

This Trademark Assignment Agreement ("Trademark Assignment"), dated as of April 12, 2022, is made by MICHAEL ALLEN ("Assignor"), an individual; and PINNACLE EMPLOYEE SERVICES, INC., a California Corporation, located at 2377 Gold Meadow Way, Ste 100 Gold River, CA 95670 ("Assignee.") Assignor and Assignee may collectively be referred to as Parties.

WHEREAS, Assignor owns the entire right, title, and interest in and to certain trademarks, registered and unregistered, filed with the United States Trademark Office ("USPTO") as listed in attached **Schedule A** (the "Assigned Trademarks;")

WHEREAS, Assignor is the Chief Executive Officer of the Assignee;

WHEREAS, as of the date of this Trademark Assignment, Assignee has been and continues to conduct business and operations in connection with the name "Pinnacle Employee Services" with consistency, and as a result, has inured certain past, present, and future intellectual property rights, trademark rights, and the associated goodwill throughout the world, whether arising under federal law, state law, common law, foreign law or otherwise;

WHEREAS, Assignor acquired the right, title, and interest in the Assigned Trademark, as registered with the USPTO and identified further in **Schedule A** with the intent to provide for the federal protection and registration of the Assignee's use of the name "Pinnacle Employee Services;"

WHEREAS, Assignor now wishes to convey, transfer, and assign to Assignee the Assigned Trademarks of Assignor, and has agreed to execute and deliver this Trademark Assignment, for recording with the United States Patent and Trademark Office;

WHEREAS, Assignee desires to acquire all of Assignor's right, title, and interest, in and to the Assigned Trademarks together with all the goodwill of the business symbolized thereby, and Assignor desires to assign all such right, title, and interest in and to the Assigned Trademarks to Assignee, upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.   **Assignment.** For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably conveys, transfers, and assigns to Assignee, and Assignee hereby accepts, all of Assignor's right, title, and interest in and to the following:

   a.   The trademark registrations and trademark applications set forth in **Schedule A** hereto and all issuances, extensions, and renewals thereof, collectively the Assigned

Trademarks, together with the goodwill of the business connected with the use of, and symbolized by, the Assigned Trademarks;

b.   All rights of any kind whatsoever of Assignor accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world;

c.   Any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; and

d.   Any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

2.     **Recordation and Further Actions.** Assignor hereby authorizes the Commissioner for Trademarks in the United States Patent and Trademark Office, and the officials of corresponding entities or agencies in any applicable jurisdictions to record and register this Trademark Assignment upon request by Assignee. Following the date hereof, Assignor shall take such steps and actions, and provide such cooperation and assistance to Assignee and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be necessary to effect, evidence, or perfect the assignment of the Assigned Trademarks to Assignee, or any assignee or successor thereto.

3.     **Representations and Warranties of Assignor.** Assignor represents and warrants to Assignee that the statements contained herein are true and correct as of the date hereof. For purposes of this section, "Assignor's knowledge," "knowledge of Assignor," and similar phrases shall mean the actual or constructive knowledge of Assignor himself or his authorized representative.

a.   **Authority of Assignor; Enforceability.** Assignor has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignor have been duly authorized by all necessary organizational action of Assignor, and when executed and delivered by both Parties, this Agreement will constitute a legal, valid, and binding obligation of Assignor, enforceable against Assignor in accordance with its terms and conditions.

b.   **No Conflicts; Consents.** The execution, delivery, and performance by Assignor of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

TRADEMARK ASSIGNMENT AGREEMENT

PINNACLE EMPLOYEE SERVICES, INC.

    i.    violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignor,

    ii.    violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation,

    iii.    conflict with, or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement or any of the Acquired Rights are subject, or

    iv.    result in the creation or imposition of any encumbrances on the Assigned Trademarks.

    v.    No consent, approval, waiver, or authorization is required to be obtained by Assignor from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignor of this Agreement, or to enable Assignee to register, own, use, and enforce the rights of the Assigned Trademarks.

c.    **Registrations and Applications.** Attached to this Trademark Assignment, **Schedule A** contains a correct, current and complete list of all registrations owned by Assignor in the Assigned Trademarks, specifying as to each, as applicable: the word mark and/or design, the record owner, the jurisdiction in which it has been granted or filed, the registration or application serial number, and the registration or application date. All required filings and fees related to the trademark registrations listed on **Schedule A** have been timely filed with and paid to the USPTO and other relevant governmental authorities and authorized registrars, and all such trademark registrations and applications have at all times been and remain in good standing. Assignor has provided Assignee with true and complete copies of all documents, certificates, correspondence, and other materials related to all such trademark registrations and applications.

d.    **Validity and Enforceability.** Assigned Trademarks are valid, subsisting, and enforceable in all applicable jurisdictions. No event or circumstance (including any failure to exercise adequate quality control or any assignment in gross without the accompanying goodwill) has occurred or exists that has resulted in, or would reasonably be expected to result in, the abandonment of any Assigned Trademarks.

4.    **Representations and Warranties of Assignee.** Assignee represents and warrants to Assignor that the statements contained in this Section are true and correct as of the date hereof.

a.    **Authority of Assignee; Enforceability.** Assignee has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignee have been duly authorized by all necessary organizational action of Assignee, and when executed and delivered by both parties, this

Agreement will constitute a legal, valid, and binding obligation of Assignee enforceable against Assignee in accordance with its terms and conditions.

b. **No Conflicts; Consents.** The execution, delivery, and performance by Assignee of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

    i. violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignee,

    ii. violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation, or

    iii. conflict with or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement is subject.

    iv. No consent, approval, waiver, or authorization is required to be obtained by Assignee from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignee of this Agreement.

5.    **Counterparts.** This Trademark Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Trademark Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Trademark Assignment.

6.    **Successors and Assigns.** This Trademark Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

7.    **Severability.** Any provision of this Trademark Assignment that is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions of this Trademark Assignment in such jurisdiction or rendering that or any other provision of this Assignment invalid, illegal or unenforceable in any other jurisdiction.

8.    **Governing Law.** This Trademark Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Trademark Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of California, without giving effect to any choice or conflict of law provision or rule of any other jurisdiction.

TRADEMARK ASSIGNMENT AGREEMENT

PINNACLE EMPLOYEE SERVICES, INC.

9.    **Amendment and Modification.** This Trademark Assignment may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto.

IN WITNESS WHEREOF, Parties has duly executed and delivered this Trademark Assignment as of the date first written above.

Sign.: _Michael Allen_

**ASSIGNOR**
MICHAEL ALLEN

Sign.: _Michael Allen_

**ASSIGNEE**
PINNACLE EMPLOYEE SERVICES, INC.,
a California Corporation

By:    MICHAEL ALLEN
Title:  CHIEF EXECUTIVE OFFICER

TRADEMARK ASSIGNMENT AGREEMENT
PINNACLE EMPLOYEE SERVICES, INC.

**TRADEMARK ASSIGNMENT AGREEMENT**
**SCHEDULE A**

| Mark | Place of Registration | Registration No. | Registration Date |
|---|---|---|---|
| PINNACLE EMPLOYEE SERVICES | UNITED STATES PATENT AND TRADEMARK OFFICE | 6,696,685 | April 12, 2022 |

| Type | Address | Registry | First Use in Commerce |
|---|---|---|---|
| Service Mark Class 35: Human resources consultation; Payroll preparation | 2377 Gold Meadow Way Ste 100 Gold River, CA 95670 | Principal | September 1, 2013 |

# EXHIBIT 4



PAYCHECK LOGIN | HR LOGIN | PAYROLL LOGIN | 1-888-353-2976

PAYROLL | HUMAN RESOURCES | EMPLOYEE SCREENING | ABOUT | SUPPORT

FORMS | BLOG

# PINNACLE
## EMPLOYEE SERVICES

## A Full Service HR Provider

Pinnacle Employee Services is a full-service HR Management company. We are dedicated to assisting businesses with increased compliance requirements resulting from the rapidly evolving legislation. Our goal is to minimize your administrative burden across the entire spectrum of payroll, tax, HR and benefits, so that you can focus on running your business.

You will be impressed by how smoothly your payroll and HR functions will run when they are handled by Pinnacle. We provide the best-in class solutions that help you run your business better. These solutions allow you to focus on growing your business without the stressful and time consuming tasks of Payroll and Human Resource compliance.

With our cutting – edge technology, our services provide businesses an intuitive and comprehensive solution that delivers trouble free payroll services and strategic HR Outsourcing services. No matter what industry or size your business is, we have a solution for you.

To get started, contact Pinnacle Employee Services and we will put an action plan together to relieve you of those stressful and daunting payroll and human resource tasks.



GET COMPLIANT DOWNLOAD OUR FREE
**HR ASSESSMENT CHECKLIST**

**DOWNLOAD NOW**

# EXHIBIT 5



## Owning a business shouldn't mean paying more for Employee Benefits, Payroll, and Human Resources tools.

We founded Pinnacle Employee Services to streamline these processes for you so you can focus on what's important: growing your business.



**Employee Administration**

Our specialists pride themselves on becoming a trusted partner by learning your business, aligning with your goals, and being directly accessible.



**Payroll**

You provide the wages and hours and we take care of the rest.



**Benefits**

Strength in numbers through "economies of scale." We group small businesses together to get the purchasing power of a large group.



**Human Resources / Compliance**

Fulltime HR presence at a fraction of the cost.

1  **KROGH & DECKER, LLP**
DEREK C. DECKER, SBN 232243
2  derekdecker@kroghdecker.com
MICHAEL D. CRODDY, SBN 198489
3  michaelcroddy@kroghdecker.com
555 Capitol Mall, Suite 700
4  Sacramento, California 95814
Telephone: 916.498.9000
5  Facsimile: 916.498.9005

6  Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, INC. and
7  MICHAEL ALLEN

8

9                **UNITED STATES DISTRICT COURT**

10               **EASTERN DISTRICT OF CALIFORNIA**

11

12 | PINNACLE EMPLOYEE SERVICES, INC., a | Case No.: 2:22-CV-01367-KJM-CKD
California Corporation; MICHAEL ALLEN,
an individual;

13                                      **PROOF OF SERVICE**
                    Plaintiffs,

14
                    v.
15
PINNACLE HOLDING COMPANY, LLC, a
16 Delaware Limited Liability Company;
PINNACLE EMPLOYEE SERVICES, LLC, a
17 Delaware Limited Liability Company;
PINNACLE INVESTMENTS, LLC, a New
18 York Limited Liability Company; DOES 1-50,
inclusive;
19
                    Defendants.
20

21

22

23

24

25

26

27

28



                              1
                         PROOF OF SERVICE

## PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Sacramento.  My business address is 555 Capitol Mall, Suite 700, Sacramento, California 95814.  I am over the age of 18 years and not a party to the above-entitled action.

On August 24, 2023, I, Peter Vue, served the following documents:

### 1.  FIRST AMENDED COMPLAINT

☐     via United States mail by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing mail in accordance with this firm's practice, whereby the mail is deposited in a United States mailbox in the City of Sacramento, California before the close of the day's business.

☒     via Electronic Mail from the email address: petervue@kroghdecker.com

on the parties to this action at the addresses indicated below:

| | |
|---|---|
| Corey A. Donaldson<br>Morgan T. Lynch<br>FERGUSON CASE ORR PATERSON LLP<br>1050 South Kimball Road<br>Ventura, CA 93004<br>cdonaldson@fcoplaw.com<br>mlynch@fcoplaw.com<br>mlopez@fcoplaw.com<br><br>James P. Youngs<br>HANCOCK ESTABROOK LLP<br>1800 AXA Tower I<br>100 Madison Street<br>Syracuse, NY 13202<br>jyoungs@hancocklaw.com | Attorneys for Defendants<br>PINNACLE HOLDING<br>COMPANY, LLC; PINNACLE<br>EMPLOYEE SERVICES, LLC; and<br>PINNACLE INVESTMENTS, LLC |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration is executed on August 24, 2023, at Sacramento, California.

Peter Vue, Legal Assistant

