**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

PINNACLE HOLDING COMPANY, LLC and
PINNACLE EMPLOYEE SERVICES, LLC,

                    Plaintiffs,

      v.

MICHAEL ALLEN and PINNACLE
EMPLOYEE SERVICES, INC.,

                    Defendants.

Civil Action No. 5:24-cv-239
(GTS/TWD)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I.    DEFENDANTS HAVE NEITHER SUBMITTED TO NOR CONSENTED TO THIS
COURT'S EXERCISE OF PERSONAL JURISDICTION OVER THEM .............................. 1

II.    NEW YORK'S LONG ARM STATUTE DOES NOT PERMIT JURISDICTION OVER
DEFENDANTS ....................................................................................................................... 3

    a.    Post-Lawsuit Contacts Are Insufficient to Satisfy Personal Jurisdiction ...................... 3

    b.    Plaintiffs' Interpretation of New York's Long Arm Statute Would Eviscerate the
Statute's Defamation Exception ............................................................................................ 4

III.    THE FAC FAILS TO STATE CLAIMS FOR FALSE ADVERTISING, UNFAIR
COMPETITION, AND DEFAMATION .................................................................................. 6

    a.    Plaintiffs Have Not Overcome their Failure to Plead Commercial Speech or Consumer-
Oriented Conduct (Counts IV, V, and VI) ............................................................................ 6

    b.    The Opposition Mischaracterizes Mr. Allen's Statements as "Factual" Despite
Authority to the Contrary (Counts VII and VIII)................................................................... 7

    c.    Notwithstanding the Application of the Fair Report Privilege, Mr. Allen's Statements
Are At Least Substantially True (Counts VII and VIII) ........................................................ 8

    d.    The Substantive Elements of New York's Anti-SLAPP Act Apply Here...................... 9

CONCLUSION...................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Treadwell*, 294 F.3d 453 (2d Cir. 2022) ................................................................ 6

*Aybar v. Aybar*, 37 N.Y.3d 274 (2021)................................................................................. 3, 4

*Beary v. W. Publ. Co.*, 763 F.2d 66 (2d Cir. 1985)................................................................. 8

*Best Van Lines v. Walker*, 490 F.3d 239 (2d Cir. 2007) ......................................................... 5

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015)................................................................ 10

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000)........................................... 8

*Coleman v. Grand*, 523 F.Supp.3d 244 (E.D.N.Y. 2021)...................................................... 9, 10

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y
    Producción*, 832 F.3d 92 (2d Cir. 2016) .............................................................................. 1, 3

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp.3d 263 (S.D.N.Y.
    2016)........................................................................................................................................ 6

*Fab Habitat Corp. v. Houselights, LLC*, No. 22-CV-2986 (ALC), 2023 WL 6385977 (S.D.N.Y.
    Sept. 29, 2023) ...................................................................................................................... 4

*Gonzalez v. Gray*, 69 F.Supp.2d 561 (S.D.N.Y. 1999)............................................................. 7

*Gottwald v. Sebert*, 197 N.Y.S.3d 694 (2023) ....................................................................... 8

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993)................................................................ 8

*Huang v. Kim Dang Nguyen*, 2020 WL 9812921 (E.D.N.Y. Feb. 11, 2020) ............................ 1, 3

*Infinity Consulting Grp., LLC v. Am. Cybersystems, Inc.*, No. 09-CV-1744 (JS)(WDW), 2010
    WL 2267470 (E.D.N.Y. May 30, 2010) ............................................................................... 1, 2

*Kesner v. Buhl*, 590 F.Supp.3d 680 (S.D.N.Y. 2022)........................................................... 9, 10

*Margolies v. Rudolph*, 2022 WL 2062460 (E.D.N.Y. June 6, 2022) ......................................... 9

*Melius v. Glacken*, 94 A.D.3d 959 (2012) ............................................................................... 7

*PDO Max, Inc. v. Malcmacher*, 521CV1274 (GTS/ML), 2022 WL 17415123 (N.D.N.Y. Dec. 5,
    2022) ........................................................................................................................................ 5

*Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, No. 00–cv–0201, 2001 WL 1041990
    (S.D.N.Y. Sept. 7, 2001)........................................................................................................ 2

*Ram v. Moritt*, 205 A.D.2d 516 (2d Dep't 1994)..................................................................... 7

*Roberts v. Bennaceur*, 658 F. App'x 611 (2d Cir. 2016)......................................................... 1

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 815205 (S.D.N.Y. Feb.
    29, 2016) ............................................................................................................................. 6, 7

*Symmetra Pty Ltd. v. Human Facets, LLC*, 12 Civ. 8857 (SAS) (S.D.N.Y. June 13, 2013)......... 6

*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010) ................................................................... 1

*Wolo Mfg. Corp. v. ABC Corp.*, 349 F.Supp.3d 176 (E.D.N.Y. 2018)........................................ 7

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ......................................................................................................... 6

CPLR § 302(a)(1) ................................................................................................................. 3, 5

N.Y. Civ. Rights Law § 70-a .................................................................................................... 9

N.Y. Civil Rights Law § 74 ...................................................................................................... 8

N.Y. Gen. Bus. Law § 349 ........................................................................................................ 7

N.Y. Gen. Bus. Law § 350 ........................................................................................................ 7

**Federal Rules**

Fed. R. Civ. P. 12 ..................................................................................................................... 9

Defendants Michael Allen ("Allen") and Pinnacle Employee Services, Inc. ("PES, Inc.") (collectively, "Defendants") submit this Reply and Supplemental Declaration of Michael Allen ("Supp. Decl.") to Plaintiffs' Pinnacle Holding Company, LLC and Pinnacle Employee Services, LLC (collectively, "Plaintiffs") opposition (ECF 34, the "Opposition") to Defendants' motion to dismiss (ECF 29, the "Motion") the First Amended Complaint ("FAC").

## ARGUMENT

### I.   DEFENDANTS HAVE NEITHER SUBMITTED TO NOR CONSENTED TO THIS COURT'S EXERCISE OF PERSONAL JURISDICTION OVER THEM

The Opposition's attempt to dispose of Defendants' meritorious personal jurisdiction defense is misguided at best and artful at worst. "The Second Circuit has 'ruled that courts should proceed with caution in finding forfeiture of personal jurisdiction defenses.'" *Huang v. Kim Dang Nguyen*, 2020 WL 9812921, at *2n6 (E.D.N.Y. Feb. 11, 2020) (quoting *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 113 (2d Cir. 2016)). As such, "[t]ypically, courts have found forfeiture *only* if the party waited *years* before moving or engaged in substantial pre-trial activity. Conversely, courts have generally declined to find forfeiture when a party waited *only months*, absent *significant* pre-trial activity." *Infinity Consulting Grp., LLC v. Am. Cybersystems, Inc.*, No. 09-CV-1744 (JS)(WDW), 2010 WL 2267470, at *2 (E.D.N.Y. May 30, 2010) (emphasis added). "Significant pretrial activity" is generally understood to entail participation in discovery and proceedings on the merits. *See, e.g.*, *Roberts v. Bennaceur*, 658 F. App'x 611, 617-18 (2d Cir. 2016) (finding forfeiture where defendants "participat[ed] in fairly extensive pre-trial proceedings, including discovery on the merits," while "[p]assing up" numerous opportunities to raise the personal jurisdiction defense). Moreover, courts are obligated to afford greater leeway to *pro se* litigants. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("a *pro se* litigant generally lacks both legal training and

1

experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection.")

Unsurprisingly, the string of cases relied upon by Plaintiffs involve parties who waived or forfeited their personal jurisdiction or venue defense by waiting years to raise it for the first time, or by engaging in significant pre-trial activity before raising it, or both. And in nearly all of those cases, the forfeiting parties had the benefit of legal counsel from the beginning. Defendants have not even come close to engaging in "significant pretrial activity"; discovery has not yet commenced in this case, and the Motion was brought within five months of the filing of this action, which is far shorter than periods of delay that have been found insufficient to give rise to forfeiture. *See, e.g.*, *Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, No. 00–cv–0201, 2001 WL 1041990, *3–4 (S.D.N.Y. Sept. 7, 2001) (no forfeiture even when defense not asserted until *thirteen* months after the complaint was filed and the parties had completed discovery on substantive claims because "[d]efendant's delay in bringing its motion does not rise to the level of egregiousness that other courts have found sufficient to constitute a forfeiture"); *Infinity Consulting Grp., LLC*, 2010 WL 2267470, at *1–2 (no forfeiture even when defendants waited nearly ten months before moving to dismiss on personal jurisdiction grounds and eight months to answer the complaint). No unreasonable delay has occurred here, making forfeiture improper.

Further, Defendants did not have any assistance or advice from any attorney in preparing the letter dated March 12, 2024 (the "March 12 letter"), docketed at ECF 11. *See* Supp. Decl., ¶ 2. And the attorney that was engaged by Defendants for the limited purpose of engaging in settlement discussions with Plaintiffs was not hired until April 9, 2024, approximately a month after the filing of the March 12 Letter, and that attorney never entered an appearance in this matter. *Id.* at ¶ 4. Defendants' filing of the March 12 Letter is entitled to greater leniency because Defendants were

unrepresented and unadvised. *Huang*, 2020 WL 9812921, at *2n6 (finding no forfeiture of personal jurisdiction defense where defendant failed to raise the defense in his *pro se* answer).

Lastly, Plaintiffs offer no legal authority to support the contention that Defendants have somehow consented to jurisdiction and venue by executing the Stipulation at ECF 20.[1] Nor do they attempt to show whether those of Defendants' statements set forth in the FAC satisfy New York's long-arm statute. Rather, Plaintiffs rely on *Corporation Mexicana* for the proposition that they "developed a 'reasonable expectation' that Defendants would 'defend the suit on the merits' in the state of New York." ECF 34 at 10 (quoting *Corporation Mexicana*, 832 F.3d at 102)[2]. The "reasonable expectation" in *Corporation Mexicana* was caused by the defendant's participation in multiple "proceedings addressed to the merits" and its "abandonment" of the personal jurisdiction defense during those proceedings. *Corporation Mexicana*, 832 F.3d at 102. Defendants have not engaged in any proceedings addressed to the merits, making forfeiture unwarranted.

## II. NEW YORK'S LONG ARM STATUTE DOES NOT PERMIT JURISDICTION OVER DEFENDANTS

### a. Post-Lawsuit Contacts Are Insufficient to Satisfy Personal Jurisdiction

As set forth in the Motion, the FAC fails to plausibly allege that Defendants have "transacted business" within the meaning of CPLR § 302(a)(1) because the FAC does not plausibly allege even a single transaction within New York. ECF 29, at 5. In an effort to provide the Court with some factual material regarding Defendants' alleged New York contacts, Plaintiffs proffer a declaration from Plaintiffs' Marketing and Branding Manager, Elizabeth Conklin (the "Conklin Declaration"), wherein she details Defendants' purported contacts with New York for the period

---

[1] To the extent that Plaintiffs argue that Defendants' agreement to service of process constitutes consent to personal jurisdiction, that argument is foreclosed by *Aybar v. Aybar*, 37 N.Y.3d 274, 280 (2021).

[2] *Corporation Mexicana* involved the *forfeiture* of a personal jurisdiction defense; it did not involve Plaintiff's posited theory of "consent." Plaintiffs have adopted the alternate label of "consent" but, in substance, make forfeiture arguments thereunder.

3

of time *after* this lawsuit was filed. *See generally* ECF 34-1. Plaintiffs filed this action on February 16, 2024. ECF 1. The Opposition makes much of Mr. Allen's posting of a photo of the New York State Certificate of Service Mark Registration to PES, Inc.'s Facebook page on March 31, 2024. ECF 34 at 14; ECF 34-1, ¶¶ 10-21, 25-26, 27. Notably, and as mentioned in the Conklin Declaration, the service mark was issued on March 22, 2024. ECF 34-1, ¶ 28. Defendants applied for the service mark on March 12, 2024. *See* Supp. Decl., ¶ 21.

Plaintiffs make much of Defendants' application and acquisition of a New York service mark registration, yet they offer no case law to support the proposition that a service mark application in a given state subjects the applicant to the jurisdiction of that state. Instead, Plaintiffs simply conflate the definition of "use" found in the New York statute governing state trademark registrations with the "transacting business" prong of the long-arm statute. *See also Aybar v. Aybar*, 37 N.Y.3d 274 (2021) (foreign corporation's registration to do business in New York does not constitute consent to general jurisdiction in New York courts).

In any event, "[p]ost-lawsuit contacts are insufficient to show that a defendant was transacting business with New York for the purposes of long-arm jurisdiction." *Fab Habitat Corp. v. Houselights, LLC*, No. 22-CV-2986 (ALC), 2023 WL 6385977, at *7 (S.D.N.Y. Sept. 29, 2023) (collecting cases). Defendants' application for, and registration of, the Service Mark Registration all post-date the filing of this action, which was on February 16, 2024. Accordingly, Plaintiffs have failed to make "a *prima facie* showing that jurisdiction is proper under § 302(a)(1)." *Id.* (no personal jurisdiction where Plaintiff relied on "declarations purporting to detail Defendants' contacts with New York for the period of time after the complaint was filed.").

### b. Plaintiffs' Interpretation of New York's Long Arm Statute Would Eviscerate the Statute's Defamation Exception

Plaintiffs correctly restate the requirement of the "something more" needed to satisfy long-

arm jurisdiction in defamation cases in New York—that is, "something more" than the Defendants' projection of defamatory statements into New York and targeting of New Yorkers has to be shown. *PDO Max, Inc. v. Malcmacher*, 521CV1274 (GTS/ML), 2022 WL 17415123, at *6 (N.D.N.Y. Dec. 5, 2022). Yet Plaintiffs fail to plausibly allege this "something more." *Malcmacher* is easily distinguishable from the case at hand because the plaintiffs in that case put forth evidence indicating that the defendant engaged in at least two, specific business transactions in New York, such as the purchase of training methods and the execution of a nondisclosure agreement. No evidence or allegations of such business transactions are present here, making jurisdiction improper over Plaintiffs' defamation claims[3].

Instead of showing the "something more," Plaintiffs ask the Court to take a *qualitatively* different view of Defendants' online postings simply because Defendants' posts were viewable on Plaintiffs' social media pages. This interpretation of Defendants' postings is foreclosed by defamation decisions interpreting the "transacting business" prong of Section 302(a)(1) and is contrary to New York courts' narrow interpretation of that prong in defamation cases. *Best Van Lines v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007) ("the 'single act' of uttering a defamation, no matter how loudly, is not a 'transaction of business' that may provide the foundation for personal jurisdiction"). By definition, any allegedly defamatory statement pertaining to someone is also targeting that person, in layman's terms. Plaintiffs' interpretation of the long-arm statute would render any out-of-state defendant who allegedly defames a New Yorker subject to suit in New York. This was precisely the result sought to be prevented by the New York legislature in enacting Section 302(a)(1). *Id.*; *Symmetra Pty Ltd. v. Human Facets, LLC*, 12 Civ. 8857 (SAS), at *16-17

---

[3] As set forth in the Motion, Plaintiffs' claims for false advertising and deceptive trade acts and practices must rise or fall with their defamation allegations because they are mere recastings of Plaintiffs' defamation claims. ECF 29-1, at 10-11. Accordingly, personal jurisdiction over Plaintiffs' remaining causes of action is also improper.

(S.D.N.Y. June 13, 2013). Accordingly, Plaintiffs have failed to make a *prima facie* case for personal jurisdiction with respect to their defamation claims as well.

### III.    THE FAC FAILS TO STATE CLAIMS FOR FALSE ADVERTISING, UNFAIR COMPETITION, AND DEFAMATION

#### a.    Plaintiffs Have Not Overcome their Failure to Plead Commercial Speech or Consumer-Oriented Conduct (Counts IV, V, and VI)

None of the cases on which Plaintiffs rely support their argument that Defendants' videos contained any commercial speech, which is fatal to their Lanham Act false advertising claim. As an initial matter, Plaintiffs mischaracterize Defendants' arguments against their false advertising claim as being "principal[ly]" about "free speech." This is plainly false.[4] The Motion shows that the FAC fails to plausibly plead, among others, the "commercial speech" element of a false advertising claim because Defendants' statements are *not* advertisements and do *not* refer to any specific products or services. ECF 29-1 (citing *Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2022)). The requirement for referring to "specific products or services" is paramount because it illustrates the nature of the harm underlying false advertising claims, which is simply not present (nor alleged) here. In *Enigma Software Group*, on which Plaintiffs rely, the defendant "lambast[ed]" the plaintiff's software program and "recommend[ed] that the reader remove that program and replace it with a trustworthy alternative such as [defendant's affiliate products.]" *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp.3d 263, 294 (S.D.N.Y. 2016). The court found those statements to "unmistakably constitute advertisements for the Affiliate products" in satisfaction of the "commercial speech" requirement. *Id.* Likewise in *Romeo & Juliette Laser Hair Removal*, defendants falsely claimed to be customers of the plaintiff's laser

---

[4] Defendants maintain that the statements made in their videos are protected free speech because they're nonactionable statements of opinion very far outside the core of *commercial* speech, *i.e.* they inherently cannot satisfy the "commercial speech" requirement of a false advertising claim under 15 U.S.C. § 1125(a)(1)(B). Defendants' primary argument on this claim, however, is that the FAC fails to plausibly allege commercial speech.

hair removal services and disparaged those services in customer reviews published to the public, while simultaneously promoting the defendants' competing laser hair removal services. *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 815205 (S.D.N.Y. Feb. 29, 2016). Plaintiffs do not allege, and cannot point to any facts, to show the same kind of comparative advertisement here because none of Defendants' statements referred to the quality of services offered by the parties. Plainly, Defendants' statements are not of the type of false or misleading comparative advertisement that gives rise to Lanham Act liability. Accordingly, Plaintiffs have failed to state a claim for false advertisement, and the Fourth Cause of Action should be dismissed.

Plaintiffs' claims under N.Y. Gen. Bus. Law §§ 349 and 350 fail for the same reason. *Wolo Manufacturing Corp.*, on which Plaintiffs rely, involved allegations that defendants made false or misleading statements "relating to the inherent qualities and characteristics of the defendants' horn products, including statements regarding the loudness and the construction or materials of certain Defendants' horn products." *Wolo Mfg. Corp. v. ABC Corp.*, 349 F.Supp.3d 176, 210 (E.D.N.Y. 2018). Defendants made no statements regarding the inherent qualities or characteristics of either their or Plaintiffs' services. Therefore, Plaintiffs claims under Sections 349 and 350 must also fail.

### b. The Opposition Mischaracterizes Mr. Allen's Statements as "Factual" Despite Authority to the Contrary (Counts VII and VIII)

Plaintiffs arguments that Defendants' statements are factual, rather than of opinion, are unavailing. The Motion set forth multiple, analogous examples of statements that were found to constitute inactionable statements of opinion due to being readily understood as rhetorical hyperbole, which the Opposition disregards. *See, e.g., Melius v. Glacken*, 94 A.D.3d 959 (2012) ("extortionist" was an opinion); *Ram v. Moritt*, 205 A.D.2d 516 (2d Dep't 1994) ("liar" and "cheat" were opinions); *Gonzalez v. Gray*, 69 F.Supp.2d 561 (S.D.N.Y. 1999), *aff'd* 216 F.3d 1072 (2d Cir. 2000) ("quack" was an opinion). Furthermore, the opposition ignores the highly context-

specific nature of the inquiry underlying the court's determination of whether a statement is one of fact or opinion. *See Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993). Lastly, Plaintiffs' reliance on *Celle v. Filipino Reporter Enterprises Inc.* is misplaced because Defendants' opinion statements do not "imply[] the assertion of *undisclosed* facts justifying the opinion." ECF 34 (quoting *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) (emphasis added). Rather, Mr. Allen *includes* a screenshot of the legal opinion on which he is commenting and reads directly from it. *See* ECF 34-6, at 8:20-9:50. Thus, Plaintiffs cannot say that Defendants "couching" their statements in terms of opinion and implying the existence of undisclosed facts when Defendants are, in fact, expressing an opinion and disclosing the basis for that opinion. The Court should dismiss the defamation claims because Defendants' statements are inactionable.

### c. Notwithstanding the Application of the Fair Report Privilege, Mr. Allen's Statements Are At Least Substantially True (Counts VII and VIII)[5]

As an initial matter, Plaintiffs offer no support for their contention that the fair report privilege "appears to extend only to conventional press or news media publications" because there is none. ECF 34 at 33. Indeed, as provided by the N.Y. Civil Rights Law § 74, the fair report privilege is regularly applied to individuals outside of conventional press or news media. *See, e.g.*, *Gottwald v. Sebert*, 197 N.Y.S.3d 694 (2023). Further, Plaintiffs misinterpret the "public interest" aims served by the application of the fair report privilege—the privilege serves "to implement the public policy in favor of encouraging publication and dissemination of judicial decisions and proceedings as being in the public interest." *Beary v. W. Publ. Co.*, 763 F.2d 66, 68 (2d Cir. 1985). Application of the privilege here would encourage precisely that policy, by enabling the dissemination of Mr. Allen's statements regarding a judicial decision. Even if this Court were to

---

[5] Defendants oppose Plaintiffs' attempt to narrow their truth defense to merely the statements that Plaintiffs are "unregistered." ECF 34 at Section V.C.2. As set forth in the Motion, the truth defense also applies to the allegations set forth in Paragraphs 115 to 117 of the FAC. ECF 29-1, at 22-24.

decide that the fair report privilege does not apply to those of Defendants' statements set forth in Paragraphs 115 to 117 of the FAC, Defendants' statements are still inactionable because they are true or at least substantially true. Accordingly, Plaintiffs' claims for defamation must fail.

### d.   The Substantive Elements of New York's Anti-SLAPP Act Apply Here

Once again, Plaintiffs mischaracterize the applicable law. Defendants are *not* seeking dismissal based on the "substantial basis" standard set forth in N.Y. Civ. Rights Law § 70-a because that is a procedural standard at odds with the pleading standards set forth in Fed. R. Civ. P. 12. However, the *substantive* elements inherent in New York's Anti-SLAPP law, including the requirement to plead actual malice, do apply in federal court. *See Margolies v. Rudolph*, 2022 WL 2062460, at \*7 (E.D.N.Y. June 6, 2022) ("Because the defamation claim falls within the anti-SLAPP statute, [plaintiff] was required to plead . . . actual malice.").

Next, Plaintiffs fail to cite any cases in which a court found a matter to fall outside the broad construction of "public interest" required by New York's anti-SLAPP statute. The dicta misleadingly cited by Plaintiffs does not change the fact that courts in this circuit interpreting New York's Anti-SLAPP law have found that "matters of public concern" include a matters of "political, social, or other concern to the community, even those that do not affect the general population." *Kesner v. Buhl*, 590 F.Supp.3d 680, 693 (S.D.N.Y. 2022) (noting that "such matters have been held to encompass 'reports of improper business practices, particularly where such conduct may result in loss to stakeholders.'"); *Coleman v. Grand*, 523 F.Supp.3d 244, 259 (E.D.N.Y. 2021) (New York's amended anti-SLAPP statute "provides that the term 'public interest' is to be 'construed broadly, and shall mean any subject other than a purely private matter.'"). "In light of the extremely broad interpretation [of what qualifies as public interest] by New York courts," cases where "the subject matter was not a matter of legitimate public concern are extremely rare." *Kesner*, 590 F.Supp.3d at 693. Defendants' statements regarding the parties'

trademark dispute do not concern a "purely private matter" and are "of relevant concern to the community", such as Defendants' actual and potential customers. *Coleman*, 523 F.Supp.3d at 259; *Kesner*, 590 F.Supp.3d at 693. Accordingly, the anti-SLAPP law's substantive requirements apply.

The FAC offers no factual allegations beyond the conclusory statement that "Allen knew or should have known that these statements were false when there[sic] were made, and/or made them with the intent to injure the Plaintiffs." FAC ¶¶173, 186. Once again, the Opposition fails to point to any particular allegations in the FAC, or factual material in the proffered affidavits, that are reflective of Mr. Allen's alleged knowledge of his statements' falsity or his reckless disregard as to their truth. *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). Nor do Plaintiffs point to any case law in which a defamation plaintiff cleared the actual malice hurdle with a similar dearth of factual allegations going to the defendant's knowledge of falsity or reckless disregard. Instead, Plaintiffs confuse the actual malice standard with common law malice and inject assertions regarding Mr. Allen's alleged "malicious intent" inherent in the heated nature of his rhetorical hyperbole. *See, e.g.*, ECF 34, at 38 ("live[] in their heart rent free" and "can make the bleeding stop, by settlement talks"). These statements do not evince whether Mr. Allen made his statements with knowledge of their falsity or with reckless disregard as to their truth. Rather, they are impassioned exclamations that, if anything, show the emotional sincerity with which Mr. Allen spoke about the parties' trademark dispute. In any event, Plaintiffs' attempt to cloak their assertions sounding in common law malice are insufficient to rise to the more exacting, stringent standard of actual malice. Accordingly, the Ninth and Tenth Causes of Action should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action in its entirety for lack of personal jurisdiction over Defendants and improper venue. Further, the Court should dismiss Plaintiffs' Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action for failure to state a claim.

Dated:  September 5, 2024
      Brooklyn, NY

Respectfully submitted,


By: **s/ David D. Lin**
David D. Lin (Bar Roll No. 700892)
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9325
Fax: (718) 243-9326
david@iLawco.com

*Counsel for Defendants*