**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PINNACLE HOLDING COMPANY, LLC and
PINNACLE EMPLOYEE SERVICES, LLC,

                Plaintiffs,

        -v-                                 5:24-CV-00239 (AJB/TWD)

MICHAEL ALLEN and PINNACLE EMPLOYEE
SERVICES, INC.,

                Defendants.
_____

**Hon. Anthony J. Brindisi, U.S. District Judge:**

## DECISION & ORDER

This action marks the latest development in a trademark dispute defined less by the alleged underlying infringement than by the seemingly endless tug-of-war over jurisdiction. This case is a rematch of an earlier bout between the same parties in the Eastern District of California, filed there in 2022 but dismissed in early 2024 without consideration of the merits. The Court refers to the earlier lawsuit filed in the Eastern District of California (No. 2:22-cv-01367) as "*Pinnacle I*" or "the prior action."[1]

Since then, the roles (and coasts) have reversed: the former defendants have brought claims in this forum that are reminiscent of those initially brought against them; the former

---

[1] When discussing Chief Judge Mueller's orders in the prior action, the Court will cite the record directly. Those rulings were also reported elsewhere. *See Pinnacle Emp. Servs., Inc. v. Pinnacle Holding Co., LLC*, 2023 WL 2999970 (E.D. Cal. Apr. 18, 2023); *Pinnacle Emp. Servs., Inc. v. Pinnacle Holding Co., LLC*, 2023 WL 5435975 (E.D. Cal. Aug. 23, 2023); *Pinnacle Emp. Servs., Inc. v. Pinnacle Holding Co., LLC*, 2024 WL 382140 (E.D. Cal. Jan. 31, 2024).

plaintiffs, for their part, raise arguments for dismissal that echo those they previously rejected as frivolous. As before, both parties insist that the underlying dispute is of the utmost importance and urgency. Just not, it seems, pressing enough to settle on a forum.

The now-plaintiffs seek to capitalize on several questionable choices made by one of the now-defendants following dismissal of the California suit and during the pendency of this case, as well as on a little imprecise language, a bit of procedural confusion, and a few suspect arguments to establish jurisdiction in this District.

Defendants have moved to dismiss the complaint, challenging the existence of personal jurisdiction. Yet at least one defendant's conduct since the conclusion of the prior action is difficult to reconcile with that assertion. Because there is sufficient indication that jurisdictional discovery is appropriate, plaintiffs' request for limited jurisdictional discovery will be **GRANTED IN PART**.[2]

## I.    BACKGROUND

Plaintiff Pinnacle Holding Company, LLC ("PHC") formed the wholly owned subsidiary plaintiff Pinnacle Employee Services, LLC ("PES LLC") in July 2014. Am. Compl., Dkt. No. 27 ¶ 40. Three months after its inception, PHC registered the domain <www.PinnacleEmployeeServices.com> for PES LLC's use. *Id.* ¶ 7. Since October 2014, PES LLC has operated openly and continuously under the name PINNACLE or PINNACLE EMPLOYEE SERVICES, offering professional employer organization ("PEO")[3] services. *Id.* ¶

---

[2]  Because the jurisdictional issue resolves the motion, the Court does not address defendants' argument for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. to Dismiss, Dkt. No. 29-1 at 13–25; Pls.' Opp'n, Dkt. No. 34 at 33–47; Defs.' Reply, Dkt. No. 36 at 9–13. Therefore, these related arguments will be denied without prejudice at this time.

[3]  As explained by plaintiffs, "[a] PEO provides its clients with employee administration services, human resources services, employee payroll and benefits administration, administration of workers' compensation claims, and payroll/employment tax and legal compliance services." Dkt. No. 27 ¶ 42.

41; Dkt. No. 2-1 at 6.  PHC and PES LLC are Delaware limited liability companies with principal places of business in East Syracuse, New York, and Syracuse, New York, respectively. *Id.* ¶ 5.

Defendant Pinnacle Employee Services, Inc. ("PES, Inc.") similarly provides payroll and human resources support.  Dkt. No. 27-3 ¶ 12.  PES, Inc. is a corporation formed under the laws of California, and its principal place of business is in California.  Dkt. No. 29-2 ¶¶ 14, 15.  Defendant Michael Allen ("Allen") is PES, Inc.'s chief corporate officer and president.  Allen Decl., Dkt. No. 27-3 ¶ 12.  Allen is a domiciliary and citizen of California.  Dkt. No. 29-2 ¶ 4.  Defendants describe themselves as "leaders in the employee benefits industry in Northern California" and claim they have used the name "PINNACLE EMPLOYEE SERVICES" since September 2013.  Dkt. No. 27-3 ¶¶ 12, 18.

In October 2020, seven years after forming PES LLC, plaintiff PHC applied to register a composite mark—the phrase "PINNACLE EMPLOYEE SERVICES" accompanying a particular design element—with the United States Patent & Trademark Office ("USPTO").  Dkt. No. 27 ¶ 60.  The USPTO denied PHC's application on April 9, 2021, citing likely confusion with two existing third-party marks.  *Id.* ¶ 62.  Plaintiff PHC did not respond to or contest the USPTO's action.  *Id.* ¶ 63.  Accordingly, the USPTO deemed PHC's application abandoned in October 2021, roughly six months later.  *Id.*

Concurrently, in December 2020, defendant Allen submitted his own application to the USPTO for a mark of the same name.  *Id.* ¶ 64.  In June 2021, the USPTO issued a notice suspending Allen's application due to PHC's earlier filing.  *Id.* ¶ 73.  However, once PHC's application was declared abandoned in October 2021, the USPTO's suspension lifted, and Allen's application moved forward.  *Id.* ¶ 75.

On April 12, 2022, the USPTO approved and issued Allen's trademark.  Ex. A, Dkt. No. 27-1 at 2; *see also* Ex. B, Dkt. No. 27-2 at 2 ("Mr. Allen is the owner of U.S. federal trademark No. 90376137[.]").  Little over a week later, then-counsel for Allen and PES, Inc. sent a cease-and-desist letter to PHC.  Dkt. No. 27 ¶ 77.  The letter accused PHC of "blatantly infringing" on defendants' mark by "operating an identical business using [an] identical name[.]"  Ex. B, Dkt. No. 27-2 at 2; Dkt. No. 27 ¶ 77.  Defendants demanded that PHC stop using the name 'Pinnacle Employee Services' for any services related to payroll, HR, or employee benefits.  Dkt. No. 27 ¶ 77 (citing Ex. B, Dkt. No. 27-2 at 2).  PHC refused.  *See* Dkt. No. 27 ¶¶ 78–79.

Consequently, on August 1, 2022, Allen and PES, Inc. sued PHC in the Eastern District of California.  Pls.' Am. Compl., Ex. C, Dkt. No. 27-3 at 1–30; *see also Pinnacle I*, 2:22-cv-01367, Dkt. No. 1.  PHC moved to dismiss that action in December 2022, arguing that the California-based district court lacked personal jurisdiction over PHC.  *See Pinnacle I*, Dkt. No. 18 at 2 (citing FED. R. CIV. P. 12(b)(2)); *Pinnacle I*, PHC's Mot. to Dismiss, Dkt. No. 18-1 at 5 ("[T]he exercise of personal jurisdiction over [PHC] would violate the Due Process Clause.  [PHC] has never engaged in any commercial or other activity in the State of California and never purposefully availed itself of the protections of California law.").

PHC submitted the declarations of two executives: PHC's chief operating officer, Eric Krouse, and PES LLC's chief executive officer, Mark Pietrowski, in support of its motion to dismiss.  *See Pinnacle I*, Krouse Decl., Dkt. No. 18-2; Pietrowski Decl., Dkt. No. 18-3.  In the motion, PHC explained that it was only a holding company and was not amenable to suit in California.  *Pinnacle I*, PHC's Mot. to Dismiss, Dkt. No. 18-1 at 5; *see* Krouse Decl., Dkt. No. 18-2 ¶ 4 ("PHC . . . does not engage in business of its own accord.  PHC does not have any customers or clients of its own.  PHC does not sell or offer for sale any goods or services.").

Although PHC acknowledged that one of its subsidiaries, PES LLC, used the disputed name, PHC argued that PES LLC likewise conducted no business in the state. *Pinnacle I*, PHC's Mot. to Dismiss, Dkt. No. 18-1 at 5; *see* Pietrowski Decl., Dkt. No. 18-3 ¶¶ 8, 9 ("Most important, PES LLC does not have any clients . . . [or] employees in California. PES LLC has not entered into contracts in California or contracted with a person or company that is a citizen of California. No employee has ever travelled to California on PES LLC's behalf. PES LLC does not have any representatives, agents or others operating on its behalf in California. PES LLC is not registered to do business in California and has never done business in California. PES LLC has never advertised or marketed itself in California. PES LLC has never taken any steps to avail itself of California law, to solicit clients from or in California, and ever done—or sought to do—business in California.").

Moreover, PHC argued that PES LLC's website, which "underpin[ned] the bulk of [Allen and PES, Inc.'s] allegations," was "non-interactive for the general public, not specifically directed toward California or its residents, and to PES LLC's knowledge ha[d] not been accessed by any potential or actual customers in California[,]" further evidencing the lack of connection between PHC and the forum state. *Pinnacle I*, PHC's Mot. to Dismiss, Dkt. No. 18-1 at 5.

Allen and PES, Inc. disagreed. They maintained that PHC fell "squarely within the [California-based] court's reach" (*see Pinnacle I*, Dkt. No. 19 at 9), citing the cease-and-desist letter their counsel sent to PHC on April 21, 2022 (*Pinnacle I*, Dkt. No. 19-1 at 2–4); a news article about a California company working with a different PHC subsidiary (*id.* at 12–14); [4]

---

[4]  Pinnacle Investments Selects Docupace as Back Office Platform, ASSOCIATED PRESS, https://apnews.com/press-release/pr-newswire/technology-38f3342cad5f1d1f2013808dcfcb8266 (last visited August 28, 2025) ("Pinnacle Investments, an independent broker-dealer is wholly owned by Pinnacle Holding Company, LLC which also owns Pinnacle Capital Management, a money management firm; Confidential Planning, a 403(b) provider; and Pinnacle Employee Services, a professional organization. Pinnacle Holding Company, and its subsidiaries, provide an unbeatable combination of synergistic services that can support individuals, businesses, and

disclosure filings showing that same subsidiary registered to do business in California (*id.* at 16–36); and screenshots taken from PES LLC's allegedly infringing website depicting a "Contact Us" webform that allowed visitors to submit messages to PES LLC (*id.* at 38–43).

To assess the contention, the California-based district court distilled Allen and PES, Inc.'s argument down to three alleged contacts with the state that purportedly established personal jurisdiction over PHS and PES LLC: (1) that PHC expressly aimed its activities at California by intentionally infringing on their mark after learning Allen and PES, Inc. operated from within the state; (2) that the <PinnacleEmployeeServices.com> website was sufficiently "interactive" to confer personal jurisdiction; and (3) that PHC engaged in other business activities and provided services within California, thereby subjecting itself to the court's jurisdiction in this particular matter. *See Pinnacle I*, Dkt. No. 24 at 6–8.

The California court held the first two contacts insufficient to establish purposeful direction; the first being foreclosed by the U.S. Supreme Court's ruling that a defendant's knowledge of a plaintiff's strong contacts with a forum does not supply personal jurisdiction, rather, the focus must be on the defendant's own contacts. *See id.* at 6 (citing *Walden v. Fiore*, 571 U.S. 277, 289–90 (2014)); *see also id.* at 7 ("Plaintiff's theory—that the [c]ourt has personal jurisdiction because they sent a cease and desist letter to Defendants—would have breathtaking implications if applied. Under Plaintiff's theory, a New York or Miami court would also have jurisdiction over this case if Plaintiff simply sent a cease and desist letter saying that they were being affected in those jurisdictions.") (quoting *IAND8, Inc. v. W. 54th LLC*, 2018 WL 4961557, at *4 (C.D. Cal. Jan. 26, 2018)).

---

other organizations. From wealth management to human resources management, no other firm has the resources or provides the one-on-one connection that our advisors and consultants deliver. The Pinnacle Holding Company oversees more than $2 Billion in client assets. To learn more about Pinnacle, please visit Pinnacle-LLC.com.").

As to the second alleged contact, the court found that the <PinnacleEmployeeServices.com> website was not sufficiently interactive to confer personal jurisdiction. *See Pinnacle I*, Dkt. No. 24 at 7–8; *see also id.* at 8 ("Operating a universally accessible website alone cannot satisfy the express aiming prong.") (quoting *Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 68 (9th Cir. 2021) (unpublished)).  The third alleged contact— that "[PHC] provides detailed and personalized services in the United States and California[,] remains in direct contact with customers located in California[,] and continues to commit tortious acts in California"—was contradicted by PHC's declarations.  *Pinnacle I*, Dkt. No. 24 at 5, 8.  Yet the court noted that, although there was no reason to disbelieve PHC's declarations, there was likewise no reason to disbelieve Allen and PES, Inc.'s "representation that they were unable to verify the declarations' contested facts."  *Id.* at 11.

The California court concluded that Allen and PES, Inc. had shown "that at least one PHC subsidiary does business in California based on publicly available information, raising an inference PHC might be shown to have minimum contacts on a more developed record."  *Id*.  Allen and PES, Inc. had "thus . . . shown they require[d] limited discovery to test the veracity of those controverted facts bearing on jurisdiction."  *Id*.  The California court granted their request for discovery, "confined to the narrow scope of whether facts put forward in PHC's declarations [were] true, including the extent of PHC's contacts with California."  *Id.* at 12.

Following the close of jurisdictional discovery, Allen and PES, Inc., with leave of the court, amended their complaint, adding a state-law claim, additional facts, and PES LLC and Pinnacle Investments LLC ("PI"), another of PHC's wholly owned subsidiaries, as defendants. *See generally Pinnacle I*, Dkt. No. 33.

PHC, this time alongside its subsidiary co-defendants, renewed its motion for dismissal under Rule 12(b)(2). *See Pinnacle I*, Dkt. No. 37. As no applicable federal statute governed personal jurisdiction, the court applied California law. *Pinnacle I*, Dkt. No. 46 at 4. "California authorizes its courts to exercise jurisdiction to the full extent permissible under the U.S. Constitution"; therefore, "the question [was] whether exercising jurisdiction over PHC, PES LLC, and PI comport[ed] with due process." *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) and CAL. CIV. PROC. CODE § 410.10).

Given that Allen and PES, Inc. had alleged only specific personal jurisdiction (*see Pinnacle I*, Dkt. No. 38 at 12), the California court noted that their suit "must arise out of or relate to the defendant[s'] contacts with the forum[:] In short, [that] there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal alterations omitted) (quoting *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017)); *Pinnacle I*, Dkt. No. 46 at 4 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Pinnacle I*, Dkt. No. 46 at 9 (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 264).

Allen and PES, Inc. claimed that "PES LLC's contacts with California provide[d] sufficient minimum contacts to satisfy the specific jurisdiction requirements." *Pinnacle I*, Dkt. No. 46 at 6. "Specifically, [the two] represent[ed] that following jurisdictional discovery they found (1) PES LLC operate[d] a website that five California client employees [could] access and

(2) PES LLC [had] set up a California payroll and California state tax account for at least one client company." *Id.*

Yet "[n]one of PES LLC's actual clients [were] California based businesses." *Id.* at 8. Of PES LLC's approximately 150 business clients, each employing between one and 1,000 staff members, only five of those clients' employees resided in California and could access PES LLC's website portal. *Id.* at 7, 8. "[S]uch attenuated contacts," the court deemed, were "insufficient to create the requisite 'substantial connection' with California[,]" and fell short of establishing "the 'something more' needed to show PES LLC directly aimed its conduct toward California." *Id.* at 8.

Nor were PES LLC's actions sending payroll into California or handling tax withholding for a single client company sufficient: "that conduct was merely a product of non-clients happening to live in California, unrelated to PES LLC or its business activities." *Id.* at 8 (internal citation omitted). Given the context, the court held this conduct "insufficient to establish purposeful direction, even if setting up payroll and a tax account for a client were related to PES LLC's business activities." *Id.* It concluded that the allegations regarding PES LLC's connections to the state were "too attenuated and d[id] not demonstrate PES LLC expressly aimed its conduct toward California." *Id.*

Because the three co-defendants lacked "sufficient minimum contacts with California," the California-based district court held that it could not exercise personal jurisdiction over PHC, PES LLC, or PI. *Id.* at 10. By order dated January 31, 2024, and filed on February 1, 2024, the court granted the three's motion and dismissed the complaint "without prejudice and without leave to amend." *Id.* at 11; *see Pinnacle II*, Am. Compl., Dkt. No. 27 ¶ 85.

Five days after the disposition of the Eastern District of California lawsuit, on Tuesday, February 6, 2024, Allen posted a video on PES, Inc.'s YouTube channel entitled "PSA – Beware of this IMPOSTER.  A company is posing as US."  *See* Am. Compl., Dkt. No. 27 ¶ 86–88; *see also* Ex. F, Dkt. No. 27-6 at 2.  The video's accompanying description stated, "PSA: Please be aware of this company posing as us 'Pinnacle Employee Services'.  We have been providing businesses with payroll, HR, and benefits since 2005.  Pinnacle Employee Services is impersonating our company.  We are federally trademarked with the USPTO.  Please do not be fooled by this company."  *See* Dkt. No. 27 ¶ 89; *see also* Ex. F, Dkt. No. 27-6 at 2.

In the video, Allen characterizes PES LLC and "Pinnacle Holding" as "unregistered" and claims that "for the past nine years, a company named PES out of Syracuse, New York . . . has been impersonating [his] company and offering the same services."  *See* Dkt. No. 27 ¶¶ 90–92.  Later that day and throughout the following one, social media accounts bearing either Allen's or PES, Inc.'s name, logo, or image posted links to the video on plaintiff PES LLC's LinkedIn and Facebook pages.  *See id.* ¶¶ 94, 100.

On Thursday, February 8, 2024, PES LLC's YouTube account was suspended based on an "anonymous" report that it violated YouTube's impersonation policy.  *See id.* ¶ 101.  PHC's appeal of that decision was denied by the platform that same day.  *Id.* ¶¶ 101, 104.  Meanwhile, counsel for PES LLC sent a cease-and-desist letter to Allen and PES, Inc., "demanding that they discontinue making and disseminating defamatory statements that PES LLC is 'impersonating' PES Inc. or otherwise somehow unauthorized to do business."  *Id.* ¶ 103.

The next day, Friday, February 9, 2024, PES LLC's Facebook account was deleted without notice or explanation.  *Id.* ¶ 105.  That same afternoon Allen emailed plaintiffs' counsel,[5]

---

[5] Subject Line: "CAPES response to your Cease-and-Desists letter[.]"  *See* Ex. H, Dkt. No. 27-8 at 2.

informing them that their clients could "make the bleeding stop, by settlement talks." *Id.* ¶ 106; *see also* Ex. H, Dkt. No. 27-8 at 2. Embedded within Allen's message was a link to yet another YouTube video, one he described as "imperative" for PES LLC's counsel to watch. Dkt. No. 27 ¶ 106; *see also* Ex. H, Dkt. No. 27-8 at 2.

In the video and seemingly in retort to plaintiffs' cease-and-desist letter, Allen alleges that PES LLC was "impersonating [his] company and is deceiving others . . . gain fraudulent [sic] [,]" and warned plaintiffs that they must "start settlement talks or face public embarrassment." Dkt. No. 27 ¶¶ 111, 112.

Instead, one week later, on Friday, February 16, 2024, plaintiffs requested an Order to Show Cause ("OSC") and moved for a preliminary injunction in the Northern District of New York. *See* Dkt. No. 2. The matter was initially assigned to U.S. District Judge Glenn T. Suddaby.

Plaintiffs sought removal of the videos and any published statements or suggestions that plaintiffs had "engaged in deceptive, fraudulent, or misleading activity with respect to the trademarks PINNACLE, PINNACLE EMPLOYEE SERVICES or any related trademarks[.]" Dkt. No. 2-1 at 24. Plaintiffs also requested that defendants withdraw any complaints defendants made to third parties, including YouTube and Facebook, further demanding that defendants request restoration of plaintiffs' suspended accounts, posts, and activities. *Id.* Additionally, plaintiffs sought an order directing defendants to refrain from any similar behavior pending further order of the court. *Id.*

Plaintiffs emphasized that they were "not seeking a Temporary Restraining Order"; instead, they were "moving by proposed Order to Show Cause solely as a mechanism . . . to seek an injunction contemporaneously with the filing of the Complaint[,] and an expedited hearing of

the application." Decl. of James P. Youngs, Dkt. No. 2-20 ¶ 10. "Accordingly," they added, "the Defendant[s] will have notice and a full opportunity to be heard on the motion for a preliminary injunction before any substantive relief is granted." Youngs Decl. ¶ 10.

The following Tuesday, February 20, 2024, the court previously assigned to this matter entered a text-only order. In it, the court rejected plaintiffs' request for an expedited briefing schedule and found that plaintiffs had not demonstrated good cause for why they could not provide defendants with reasonable advance notice of the OSC request or why substantial prejudice would result from such notice. *See* Dkt. No. 6; *see also id.* ("As a result, Plaintiffs are promptly directed to serve Defendants with a copy of their Complaint, motion papers and this Text Order. Defendants' response papers are due within 21 days of Plaintiffs' filing of a Certificate of Service; and Plaintiffs' reply papers are due within 7 days after the filing of Defendants' response papers. In the coming days, the Court shall schedule a hearing on Plaintiffs' motion for a Preliminary Injunction[.]").

The court also issued three precautionary statements: First, it reminded plaintiffs to file a sworn statement of the citizenship of each member of each LLC named as a plaintiff in this matter; second, it warned defendants that "if Plaintiffs ultimately prevail on their claims in this action, Defendants will be responsible for . . . paying damages caused by any derogatory, defamatory and/or false representations made by them regarding Plaintiffs' respective trademark rights after, and/or resulting from, the entry of this Text Order"; third, it advised defendant Pinnacle Employee Services, Inc. "that it *must* appear through counsel in this action[.]" *See id.* (emphasis added).

Notice of this pending action and the court's order did not reach defendants for another three weeks. *See* Dkt. No. 11 at 1 (asserting Allen "just found out about this summons on March

12, 2024"). By this time Allen had already posted two more videos—on Wednesday, March 6, and Thursday, March 7, 2024.

In the March 6 video, Allen thanks "all the social media companies that have been helpful" by taking down PES LLC's content, emphasizing that "this is causing huge confusion to consumers," and reasserting that PES LLC is "impersonating [Allen's] company and infringing on [his] trademark name." *See* Ex. J, Dkt. No. 27-10. Allen also claims, "a federal judge in the Eastern District [of] California has pointed out that this company and their lawyer are . . . liar[s]," and that Allen has "proof of that, because they made false statements, and they violated Federal Rule of Civil Procedure 11(b)." *See id.*

In the March 7 video, Allen "address[es] another 'lie' from the infringing company out of Syracuse, New York." *See* Ex. K, Dkt. No. 27-11. More overtly, Allen calls out several individuals associated with plaintiffs: "Elizabeth Conklin . . . she lies, and again, as you see in my other videos, Eric Krouse lies, [and] their attorney lies—per Judge Mueller . . . out of the Eastern District . . . in California." *See id.*

Here, Allen appears to take issue with Conklin's representation of the California court's dismissal of *Pinnacle I* as a "legal victory" in a letter Conklin wrote to YouTube appealing the platform's removal of PES LLC's channel. *See, e.g.*, *id.* ("I just want you to know, Elizabeth Conklin, you're a liar when you posted that. So, that's defamation, because you're lying about a case. It's no legal victory, it's no anything. If anything, maybe, a quarrel victory."); *but see id.* ("Here's the letter. And this is the last legal document from Judge Mueller [in *Pinnacle I*] in regard to personal jurisdiction—when I did lose. And I'll admit: I did lose."); *id.* ("I want to point out here that—what I'm about to say: I did lose my case. Okay? I will say this: I lost my

case for personal jurisdiction.  Basically, where we're going to fight this case at.  So, I lost it in California.").

No matter, Allen continues, "But I'm more than happy to fight it in their own backyard. Because once I win, it's even sweeter."  *Id.*  "You know if you've ever played sports: you beat somebody on their home court[,] it feels good."  *Id.*; *see also id.* ("I want this [video] . . . used in court.  I want all of my videos to be used in court[.]  Again, there was not enough proof to fight you here in California.  But . . . there is so much proof, and I am going to step on your court."). Allen concludes his message by informing plaintiffs, "All of your stuff will be taken down if you continue to post . . . because you're impersonating and you're trademark infringing," reiterating, "You know how to settle this; you can reach out to my lawyers."  *Id.*

A week later, on March 14, 2024, the court received a *pro se* filing from Allen.  *See* Dkt. No. 11.  It contains a four-page letter dated March 12, 2024, authored by Allen and addressed to the prior judge in this matter.  *See id.* at 1–4.  In this letter, Allen apologizes for the delay and for his letter "not being by lawyer standards."  *Id.* at 1.  He informs the court that he is searching for legal counsel and requests "30 days from receipt of [the] letter to the court."  *Id.*  "At that point[,] [Allen] will have found new counsel[,] and [his] attorney will file a proper response."  *Id.*  Allen also notes that "per General Order #22," he is entitled to file as a *pro se* litigant and states that "[t]his is [his] response, until [he] secure[s] counsel."  *See id.*

Over the next several pages, Allen levels numerous charges of impropriety.  He accuses plaintiffs of filing a "frivolous lawsuit to waste the court's time and resources and cause [him] more litigation costs."  *Id.*; *see also id.* ("I believe that Plaintiffs are in violation [of] F.R.C.P. 11(1)(b)(1), 'It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.") (emphasis in original).  Allen

14

also asserts that plaintiffs' counsel, James Youngs ("Youngs"), has "perjured themselves . . . three times." *Id.*

First, Allen contends that Youngs "was given a[n] FRCP (11)(b)(3) by Federal Judge Muller in the CA Eastern District." *Id.*; *see also id.* ("An F.R.C.P. 11(b)(3), which was mentioned by CA Federal Judge Muller [sic], for false statements made by Eric Krouse, COO of Pinnacle Holding Company, LLC, and plaintiff's attorney[,] Mr. Youngs.").

Second, Youngs "stated . . . that he sent a cease-and-desist letter overnight by certified mail to Michael Allen." *Id.* at 2. But, Allen insists, "[t]his is false[,] [n]o one from my company has received a certified letter[.]" *Id.* Moreover, Youngs "purposely tried not to serve [Allen] this lawsuit, even though it is required." *Id.*

Lastly, in plaintiffs' motion for preliminary injunction, Youngs stated Allen and PES, Inc.'s suit "was dismissed *with* prejudice for lack of personal jurisdiction on February 1, 2024." Dkt. No. 2-1 at 7 (emphasis added). However, Allen notes, that matter "was dismissed *without* prejudice." Dkt. No. 11 at 2 (emphasis added).

Allen's *pro se* filing does not stop there, though. He continues, lodging protests regarding the substance of plaintiffs' suit:

> I disagree with [the] allegations about me defaming the Plaintiff. [M]y company is federally trademarked, and the Syracuse company is impersonating my company by offering the same services and infringing on my trademark name. I have made other videos about the Plaintiff infringing on my trademark and have provided court and USPTO documentation to validate my statements[.] The Plaintiff does not like being shown as a company infringing on a trademark. The Plaintiff was sent a cease-and-desist letter back in 2022. The Plaintiff ignored my request by my lawyers[.] I contacted YouTube, LinkedIn, Facebook, [and] Instagram and sent a DMCA Takedown notice to the plaintiff's website provider. Per the social media company's rules and policies[.] I did not lie to the social media companies.
>
> [M]r. Youngs argues common law and first use for the Plaintiff. I first used the name Pinnacle Employee Services in commerce nationally [in] 2013, before my name was trademarked in 2022. I do not feel the evidence provided by Mr. Youngs

is sufficient for a common law argument.  I own the trademark.  Per the Plaintiffs declaration and disposition, the Plaintiff did not start using the name until the year 2014.  I have provided a deposition of Gregg Kidd, CEO of Pinnacle Holding Company, LLC, stating he started the company Pinnacle Employee Services in 2014[—]A whole year after I changed my company name to Pinnacle Employee Services® in 2013.  Therefore, I believe there is no common law argument[.]

*Id.* at 2–3.

And to bolster his litany of contentions, Allen's *pro se* filing attaches over a hundred pages worth of exhibits for the court's consideration.  *See* Dkt. Nos. 11-1–11-6.  Additionally, in his letter, Allen seeks several remedies.  *See, e.g.,* Dkt.  No. 11 at 1, 4 (requesting injunctive relief, dismissal of the case with prejudice, judgment against the plaintiffs, and damages).

On Tuesday, April 2, 2024—three weeks after writing the letter in which he requests 30 days to acquire legal counsel—Allen submitted another *pro se* letter.  *See* Dkt. No. 12.  There, Allen informs the court that he is still looking for legal representation and, without providing any indication as to why, seeks "an *additional* 60 days to find legal representation" for himself and PES, Inc.  *Id.* at 1 (emphasis added).  That same afternoon, the court previously assigned to this matter entered the following order:

> TEXT ORDER liberally construing Defendant Michael Allen's filing of 03/14/2024 as a pre-Answer motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), instead of as an Answer pursuant to Fed. R. Civ. P. 8 and accompanying motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and denying without prejudice that motion to dismiss as both procedurally improper (lacking a memorandum of law under Local Rule 7.1 and relying on record evidence that is neither incorporated by reference in, nor integral to, the Complaint) and unsupported by a showing of cause.

> To the extent that Defendant Michael Allen's filing of 03/14/2024 also contains a request for an additional "30 days from receipt of my letter to the court" in which to "file a proper response" to the Complaint, that request is DENIED as unsupported by a showing of cause.

> Also DENIED for the same reason is Defendant Michael Allen's letter-motion for "an additional 60 days to find legal representation for myself and Pinnacle Employee Services": Plaintiffs' motion is an emergency one, and Defendant

16

Michael Allen has failed to adduce evidence warranting such a long extension, or to even specify what deadline he is requesting an extension of. (*The Court adds that Defendant Michael Allen cannot file motions on behalf of other parties*.) Defendant Michael Allen's Answer remains due pursuant to the deadline imposed by Fed. R. Civ. P. 4.

Finally, the deadline for Defendants response(s) to Plaintiffs' motion (which was inadvertently tied by the Court, in its Text Order of 02/20/2024, to the filing of a Certificate of Service instead of the date of such service) is clarified as follows:

Defendants' response to Plaintiffs' motion is due by the end of FRIDAY, APRIL 12, 2024; and Plaintiffs' reply to that response is due by the end of FRIDAY, APRIL 19, 2024. The parties are advised to ignore the automatically generated deadlines stated on the docket sheet in Dkt. No. 7 (and the Clerk's Office is directed to remove the gavel from that docket entry).

A hearing on Plaintiffs' motion is scheduled for APRIL 24, 2024, at 10:00 AM before the undersigned in Syracuse, New York. As stated in the Court's Text Order of 02/20/2024, the day before the hearing, each party must file a letter advising the Court of the extent to which, at the hearing, it intends to adduce evidence through live witness testimony and exhibits or intends to offer only oral argument (in which case it would rely on the declarations and exhibits adduced in the parties motion papers).

Dkt. No. 13 (emphasis added).

But the hearing on plaintiffs' preliminary injunction motion did not take place. Youngs, plaintiffs' counsel, in a letter motion dated Thursday, April 11, 2024, represented the following to the court:

On April 8, [plaintiffs] filed a Stipulation (ECF 18) signed by the Defendant Michael Allen[,] in which he consented to the preliminary relief sought in the Plaintiffs' pending motion for a preliminary injunction[.] In light of that stipulation, the Plaintiffs would agree to withdraw their motion. *Id.* at ¶ 10. Mr. Allen also acknowledged service of process of the Summons and Complaint. *Id.* at ¶ 11.

The Defendant has engaged counsel for the purpose of attempting to reach a negotiated settlement of the dispute, though apparently not to appear in this litigation at this time. Accordingly, and in light of the Defendant's acknowledgment of service, the Plaintiffs consented to an extension of the Defendants' time to Answer the Complaint to be due June 1.

The Plaintiffs therefore respectfully request that the Court "So Order" the Stipulation and mark the Plaintiffs' motion off the calendar. Additionally, to give the parties the time to explore settlement, the Plaintiffs request that the Rule 16

Conference presently scheduled for May 20 be adjourned to July 1 or later, and that the attendant Rule 26(f) conference and Civil Case Management Plan filing deadlines be extended accordingly.

*See* Dkt. No. 19.

The next day, Friday, April 12, 2024, the prior assigned judge approved the stipulation and canceled the hearing. *See* Dkt. No. 20. The following Monday, April 15, 2024, plaintiffs' request that the Rule 16 conference be adjourned was granted, and plaintiffs were "directed to file a status report on settlement or a notice of dismissal if appropriate" by June 3, 2024. Dkt. No. 21.

A month and a half later, on the morning of Friday, May 31, 2024—for the very first time—an appearance was filed by defense counsel in this matter. *See* Dkt. No. 22. In a letter motion filed later that afternoon, defense counsel conveyed their understanding that "pursuant to the parties' Stipulated Order, dated April 10, 2024[,] Defendants' deadline to Answer *or otherwise respond* to the Complaint is currently set for June 1, 2024." Dkt. No. 23 at 1 (emphasis added).

Defense counsel noted that "[h]aving been retained today, we require additional time to complete factual investigations prior to answering *or otherwise responding* to Plaintiffs' Complaint[,]" and that "Plaintiffs consented to Defendants' request for the extension." *Id.* (emphasis added).

Defense counsel's request "for an adjournment of the stipulated June 1, 2024[,] deadline until June 28, 2024[,]" was approved by the assigned magistrate judge. *Id.* at 2; *see* Dkt. No. 24.

Defense counsel did not file a responsive pleading by that date, nor were they required to, as plaintiffs (with defendants' consent) filed an amended complaint on Thursday, June 27, 2024.

*See* Dkt. Nos. 25–27. Defendants' motion to dismiss, now pending before this Court, followed. *See* Dkt. No. 29.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 128–29 (2d Cir. 2022) (cleaned up) (quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020)). "A *prima facie* case of personal jurisdiction requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Fab Habitat Corp. v. Houselights, LLC*, 2023 WL 6385977, at *2–3 (S.D.N.Y. Sept. 29, 2023) (cleaned up) (citing *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (summary order)).

"In deciding a motion to dismiss a complaint for lack of personal jurisdiction, the district court may consider materials outside the pleadings, including 'affidavits and other written materials.'" *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276 (2d Cir. 2024), *cert. denied sub nom. Zembrka v. Am. Girl, LLC.*, 145 S. Ct. 1130 (2025); *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) ("Prior to trial[,] when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.") (internal citations omitted).

"This does not mean, however, that the court accepts as true 'a legal conclusion couched as a factual allegation.'" *Mavashev v. Kaldykulov*, 2024 WL 1345802, at *3 (E.D.N.Y. Mar. 30, 2024) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). "Similarly, a court 'cannot rely on a party's unsworn statements in his memorandum to defeat a motion to dismiss

for lack of personal jurisdiction.'" *Mavashev*, 2024 WL 1345802, at *3 (quoting *Williams v. Connecticut*, 2016 WL 4472935, at *4 (D. Conn. Aug. 24, 2016) (collecting cases)).

"There are two types of personal jurisdiction: specific and general." *Santamaria v. Hilton Worldwide, Inc.*, 2020 WL 2036724, at *1 (S.D.N.Y. Apr. 28, 2020) (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016)). "A court that has general jurisdiction over a [defendant] may adjudicate all claims against that [defendant]—even those entirely unrelated to the defendant's contacts with the state." *Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 256 (N.D.N.Y. 2016) (McAvoy, J.) (internal quotation marks omitted).

Specific jurisdiction, on the other hand, is "conduct-linked jurisdiction." *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted); *see also Reliance First Cap., LLC v. Mid Am. Mortg., Inc.*, 2019 WL 2504039, at *6 (E.D.N.Y. June 17, 2019) ("A court has general jurisdiction over a defendant when the defendant's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. Specific jurisdiction, on the other hand, rests on the premise that the commission of some single or occasional acts of the corporate agent in a state may sometimes be enough to subject the corporation to jurisdiction in the State's tribunals with respect to suits relating to that in-state activity.") (citing *DH Servs., LLC v. Positive Impact, Inc.*, 2014 WL 496875, at *3 (S.D.N.Y. Feb. 5, 2014)).

"In litigation arising under a federal statute that does not contain its own jurisdictional provision, a court engages in a two-step inquiry to determine whether it has personal jurisdiction

over a foreign defendant." *Love v. West*, 2021 WL 431210, at *3 (S.D.N.Y. Feb. 8, 2021); *see Alcon Lab'ys, Inc. v. Lens.com, Inc.*, 2019 WL 254038, at *2 (E.D.N.Y. Jan. 17, 2019) ("Determining whether a *prima facie* case of personal jurisdiction over a foreign defendant has been made requires a two-step inquiry.").[6]

"First, the Court determines whether the defendant is subject to jurisdiction under the law of the forum state—here, New York." *ICICI Bank Ltd. v. Doshi*, 2025 WL 965637, at *6 (S.D.N.Y. Mar. 31, 2025) (citing *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014)).  In doing so, the Court applies New York's long-arm statute.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007)).

The relevant provision of New York's long-arm statute[7] states that 'a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]'" N.Y. C.P.L.R. § 302(a)(1).

"[A] defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1)." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169 (2d Cir. 2010).

---

[6] A plaintiff must also effect proper service. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012).  As defendants do not dispute that service was proper, the Court does not address it.  *See* Defs.' Reply, Dkt. No. 36 at 6 n.1.

[7] Plaintiffs' amended Complaint does not specify which provision is relevant.  *See generally* Am. Compl., Dkt. No. 27.  Defendants' motion to dismiss notes this absence yet addresses alleged deficiencies by plaintiffs respecting several provisions.  *See, e.g.,* Defs.' Mot. to Dismiss, Dkt. No. 29-1 at 10–18 (arguing plaintiffs fail to allege jurisdiction adequately under N.Y. C.P.L.R. §§ 301, 302(a)(1)-(3)).  Plaintiffs' opposition does not address this alleged deficiency; however, it discusses only N.Y. C.P.L.R. § 302(a)(1).  *See generally* Defs.' Resp., Dkt. No. 34.  The Court, therefore, will only consider that provision.

In determining whether an out-of-state defendant 'transacts business' in or 'purposefully availed'[8] itself of New York, courts consider several factors, including the following:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation;
>
> (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;
>
> (iii) what the choice-of-law clause is in any such contract; and
>
> (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Shift Markets Grp., Inc. v. Alkemi AI Inc.*, 2024 WL 4337451, at *4 (S.D.N.Y. Sept. 27, 2024); *see Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004)).

"[M]ere solicitation of business within the state does not constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state, or the solicitation is accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence." *Khalil v. Fox Corp.*, 2022 WL 3370826, at *2 (S.D.N.Y. Aug. 16, 2022) (quoting *O'Brien v. Hackensack Univ. Med. Ctr.*, 305 A.D.2d 199, 201 (N.Y. App. Div. 2003)); *see Davidson Extrusions, Inc. v. Touche Ross & Co.*, 131 A.D.2d 421, 423–24 (N.Y. App. Div. 1987) (holding advertisement placed in national publication not sufficient to constitute transaction of business

---

[8]  "As [the Second Circuit previously] observed in *Best Van Lines, Inc.*, 'New York decisions . . . , at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes 'purposeful availment.'" *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 247)).

within meaning of statute); *see also Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219–220 (2d Cir. 2004) (summary order) (citing *O'Brien* and *Davidson*).

Still, Section 302(a)(1) is a 'single act' statute: "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Glob. Tech Indus. Grp. Inc. v. Wells*, 2022 WL 2872298, at *3 (S.D.N.Y. July 21, 2022) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988); *see also Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 994 (N.Y. 2014) ("[I]t is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis.").

"Even where a defendant purposefully transacts business within New York, the claim asserted must arise from that business activity for jurisdiction under Section 302(a)(1) to be established." *Mavashev*, 2024 WL 1345802, at *4 (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal alterations omitted)). A plaintiff's claim arises from a defendant's contacts with New York if, "in light of all the circumstances, there [is] an articulable nexus or substantial relationship" between the asserted claim and the defendant's contacts. *Kerman v. InterContinental Hotels Grp. Res. LLC*, 2021 WL 930253, at *3 (E.D.N.Y. Mar. 11, 2021) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012)).

Yet the 'arising from' prong of Section 302(a)(1) "does not require a causal link[.]" *Global Tech Industries Group Inc.*, 2022 WL 2872298, at *3. Rather, it necessitates, "at a minimum[,] a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Italian Exhibition Grp. USA, Inc. v. Bartolozzi*, 2024 WL 291224, at *2 (S.D.N.Y. Jan. 25, 2024) (quoting *Licci*, 984 N.E.2d at 900); *see also World*

*Ass'n of Icehockey Players Unions N. Am. Div. v. Nat'l Hockey League*, 2024 WL 4893266, at

*11 (S.D.N.Y. Nov. 26, 2024) ("[Although] this inquiry is relatively permissive, the nexus is

insufficient where the relationship between the claim and transaction is too attenuated or merely

coincidental.") (internal citations omitted).  "In effect, the 'arise-from' prong limits the broader

'transaction-of-business' prong to confer jurisdiction only over those claims in some way

arguably connected to the transaction."  *Licci*, 984 N.E.2d at 900–01.

Second, even if the long-arm statute permits personal jurisdiction, the Court must still

consider whether its exercise over the defendant comports with the Due Process Clause of the

United States Constitution.  *See Cullum v. Wyndham Hotels & Resorts Corp.*, 2024 WL 552494,

at *7 (S.D.N.Y. Feb. 12, 2024), *reconsideration denied*, 2024 WL 3104517 (S.D.N.Y. June 24,

2024) (citing *Sonera Holding B.V.*, 750 F.3d at 224).  This analysis "has two related components:

the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Villalobos v. Telemundo*

*Network Grp. LLC*, 2024 WL 5008980, at *6 (S.D.N.Y. Dec. 6, 2024) (quoting *Metro. Life Ins.*

*Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).

"With respect to minimum contacts, a court 'determine[s] whether the defendant has

sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.'"

*Zonshayn v. Sackler Sch. of Med. (New York)*, 648 F. Supp. 3d 485, 493 (S.D.N.Y. 2023) (quoting

*Chloe*, 616 F.3d at 164).

"For purposes of this . . . inquiry, a distinction is made between 'specific' jurisdiction and

'general' jurisdiction.'"  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quoting

*Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). "For an individual,

the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a

corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."

*Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)).  "The inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic," but "whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014)).[9]

"Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*, 144 S. Ct. 681 (2024) (internal citations omitted).  "The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'"  *Id.* (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway."  *Fish v. Oshkosh Def., LLC*, 2023 WL 12023144, at *5–6 (N.D.N.Y. Nov. 13, 2023) (Suddaby, J.) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  The Court may determine the motion based "on affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the

---

[9]  Plaintiffs' amended Complaint appears only to assert specific jurisdiction over defendants.  *See* Am. Compl., Dkt. No. 27 ¶ 11 ("Personal jurisdiction over the Defendants is proper in this District because they have availed themselves of the rights and benefits of the laws of New York and conducted business relating to and pursued enforcement of its alleged rights under the '685 Registration in New York.").

merits of the motion." *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019) (summary

order) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)).

## III.    DISCUSSION

### A.  Waiver and Consent

Plaintiffs argue that defendants, at this stage of litigation, are precluded from seeking

dismissal for lack of personal jurisdiction.  *See* Dkt. No. 34 at 11 ("Fed. R. Civ. P. 12(h)(1)

provides that a party waives certain defenses, including lack of personal jurisdiction" under Rule

12(b)(2), "if it fails to raise it in a prior dismissal motion."); *Id.* at 12 ("Rule 12(g) states that a

'party that makes a motion under this rule must not make another motion under this rule raising a

defense or objection that was available to the party but omitted from its earlier motion.'").

Plaintiffs contend that both Allen and PES, Inc. have waived a jurisdictional defense by

failing to raise it in (what plaintiffs describe as) defendants' "first significant defensive move"—

Allen's letter filing from March 12, 2024.  *Id.* at 13; *see also id.* at 14 ("[The letter] was no mere

request for additional time to find an attorney.  It [was] a detailed response to the merits of [the]

Complaint, complete with extensive exhibits.  [I]t did not simply 'deny the Plaintiffs' claims;

rather, it also sought affirmative relief.").

To fortify their reasoning, plaintiffs point to the fact that the clerk's office initially labeled

Allen's filing as an "*Answer* to the Complaint" on the CM/ECF docket report.  *See* Youngs Decl.,

Dkt. No. 34-20 ¶ 4 (providing screenshot of original docket entry) (emphasis added).  Plaintiffs

also quote at length the prior assigned judge's text-only order "liberally construing Allen's filing

. . . as a pre-Answer motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."

*See id.* ¶ 6.

Anticipating defendants' argument that this Court should excuse Allen's letter as a procedural error made by a *pro se* litigant, plaintiffs assert that "it is not clear the [letter] was filed without the Defendants having engaged counsel or without the assistance of counsel[,]" noting that defendants "were previously represented by counsel in the California litigation," and that, "shortly" after Allen's March 12 filing, plaintiffs' counsel was contacted by Charles Wallace ("Wallace") of the law firm Scale, LLP. *See* Dkt. No. 34 at 14 (citing Youngs Decl., Dkt. No. 34-20 ¶ 8).

Wallace informed plaintiffs' counsel that he represented defendants, conveyed their interest in settlement, and engaged in negotiations on their behalf over several weeks. Youngs Decl. ¶ 8. According to plaintiffs' counsel, Wallace indicated that, if settlement discussions failed, defendants would litigate and assert counterclaims. *Id.* ¶¶ 8–9. Per plaintiffs' counsel, Wallace also "represented the Defendant [sic] through the negotiation and consummation of the Stipulated Order wherein Mr. Allen agreed to take down the . . . videos and acknowledged valid service of process for both himself and PES, Inc." *Id.* ¶ 9 (referencing Dkt. No. 18); *see* Dkt. No. 34 at 10 ("Mr. Wallace engaged in settlement negotiations with the Plaintiffs' attorneys, including the parties' April 10, 2024 Stipulation.") (citing Youngs Decl. ¶¶ 8–9).

In opposition, Allen insists he "did not have the assistance or advice of counsel in writing the letter dated March 12, 2024[.]" Allen Decl., Dkt. No. 36-1 ¶ 2. Allen represents now that his letter was intended merely as an extension request. *Id.* ¶ 3. Any other information, Allen states, was included in or alongside the request simply because he was "not sure how much documentation was necessary . . . and [he] wanted to make sure [he] showed the Court that [he] had good reason to seek the extension[.]" *Id.* ¶ 3. Allen also clarifies that Wallace was hired "for the limited purpose of . . . settlement discussions[,]" notes (correctly) that Wallace "has not

entered an appearance on [his] behalf in this matter[,] and adds that he first "obtained counsel to represent [defendants] in this lawsuit on May 31, 2024." *Id.* ¶¶ 4, 5.

Plaintiffs further argue that defendants have forfeited any such jurisdictional defense, having "expressly and implicitly consented to this Court's exercise of personal jurisdiction and resolution of this dispute in this venue." Dkt. No. 34 at 16. For instance, plaintiffs highlight that Allen, in his letter, "knowingly elected to ask . . . for affirmative relief." *Id.* at 14–15.

According to plaintiffs, "most clearly demonstrat[ive]" of "defendants' consent to jurisdiction and venue [is] their voluntarily [sic] execution of a Stipulation and Order resolving the Plaintiffs' motion for a preliminary injunction." Dkt. No. 34 at 16 (citing Dkt. No. 20).

> There, Mr. Allen on behalf of himself and PES Inc. agreed that service of process upon Defendants was proper, and that "Defendants' *Answer* to the Complaint" would be due by June 1, 2024. The Stipulation also addressed Defendants' conduct, which was the subject of Plaintiff's request for injunctive relief and forms the basis for Plaintiffs' defamation claim. Defendants thereby agreed that they would refrain from making "false, misleading, or defamatory statements" about Plaintiffs, including by characterizing Plaintiffs as "imposters" or by accusing Plaintiffs of "perjury." Defendants further agreed to refrain from making takedown demands against Plaintiffs' social media accounts in the future. Defendants—in coordination with the Plaintiffs and through counsel—thus sought and received a binding order from this Court with respect to Defendants' conduct. In doing so, Defendants voluntarily subjected themselves to this Court's authority and jurisdiction over them.

*Id.* at 16–17 (emphasis in original).

Plaintiffs further emphasize that Allen's videos "repeatedly invited and professed [an] intent to litigate this action in New York State[,]" and Allen has gone so far as to "directly send" at least one of the videos "to the Plaintiffs by emailing it to their attorney." *Id.* at 17. Plaintiffs state that everything defendants "have done and said publicly and to the Plaintiffs [has shown] that they intended to litigate this dispute in this forum." *Id.* at 18. Therefore, plaintiffs assert, they have "developed a reasonable expectation that Defendants would defend the suit on the

28

merits in the state of New York [and][,] [a]s a result, Defendants have consented to personal jurisdiction." *Id.* at 18 (citing *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 102 (2d Cir. 2016)).

Insofar as plaintiffs suggest that docket entries in this matter, whether echoing plaintiffs' own phrasing or reflecting minor mislabeling by court personnel, which would otherwise carry no legal consequence, somehow bind or should bind this Court, they offer no authority to support that strained contention.

The Court refuses to give any kind of precedential effect to imprecise language. Accordingly, this argument will be rejected.

### (i)    Defendant PES, Inc.

Plaintiffs' attempt to bind defendant PES, Inc. to any action taken in this litigation, whether by plaintiffs, Allen, or between those parties, prior to the filing of an appearance by defense counsel on May 31, 2024, must also be rejected.

It has been long "established that a corporation . . . cannot proceed *pro se*." *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (citing *Shapiro, Bernstein & Co. v. Cont'l Rec. Co.,* 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) ("[I]t is settled law that a corporation cannot appear other than by its attorney."); *see also Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) ("[Section] 1654, which governs appearances in federal court, [a]llow[s] two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself; [t]he statute does not permit unlicensed laymen to represent anyone else other than themselves."); *Luo v. Kaiyi Inc.*, 2024 WL 4904644, at *2 (S.D.N.Y. Nov. 27, 2024) ("[I]t is well established that a corporate entity may appear in federal court only through counsel.").

This requirement is not some meaningless technicality. "The rule that a corporation may litigate only through a duly licensed attorney is venerable and widespread." *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (citing the United States Supreme Court, *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738 (1824), and *per curiam* opinions from the First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Federal Circuits).

Plaintiffs cannot credibly claim ignorance of this long-settled rule. For starters, the court previously assigned to this matter stated it on multiple occasions. *See* Dkt. No. 6 ("[D]efendant Pinnacle Employee Services, Inc. . . . must appear through counsel in this action[.]"); Dkt. No. 13 ("The Court adds that Defendant Michael Allen cannot file motions on behalf of other parties.").

Interestingly, plaintiffs relied on substantively the same rule in *Pinnacle I*, where they opposed a motion to withdraw filed by then-counsel for PES Inc. and Allen, arguing at the time that "Pinnacle Employee Services, Inc. ('PES') would immediately be in violation of the Local Rules[:] L.R. 183(a) ('A corporation or other entity may appear only be an attorney.')." *Pinnacle I*, Dkt. No. 41 at 2; *see also id.* (objecting to counsel's withdrawal on the grounds that it would "leav[e] a *pro se* individual and an unrepresented entity"); *id.* (urging the court to deny the motion to withdraw or, alternatively, to dismiss PES, Inc. as a party).

Plaintiffs also fruitlessly argue that PES, Inc. consented to jurisdiction and venue by way of the stipulation from April 12, 2024, which resolved plaintiffs' motion for a preliminary injunction. *See* Dkt. No. 34 at 16.

However, that document contains only two signatures: one from plaintiffs' counsel and the other from Allen, the latter bearing the preprinted designation "Michael Allen, Defendant" in its singular form. *See* Dkt. No. 20 at 4.

Plaintiffs appear to use the terms "Defendant" and "Defendants" interchangeably throughout their filings. At times, there is no discernible pattern to this usage; at others, the conflation seems calculated, potentially conveying one representation to the Court while the underlying facts suggest another.

For instance, consider plaintiffs' letter motion (Dkt. No. 19) requesting that the court adopt the proposed stipulation—which they now cite as central to their consent argument. *See, e.g.*, Dkt. No. 34 at 10, 16. This letter motion consistently references "the Defendant." *See* Dkt. No. 19 ("On April 8, we filed a Stipulation (ECF 18) signed by the Defendant Michael Allen in which he consented to the preliminary relief sought in the Plaintiffs' pending motion for a preliminary injunction."); *id.* ("The Defendant has engaged counsel for the purpose of attempting to reach a negotiated settlement of the dispute, though apparently not to appear in this litigation at this time."); *id.* ("Mr. Allen also acknowledged service of process of the Summons and Complaint.") (citing Dkt. No. 18 ¶ 11).

In fact, Paragraph 18 of the stipulation reads, in full: "Both Defendant Michael Allen and Defendant Pinnacle Employee Services Inc. acknowledge and admit to receiving good and sufficient service of process of the Summons and Complaint, and the Parties agree that the Defendants' Answer to the Complaint shall be due on or before June 1, 2024." Dkt. No. 18 ¶ 11.

Taking plaintiffs' letter motion at face value—after all, it is a representation made by a counseled party to the court—these subtle differences between the stipulation and the letter motion may go undetected.

Of course, now in opposition to the motion to dismiss, plaintiffs reclaim their understanding that Allen and PES, Inc. are not one in the same. *See, e.g.*, Dkt. No. 34 at 16 ("Here, the Defendants have both . . . consented to this Court's exercise of personal

jurisdiction[.]"); *id.* ("The Defendants' consent . . . is most clearly demonstrated by their voluntarily [sic] execution of a Stipulation and Order resolving the Plaintiffs' motion for a preliminary injunction."); *id.* at 34 ("Defendants—in coordination with the Plaintiffs[—]thus sought and received a binding order from this Court with respect to Defendants' conduct."); *id.* ("In doing so, Defendants voluntarily subjected themselves to this Court's authority and jurisdiction over them.").

Plaintiffs' arguments are meritless. PES, Inc. lacked the capacity to waive or consent to personal jurisdiction until its counsel entered an appearance on May 31, 2024. Defendants' counsel has made it clear that PES, Inc. reserved its right to assert a jurisdictional defense. *See, e.g.,* Dkt. No. 23 (defense counsel seeking an extension "to answer[10] *or otherwise respond* to the Complaint") (emphasis added). Accordingly, PES, Inc. has neither waived nor consented to personal jurisdiction.

**(ii)    Defendant Michael Allen**

The question of whether Allen has consented to this Court's jurisdiction or otherwise waived a jurisdictional defense is another matter entirely.

Allen's present contention is that his "intent in submitting the March 12 Letter was to ask for an extension of time[.]" Allen Decl., Dkt. No. 36-1 ¶ 3. Yet it is difficult to conclude that this was his *only* intent. As noted above, Allen claims that any other information he included—

---

[10]  Plaintiffs appear to play semantic games with the word "Answer." *See, e.g.*, Pls.' Resp., Dkt. No. 34 at 13 ("The March 12 was initially labeled by the Court as an 'answer[.]'"); *id.* ("[M]r. Allen on behalf of himself and PES INC. agreed that service of process upon Defendants was proper, and that "Defendants' *Answer* to the Complaint" would be due by June 1, 2024.") (emphasis in original); Dkt. No. 25 at 1 ("WHEREAS, by Stipulated Order dated April 12, 2024 Defendants' Answer to the Complaint was to be served on or before June 1, 2024. WHEREAS, by Text Order dated June 3, 2024, Defendants' time to answer the Complaint was extended to June 28, 2024."). The Court finds "no merit in the argument and warns the parties not to rely on typographical nuance that serves only to obscure the issues. Future filings should aim for clarity, accuracy, and substance—not clever formatting." *Horner v. Little Caesar Enters., Inc.*, 2025 WL 1404162, at *4 (N.D.N.Y. May 15, 2025).

"as [he] stated in the March 12 Letter"—was merely because he "was 'not sure how much documentation' was necessary for the extension request." *Id.*

But one need only read the paragraph in the letter Allen has quoted from to see that this representation is somewhat inaccurate: "I am not sure how much documentation you are looking for or how many documents I can provide. I will do my best to present evidence of all allegations against me." Dkt. No. 11 at 1.

Indeed, nearly every action taken by Allen prior to filing the instant motion to dismiss for lack of personal jurisdiction appears inconsistent with his present argument. Neither his March 12 letter (Dkt. No. 11) to the court; nor his application—discussed in greater detail below—for a New York State Certificate of Service Mark Registration for PES, Inc. filed on that same day (Dkt. No. 36-2); nor the videos in which he goads plaintiffs,[11] declares his willingness to "fight [plaintiffs] in their own backyard[,]" and asserts that he is "going to step on [plaintiffs'] court" (Dkt. No. 27-11) are easily reconcilable with Allen's jurisdictional challenge.

Even so, mindful of the fact that these filings were made *pro se*, the Court concludes that Allen has neither waived nor consented to personal jurisdiction. "Courts should go to lengths to ensure that inexperienced *pro se* litigants do not inadvertently forfeit rights or winning arguments; this 'special solicitude' includes a liberal construction of papers and a flexibility on

---

[11] In the February 9, 2024, video titled 'My Response to NY PES Cease and Desist Letter. I M [sic] NOT LEAVING,' Allen declares:

> Since I won't comply [with your demands], you can move forward with your lawsuit that you will file in New York federal or state court and seek all your compensatory and punitive damages available to your client. Please feel free to bring a lawsuit[.]

> File your lawsuit for trademark infringement, unfair competition and related claims under the Lanham Act and attendant state or common law. Seek both damages and cancellation to my trademark registration per your cease and desist letter. Do all of it. Do it . . . Please bring the fight. Please . . . I welcome your lawsuit[.]

*See* Pls.' Resp., Dkt. No. 34 at 17 (quoting Dkt. No. 27-9).

some otherwise-rigid procedural rules." *Tartt v. City of N.Y.*, 2014 WL 3702594, at *2 (S.D.N.Y.

July 16, 2014) (citing *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *see, e.g.*, *Saleh v.

Francesco*, 2011 WL 5513375, at *3 (S.D.N.Y. Nov. 10, 2011) ("Special solicitude is afforded

the defendants because they are proceeding *pro se*."); *see also Agra v. Dolci*, 2024 WL 3442964,

at *2 (S.D.N.Y. July 17, 2024), *appeal dismissed* (Dec. 9, 2024) (collecting cases).

Although plaintiffs assert that "it is not clear" whether the March 12 letter was filed

without Allen "having engaged counsel or without the assistance of counsel" (Dkt. No. 34 at 14),

Allen maintains that he lacked "assistance or advice of counsel in writing the letter" (Allen

Decl., Dkt. No. 36-1 ¶ 2).  Notwithstanding plaintiffs' speculation to the contrary, this Court will

consider Allen to have been proceeding *pro se*.

"In these circumstances, refusing to address the issue of personal jurisdiction on the

merits would elevate form over substance[.]"  *Bell v. Shah*, 2006 WL 860588, at *1 (D. Conn.

Mar. 31, 2006) (citing *Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, 2001 WL

1041990, at *3 (S.D.N.Y. Sept. 7, 2001)).  Such refusal would also "contravene the rule that 'all

pleadings shall be so construed to do substantial justice.'"  *Bell*, 2006 WL 860588, at *1 (quoting

FED. R. CIV. P. 8(f)).

Plaintiffs cite no authority—and this Court has found none—to support the proposition

that Allen's online posturing constitutes waiver or consent to personal jurisdiction in this District.

And, despite claiming that the Stipulation (Dkt. No. 20) signed by Allen while he was *pro se* to

be 'most clearly demonstrative' of his consent to jurisdiction, plaintiffs, again, offer no legal

authority to support this contention, and as defense counsel notes, "to the extent that Plaintiffs

argue that [the] agreement to service of process constitutes consent to personal jurisdiction, that

argument is foreclosed[.]"  Dkt. No. 36 at 6 n.1 (citing *Aybar v. Aybar*, 37 N.Y.3d 274, 280 (N.Y. 2021)).

Accordingly, the waiver and consent arguments are rejected.

### B.  Long-arm Jurisdiction

In lieu of either waiver or consent, plaintiffs assert the Court may exercise personal jurisdiction over defendants nonetheless via the state's long-arm statute.  *See* Dkt. No. 34 at 18. Under New York law, a court may exercise personal jurisdiction over any non-domiciliary transacting business within the state or contracting anywhere to supply goods or services in the state.  *See* N.Y. C.P.L.R. § 302(a)(1).

To determine jurisdiction under § 302(a)(1), a court must decide: (1) whether a defendant "transacts any business" in New York and, if so, (2) whether this cause of action "arises from" such a business transaction.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). Courts look at the totality of a defendant's activities within the forum state to resolve whether they amounted to "purposeful activity" sufficient to establish that the defendant transacts business in the state within the meaning of the statute.  *Id.*  If they do, there must also be a substantial relationship between the claim and the defendant's actions in New York.  *See id.* (citing *Henderson v. I.N.S.*, 157 F.3d 106, 123 (2d Cir. 1998)).

Plaintiffs' long-arm argument hinges on the following alleged activities: on March 12, 2024, Allen filed a service mark registration for PES, Inc. with the New York Department of State, stating that the mark's first use in the state was in September 2013.  *See* Dkt. No. 34 at 22. And, in his *pro se* letter to the Court filed that same day, Allen tangentially mentions an email exchange with a company in New York.  Dkt. No. 12 at 4.  Plaintiffs interpret this as an acknowledgement that defendants "transact business" in the state.  Dkt. No. 34 at 25; *see also id.*

("I have been doing business in East Rochester, New York before 2013.") (quoting Dkt. No. 27-9, Allen's February 8, 2024, video); *see also id.* ("I help a lot of businesses and have clients from Maine [to] Hawaii and everything in between[.]") (quoting Allen's March 4, 2024, video).

True, Allen's actions and statements are oftentimes at odds. They create an appearance of inconsistency, or perhaps even impropriety, by defendants.[12] But they do not, standing alone, establish jurisdiction. The service mark application came after plaintiffs filed this lawsuit on February 10, 2024. Dkt. No. 36 at 7. And it is axiomatic that post-lawsuit contacts are not enough to establish personal jurisdiction. *See Fab Habitat Corporation*, 2023 WL 6385977, at *7.

As for the email communications, the exchange at issue appears to be between Allen, on behalf of a California-based client, and a third-party vendor, located in East Rochester. Dkt. No. 11-3 at 4. Allen waves off this inconsistency by clarifying that some of defendants' clients have

---

[12] Allen repeatedly interprets and asserts Judge Mueller's remark that plaintiffs "*may* [have] run afoul of Federal Rule of Civil Procedure 11(b)(3)," *Pinnacle I*, Dkt. No. 32 at 4 n.1 (emphasis added), as a sweeping condemnation of plaintiffs and Youngs for general dishonesty.

Judge Mueller's observation, first raised by Allen and PES, Inc., concerned a November 30, 2022, declaration filed by Youngs, which included a statement from PHC's COO, Eric Krouse, asserting that "PHC does not use the trademark in question, PINNACLE EMPLOYEE SERVICES." *See id.*; Krouse Decl., Dkt. No. 18-2 ¶ 10.

Yet, PHC filed a trademark application with the USPTO for "Pinnacle Employee Services" on November 29, 2022, one day earlier. *Pinnacle I*, Dkt. No. 32 at 4 n.1. That application listed PHC as the owner, certified the mark's use in commerce related to payroll and tax services, and was signed by Youngs. *Id.* Judge Mueller noted these positions appeared inconsistent but declined to decide whether this violated Rule 11 or similar obligations, stating the court "may review the inconsistency if necessary in the future[,]" including when considering any motion to dismiss an amended complaint. *Id.*

Here, Allen declared on July 11, 2024, that he has never been, nor currently is, an owner or officer of any business registered in New York, nor a controlling shareholder of any such corporation. Dkt. No. 29-2 ¶¶ 10, 11. Yet, Allen later stated that "on March 22, 2024, the New York Department of State[] issued [his] registration for the service mark 'Pinnacle Employee Services.'" Dkt. No. 36-1 ¶ 22.

To paraphrase a familiar point: Defendants' positions here and in the New York registration appear inconsistent and may violate Rule 11 or a similar obligation. The Court does not decide that now but may revisit the issue, if necessary.

a handful of employees in New York but emphasizes those clients themselves are not based in New York.  Allen Decl., Dkt. No. 36-1 ¶ 18.

In considering these ostensibly emblematic instances, the Court finds *Pinnacle I* instructive: under these circumstances, the sparse contacts alleged are "too attenuated." *Pinnacle I*, Dkt. No. 46 at 8 (deeming similar conduct by plaintiff PES LLC to be merely a product of non-clients living in California and finding that, even if that conduct was related to plaintiffs' business activities, it was too far removed to establish personal jurisdiction).

Thus, plaintiffs fail to make a *prima facie* case for jurisdiction under § 302(a)(1).

## C.  Jurisdictional Discovery

Whether to allow jurisdictional discovery is within this Court's sound discretion.  *See Fab Habitat Corporation*, 2023 WL 6385977, at *8 (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007)).  "[E]ven where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)).

Although the allegations in the Amended Complaint and declarations do not make out a *prima facie* showing of jurisdiction, there is reason to believe that one or both of defendants transact at least some business within New York.  *See Fab Habitat Corporation*, 2023 WL 6385977, at *8.

Therefore, this Court will allow limited jurisdictional discovery to go forward on whether defendants transact business within New York sufficient for the exercise of specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1).  *See id.* ("District courts have considerable discretion in

determining how to best handle jurisdictional questions, and generally may allow plaintiff to conduct limited discovery with respect to the jurisdictional issue.") (quoting *Ayyash v. Bank Al-Madina*, 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006)).

## IV.    CONCLUSION

Plaintiffs have not established that the Court has personal jurisdiction over PES, Inc. or Allen. However, as plaintiffs have established, a more satisfactory showing of the facts is necessary.

Therefore, it is

**ORDERED** that

1. Plaintiffs' request for **jurisdictional discovery** is **GRANTED IN PART**. The Court will **GRANT limited jurisdictional discovery** restricted to information answering the basic question of whether defendants have transacted business within New York.

2. **Jurisdictional discovery shall be completed within 60 days of the filing date of this order.** "Completed" means not only that jurisdictional discovery itself is concluded, but also that any jurisdictional discovery disputes are fully resolved. Plaintiffs may seek leave to amend their complaint following the completion of jurisdictional discovery; **any motion seeking leave must be filed within 14 days of the close of jurisdictional discovery**.

3. Further, because the Court cannot determine whether it has jurisdiction to decide the merits of plaintiffs' claims, defendants' remaining arguments for dismissal are **DENIED WITHOUT PREJUDICE** to renewal following the completion of jurisdictional discovery.

**SO ORDERED.**

Dated: 9/2/2025

Anthony J. Brindisi
U.S. District Judge