# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

PINNACLE HOLDING COMPANY, LLC and
PINNACLE EMPLOYEE SERVICES, LLC,

        Plaintiffs,

    v.

MICHAEL ALLEN and PINNACLE EMPLOYEE
SERVICES, INC.,

        Defendants.

<u>SECOND</u> AMENDED
COMPLAINT

Civil Action No. 5:24-cv-239
(~~GTS~~<u>AJB</u>/TWD)

**Jury Trial Demanded**

Pinnacle Holding Company, LLC and Pinnacle Employee Services, LLC, by and through their attorneys, Hancock Estabrook, LLP, allege as follows:

<u>**INTRODUCTION**</u>

1. Plaintiffs bring this action with respect to the priority of and rights in trademarks that they use and/or own, including PINNACLE and PINNACLE EMPLOYEE SERVICES.

2. The Defendants have claimed and continue to claim that the Plaintiffs' use of the mark PINNACLE EMPLOYEE SERVICES infringes on the Defendants' alleged trademark for PINNACLE EMPLOYEE SERVICES and brought a trademark infringement suit against the Plaintiffs in the United Stats District Court for the Eastern District of California that was dismissed on personal jurisdiction grounds.

3. ~~The Defendants then engaged in a campaign of online harassment against the Plaintiffs, making and disseminating false and defamatory statements that the Plaintiffs are "imposters" and "impersonating" the Defendants and, upon information and belief, making such false claims to social media outlets in an effort to interfere with and suspend the Plaintiffs' accounts.~~

4.3.    The Plaintiffs bring this action seeking (a) judgment against the Defendants for infringement of the Plaintiffs' common law trademarks and awarding attendant injunctive and monetary relief, (b) declaratory judgment establishing the scope, nature and extent of the Plaintiffs' common law trademark rights and clarifying that the Plaintiffs' conduct does not infringe upon the Defendants' alleged trademarks, and (c) cancellation of the Defendants' registration for the mark PINNACLE EMPLOYEE SERVICES with the United States Patent and Trademark Office ("PTO"), Registration No. 6,696,685 (the "'685 Registration") based on its likelihood of confusion with the Plaintiffs' pre-existing common law trademarks and their failure to identify the owner of the trademark in their PTO application, and (d) judgement for damages and injunctive relief related to the Defendants' false or defamatory statements about the Plaintiffs' business, reputation, and name.

**PARTIES**

5.4.    Plaintiffs Pinnacle Holding Company, LLC ("PHC") and Pinnacle Employee Services, LLC ("PES LLC") are Delaware limited liability companies with principal places of business in East Syracuse, New York and Syracuse, New York, respectively.

6.5.    PES LLC is a wholly owned subsidiary of PHC.

7.6.    Upon information and belief, Defendant Michael Allen is an individual residing in California.

8.    Upon information and belief, Defendant Pinnacle Employee Services, Inc. ("PES Inc.") is a California corporation with its primary place of business at 2377 Gold Meadow Way, Ste 100, Gold River, California, 95670.

7.    Upon information and belief, Defendant Allen is the sole owner and chief executive officer of PES Inc.

9.8.    Upon information and belief, Defendant Allen exercises complete and exclusive managerial and executive authority over PES Inc.

**JURISDICTION AND VENUE**

10.9.   This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the trademark laws of the United States, 15 U.S.C. § 1051 *et seq*.

11.10.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1119, 1121, and 1125(a)(1)(A), 28 U.S.C. §§ 1331,1332(a), 1338(a) and (b), 2201, and 2202, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

12.11.  Personal jurisdiction over the Defendants is proper in this District pursuant to CPLR 302(a)(1) because they have availed themselves of the rights and benefits of the laws of New York and conducted business relating to and pursued enforcement of its alleged rights under the '685 Registration in New York.

13.12.  Upon information and belief, the Defendants have engaged in business under the name PINNACLE EMPLOYEE SERVICES in New York and by applying for and obtaining a New York State trademark registration through the New York Department of State pursuant to Article 24 of the New York General Business Law ("GBL").

13.     Upon information and belief, the Defendants have marketed and offered for sale their services under the name PINNACLE EMPLOYEE SERVICES in New York State.

14.     The Defendants asserted in their application to register their trademark with the New York Department of State that they use the trademark PINNACLE EMPLOYEE SERVICES in New York State.

15.     The Defendants asserted in their New York trademark application that they have used the trademark PINNACLE EMPLOYEE SERVICES since September 23, 2013.

16.     By seeking and obtaining a New York State trademark registration, the Defendants consented to receipt of service and the exercise of personal jurisdiction over them by courts located in New York as a matter of law pursuant to GBL § 360-n, which states that "[i]n any action brought

against a non-resident registrant, service may be effected upon the secretary as agent for service of the registrant in accordance with the procedures established for service upon non-resident corporations and business entities."

14.17.  Defendants have taken advantage of and received the benefits of doing business in New York, obtained the protection and benefits of New York law and agencies, and transacted business in New York for purposes of New York's Long Arm Jurisdiction statute, CPLR § 302(a)(1).

15.    Upon information and belief, the Defendants have published defamatory statements and false advertising about the Plaintiffs to New York residents in New York.

16.    Upon information and belief, the Defendants knew and intended that their defamatory statements, false advertisements and deceptive business activities would be viewed or received by and affect New York residents in New York, including the Plaintiffs' customers.

17.    Upon information and belief, the Defendants knowingly and specifically targeted New York consumers with their false advertising and deceptive business practices.

18.    At the time the Defendants made the defamatory and deceptive statements, the Defendants knew that the Plaintiffs are headquartered and have customers in New York.

19.    At the time the Defendants made the defamatory and deceptive statements, the Defendants knew that any claims of trademark infringement by the Defendants against the Plaintiffs could not be brought in California due to lack of personal jurisdiction but could be brought in New York.

20.    Upon information and belief, the Defendants have made false statements to various social media platforms, resulting in the suspension, deletion or limitation of the Plaintiff's social media accounts that are based in and managed from New York, and that target, *inter alia*, potential New York clients.

21.    Upon information and belief, the Defendants knew and intended that the injurious

**Formatted:** Indent: Left:  0.58", No bullets or numbering

**Formatted:** Indent: Left:  0.58", No bullets or numbering

**Formatted:** Indent: Left:  0.58", No bullets or numbering

consequences of their defamatory statements and deceptive practices would be felt in New York by New York residents, including the Plaintiffs.

22.18.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district.

**BACKGROUND**

I.    **The PINNACLE Common Law Family of Trademarks**

23.19.  On or about August 3, 1995, Baldwin Securities, Inc. was incorporated in New York State.

24.20.  On or about February 13, 1996, that entity amended its name to Pinnacle Investments, Inc.

25.21.  On or about May 30, 1996, Pinnacle Investments registered with the National Association of Securities Dealers ("NASD"), now known as the Financial Industry Regulatory Authority ("FINRA").

26.22.  In or about 2002, Pinnacle Investments registered with the U.S. Securities and Exchange Commission ("SEC") as a nationally Registered Investment Adviser ("RIA").

27.23.  On or about December 25, 1996, Pinnacle Investments registered the internet domain name www.PinnacleInvestments.com.

28.24.  From its inception to the present time, Pinnacle Investments has continuously provided a full suite of investment and financial services, including brokerage services, personal and business financial planning, investment advising, management of corporate pension and employee benefit plans, as well as private placements and alternative investments, all under the names PINNACLE and/or PINNACLE INVESTMENTS.

29.25.  By 2012, Pinnacle Investments was registered as an investment broker and, upon information and belief, had customers in 39 U.S. states.

4898-7294-0155, v. 24904-8502-8987, v. 1

30.26.  On or about June 29, 2006, the owners and operators of Pinnacle Investments formed Pinnacle Capital Management, LLC.

31.27.  From its inception to the present time, Pinnacle Capital Management has continuously provided investment portfolio creation and management services to businesses, pensions, trusts, and other clients, all under the names PINNACLE and/or PINNACLE CAPITAL MANAGEMENT.

32.28.  On or about July 5, 2006, the owners and managers of Pinnacle Investments formed Plaintiff Pinnacle Holding Company, LLC ("PHC").

33.29.  On or about July 5, 2006, the owners and managers of PHC formed Pinnacle Investments, LLC as a successor to Pinnacle Investments, Inc.

34.30.  In 2006, Pinnacle Investments, Inc. amended its name to F.K.A.P.I., Inc. (Formerly Known As Pinnacle Investments, Inc). This entity became the majority shareholder of PHC.

35.31.  Shortly thereafter, ownership of Pinnacle Investments, LLC and Pinnacle Capital Management, LLC, including ownership of the registration for the www.PinnacleInvestments.com domain, was transferred to PHC, which became the holding company for those companies.

36.32.  On or about October 2007, PHC acquired and began operating another company that provided life insurance, fixed annuities, long-term care insurance, estate planning, retirement planning and investment brokerage services to individuals, business owners and others.

37.33.  Shortly thereafter, PHC changed the business name of that entity to Pinnacle Solutions.

38.34. From that time to the present, Pinnacle Solutions has continued to operate and serves customers, including businesses and individuals, as a general insurance agency, all under the names PINNACLE and/or PINNACLE SOLUTIONS.

39.35. On or about September 26, 2011, PHC registered the domain name www.Pinnacle-

LLC.com.

40.36.   On or about September 26, 2011, PH Cregisterd the domain name www.PinnacleHoldingCo.com

41.37.   On or about July 17, 2014, PHC formed Plaintiff Pinnacle Employee Services, LLC ("PES LLC").

42.38.   From its inception to the present time, PES LLC has continuously provided services as a professional employer organization or "PEO," all under the names PINNACLE and/or PINNACLE EMPLOYEE SERVICES.

43.39.   A PEO provides its clients with employee administration services, human resources services, employee payroll and benefits administration, administration of workers' compensation claims, and payroll/employment tax and legal compliance services.

44.40.   On or about October 21, 2014, PHC registered the internet domain name www.PinnacleEmployeeServices.com for PES LLC's use in connection with the foregoing services.

45.41.   On or about October 21, 2014, PHC registered the internet domain name www.PinnaclePays.com for PES LLC's use in connection with the foregoing services.

46.42.   PHC and/or its subsidiaries have continuously used the name PINNACLE in interstate commerce since approximately February 1996.

47.43.   PHC's family of marks all share the word PINNACLE as a common, distinctive characteristic.

48.44.   The PINNACLE family of marks has been consistently used in advertising and branding, often with related logos, typeface and through common exposure to the marketplace.

49.45.   Consumers have been exposed to the PINNACLE family of trademarks for a suite of business and financial services and is recognized by the relevant consuming public as an indication of the source of the services offered thereunder.

50.46.  Consumers recognize the PINNACLE family of marks as indicating a source of financial and business services generally, specifically including investments, insurance, payroll, employee benefits, retirement benefits, pension plans and related services.

51.47.  The nature of the services provided under the names PINNACLE, PINNACLE INVESTMENTS, PINNACLE CAPITAL MANAGEMENT, and PINNACLE SOLUTIONS are such that consumers would expect the owners of the PINNACLE mark to also provide PEO services under the PINNACLE name.

52.48.  PEO services are within the zone of natural expansion for the Plaintiffs' use of the mark PINNACLE, which dates back decades.

53.49.   Consumers would expect human resources management, payroll, and employee benefits services to emanate from the same type of business that provides general financial and investments services, including retirement benefits and pension planning, such as those provided under the PINNACLE family of marks even before the PES LLC was formed and began using the PINNACLE EMPLOYEE SERVICES mark.

54.50.  While based primarily in New York, PHC and its subsidiaries have serviced clients through the United States under the PINNACLE family of marks.

55.51.  Upon information and belief, the geographic scope of the PINNACLE family of marks was nationwide at the time that the Defendants began using the mark PINNACLE EMPLOYEE SERVICES.

56.52.  The geographic scope of PES LLC's use of its PINNACLE EMPLOYEE SERVICES mark from its inception included at least all of New York State.

57.53.  Upon information and belief, at the time the Defendant applied for and obtained the '685 Registration, PES LLC was servicing customers and directly using the PINNACLE EMPLOYEE SERVICES mark in the eastern United States generally, including but not limited to the

States of New York, Connecticut, Maryland, Ohio and South Carolina.

58.54.  At the time PES LLC began using its name, it was not aware of the existence of the Defendants, their business or their alleged trademark.

59.55.  The Plaintiffs were not aware of the existence of the Defendants until many years after PES LLC had begun using the name PINNACLE EMPLOYEE SERVICES.

60.56.  PES LLC chose and used its trademark in good faith and without knowledge of any trademark claim to that name by the Defendants.

## II. PHC's application to register the mark PINNACLE EMPLOYEE SERVICES with the PTO

61.57.  On October 28, 2020, PHC filed an application with the PTO to register a composite mark comprised of the words PINNACLE EMPLOYEE SERVICES and a design element. That application was assigned Serial No. 90284799.

62.58.  The application identified the services of "payroll administration and management services" in International Class 35 and "administration of employee benefit plans concerning insurance and finance; claims administration in the field of workers' compensation" in International Class 36 in connection with the mark.

63.59.  On April 9, 2021, the USPTO issued an initial Office Action, denying registration on the basis of a likelihood of confusion with two trademarks owned by a third-party.

64.60.  PHC did not respond to that Office Action and its application was deemed abandoned on October 22, 2021.

## III. The Defendant's Application and Registration with the PTO

65.61.  On December 11, 2020, Michael Allen filed an application to register a trademark for PINNACLE EMPLOYEE SERVICES, which eventually matured into the '685 Registration.

66.62.  The USPTO assigned the application Serial No. 90376137.

4898-7294-0155, v. 24904-8502-8987, v. 1

67.63.   The application lists a date of first use of August 6, 2013, and a date of first use in commerce of September 1, 2013.

68.64.   Upon information and belief, neither Defendant was using the trademark as of the asserted dates of first use.

69.65.   The application listed Michael Allen, an individual, as the Owner of the trademark.

70.66.   This application was filed over a month after PHC filed its application to register its mark.

71.67.   Upon information and belief, at the time the application was filed, Mr. Allen was aware of the Plaintiffs' use of the names PINNACLE and PINNACLE EMPLOYEE SERVICES.

72.68.   Mr. Allen had been in contact with the Plaintiffs regarding their common name and discussed a referral or other relationship or effort to accommodate one another's use of the same name.

73.69.   Mr. Allen's application sought to cover the services of "Human resources consultation [and] Payroll preparation" in International Class 35.

74.70.   On June 10, 2021, the USPTO issued a Suspension Notice, identifying PHC's prior-filed application as a potential bar to registration on likelihood of confusion grounds.

75.71.   The Suspension Notice stated that if the USPTO registered the mark applied for by PHC, it may refuse to register the Defendants' mark due to a likelihood of confusion with that registration.

76.72.   When PHC's application became abandoned, the suspension was lifted, and Defendants' application proceeded.

77.73.   On April 12, 2022, the USPTO issued the '685 Registration, a copy of which is attached here as **Exhibit A**.

**IV.  The Defendants' Cease and Desist Letters against the Plaintiffs and Infringement Lawsuit in the Eastern District of California**

78.74.  Nine days after the '685 Registration was issued, attorneys for the Defendants sent a Cease and Desist letter dated April 21, 2022 to PHC, demanding that PHC "immediately cease using the trade name "Pinnacle Employee Services" in conjunction with the offering, marketing or provision of employee benefits services, payroll, and human resources." A copy of the letter is attached here as **Exhibit B**.

79.75.  PHC responded to the letter through a letter of counsel, pointing out that PHC's use of the PINNACLE mark long preceded the Defendants' use of the PINNACLE EMPLOYEE SERVICES mark and the Plaintiffs' use of the mark PINNACLE EMPLOYEE SERVICES long predated the Defendants' '685 Registration.

80.76.  The Plaintiffs sought to delineate the geographic scope of the Defendants' purported common law trademark rights predating its PTO registration, but the Defendants refused to consider any resolution of the matter short of the Plaintiffs' uncompensated and complete discontinuance of its longstanding PINNACLE EMPLOYEE SERVICES mark or a cash payment to "buy" the Defendants' trade name.

81.77.  On August 1, 2022, the Defendants filed a trademark infringement lawsuit against PHC in United States District Court for the Eastern District of California, bearing Index No. 2:22-cv-01367. A copy of the Complaint is attached here as **Exhibit C**. The case was assigned to Chief Judge Kimberly J. Mueller.

82.78.  PHC moved to dismiss the Complaint for lack of personal jurisdiction.

83.79.  By order dated April 17, 2023, Chief Judge Mueller agreed with the Defendant that the Plaintiffs had failed to establish personal jurisdiction over PHC but granted the Plaintiffs' request for limited jurisdictional discovery.

**Formatted:** Right:  0.79", Keep with next, Keep lines together

84.80.  After conducting jurisdictional discovery, the Plaintiffs sought leave to amend their Complaint to add PES LLC and Pinnacle Investments, LLC as defendants and make jurisdictional allegations. A copy of the Amended Complaint is attached here as **Exhibit D**.

85.81.  Chief Judge Mueller granted the Plaintiffs' leave to amend their complaint and PHC, PES LLC and Pinnacle Investments moved to dismiss the Amended Complaint for lack of personal jurisdiction.

86.82.  By order dated February 1, 2024, Chief Judge Mueller granted the motion, and the case was dismissed in its entirety without leave to amend. A copy of the order dismissing the case is attached here as **Exhibit E**.

V.    Defendants' Harassment and Defamation of the Plaintiffs

87.    On Tuesday, February 6, 2024, five days after disposition of the Eastern District of California lawsuit, Michael Allen posted a video on YouTube, and referred to herein simply as the "February 6 Video." A copy of the February 6 Video will be produced to the Court by thumb-drive and referred to as **Exhibit F.**

88.    The February 6 Video was posted on the Pinnacle Employee Services YouTube account.

89.    The February 6 Video was entitled "PSA – Beware of this IMPOSTER. A company is posing as US."

90.    The description of the video that was published on the YouTube page stated:

PSA: Please be aware of this company posing as us "Pinnacle Employee Services". We have been providing businesses with payroll, HR, and benefits since 2005. Pinnacle Employee Services is impersonating our company. We are federally trademarked with the USPTO. Please do not be fooled by this company.

91.    The February 6 Video depicted a person who identifies himself as Michael Allen, the founder and owner of PES Inc.

4898-7294-0155, v. 24904-8502-8987, v. 1

92. Mr. Allen went on to claim that "for the past nine years, a company named PES out of Syracuse, New York . . . has been impersonating [his] company and offering the same services."

93. Mr. Allen also characterized PES, LLC and "Pinnacle Holding" as "unregistered," implying that those entities are somehow illegitimate or unauthorized to do business.

94. On information and belief, an appreciable number of reasonable consumers and potential clients of the Plaintiffs would interpret the statements from the Video to mean that the Plaintiffs are illegitimate or unauthorized to do business.

95. The same day, social media accounts bearing Mr. Allen and/or PES Inc.'s name, logo and/or image posted links to the Video multiple times on PES LLC's LinkedIn page and PES LLC's Facebook pages.

96. When Mr. Allen or PES Inc. posted the Video as a comment on PES LLC's social media pages, the comment included a link to the YouTube page where the Video was posted, a screen shot of the video showing Mr. Allen, and contained the title of the Video, "PSA – BEWARE of this IMPOSTER. A company is posing as US."

97. Mr. Allen and/or PES Inc. posted the video six times on PES LLC's LinkedIn and Facebook pages on February 6.

98. By posting on PES LLC's social media pages, the Defendants published the Video and its title to the public generally, PES LLC's customers specifically and anyone who might view or search for PES LLC's social media accounts.

99. The Defendants posted the Video on PES Inc.'s LinkedIn account and "tagged" PES LLC's LinkedIn account.

100. By "tagging" PES LLC's account in LinkedIn, the Defendants rendered the Video and its title visible and accessible to those searching for PES LLC.

101. The next day, Mr. Allen continued publishing and disseminating the false and

defamatory statements, posting the Video on PES LLC's LinkedIn and Facebook page seven times.

102.    Also on February 8, PES LLC's YouTube account was suspended based on an anonymous report that it violated YouTube's "impersonation policy."

103.    Upon information and belief, Mr. Allen submitted a false report that PES LLC's accounts or content "impersonated" PES, Inc.

104.    That day, February 8, counsel for PES, LLC sent a Cease and Desist letter to counsel for the Defendants, demanding that they discontinue making and disseminating defamatory statements that PES, LLC is "impersonating" PES Inc. or otherwise somehow unauthorized to do business. A copy of that letter is attached here as **Exhibit G**.

105.    The same day, PHC filed an appeal with YouTube disputed the suspension of its account. YouTube denied that appeal by e-mail dated February 8, 2024.

106.    The following day, February 9, PES LLC's Facebook account was deleted without notice or explanation.

107.    That same day, Mr. Allen responded to the Cease and Desist letter, sending an e-mail to PES LLC's counsel, with a link to yet another YouTube video (the "February 9 Video"). A copy of the e-mail is attached here as **Exhibit H**.

108.    In the e-mail, Mr. Allen states that PHC and PES, LLC "can make the bleeding stop, by settlement talks."

109.    Upon information and belief, the February 9 Video was also generally available to the public. A copy of the February 9 Video will be produced to the Court by thumb drive and referred to as **Exhibit I**.

110.    The February 9 Video depicted Mr. Allen responding to the Cease and Desist letter.

111.    The February 9 Video contained a litany of false and defamatory statements about PHC LLC, PES LLC and their representatives.

112.     For example, Mr. Allen stated in the February 9 Video that PES LLC "is impersonating my company and is deceiving others [for] gain fraudulent."

113.     Mr. Allen has stated to PES LLC that it must "start settlement talks or face public embarrassment."

114.     Mr. Allen published another video containing false statements and defamatory statements about PES, LLC and its counsel to PES, Inc.'s Instagram page on March 56, 2024. A copy of the March 5 6Video will be produced to the Court by thumb-drive and referred to as Exhibit J.

115.     In the March 5 6Video, Mr. Allen falsely claimed that the Chief Judge Mueller labeled PES, LLC a "liar" and insinuates that PES, LLC or its related entities were sanctioned pursuant to Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

116.     More specifically, Mr. Allen falsely stated in his March 5 6Video:

I want you to know that a federal judge in the Eastern District here in California has pointed out that this company and their lawyer are a liar [*sic*] and again I have proof of that because they made false statements and they violated Federal Rule of Civil Procedure 11(b) and that's a big no no.

117.     Mr. Allen goes on to state that he will provide or has provided by way of links on the YouTube page, to material "proving" that the Defendants were found to by the Eastern District of California to have lied to the Court and/or violated Fed. R. Civ. P. 11.

118.     Mr. Allen further urges "social media companies" to "look at" his purported proof.

119.     At no point during the Eastern District of California lawsuit were PES, LLC, its related entities or their counsel subject to a Fed R. Civ. P. 11 motion, directive or sanction, nor were they otherwise deemed "liars" by Chief Judge Mueller, as claimed by Mr. Allen.

120.     Mr. Allen published yet another video containing false statements and defamatory statements about PES, LLC on March 7, 2024. A copy of the March 7 Video will be produced to

the Court by thumb-drive and referred to as **Exhibit K.**

121.    In that video, he again states that the Plaintiffs and their employees were held to be "liars" by "Judge Mueller" in the Eastern District of California.

122.    He repeats the defamatory statement that PES, LLC is "impersonating" PES, Inc., directing a statement to the Plaintiffs that "you are impersonating my company, you're not the real Pinnacle Employee Services, I am."


**FIRST CAUSE OF ACTION**
**Trademark Infringement of the Common Law PINNACLE family of trademarks – Lanham Act § 43(a), 15 USC § 1125**

123.83. Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

124.84. PHC is the owner of the PINNACLE family of trademarks, including PINNACLE, PINNACLE INVESTMENTS, PINNACLE CAPITAL MANAGEMENT, PINNACLE SOLUTIONS, and PINNACLE EMPLOYEE SERVICES.

125.85. Each of the foregoing trademarks, both individually and as part of the PINNACLE family of trademarks, is distinctive.

126.86. Many of the foregoing trademarks were in use in commerce prior to the Defendants' use of their mark PINNACLE EMPLOYEE SERVICES and have been used continuously.

127.87. All of the foregoing trademarks were used in connection with financial, business and benefits services that are similar to the services the Defendants later provided under their mark.

128.88. Upon information and belief, the PINNACLE family of marks was in use throughout the United States prior to the Defendants' use of their mark and, in any event, within at least some of the geographic territories in which the Defendants began using their trademark.

129.89. Upon information and belief, the Defendants have used and continue to use their

mark in geographic territories where the Plaintiffs had previously secured common law rights to the PINNACLE family of marks and/or each of them individually.

130.90. The Defendants' use of their mark PINNACLE EMPLOYEE SERVICES is likely to cause consumer confusion with the PINNACLE family of trademarks, and/or each of them individually, as to the affiliation, connection or association of the parties, and/or the origin, sponsorship, or approval of the Defendants' services.

91.    The Defendants have thus infringed on the Plaintiffs PINNACLE family of trademarks, and/or each of them individually.

92.    Defendant Allen personally exercised active and direct control over the day-to-day operations of and decisions for PES, Inc., including naming, branding, promotional materials and consumer-facing communications.

93.    Defendant Allen personally directed, authorized and/or participated in PES Inc.'s adoption and use of the infringement.

94.    Defendant Allen personally directed and engaged in the continued used of the infringing trademark despite knowing or having reason to know of Plaintiffs' superior trademark rights.

131.95. Defendant Allen knew or should have known that use of the infringing mark was likely to cause confusion.

132.96. By reason of the foregoing, the Plaintiffs have been injured, will continue to be injured in amounts not yet ascertained, and will be irreparably injured, entitling Plaintiffs to the remedies provided for in 15 U.S.C. §§ 1116 to 1118 of the Lanham Act.

**SECOND CAUSE OF ACTION**
**Trademark Infringement of the Common Law PINNACLE EMPLOYEE SERVICES**
**trademark – Lanham Act § 43(a), 15 USC § 1125**

4898-7294-0155, v. 24904-8502-8987, v. 34904-8502-8987, v. 1

133.97. The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

134.98. The Plaintiffs are the owners or authorized user of the trademark PINNACLE EMPLOYEE SERVICES.

135.99. The Plaintiffs began using the PINNACLE EMPLOYEE SERVICES trademark in interstate commerce in or about 2014.

136.100.     The Plaintiffs' use of the PINNACLE EMPLOYEE SERVICES trademark predates the Defendants' '685 Registration, which was filed on December 11, 2020 and issued on April 12, 2022.

137.101.     The Plaintiff used PINNACLE EMPLOYEE SERVICES within a geographic territory that, upon information and belief, encompassed as least the State of New York by December 11, 2020.

138.102.     Upon information and belief, the Plaintiffs' continuous use of the mark PINNACLE EMPLOYEE SERVICES has given rise to common law trademark rights that are, in at least some geographic territories, senior to the Defendant's pre-registration rights, if any, in their PINNACLE EMPLOYEE SERVICES trademark.

103.     The Defendants' use of their mark PINNACLE EMPLOYEE SERVICES is likely to cause consumer confusion with the Plaintiff's PINNACLE EMPLOYEE SERVICES trademark as to the affiliation, connection or association of the parties, and/or as to origin, sponsorship, or approval of the Defendants' services.

104.     Defendant Allen personally exercised active and direct control over the day-to-day operations of and decisions for PES, Inc., including naming, branding, promotional materials and consumer-facing communications.

105. Defendant Allen personally directed, authorized and/or participated in PES Inc.'s adoption and use of the infringement.

106. Defendant Allen personally directed and engaged in the continued used of the infringing trademark despite knowing or having reason to know of Plaintiffs' superior trademark rights.

139.107. Defendant Allen knew or should have known that use of the infringing mark was likely to cause confusion.

140.108. By reason of the foregoing, the Plaintiffs have been injured, will continue to be injured in amounts not yet ascertained, and will be irreparably injured, entitling Plaintiffs to the remedies provided for in 15 U.S.C. §§ 1116 to 1118 of the Lanham Act.

**THIRD CAUSE OF ACTION**
**Declaratory Judgment for No Trademark Infringement**

141.109. The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

142.110. As a result of the Plaintiffs' superior common law trademark rights to the marks PINNACLE EMPLOYEE SERVICES in at least some geographic territories, including at least the entire State of New York, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that the Plaintiffs have not infringed and are not infringing on the Defendants' alleged trademark rights in the PINNACLE EMPLOYEE SERVICES mark.

143.111. A judicial declaration is necessary so that PES LLC can ascertain its right to continue using its mark PINNACLE EMPLOYEE SERVICES in connection with human resources, payroll administration and management services, personnel management services and administration of employee benefit plans, and related financial services.

**Formatted:** Right: 0.57"

144.112.     A judicial declaration is also necessary to determine the geographic scope of the parties' respective common law trademarks rights to the mark PINNACLE EMPLOYEE SERVICES predating the Defendant's '685 Registration, assuming that registration is not cancelled in this proceeding.

145.113.     A judicial declaration that the Plaintiffs have the right to use the mark PINNACLE EMPLOYEE SERVICES, and that such use does not infringe any rights of the Defendants, is necessary in order to prevent the irreparable harm being caused by the Defendants' false allegations of trademark infringement.

**FOURTH CAUSE OF ACTION**
**False Advertising and Unfair Competition—Lanham Act § 42(a)(1)(B), 15 USC § 1125**

146.     The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

147.     The Defendants falsely stated in the Video, as well as in the title and description of the Video, which was published on the internet, including on the Plaintiffs' and the Defendants' social media pages, that the Plaintiffs are "imposters" and are "posing" as PES Inc.

148.     The Defendants also stated that the Plaintiffs themselves are "unregistered"—not that their *trademarks* are unregistered—and thus falsely stated that the Plaintiffs are not authorized to do business or otherwise not in compliance with legal or regulatory requirements.

149.     Upon information and belief, the Defendants submitted false statements to YouTube, Facebook and perhaps other social media social media platforms that PES LLC's accounts were fake or not connected with a real business, or otherwise created or used in contravention of the Defendants' trademark rights.

150.     The Plaintiffs have never deceived or attempted to deceive anyone into believing that the PES LLC is PES Inc., or that the Plaintiffs are affiliated with or have any relationship

whatsoever with PES Inc. or Mr. Allen.

151. The Plaintiffs have longstanding common law trademark rights in and to the names PINNACLE and PINNACLE EMPLOYEE SERVICES and have exercised those trademark rights in good faith.

152. The Plaintiffs have suffered and continue to suffer harm through the loss of their social media accounts, the dissemination and publication of false statements that they are pretending to be PEC Inc. or otherwise engaging in conduct that is deception to consumers.

153. The Defendants' false statements that the Plaintiffs are "imposters" or that they are "posing" as PES, Inc. were made on the Plaintiffs' commercial social media accounts that are designed solely for the purpose of engaging with the Plaintiff's clients, potential clients and consumers in general.

154. As such, the Defendant's publication of those false statements was likely and intended to cause consumer deception and is of a kind likely to influence a consumer's purchasing decision.

155. The Defendants made the false statements in the context of commercial communications, statements and advertisements about their own services, including on their own social media accounts, that were designed to reach clients, potential customers and consumers in general.

156. As a direct result of the Defendants' conduct, the Plaintiffs have lost, will lose, or is likely to lose customers and/or suffer irreparable harm to their business reputation and other commercial interests.

157. By reason of the foregoing, the Plaintiffs have been injured, will continue to be injured in amounts not yet ascertained, and will be irreparably injured, entitling Plaintiffs to the

remedies provided for in 15 U.S.C. §§ 1116 to 1118 of the Lanham Act.

## FIFTH CAUSE OF ACTION
### Deceptive Trade Acts and Practices – New York Gen. Business Law § 349

158. The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

159. The Defendants' statements described above were deceptive and directed to consumers.

160. The Defendants acts are misleading, stating directly to consumers that the Plaintiffs are "imposters" or otherwise engaging in illegal or deceptive conduct.

161. The Plaintiffs have been injured as a result of the Defendants' deceptive acts.

162. By reason of the foregoing, the Plaintiffs are entitled to recover damages from the Defendants in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### False Advertising – New York Gen. Business Law § 350

163. The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

164. The Defendants' false statement that the Plaintiffs were "imposters" or "posing" as PES Inc. across both their own and the Plaintiffs' social media accounts, including on YouTube, are commercial statements and/or advertisements directed to consumers.

165. The Defendants' statements were false and designed to mislead consumers regarding the Plaintiffs' business and trademark rights.

166. The Plaintiffs have been injured as a result of the Defendants' false advertising.

167. By reason of the foregoing, the Plaintiffs are entitled to recover damages from the Defendants in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
### Against Defendant Allen
### Defamation – New York Common Law

168. The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

169. Allen falsely stated in the February 6 Video, the title, and description of the video and in post or comments on the internet, including on the Plaintiffs' and the Defendants' social media pages, that the Plaintiffs are "imposters" and that they are "posing" as PES Inc.

170. Allen falsely stated in the February 6 Video that the Plaintiffs themselves are "unregistered"—not that their *trademarks* are unregistered—and thus falsely stated that the Plaintiffs are not authorized to do business or otherwise not in compliance with some legal or regulatory requirements.

171. Upon information and belief, the Defendants published false statements to YouTube, Facebook and perhaps other social media companies that PES LLC's accounts were fake, not connected with a real business, or otherwise created or used in contravention of the Defendants' trademark rights.

172. These statements were published to third parties across many social media platforms and accounts.

173. These statements were not rendered as statements of opinion, but rather as categorical fact.

174. Allen knew or should have known that these statements were false when there were made, and/or made them with the intent to injure the Plaintiffs.

175. The false statements were of a kind that tends to injure the Plaintiffs in their trade, business and/or profession.

176. The false statements state and/or imply that the Plaintiffs have engaged in misconduct,

4898-7294-0155, v. 24904-8502-8987, v. 34904-8502-8987, v. 1

deception or otherwise unauthorized or illegal acts, specifically with respect to consumers.

177. These statements were of a kind that harm the Plaintiff's professional, business and commercial reputation, and were specifically directed toward platforms where they would be seen by Plaintiffs' customers, employees, professional partners and the consuming public at large.

178. By reason of the foregoing, the Plaintiffs are entitled to recover damages from Defendant Allenin an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Against Defendant Allen**
**Defamation – New York common law**

179. The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

180. Allen falsely stated that Plaintiffs were found to be "liar[s]", or sanctioned under or otherwise found to have been in violation of Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

181. The Plaintiffs were not subject to a Fed. R. Civ. P. 11 motion in the Eastern District of California lawsuit.

182. The Plaintiffs were not sanctioned under Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

183. The Plaintiffs were not found by a Court to have violated Fed. R. Civ. P. 11 in the Eastern District of California lawsuit.

184. The Plaintiffs were never deemed "liars when in fact, Plaintiffs were not subject to a Rule 11 motion or sanctions and never held to have violated Rule 11, much less deemed "liars" by Chief Judge Mueller.

185. These statements were published to third parties across many social media platforms and accounts.

4898-7294-0155, v. 24904-8502-8987, v. 34904-8502-8987, v. 1

186.    These statements were not rendered as statements of opinion, but rather as categorical fact.

187.    Allen knew or should have known that these statements were false when there were made, and/or made them with the intent to injure the Plaintiffs.

188.    The false statements were of a kind that tends to injure the Plaintiffs in their trade, business and/or profession.

189.    These statements were of a kind that harm the Plaintiff's professional, business and commercial reputation.

190.    By reason of the foregoing, the Plaintiffs are entitled to recover damages from Defendant Allen in an amount to be determined at trial.

**NINTH FOURTH CAUSE OF ACTION**
**Cancellation of '685 Registration based on Likelihood of Confusion with the Plaintiffs'**
**Common Law marks – 15 U.S.C. §§ 1119 and 1052(d)**

191.114.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

192.115.    PHC is the owner of the PINNACLE family of trademarks, including PINNACLE INVESTMENTS, PINNACLE CAPITAL MANAGEMENT, PINNACLE SOLUTIONS, and PINNACLE EMPLOYEE SERVICES.

193.116.    PHC and its subsidiaries have used all of those trademarks in commerce continuously.

194.117.    PHC has used the PINNACLE family of trademarks prior to the Defendants' use of the confusingly similar trademark, PINNACLE EMPLOYEE SERVICES.

195.118.    PHC has used at least some of the foregoing marks individually prior to the Defendant's use of its mark.

196.119.    At the time of the Defendants' application to register the '685 Mark, PHC had acquired significant common law rights in and to the foregoing trademarks.

197.120.    At the time of Mr. Allen's application to register the '685 Mark, he knew of PHC's PINNACLE family of trademarks.

198.121.    At the time of Mr. Allen's application to register the '685 Mark, he knew of PES LLC's existence and use of the PINNACLE EMPLOYEE SERVICES trademark.

199.122.    The Plaintiffs' common law trademarks had priority over Mr. Allen's trademark at the time he filed to register the mark.

200.123.    The Defendants' mark so resembles the Plaintiffs' common law trademarks that it is likely to cause confusion, mistake or deception among consumers when used on or in connection with the Defendants' services.

201.124.    By reason of the foregoing, Plaintiffs request that the Court cancel the '685 Registration due to its likelihood to cause confusion with the Plaintiffs' common law trademarks, pursuant to 15 U.S.C. § 1052(d).

**TENTH FIFTH CAUSE OF ACTION**

**Cancellation of '685 Registration because Applicant was not the Rightful Owner of the Mark – 15 U.S.C. §§ 1119; 37 C.F.R. § 2.7(d); TMEP § 1201.02; § 309.03(c)(1)**

202.125.    The Plaintiffs repeat and reallege the allegations set forth in the prior paragraphs as if fully set forth herein.

203.126.    The application to register the '685 Mark listed Michael Allen as the owner of the mark. The PTO file history for the '685 Registration as of February 16, 2024 is attached here as **Exhibit FL**.

204.127.    Mr. Allen prosecuted the application as the purported owner of the mark and the registration was ultimately issued in Mr. Allen's name.

205.128.    Upon information and belief, Mr. Allen was not the owner of the mark at the time of the application.

4898-7294-0155, v. 24904-8502-8987, v. 34904-8502-8987, v. 1

206.129.    Upon information and belief, PES, Inc. was the owner of the trademark at the time of the application.

207.130.    This is reflected by the Assignment Agreement filed by Mr. Allen with the USPTO purporting to assign the '685 Registration to PES Inc.

208.131.    That document, rather than assigning anything, reflected that PES Inc. has been using the '685 Registration prior to the date of the application and that the mark's function as a brand identifier and repository of goodwill inured to PES Inc. as a corporate entity and not Mr. Allen as an individual.

209.132.    When an application is filed in the name of the wrong party, this defect cannot be cured by amendment or assignment. TMEP § 1201.02(b), 803.06; 37 C.F.R §2.7(d).

210.133.    As set forth in TMEP § 1201.02(c), "If the president of a corporation is identified as the owner of the mark when in fact the corporation owns the mark, and there is no inconsistency in the original application between the owner name and the entity type (such as a reference to a corporation in the entity section of the application), the application is void as filed because the applicant is not the owner of the mark."

211.134.    The application to register the '685 Registration listed Michael Allen not as the Chief Executive Officer or another corporate representative of the corporate entity that owned the trademark, but rather solely as the owner in his individual capacity.

212.135.    Because PES Inc., and not Michael Allen as an individual, was the owner of the trademark at the time of the application, the application to register the mark was void ab initio and the '685 Registration must be cancelled.

**PRAYER FOR RELIEF**

**Wherefore**, Plaintiffs PINNACLE HOLDING COMPANY, LLC and PINNACLE EMPLOYEE

4898-7294-0155, v. 24904-8502-8987, v. 34904-8502-8987, v. 1

SERVICES, LLC, prays for relief as follows:

a. An order granting an injunction against the Defendants, their parent companies, subsidiaries, related companiesy, and all persons or entities acting on their behalf, from using the words PINNACLE or PINNACLE EMPLOYEE SERVICES or any similar mark that is likely to violate the Plaintiffs' common law rights as set forth in this Second Amended Complaint;

b. An order directing the Defendants to account for and pay over to the Plaintiffs all gains, profits, and advantages related from the sale of goods and services in connection with the infringingement marks;

b. An order directing the Defendants to

i. Permanently delete the defamatory videos referenced herein from (a) YouTube, PES, Inc.'s website, (b) all social media accounts controlled or operated by Michael Allen and/or PES, Inc., and (c) anywhere else that it has been posted or disseminated;

ii. Permanently delete all posts, articles, comments and all other online or print publications referring to PES, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their agents, employees or representatives;

iii. Contact all third parties to which the Defendants have made complaints regarding the Plaintiffs' use of PINNACLE and/or PINNACLE EMPLOYEE SERVICES, and withdraw those complaints, and request that all of the Plaintiffs' accounts and activities be restored;

iv. Permanently refrain from making defamatory statements about PES, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their agents, employees or representatives;

v. Permanently refrain from taking any steps to interfere with, render complaints against, demand the takedown of or otherwise affect any website or social media account of PES, LLC, Pinnacle Holding Company, Pinnacle Investments, or any of their agents, employees or representatives;

c. An order providing that upon the Plaintiffs' request, those with notice of the order, including third party social media providers, shall within seven (7) calendar days after receipt of such

~~notice, reinstate any accounts, postings, and related material that was previously removed due to facts or complaints related to the order, including but not limited to complaints by the Defendants.~~

~~d.   An order awarding actual damages suspected by the Plaintiffs as a consequence of the Defendants' conduct, including the costs of addressing and attempting to mitigate the Defendant's defamatory statements and false advertisements;~~

~~e.~~c. An order directing the United States Patent and Trademark Office to cancel the '685 Registration, or in the alternative, to amend the registration to cover only geographic areas not covered by the Plaintiff's common law rights;

~~f.~~d. Judgment that the Plaintiffs do not infringe any trademark right of the Defendants, and that no right of the Defendants prevents the Plaintiffs from using the trademark PINNACLE EMPLOYEE SERVICES throughout the United States, or in the alternative east of the Mississippi river, or in the second alternative in the State of New York; and

~~g.~~e. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated**:    ~~June 7, 2024~~November 21, 2025            **HANCOCK ESTABROOK, LLP**

By:_____
James P. Youngs, Esq.,
Bar Roll No. 515029
Amanda C. Nardozza, Esq.
*Attorneys for Plaintiffs*
1800 AXA Tower I
100 Madison St.
Syracuse, NY 13202
Tel: (315) 565-4558
*jyoungs@hancocklaw.com*

4898-7294-0155, v. 2~~4904-8502-8987, v. 3~~4904-8502-8987, v. 1

# EXHIBIT A

# United States of America
## United States Patent and Trademark Office

## PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen  (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020







Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for  Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO.  To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT B

 **KROGH & DECKER, LLP**

ATTORNEYS AT LAW

**Via Overnight Mail**

April 21, 2022

Gregg A. Kidd
Eric D. Krouse
Pinnacle Holding Company, LLC
5845 Widewaters Parkway, Suite 300
East Syracuse, NY 13057

> **Re:    Cease and Desist/Trademark Infringement**
> **Pinnacle Employee Services**

Dear Messrs. Kidd and Krouse:

Our firm represents Pinnacle Employee Services, Inc. ("Pinnacle"), a California corporation, and Michael Allen, the Chief Executive Officer and owner of Pinnacle. Please direct any future communications for our clients to our office.  The purpose of this letter is to demand that Pinnacle Holding Company ("PHC") immediately cease using the trade name "Pinnacle Employee Services" in conjunction with the offering, marketing, or provision of employee benefits services, payroll, and human resources.

Mr. Allen has owned and operated Pinnacle since 2013.  Pinnacle has at all times used the name "Pinnacle Employee Services" in conjunction with the services offered by our client:  employee benefit services, payroll, and human resources. Mr. Allen is the owner of U.S federal trademark no. 90376137 for "Pinnacle Employee Services", Class 35 for human resources consultation and payroll services.  A copy of Mr. Allen's federal trademark certificate is enclosed with this letter.  The date of first use of the name Pinnacle Employee Services was September 1, 2013.

It has come to our clients' attention that PHC is blatantly infringing on Mr. Allen's trademark by operating an identical business using the identical name. Specifically, PHC is operating a service business that offers the same services as Pinnacle: employee benefit services, payroll, and human resources. A review of each company's website and services shows that they are largely indistinguishable and any consumer looking to purchase the offered services would be unable to ascertain which company is which.

The use of a trademark in connection with the sale of a good or services constitutes unlawful infringement if it is likely to cause consumer confusion as to the source of those goods or as to the sponsorship or approval of such goods. In deciding whether consumers are likely to be confused, courts routinely look to the

| office | 916.498.9000 | 555 Capitol Mall, Suite 700 |
| fax | 916.498.9005 | Sacramento, CA 95814 |
| web | kroghdecker.com | |

Gregg A. Kidd
Eric D. Krouse
April 21, 2022
Page 2 of 3

following factors: (1) the strength of the mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the similarity of marketing channels used; (6) the degree of caution exercised by the typical purchaser; (7) the defendant's intent; (8) Likelihood of expansion. Polaroid Corp. v. Polarad Elect. Corp., 287 F.2d 492 (2d Cir.) (1961). See also 15 U.S.C. §§ 1114, 1125 [If a party owns the rights to a particular trademark, that party can sue subsequent parties for trademark infringement].

Analysis of these factors lead to an overwhelming conclusion that PHC is unlawfully infringing on Pinnacle's federal trademark:

(1) "Pinnacle Employee Services" is a suggestive mark. "Pinnacle" is an arbitrary word and has no connection to employee services. "Employee services" is suggestive as it does not describe the specific services offered by our clients'. The mark is entitled to protection. Further, Pinnacle has worked with hundreds of companies in multiple states, and our client's name and reputation are well-known.

(2) The services offered by each company are identical. This factor heavily weighs in favor of our clients, and caselaw has repeatedly held that if the products compete directly and the marks are sufficiently similar, then confusion is considered likely.

(3) The names used by each company are identical, meaning confusing is very likely. This factor weighs heavily in favor of our clients.

(4) Our client has received multiple telephone calls from clients looking for PHC, including individuals from Supercuts. It is strongly suspected that PHC has also received communications from Pinnacle's clients confused between the two companies.

(5) Both companies have a heavy internet presence, and as stated above the two websites present identical companies to consumers. Both companies also operate throughout the U.S as Pinnacle operated in multiple states other than California. Competition between each company is likely. Confusion is also likely from this factor.

(6) Clients seeking payroll or human resources services are likely to seek out information based on an internet search. There is insufficient information to distinguish between the two companies without investigation that consumers of the services are unlikely to engage in. It is highly probable that typical consumers would be confused.

(7) PHC is undoubtedly aware of Pinnacle and Pinnacle's use of the trade name "Pinnacle Employee Services" as an internet search would easily uncover our client's business and services. Moreover, a USPTO trademark search would locate their federal trademark. The fact PHC is continuing to infringe on Pinnacle's trademark is evidence of bad faith.

(8) As indicated above, Pinnacle has clients in multiple states and offers services throughout the U.S. As both companies grow it is very likely that they will continue to expand their customer base such that consumer confusion becomes even more likely.

Gregg A. Kidd
Eric D. Krouse
April 21, 2022
Page 3 of 3

<u>Accordingly, this is a formal demand that no later than seven (7) days from the date of this letter that PHC cease using the name "Pinnacle Employee Services" in any manner.</u>  At a minimum, this will require PHC to remove the infringing name from its website, social media, client and customer communications, information and portals, and any marketing or advertising.

If PHC does not stop using the infringing name Pinnacle will have no choice but to file litigation in California against PHC and move to obtain prompt injunctive relief preventing use of our client's trademarked name.  If litigation is necessary, our client will also seek to recover all available damages including disgorgement of PHC's profits during the period of unlawful use of the name.  See Romag Fasteners, Inc. v. Fossil Inc. (590 US (2020) [Disgorgement of defendant's profits available without showing of willful infringement].  Additionally, Pinnacle will seek recovery of any attorney's fees and costs expended given the clear evidence PHC is copying Pinnacle's exact name and business.  Lanham Act §1117(a).

The only alternative our clients are willing to entertain other than complete cessation of use of the infringing name would be a buy-out of Pinnacle's name and trademark rights by PHC.  In that regard, Pinnacle has spent nearly a decade building its business, and its trade name is incredibly valuable to our client.  If PHC is inclined to negotiate a purchase any offer would need to acknowledge this fact.

If you would like to discuss any of these issues do not hesitate to contact me.

Sincerely,

*Derek Decker*

DEREK C.DECKER

DCD:cs
Enclosures


cc: client
     file

# United States of America
## United States Patent and Trademark Office

# PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen  (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT C

TRADEMARK,CIVIL

## U.S. District Court
## Eastern District of California – Live System (Sacramento)
## CIVIL DOCKET FOR CASE #: 2:22–cv–01367–CKD

| | |
|---|---|
| Pinnacle Employee Services, Inc., et al, v. Pinnacle Holding Co., LLC | Date Filed: 08/01/2022 |
| | Jury Demand: Plaintiff |
| Assigned to: Magistrate Judge Carolyn K. Delaney | Nature of Suit: 840 Trademark |
| Cause: 15:44 Trademark Infringement | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Pinnacle Employee Services, Inc.**<br>*a California Corporation* | represented by | **Cagil Arel**<br>Krogh & Decker, LLP<br>555 Capitol Mall<br>Ste 700<br>Sacramento, CA 95814<br>415–579–8796<br>Email: cagilarel@kroghdecker.com<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Michael Allen**<br>*an individual* | represented by | **Cagil Arel**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

**Pinnacle Holding Company, LLC**
*a Delaware Limited Liability Company*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2022 | 1 | COMPLAINT against All Defendants by Pinnacle Employee Services, Inc., Michael Allen. Attorney Arel, Cagil added. (Filing fee $ 402, receipt number ACAEDC–10358517) (Attachments: # 1 Exhibits, # 2 Civil Cover Sheet)(Arel, Cagil) (Entered: 08/01/2022) |
| 08/02/2022 | 2 | SUMMONS ISSUED as to *Pinnacle Holding Company, LLC* with answer to complaint due within *21* days. Attorney *Cagil Arel* *Krogh & Decker, LLP* *555 Capitol Mall, Ste 700* *Sacramento, CA 95814*. (Rodriguez, E) (Entered: 08/02/2022) |
| 08/02/2022 | 3 | TRADEMARK NEW CASE DOCUMENTS ISSUED as to Trademark #1:* Reg.No.6,696,685 * * 04/12/2022 * * Michael Allen * ; copy of Complaint and Trademark Report emailed to U.S. Office of Patents and Trademarks. (Attachments: # 1 Consent Form, # 2 Trademark Report, # 3 VDRP) (Rodriguez, E) (Entered: 08/02/2022) |

**KROGH & DECKER, LLP**
DEREK C. DECKER, SBN 232243
    *derekdecker@kroghdecker.com*
ÇAĞIL AREL, SBN 333564
    *cagilarel@kroghecker.com*
555 Capitol Mall, Suite 700
Sacramento, California 95814
Telephone: 916.498.9000
Facsimile: 916.498.9005

Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, Inc.
MICHAEL ALLEN

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pinnacle Employee Services, Inc., a California Corporation; Michael Allen, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Pinnacle Holding Company, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No.: _____<br><br>**COMPLAINT**<br><br>**(1) Federal Trademark Infringement 15 U.S.C. §1114;**<br><br>**(2) Federal Unfair Competition and False Designation of Origin 15 U.S.C. §1125(a);**<br><br>**(3) Violation of Anti-Cybersquatting Consumer Protection Act 15 U.S.C. §1125(d)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs PINNACLE EMPLOYEE SERVICES, INC., and MICHAEL ALLEN (collectively "Pinnacle"), by and through counsel, hereby bring the present action against Defendant PINNACLE HOLDING COMPANY, LLC ("Defendant") and allege, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

**Preliminary Statement**

1.      This is an action for trademark infringement under Section 32 (1) of the Lanham Act, 15 U.S.C., Section 1114; unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a); and violation of the



1
**COMPLAINT**

Anti-Cybersquatting Consumer Protection Act under 15 U.S.C. Section 1125 against Defendant to protect the rights and substantial goodwill of Pinnacle's federally-registered trademark PINNACLE EMPLOYEE SERVICES.

2.      Pinnacle's trademark PINNACLE EMPLOYEE SERVICES (the "Pinnacle Trademark") is on the principal register of the United States Patent and Trademark Office in connection with Pinnacle's business of offering employee benefits, human resources assistance, and payroll preparation services. The Pinnacle Trademark has a registration that is valid, subsisting, and has never been canceled.

3.      Despite Pinnacle's established rights, Defendant adopted and continues to make use of the Pinnacle Trademark in a manner that is identical and confusingly similar, specifically in offering the same class of goods and services as Pinnacle and using the Pinnacle Trademark in a domain name without Pinnacle's authorization.

4.      By exploiting Pinnacle's rights and creating customer confusion, Defendant has acquired and continues to gain unfair income, profits, and goodwill. These actions have harmed Pinnacle and still continue to cause irreparable injury to Pinnacle in both the goodwill of business and reputation.

5.      Pinnacle is seeking damages for the injuries Defendant caused; an injunction to enjoin Defendant from further violating and exploiting Pinnacle's intellectual property rights; and other relief as deemed appropriated by this Court.

**Jurisdiction And Venue**

6.      This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332(a), and 1338(a). The Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because plaintiff Pinnacle Employee Services Inc. is a citizen of the state of California, plaintiff Michael Allen is a citizen of the state of California, while defendant Pinnacle Holding Company, LLC is a citizen of the state of Delaware, and the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over Defendant because Defendant

2
**COMPLAINT**

does sufficient business in California and this judicial district by directly targeting its business activities towards consumers in the United States and California citizens through direct customer relationships and contracts, solicitation for business opportunities, and at least one, fully interactive website and a smartphone application.

8.     Specifically, Defendant provides detailed and personalized services in the United States and California by managing its customers' businesses and employees directly from the customer's work site and by assuming its customers' contractual and legal rights and responsibilities under the laws of the state where the customer's business is located.

9.     By conducting business in the State of California, Defendant purposefully avails itself to California laws through continuous and systemic contacts, or otherwise intentionally makes its services available in California, so as to render jurisdiction over itself by this Court consistent with traditional notions of fair play and substantial justice.

10.     Upon information and belief, Defendant remains in direct contact with customers located in California. Defendant has and continues to commit tortious acts in California, is engaging in interstate commerce, and has wrongfully caused Pinnacle substantial injury in the State of California.

11.     Venue in this judicial district is proper under 28 U.S.C. §§1391(b) and (c), and 1400(a), in that a substantial part of the events giving rise to Pinnacle's claims occurred in this judicial district. The services at issue are available for sale in this district and therefore Defendant resides and may be found in this judicial district within the meaning of 28 U.S.C. § 1391(c).

**Parties**

12.     Plaintiff Pinnacle Employee Services, Inc., a corporation formed under the laws of California, and Plaintiff Michael Allen serves as its chief corporate officer and president. Plaintiffs (collectively "Pinnacle") are one of the leaders in the employee benefits industry in Northern California, and provide payroll services and human resources support to many business owners. Pinnacle is the registered owner of the

3
**COMPLAINT**

Pinnacle Trademark.

13. Upon information and belief, Defendant Pinnacle Holding Company, LLC is a limited liability company formed under the laws of Delaware and uses the Pinnacle Trademark in its entirety; "Pinnacle Employee Services" in connection with its business of providing employee benefits and payroll services.

14. Defendant belongs to an unknown makeup of family companies who own and/or operate at least one employee benefits services entity. Pinnacle is informed and believes and based thereon alleges that Defendant operates one or more business entities to provide the same and/or substantially similar services under the Pinnacle Trademark. Defendant's method of interconnecting their company networks makes it impossible for Pinnacle to discover Defendant's true identities and the exact operations. In the event that Defendant provides additional credible information regarding their identities, Pinnacle will take appropriate steps to amend the Complaint.

**Allegations Common to All Claims for Relief**

**The Pinnacle Trademark**

15. Plaintiff Michael Allen ("Allen") is the owner and registrant of the valid and subsisting United States trademark, the Pinnacle Trademark, consisting of the phrase "PINNACLE EMPLOYEE SERVICES", Registration No. 6,696,685 on Principal Register in the United States Patent and Trademark Office ("USPTO,") under which it provides human resources consultation, and payroll and employee benefits preparation. Attached as **Exhibit 1** is a true and correct copy of the registration certificate for the Pinnacle Trademark, as issued by the United States Patent and Trademark Office.

16. Plaintiff Pinnacle Employee Services, Inc. was assigned the Pinnacle Trademark by Plaintiff Allen on or around April 12, 2022; the assignment is recorded with the United States Patent and Trademark Office, a true and correct copy of which is attached herein as **Exhibit 2**.

17. The U.S. registration for the Pinnacle Trademark by Pinnacle, with its registration certificate shown in **Exhibit 1**, is valid, subsisting, in full force and effect. The

4
**COMPLAINT**

registration for the Pinnacle Trademark constitutes prima facie evidence of its validity and of Pinnacle's exclusive right to use the Pinnacle Trademark pursuant to 15 U.S.C. § 1057(b).

18.    Pinnacle has used the Pinnacle Trademark in commerce continuously since the date of September 1, 2013, in connection with the offering, marketing, advertising, and promotion of comprehensive and cost-effective human resources assistance and consultation, payroll, and benefits services to small and medium-sized businesses. As a result of this long-standing use, strong common law trademark rights have amassed in the Pinnacle Trademark. Pinnacle's use of the mark has also built substantial goodwill in and to the Pinnacle Trademark, which has made the Pinnacle Trademark a valuable asset of Pinnacle. Pinnacle uses the Pinnacle Trademark in advertising and promoting its business on online platforms. Attached hereto as **Exhibit 3** is a representative sample of the Pinnacle Trademark, showing Pinnacle's use of the Pinnacle Trademark in connection with employee benefits services.

19.    Pinnacle has invested significant time, energy, and money in advertising, promoting and selling services featuring the Pinnacle Trademark, as well as ensuring the high quality of services offered under the Pinnacle Trademark. Pinnacle has provided its comprehensive employee benefits services over the years to minimize the administrative burden on business owners across the entire spectrum of the matters of payroll, tax, human resources support, and benefits, and also to assist businesses with increased compliance requirements resulting from the rapidly evolving legislation. The intuitive and modern approach of Pinnacle has made Pinnacle a commercial success within the employee benefits industry. The goodwill associated with Pinnacle's brand and the Pinnacle Trademark is of incalculable and inestimable value to Pinnacle.

**Defendant's Unlawful Conduct and Infringement of the Pinnacle Trademark**

20.    Pinnacle's modern approach and success in assisting businesses with their employees have resulted in significant popularity. Due to the administrative and documentary nature of employee management, most of the services sold, specifically



5
**COMPLAINT**

the services pertaining to payroll, are typically provided through online platforms. As a result, Pinnacle regularly investigates suspicious internet activity to protect the Pinnacle Trademark and the goodwill of Pinnacle's business.

21. Specifically, Pinnacle has identified Defendant as a fully interactive, e-commerce service provider, offering the exact same employee benefits, payroll, and human resources assistance related services on online platforms under the Pinnacle Trademark and using a domain name that is identical and therefore confusingly similar to the exact makeup of the Pinnacle Trademark.

22. Pinnacle discovered the unauthorized use of Defendant's use of Pinnacle's Pinnacle Trademark within the content, text, and/or meta tags of its internet platforms to attract various search engines online relevant to consumer searches for employee and payroll management.

23. Defendant has never been authorized by Pinnacle to use the Pinnacle Trademark, or designation, or any imitation thereof, in any way.

### Defendant's Use of the Domain Name

24. Defendant facilitates the sales of its services by using the Pinnacle Trademark and the domain name "PinnacleEmployeeServices.com" (the "Domain Name" or the "Infringing Domain Name"), which is confusingly similar and entirely identical to the Pinnacle Trademark. Defendant advertises and offers Defendant's services using the Pinnacle Trademark on the Domain Name without authorization, a sample of which is attached hereto as **Exhibit 4**.

25. Defendant's business and the Domain Name appear to unknowing customers to be authorized providers of the employee benefits services offered by Pinnacle. The internet website operated under the Domain Name by Defendant appears sophisticated and accepts customer contact and sign-up, and upon information and belief, the option to tender direct payment to provide such services within the website. Further, Defendant operates a smartphone application, visible nationwide, which is advertised by Defendant as providing direct access to Defendant and its services from

6
**COMPLAINT**

the customer's physical location.

26. Although the WHOIS record does not disclose the identity of the Domain Name registrant, Pinnacle was able to identify Defendant as the party in control of the Domain Name by the information available on the websites used by Defendant and/or its affiliates.

27. Pinnacle has notified Defendant of Defendant's infringement and unlawful use of the Pinnacle Trademark and the Domain Name on numerous occasions. Defendant refused to settle the matter amicably and since then, has continued to make use of Pinnacle's registered federal trademark, and continues to do so.

28. The acts of Defendant constitute a willful infringement of the registered Pinnacle Trademark in violation of 15 U.S.C. § 1114, constitute an infringement of Pinnacle's trademark, and constitute a violation of the federal trademark laws.

29. Pinnacle's rights precede Defendant's any claim over the Pinnacle Trademark in priority of both registration and use. Pinnacle owns a valid and active federal registration for the Pinnacle Trademark. Defendant does not. However, Defendant concurrently employs and benefits from the Pinnacle Trademark, and even uses the complete and identical terms contained in the Pinnacle Trademark, PINNACLE EMPLOYEE SERVICES, to provide services virtually identical to those already being provided by Pinnacle under the Pinnacle Trademark.

30. Despite Pinnacle's enforcement of its federal trademark, Defendant's operations provide goods and/or services that are directly related and encompass the same services provided by Pinnacle. Defendant's operations use the same method of providing direct access to payroll on-site of the customer, the same personalized-to-customer benefits services, the same methods of an online portal for payment and account information, the same compliance assistance, and most importantly, the same wording of the Pinnacle Trademark. The relatedness of Defendant's operations to the services offered by Pinnacle suggests to the public that the services are offered by and

**COMPLAINT**

come from a common source –a conclusion which is incorrect and harmful to Pinnacle's business and goodwill of the Pinnacle Trademark.

31. Defendant's unauthorized use of the Pinnacle Trademark in connection with the advertising, promotion, offering, and performing of employee benefits services in the United States, including California, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Pinnacle.

## COUNT I

## Federal Trademark Infringement (15 U.S.C. §1114)

32. Pinnacle hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33. This is a trademark infringement action against Defendant based on their unauthorized use in commerce of the federally registered Pinnacle Trademark in connection with the sale of the same type of services offered by Pinnacle.

34. Defendant has sold, offered to sell, marketed, advertised, and is still selling, offering to sell, marketing, and advertising employee benefits and payroll services using Pinnacle's Pinnacle Trademark without Pinnacle's permission.

35. Pinnacle is the exclusive owner of the Pinnacle Trademark. Pinnacle's United States Registration for the Pinnacle Trademark is in full force and effect.

36. Defendant has knowledge of Pinnacle's rights in the Pinnacle Trademark, and is willfully infringing and intentionally using the Pinnacle Trademark to offer the same class of services as Pinnacle. Defendant's willful, intentional and unauthorized use of the Pinnacle Trademark Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin of the services provided by Pinnacle among the general public and further enables Defendant to re-direct the stream of commerce to its own business by the unlawful use of the Pinnacle Trademark. These actions have caused and continue to cause injury to Pinnacle.

37. Defendant's use of the Pinnacle Trademark to offer confusingly similar services represents Defendant's services as emanating from or being authorized by

8
**COMPLAINT**

Pinnacle and places beyond Pinnacle's control the quality of services bearing the Pinnacle Trademark.

38.     At all relevant times, Defendant had actual and direct knowledge of Pinnacle's ownership and registration of the Pinnacle Trademark. Defendant's conduct is therefore willful and reflects Defendant's intent to exploit the goodwill and brand recognition associated with the Pinnacle Trademark.

39.     Defendant's activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     As a result of Defendant's wrongful conduct, Pinnacle has suffered, and will continue to suffer, substantial damages. Under 15 U.S.C. § 117(a), Pinnacle is entitled to recover its damages, which include the profits incurred by Defendant as a result of the wrongful use of the Pinnacle Trademark.

41.     Defendant's conduct entitles Pinnacle to injunctive relief under 15 U.S.C. § 116(a). Pinnacle's remedy at law is not adequate as Defendant's infringement of Pinnacle's federally protected trademark constitutes harm to Pinnacle such that Pinnacle cannot recover in full by a monetary award alone –if Defendant's unauthorized use of the Pinnacle Trademark were to persist, it would cause further confusion to the general public as to the source, origin, or authenticity of the infringing services. Defendant's wrongful conduct, and the resulting damage to Pinnacle still continue on this date.

42.     Pinnacle is further entitled to recover its attorneys' fees and costs of suit under 15 U.S.C. § 1117.

## COUNT II

**Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))**

43.     Pinnacle hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     Defendant's foregoing wrongful acts constitute unfair competition in violation of 15 U.S.C. § 1125(a). Defendant's use of the confusingly similar Pinnacle name

9

**COMPLAINT**

has caused and is likely to cause, a likelihood of confusion, deception, and mistake by creating the false and misleading impression that Defendant's services are provided by Pinnacle, that Defendant is affiliated to Pinnacle, and/or that Defendant has authorization by Pinnacle.

45.    By using the Pinnacle Trademark in connection with its employee benefits services, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the employee benefits services offered by Defendant under Pinnacle's Mark with intentional, willful and malicious intent.

46.    Defendant's false designation of origin and misrepresentation of fact as to the origin of services to the general public involves the use of federally registered Pinnacle's Mark and therefore, is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47.    Defendant's conduct has caused and is likely to continue causing, substantial injury to Pinnacle. Pinnacle is entitled to injunctive relief and to recover Defendant's profits, actual damages, and reasonable attorneys' fees under 15 U.S.C. §§ l125(a) and 1117.

## COUNT III

### Violation of Anti-Cybersquatting Consumer Protection Act (15 U.S.C. §1125(d))

48.    Pinnacle hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

49.    Upon information and belief, Defendant has registered, trafficked in, and used the Domain Name with the registrar Network Solutions, LLC. The Domain Name consists entirely of the Pinnacle Trademark word by word, and therefore, it is identical to Pinnacle's federally registered intellectual property.

50.    Without Pinnacle's authorization and, upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in the Pinnacle, Defendant operated a live website at the Domain Name, which remains active as of the filing of this Complaint. Attached hereto as **Exhibit 4** is the true and correct screenshot of the website

Defendant maintains at the Domain Name as of July 31, 2022.

51.     Defendant has engaged in such actions with a bad faith intent to profit from the Pinnacle Trademark. Such bad faith is demonstrated, in part, by the fact that, prior to Pinnacle filing this action, Pinnacle informed Defendant that the Domain Name consists entirely of Pinnacle's registered trademark and that Defendant was not permitted to use the Pinnacle Trademark in any manner. Defendant did not cease using the Domain Name. At present, the Domain Name points to Defendant's website that makes unlawful use of the Pinnacle Trademark, and provides services that are competitive with Pinnacle's services in connection with the Pinnacle Trademark.

52.     Upon information and belief, Defendant has no rights in or to any trademark or phrase contained in the Domain Name, and had no legitimate purpose for the continued use of the Domain Name.

53.     The Infringing Domain Name was confusingly similar, if not identical, to Pinnacle Trademark at the time Defendant registered the domain name, and it remains so today.

54.     The Infringing Domain Name does not resolve to any website or websites owned by Pinnacle. Rather, it resolves to a website or websites controlled by Defendant, who profits from its use.

55.     Defendant did not believe and could not reasonably believe its use of the Infringing Domain Name constituted or constitutes fair use or was or is otherwise lawful.

56.     Because the Infringing Domain Name is confusingly similar and identical to the Pinnacle Trademark, and the website Defendant operates at the Infringing Domain Name provides, promotes, and depicts goods and services that are identical and related to Pinnacle's services under the Pinnacle Trademark,  consumers are likely to be confused into thinking that Pinnacle authorized, approved, or is affiliated or connected with Defendant's website and the services offered on the Infringing Domain Name, when that is not the case.

57.     Upon information and belief, a significant amount of internet traffic



11
**COMPLAINT**

pursuant to a search of the Pinnacle Trademark "Pinnacle Employee Services" is directed to Defendant, enabling Defendant to profit from the intellectual property rights and goodwill established by Pinnacle. Defendant's unauthorized use of the Pinnacle Trademark and Infringing Domain Name carries a possibility of confusion in the marketplace and has likely caused actual consumer confusion.

58. Upon information and belief, Defendant's acts alleged herein are willful, with the deliberate intent to trade on the goodwill of the Pinnacle Trademark, cause confusion and deception online and in the marketplace, divert internet users looking for Pinnacle's website or Pinnacle's services under the Pinnacle Trademark to Defendant's website, and divert potential sales of Pinnacle's services to Defendant and third-parties from whom Defendant receives revenues.

59. As a result of Defendant's wrongful registration and use of the Infringing Domain Name, Pinnacle has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Pinnacle in its mark. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Pinnacle has no adequate remedy at law. Pinnacle will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct and orders that the infringing domain name be transferred to Pinnacle.

60. Pinnacle is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Name to Pinnacle or the cancellation of Defendant's registration of the Domain Name.

61. Pinnacle is further entitled to recover its damages and Defendant's profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Pinnacle is entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

62. Pinnacle is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

**COMPLAINT**

**PRAYER FOR RELIEF**

WHEREFORE, Pinnacle prays for judgment against Defendant as follows:

1) That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. Section 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(d);

2) Ordering Defendant, within ten (10) days of the entry of final judgment, upon Pinnacle's election, either transfer to Pinnacle or cancel the registration of the Domain Name and registrations of any other domain names owned or controlled by Defendant that are confusingly similar to the Pinnacle Trademark;

3) Defendant and its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. Using the Pinnacle Trademark in any manner in connection with the offering, marketing, advertising, promotion, and performance of any services pertaining to employee benefits, human resources, payroll management, and any related service thereof, that is not authorized by Pinnacle to be offered in connection with the Pinnacle Trademark;

    b. Using the Pinnacle Trademark or source designation of any kind in connection with Defendant's services that is likely to cause confusion, mistake, deception, or public misunderstanding that such services are produced or provided by Pinnacle, or are sponsored or authorized by Pinnacle, or are in any way connected or relate to Pinnacle;

    c. owning, registering, trafficking in, or otherwise using the Domain Name;

    d. further infringing the Pinnacle Trademark and damaging Pinnacle's goodwill;

    e. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (d);

    f. granting such other and further relief as the Court may deem just and

proper to prevent the public and trade from deriving the false impression that any website operated by or any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Pinnacle or constitute or are connected with Pinnacle's services.

4) Entry of an Order that, upon Pinnacle's request, those with notice of the injunction, including, without limitation, any online platforms, specifically but not limited to the Infringing Domain Name https://www.pinnacleemployeeservices.com/ shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the employee benefits services offered under the Pinnacle Trademark,

5) Awarding Pinnacle, upon Pinnacle's election, either:

    a.  an amount up to three times the amount of its actual damages and all of Defendant's profits realized by its wrongful acts alleged herein, enhanced as appropriate to compensate Pinnacle for the damages caused thereby, in accordance with 15 U.S.C. § 1117; or

    b.  maximum statutory damages in the amount of $100,000 for Defendant's violation of 15 U.S.C. § 1125(d), in accordance with 15 U.S.C. § 1117(d).

6) That Pinnacle be awarded all damages caused by the acts forming the basis of this Complaint,

7) That Defendant be required to pay Pinnacle the costs and reasonable attorneys' fees incurred by Pinnacle in this action,

8) For punitive and exemplary damages according to proof and the time of trial and in such sum as the trier of fact deems to be appropriate,

9) That Pinnacle be awarded prejudgment and post-judgment interest on all monetary awards; and

14

**COMPLAINT**

10) Pinnacle to be granted an award of any and all other further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action.

DATED: August 1, 2022                    Respectfully submitted,

**KROGH & DECKER, LLP**

By: _____

DEREK C. DECKER
ÇAĞIL AREL
Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, INC.
MICHAEL ALLEN



15
**COMPLAINT**

# EXHIBIT 1

# United States of America

## United States Patent and Trademark Office

## PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen  (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

# EXHIBIT 2

## TRADEMARK ASSIGNMENT AGREEMENT

This Trademark Assignment Agreement ("Trademark Assignment"), dated as of April 12, 2022, is made by MICHAEL ALLEN ("Assignor"), an individual; and PINNACLE EMPLOYEE SERVICES, INC., a California Corporation, located at 2377 Gold Meadow Way, Ste 100 Gold River, CA 95670 ("Assignee.") Assignor and Assignee may collectively be referred to as Parties.

WHEREAS, Assignor owns the entire right, title, and interest in and to certain trademarks, registered and unregistered, filed with the United States Trademark Office ("USPTO") as listed in attached **Schedule A** (the "Assigned Trademarks;")

WHEREAS, Assignor is the Chief Executive Officer of the Assignee;

WHEREAS, as of the date of this Trademark Assignment, Assignee has been and continues to conduct business and operations in connection with the name "Pinnacle Employee Services" with consistency, and as a result, has inured certain past, present, and future intellectual property rights, trademark rights, and the associated goodwill throughout the world, whether arising under federal law, state law, common law, foreign law or otherwise;

WHEREAS, Assignor acquired the right, title, and interest in the Assigned Trademark, as registered with the USPTO and identified further in **Schedule A** with the intent to provide for the federal protection and registration of the Assignee's use of the name "Pinnacle Employee Services;"

WHEREAS, Assignor now wishes to convey, transfer, and assign to Assignee the Assigned Trademarks of Assignor, and has agreed to execute and deliver this Trademark Assignment, for recording with the United States Patent and Trademark Office;

WHEREAS, Assignee desires to acquire all of Assignor's right, title, and interest, in and to the Assigned Trademarks together with all the goodwill of the business symbolized thereby, and Assignor desires to assign all such right, title, and interest in and to the Assigned Trademarks to Assignee, upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      **Assignment.** For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably conveys, transfers, and assigns to Assignee, and Assignee hereby accepts, all of Assignor's right, title, and interest in and to the following:

   a.    The trademark registrations and trademark applications set forth in **Schedule A** hereto and all issuances, extensions, and renewals thereof, collectively the Assigned

Trademarks, together with the goodwill of the business connected with the use of, and symbolized by, the Assigned Trademarks;

b.    All rights of any kind whatsoever of Assignor accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world;

c.    Any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; and

d.    Any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

2.    **Recordation and Further Actions.** Assignor hereby authorizes the Commissioner for Trademarks in the United States Patent and Trademark Office, and the officials of corresponding entities or agencies in any applicable jurisdictions to record and register this Trademark Assignment upon request by Assignee. Following the date hereof, Assignor shall take such steps and actions, and provide such cooperation and assistance to Assignee and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be necessary to effect, evidence, or perfect the assignment of the Assigned Trademarks to Assignee, or any assignee or successor thereto.

3.    **Representations and Warranties of Assignor.** Assignor represents and warrants to Assignee that the statements contained herein are true and correct as of the date hereof. For purposes of this section, "Assignor's knowledge," "knowledge of Assignor," and similar phrases shall mean the actual or constructive knowledge of Assignor himself or his authorized representative.

a.    **Authority of Assignor; Enforceability.** Assignor has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignor have been duly authorized by all necessary organizational action of Assignor, and when executed and delivered by both Parties, this Agreement will constitute a legal, valid, and binding obligation of Assignor, enforceable against Assignor in accordance with its terms and conditions.

b.    **No Conflicts; Consents.** The execution, delivery, and performance by Assignor of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

    i.    violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignor,

    ii.    violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation,

    iii.    conflict with, or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement or any of the Acquired Rights are subject, or

    iv.    result in the creation or imposition of any encumbrances on the Assigned Trademarks.

    v.    No consent, approval, waiver, or authorization is required to be obtained by Assignor from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignor of this Agreement, or to enable Assignee to register, own, use, and enforce the rights of the Assigned Trademarks.

c.    **Registrations and Applications.** Attached to this Trademark Assignment, **Schedule A** contains a correct, current and complete list of all registrations owned by Assignor in the Assigned Trademarks, specifying as to each, as applicable: the word mark and/or design, the record owner, the jurisdiction in which it has been granted or filed, the registration or application serial number, and the registration or application date. All required filings and fees related to the trademark registrations listed on **Schedule A** have been timely filed with and paid to the USPTO and other relevant governmental authorities and authorized registrars, and all such trademark registrations and applications have at all times been and remain in good standing. Assignor has provided Assignee with true and complete copies of all documents, certificates, correspondence, and other materials related to all such trademark registrations and applications.

d.    **Validity and Enforceability.** Assigned Trademarks are valid, subsisting, and enforceable in all applicable jurisdictions. No event or circumstance (including any failure to exercise adequate quality control or any assignment in gross without the accompanying goodwill) has occurred or exists that has resulted in, or would reasonably be expected to result in, the abandonment of any Assigned Trademarks.

4.    **Representations and Warranties of Assignee.** Assignee represents and warrants to Assignor that the statements contained in this Section are true and correct as of the date hereof.

a.    **Authority of Assignee; Enforceability.** Assignee has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignee have been duly authorized by all necessary organizational action of Assignee, and when executed and delivered by both parties, this

Agreement will constitute a legal, valid, and binding obligation of Assignee enforceable against Assignee in accordance with its terms and conditions.

b. **No Conflicts; Consents.** The execution, delivery, and performance by Assignee of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

    i.    violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignee,

    ii.    violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation, or

    iii.    conflict with or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement is subject.

    iv.    No consent, approval, waiver, or authorization is required to be obtained by Assignee from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignee of this Agreement.

5.    **Counterparts.** This Trademark Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Trademark Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Trademark Assignment.

6.    **Successors and Assigns.** This Trademark Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

7.    **Severability.** Any provision of this Trademark Assignment that is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions of this Trademark Assignment in such jurisdiction or rendering that or any other provision of this Assignment invalid, illegal or unenforceable in any other jurisdiction.

8.    **Governing Law.** This Trademark Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Trademark Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of California, without giving effect to any choice or conflict of law provision or rule of any other jurisdiction.

9.      **Amendment and Modification.** This Trademark Assignment may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto.

IN WITNESS WHEREOF, Parties has duly executed and delivered this Trademark Assignment as of the date first written above.

Sign.: _Michael Allen_

**ASSIGNOR**
MICHAEL ALLEN

Sign.: _Michael Allen_

**ASSIGNEE**
PINNACLE EMPLOYEE SERVICES, INC.,
a California Corporation

By:    MICHAEL ALLEN
Title:  CHIEF EXECUTIVE OFFICER

**TRADEMARK ASSIGNMENT AGREEMENT**
**SCHEDULE A**

| Mark | Place of Registration | Registration No. | Registration Date |
|---|---|---|---|
| PINNACLE EMPLOYEE SERVICES | UNITED STATES PATENT AND TRADEMARK OFFICE | 6,696,685 | April 12, 2022 |

| Type | Address | Registry | First Use in Commerce |
|---|---|---|---|
| Service Mark Class 35: Human resources consultation; Payroll preparation | 2377 Gold Meadow Way Ste 100 Gold River, CA 95670 | Principal | September 1, 2013 |

# EXHIBIT 3

`pinnaclehro.com/home`

# PINNACLE
## EMPLOYEE SERVICES

PAYCHECK LOGIN | HR LOGIN | PAYROLL LOGIN | 1-888-353-2976

| PAYROLL | HUMAN RESOURCES | EMPLOYEE SCREENING | ABOUT | SUPPORT |

FORMS | BLOG

Pinnacle Employee Services Human Resources, Payroll, Benefits

Copy link

PINNACLE
EMPLOYEE SERVICES

## A Full Service HR Provider

Pinnacle Employee Services is a full-service HR Management company. We are dedicated to assisting businesses with increased compliance requirements resulting from the rapidly evolving legislation. Our goal is to minimize your administrative burden across the entire spectrum of payroll, tax, HR and benefits, so that you can focus on running your business.

You will be impressed by how smoothly your payroll and HR functions will run when they are handled by Pinnacle. We provide the best-in class solutions that help you run your business better. These solutions allow you to focus on growing your business without the stressful and time consuming tasks of Payroll and Human Resource compliance.

With our cutting – edge technology, our services provide businesses an intuitive and comprehensive solution that delivers trouble free payroll services and strategic HR Outsourcing services. No matter what industry or size your business is, we have a solution for you.

To get started, contact Pinnacle Employee Services and we will put an action plan together to relieve you of those stressful and daunting payroll and human resource tasks.



–GET COMPLIANT DOWNLOAD OUR FREE–
### HR ASSESSMENT CHECKLIST
**DOWNLOAD NOW**

# EXHIBIT 4



## Owning a business shouldn't mean paying more for Employee Benefits, Payroll, and Human Resources tools.

We founded Pinnacle Employee Services to streamline these processes for you so you can focus on what's important: growing your business.



### Employee Administration

Our specialists pride themselves on becoming a trusted partner by learning your business, aligning with your goals, and being directly accessible.



### Payroll

You provide the wages and hours and we take care of the rest.



### Benefits

Strength in numbers through "economies of scale." We group small businesses together to get the purchasing power of a large group.



### Human Resources / Compliance

Fulltime HR presence at a fraction of the cost.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

**Pinnacle Employee Services, Inc. , et al. ,**                    **CASE NO:  2:22–CV–01367–CKD**

               vs.                                            **SUMMONS IN A CIVIL CASE**

**Pinnacle Holding Company, LLC ,**


TO:  **Pinnacle Holding Company, LLC**


Defendant's Address:



**YOU ARE HEREBY SUMMONED** and required to serve on:

> **Cagil Arel**
> **Krogh & Decker, LLP**
> **555 Capitol Mall, Ste 700**
> **Sacramento, CA 95814**

an answer to the complaint which is served on you with this summons, **within 21 days after service of this summons on you**, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.


**KEITH HOLLAND**
-------------------------------------
CLERK


**/s/  E. Rodriguez**
-------------------------------------
(By) DEPUTY CLERK



**ISSUED ON 2022–08–02 11:00:33**
**CLERK, USDC EDCA**

**RETURN OF SERVICE**

| Service of the Summons and complaint was made by me (1) | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of bode with a person of suitable age and discretion then residing therein.

☐ Name of person with whom the summons and complaint were left:_____

☐ Returned unexecuted:_____

_____

_____

☐ Other (specify) :_____

_____

_____

**STATEMENT OF SERVICE FEES**

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    _____          _____

Date                                              *Signature of Server*

_____

*Address of Server*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PINNACLE EMPLOYEE SERVICES, INC., ET AL.,** | No. **2:22−cv−01367−CKD** |
| Plaintiff, | INITIAL SCHEDULING ORDER, CASES ASSIGNED UNDER APP. A, SUB (M) |
| v. | |
| **PINNACLE HOLDING COMPANY, LLC,** | |
| Defendant(s). | |

This action has been assigned to a Magistrate Judge under the court's automated case assignment plan. See Local Rules, Appendix A, subsection (m).

Should the parties wish to consent to the jurisdiction of the Magistrate Judge for all purposes, including for the entry of final judgment, they may do so using the "Consent to Assignment or Request for Reassignment" form. See 28 U.S.C. § 636(c). There is no obligation to consent, and the judges will not be notified of a party's designation unless all parties have consented. See Fed. R. Civ. P. 73(b)(1). If any party requests reassignment to a United States District Judge, the Clerk of the Court will assign a random District Judge as presiding judge, with the Magistrate Judge continuing for those purposes anticipated by the Local Rules. Because a consent designation assists the court in determining how the action will be administratively processed, the parties are instructed to make their election promptly and notify the Clerk of the Court as soon as practicable.

/////

Under Federal Rule of Civil Procedure 16 and Local Rule 240, IT IS HEREBY ORDERED:

1. When serving process under Rule 4, plaintiff(s) shall provide each defendant with a copy of this order and the consent information attached to this order. Within 10 days after service of process on a given defendant, plaintiff(s) shall file a certificate stating that the defendant was served under Rule 4.[1]

2. **Each party shall return the "CONSENT / DECLINE OF U.S. MAGISTRATE JUDGE JURISDICTION" form to the Clerk within 90 days from the date the action was filed, or within 14 days of removal from state court.** The parties are strongly encouraged to submit their consent forms before the filing of any motion, so the motion can be noticed before the proper judge. Failure to do so may result in the court vacating a hearing or declining to resolve the motion until all consent designations have been submitted.

3. Within 30 days of the filing of an answer to the complaint, the parties shall file a joint status report addressing the relevant portions of Local Rule 240(a) to facilitate the entry of a pretrial scheduling order. Therein, the parties may propose dates for a hearing based on the court's available hearing dates or may agree the court can enter a scheduling order without the need for a hearing.

4. The parties are directed to the undersigned's Standing Orders, located on the court's web page at www.caed.uscourts.gov. The parties should take note of the page limits assigned to civil motions and discovery joint statements. The parties are responsible for knowing and complying with the court's standing orders.

5. The parties are reminded of their continuing duty to notify chambers immediately of any settlement or other disposition. See Local Rule 160.

 /s/  CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

[1]Alternatively, if this action was removed from state court, the removing party shall immediately serve upon each of the other parties, and upon all parties subsequently joined, a copy of this order, and shall file with the Clerk a notice that the parties have been served.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### 501 I STREET, SUITE 15–220
### SACRAMENTO, CA  95814

Chambers of
**KIMBERLY J. MUELLER**
Chief United States District Judge

(916) 930–4260

### Magistrate Judge Consent in Civil Cases: Know Your Rights!

Delay, congestion, uncertainty, and expense are concerns often expressed by civil litigants.  These concerns have reached a crisis level in the Eastern District of California.

Despite the population of our District nearly doubling since 1979 and a corresponding tremendous increase in case filings, for the past 40 years our court has only 6 authorized District Judgeship positions.  The U.S. Judicial Conference, the policy–making arm of the federal courts, has recommended for decades that Congress authorize between 5 and 11 new judgeships for this court. While the court is doing what it can to ensure Congress is fully informed regarding our current proposed allocation of 5 new judgeships, we cannot at this point say there is a realistic hope of new District Judgeships in the foreseeable future.

Compounding our challenges, while we have welcomed one new District Judge as of December 2021, we continue to have one vacancy among our 6 authorized judgeships.  The Sacramento Division has experienced a net loss of one District Judge's services, with Senior District Judge Garland E. Burrell's taking inactive senior status and District Judge Morrison C. England's taking active senior status and reducing his caseload.  Our Fresno courthouse has been even harder hit, with former Chief District Judge Lawrence J. O'Neill's taking inactive senior status at the end of January 2020; for nearly two years the Fresno District Court operated with only one active Article III judge to handle all criminal cases and a heavy share of civil cases, and one senior Article III judge who assists the court by taking a half civil caseload.  The Eastern District has been significantly congested for many years, consistently carrying average weighted caseloads equal or close to twice the national average for federal trial courts.  Given our current more dire circumstances, civil litigants are having to vie for less and less District Judge time and attention.  Civil litigants therefore may wish to consider consenting to Magistrate Judge jurisdiction, given that the court has a full complement of experienced Magistrate Judges available to preside to the full extent allowed by law.

The Magistrate Judge consent process can help bring about the "just, speedy, and inexpensive determination" of federal cases. Fed. R. Civ. P. 1.  Although their title has changed periodically, Magistrate Judges, as they currently are known, have had a role in the federal courts since passage of the Judiciary Act of 1789.  Over time, Congress has expanded and enhanced the position in the interests of maximizing judicial efficiency.  Specifically, Magistrate Judges are authorized "to conduct any or all proceedings in a jury or non–jury civil matter and order the entry of judgment in the case" with the consent of the parties. 28 U.S.C. § 636(c).  Consent can maximize access to the courts and ease court congestion through effective use of judicial resources.  It can provide numerous benefits to litigants including the prospect of an early and firm trial date, when District Judges may not be available to try a civil case given the need to prioritize felony criminal cases.

In civil cases, the assigned Magistrate Judge already is responsible for resolving discovery disputes, deciding other non–dispositive motions and in some instances handling pre–trial proceedings; as a result that judge may be intimately familiar with the case history.  Consenting in any civil case allows the Magistrate Judge to decide dispositive motions and preside over trial, and so can avoid the

uncertainty parties may face while waiting for the District Judge to identify time on his or her calendar for trial.  Just as with a judgment issued by a District Judge, a judgment issued by a Magistrate Judge to whom the parties in a civil case have consented is appealable directly to the Ninth Circuit Court of Appeals.

As their professional biographies posted on our court's website show, our Magistrate Judges are well–qualified to preside over the cases assigned them.  They are experienced, high–caliber judges with diverse experiences in civil and criminal litigation who have been selected on the merits, taking into account their education, experience, knowledge of the court system, personal attributes and other criteria.  Our Magistrate Judges are well–qualified to preside over the civil cases brought in our court.

To consent to magistrate judge jurisdiction, a party simply signs and files a consent form.  The form is available on the court's website, at this link:

http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/.

Parties may consent or withhold consent without any adverse consequences.  Once all parties to a case consent, then the assigned District Judge is notified and considers whether to approve the consent. Once the District Judge accepts, then the Magistrate Judge determines whether to accept consent jurisdiction, taking the opportunity to consider any conflicts or bases for recusal.

All litigants before the federal courts deserve justice delivered in a fair, prompt, and efficient manner. Our Magistrate Judges play a critical role in providing essential access to justice, particularly in our overburdened court. Consenting to Magistrate Judge jurisdiction in civil cases may represent one of the best ways to secure "just, speedy, and inexpensive determination" of your case, which is why we want to be sure you are fully aware of your right and ability to consent, and the means of doing so.

CHIEF UNITED STATES DISTRICT JUDGE

**NOTICE OF AVAILABILITY OF A MAGISTRATE JUDGE**

**TO EXERCISE JURISDICTION AND APPEAL INSTRUCTIONS**

You are hereby notified in accordance with 28 U.S.C §636(c), F.R.Civ.P.73 and Local Rule 305, the United States Magistrate Judges sitting in Sacramento and Fresno are available to exercise the court's case−dispositive jurisdiction and to conduct any or all case−dispositive proceedings in this action, including motions to dismiss, motions for summary judgment, a jury or non jury trial, and entry of a final judgment. Exercise of this jurisdiction by a Magistrate Judge is however, permitted only if all parties voluntarily consent. You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's case−dispositive jurisdiction from being exercised by a Magistrate Judge.

Any appeal from a judgment entered by a Magistrate Judge is taken directly to the United States Court of Appeals for the Ninth Circuit or, where appropriate, for the Federal Circuit in the same manner as an appeal from any other judgment of a District Court.

Whether or not the parties consent pursuant to 28 U.S.C. § 636(c), the assigned Magistrate Judge will hear all motions except those case−dispositive motions set forth in 28 U.S.C. § 636(b)(1)(A).

A copy of the Form for "Consent to / Decline of Jurisdiction of United States Magistrate Judge" is attached hereto for pro per use and attorney information. This form is available in fillable .pdf format on the court's web site at www.caed.uscourts.gov for all attorney ECF filers. This form may be filed through CM/ECF or by pro se litigants at the appropriate Clerk's Office location.

Office of the Clerk
501 I Street, Room 4−200
Sacramento, CA  95814

Office of the Clerk
2500 Tulare Street, Suite 1501
Fresno, CA  93721

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

**PINNACLE EMPLOYEE SERVICES, INC. , ET AL. ,**
          Plaintiff(s) / Petitioner(s),

          vs.

**PINNACLE HOLDING COMPANY, LLC ,**
          Defendant(s) / Respondent(s).

CASE NO:  **2:22–CV–01367–CKD**

**CONSENT / DECLINE OF U.S.
MAGISTRATE JUDGE JURISDICTION**

---

**IMPORTANT**

**IF YOU CHOOSE TO CONSENT OR DECLINE TO CONSENT TO JURISDICTION OF
A UNITED STATES MAGISTRATE JUDGE, CHECK AND SIGN THE APPROPRIATE
SECTION OF THIS FORM AND RETURN IT TO THE CLERK'S OFFICE.**

---

☐ **CONSENT TO JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of Title 28, U.S.C Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.

Date: _____     Signature: _____

                              Print Name: _____
                                    ( ) Plaintiff / Petitioner   ( ) Defendant / Respondent
                              Counsel for_____*

---

☐ **DECLINE OF JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but hereby declines to consent.

Date: _____     Signature: _____

                              Print Name: _____
                                    ( ) Plaintiff / Petitioner   ( ) Defendant / Respondent
                              Counsel for_____*

*If representing more than one party, counsel must indicate the name of each party responding.*

| TO:<br><br>**Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313–1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court Eastern California on the following  ☐ Patents or  ☑ Trademarks:

| DOCKET NO.<br>**2:22–CV–01367–CKD** | DATE FILED<br>**8/2/22** | **US District Court Eastern California**<br>**Sacramento** |
|---|---|---|
| PLAINTIFF<br><br>**PINNACLE EMPLOYEE SERVICES, INC., ET AL.,** | | DEFENDANT<br><br>**PINNACLE HOLDING COMPANY, LLC,** |
| **PATENT OR**<br>**TRADEMARK NO.** | **DATE OF PATENT**<br>**OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| **1** Reg.No.6,696,685 | April 12, 2022 | Michael Allen |
| **2** | | |
| **3** | | |
| **4** | | |
| **5** | | |

In the above–entitled case the following patents(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐  Amendment    ☐   Answer    ☐   Cross Bill    ☐   Other Pleadings | |
|---|---|---|
| **PATENT OR**<br>**TRADEMARK NO.** | **DATE OF PATENT**<br>**OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| **1** | | |
| **2** | | |
| **3** | | |
| **4** | | |
| **5** | | |

In the above–entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

## NOTICE OF AVAILABILITY

## VOLUNTARY DISPUTE RESOLUTION

Pursuant to the findings and directives of Congress in 28 U.S.C. §§ 651 *et seq.,* and in recognition of the economic burdens and delay in the resolution of disputes that can be imposed by full formal litigation, Local Rule 271 governs the referral of certain actions to the Voluntary Dispute Resolution Program ("VDRP") at the election of parties.  Plaintiff or removing party is to provide all other parties with copies of the notice at the time service is effected or, for parties already served, no more than fourteen (14) days after receiving notice from the Court.  After filing of the original complaint or removal action, any party who causes a new party to be joined in the action shall promptly serve a copy of the notice on the new party.

It is the Court's intention that the VDRP shall allow the participants to take advantage of a wide variety of alternative dispute resolution methods.   These methods may include, but are not limited to, mediation, negotiation, early neutral evaluation and settlement facilitation.   The specific method or methods employed will be determined by the Neutral and the parties.

**PLEASE TAKE NOTICE** that pursuant to Local Rule 271, *this Local Rule applies to* all civil actions pending before any District Judge or Magistrate Judge in the District except that actions in the following categories are exempt from presumptive inclusion: (i) prisoner petitions and actions, including habeas corpus petitions, (ii) actions in which one of the parties is appearing pro se, (iii) voting rights actions, (iv) social security actions, (v) deportation actions, (vi) Freedom of Information Act actions, and (vii) actions involving the constitutionality of federal, state or local statutes or ordinances.   The fact that a case falls in a category that is exempt from the presumptive applicability of this Local Rule neither (1) precludes the parties to such a case from agreeing to participate in an Alternative Dispute Resolution ("ADR") process, nor (2) deprives the Court of authority to compel participation in an appropriate ADR proceeding.

Parties may elect Voluntary Dispute Resolution with the Court indicating that all parties to the action agree to submit the action to VDRP pursuant to Local Rule 271. Actions may not be assigned to VDRP over the objection of a party. (Copy of sample stipulation attached hereto.) **At the time of filing, a copy of the stipulation shall be provided to the VDRP Administrator designated below:**

| | |
|---|---|
| Sacramento Cases | Fresno Cases |
| Voluntary Dispute Resolution | Voluntary Dispute Resolution |
| Program Administrator | Program Administrator |
| United States District Court | United States District Court |
| 501 "I" Street, Suite 4–200 | 2500 Tulare Street, Suite 1501 |
| Sacramento, CA  95814 | Fresno, CA  93721 |
| (916) 930–4278 | (559) 499–5600 |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

**PINNACLE EMPLOYEE SERVICES, INC. , ET AL.,**

Plaintiff(s)

v.

**PINNACLE HOLDING COMPANY, LLC ,**

Defendant(s)

NO: **2:22−CV−01367−CKD**

STIPULATION TO ELECT REFERRAL OF ACTION TO VOLUNTARY DISPUTE RESOLUTION PROGRAM (VDRP) PURSUANT TO LOCAL RULE 271

Pursuant to Local Rule 271, the parties hereby agree to submit the above−entitled action to the Voluntary Dispute Resolution Program.

DATED:    **AUGUST 2, 2022**

Name:
Attorney for Plaintiff(s)

Name:
Attorney for Defendant(s)

# EXHIBIT D

**KROGH & DECKER, LLP**
DEREK C. DECKER, SBN 232243
derekdecker@kroghdecker.com
MICHAEL D. CRODDY, SBN 198489
michaelcroddy@kroghdecker.com
555 Capitol Mall, Suite 700
Sacramento, California 95814
Telephone: 916.498.9000
Facsimile: 916.498.9005

Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, INC. and
MICHAEL ALLEN

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINNACLE EMPLOYEE SERVICES, INC., a California Corporation; MICHAEL ALLEN, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>PINNACLE HOLDING COMPANY, LLC, a Delaware Limited Liability Company; PINNACLE EMPLOYEE SERVICES, LLC, a Delaware Limited Liability Company; PINNACLE INVESTMENTS, LLC, a New York Limited Liability Company; DOES 1-50, inclusive;<br><br>Defendants. | Case No.: 2:22-CV-01367-KJM-CKD<br><br>**FIRST AMENDED COMPLAINT**<br><br>**(1) Federal Trademark Infringement (15 U.S.C. §1114)**<br>**(2) Federal Unfair Competition and False Designation of Origin (15 U.S.C. §1125)**<br>**(3) Violation of Anti-Cybersquatting Consumer Protection Act (15 U.S.C. §1125)**<br>**(4) Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs PINNACLE EMPLOYEE SERVICES, INC., and MICHAEL ALLEN (collectively "Pinnacle" or "Plaintiffs"), by and through counsel, hereby bring the present action against Defendants PINNACLE HOLDING COMPANY, LLC, PINNACLE EMPLOYEE SERVICES, LLC, and PINNACLE INVESTMENTS, LLC (collectively "Defendants") and allege, on knowledge as to its own actions, and otherwise upon information and belief, as follows:



---

1
FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiffs' trademark PINNACLE EMPLOYEE SERVICES (the "Pinnacle Trademark") is on the principal register of the United States Patent and Trademark Office in connection with Plaintiffs' business of offering employee benefits, human resources assistance, and payroll preparation services. The Pinnacle Trademark has a registration that is valid, subsisting, and has never been canceled. Despite Plaintiffs' established rights, Defendants adopted and continues to make use of the Pinnacle Trademark in a manner that is identical and confusingly similar, specifically in offering the same class of goods and services as Plaintiffs and using the Pinnacle Trademark in a domain name without Plaintiffs' authorization.

2. By exploiting Plaintiffs' rights and creating customer confusion, Defendants has acquired and continues to gain unfair income, profits, and goodwill. These actions have harmed Plaintiffs and still continue to cause irreparable injury to Plaintiffs in both the goodwill of business and reputation. Plaintiffs are seeking damages for the injuries Defendants caused; an injunction to enjoin Defendants from further violating and exploiting Plaintiffs' intellectual property rights; and other relief as deemed appropriated by this Court.

## PARTIES

3. Plaintiff PINNACLE EMPLOYEE SERVICES, INC., is a corporation formed under the laws of California. Plaintiff Michael Allen serves as its chief corporate officer and president. Plaintiffs are one of the leaders in the employee benefits industry in Northern California, and provide payroll services and human resources support to many business owners. Plaintiffs are the registered owner of the trademark subject to this suit.

4. Defendant PINNACLE EMPLOYEE SERVICES, LLC ("PES") is a limited liability company formed under the laws of Delaware. PES is an affiliate of Defendant Pinnacle Investments, LLC and a wholly owned subsidiary of Defendant Pinnacle Holding Company, LLC.

5. Defendant PINNACLE INVESTMENTS LLC ("PI") is a limited liability company formed under the laws of New York. PI is an affiliate of PES and a wholly owned subsidiary of Defendant Pinnacle Holding Company, LLC.

/ / /



2
FIRST AMENDED COMPLAINT

6.     Defendant PINNACLE HOLDING COMPANY, LLC ("PHC") is a limited liability company formed under the laws of Delaware, and it wholly owns and controls Defendants PES and PI.

7.     The identities of Does 1 through 50 are not presently known to Plaintiffs. Defendants' method of interconnecting their company networks makes it impossible for Plaintiffs to discover Defendants true identities and the exact operations. In the event Plaintiffs discovery credible information regarding their identities, Plaintiffs will take appropriate steps to amend this complaint.

8.     Upon information and belief, Defendants are a collection of affiliated entities and belong to an unknown makeup of family companies who participate in and/or have the right and ability to supervise, direct, and control, and derive financial benefit from the conduct described herein.

9.     On information and belief, each Defendant acted as the principal, agent, or joint venture of, or for other Defendants with respect to the acts, violations, and common course of conduct alleged herein. On information and belief, Defendants had the advance knowledge, acquiesced in, or subsequent ratified each other's acts. On information and belief, each Defendant, and their subsidiaries, affiliates and agents operated as a single unified entity.

10.     Various persons and/or firms not named as Defendants herein may have participated as coconspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

11.     Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, respondent superior, vicarious liability, and/or contributory infringement.

**JURISDICTION AND VENUE**

12.     This Court has original and subject matter jurisdiction over the Lanham Act claims (15 U.S.C. §§ 1051 et seq.) and the Anti Cyber-Squatting claim (15 U.S.C. §1125) pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332(a), and 1338(a).

/ / /

FIRST AMENDED COMPLAINT

13. The Court has supplemental jurisdiction over the California Unfair Competition claim pursuant to 28 U.S.C. § 1367(a) as the claim arises under a set of operative facts that are common to the federal claims.

14. Venue in this judicial district is proper under 28 U.S.C. §§1391(b) and (c), and 1400(a), in that a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

15. This Court has personal jurisdiction over Defendants because Defendants regularly transact business in the State of California, committed tortious acts within and directed to the State of California, and Plaintiffs' claims arise from those activities.

16. Defendants are a multi-company enterprise that provide financial services as a collective group; Defendant PI is a dually registered broker-dealer/Investment Advisor; Defendant PES provides payroll, human resources, and employee benefits assistance; and Defendant PHC is the parent company that owns and manages Defendants' business.

17. Defendants do sufficient business here by directly targeting its business activities towards consumers in the United States and California citizens through direct customer relationships and contracts, solicitation for business opportunities, and at least one, fully interactive website and a smartphone application.

18. Defendants actively engaged in business in California and did so with their unlawful conduct by using Plaintiffs' intellectual property to promote, advertise, market, and/or offer their services.

19. Defendants collectively solicit business in California, transact a significant amount of business in California, and provide their services in California, which includes ensuring compliance with California state laws and regulations.

20. Defendant PI carries a brokerage license in California. PI has been registered with the state of California since June 13, 2007.

21. Since as early as August 3, 2016, PI reports and directs its Securities and Exchange Commission ("SEC") notice filings to the State of California.

/ / /

4

FIRST AMENDED COMPLAINT

22. PI's custodian has custody over and holds approximately $600 million of PI's assets under management at its San Francisco, California custodial office location.

23. PHC's Chief Operating Officer ("COO") Eric Krouse has been actively licensed in California as a broker since September 10, 2007. He is registered in California through PI as a broker and listed as agent of PI in California.

24. PI's Chief Executive Office ("CEO") Benjamin Quilty, who is also the Chief Compliance Officer of PHC's other subsidiary Pinnacle Advisors, LLC ("PA"), is PI's financial advisor and California agent. He has been registered in the State of California as a broker through PI since March 15, 2018.

25. Defendant PHC wholly owns and controls Defendant PI and PES, and has committed, or facilitated the commission of tortious acts in California, and wrongfully caused Plaintiffs substantial injury in California.

26. PHC's website provides access to the websites of its subsidiaries PI and PES. According to PHC's subsidiary PI's website, PI is "nationwide" and has at least one physical branch office located in California. Attached as **Exhibit 1** is the true and correct copy of the website screenshot showing the California office.



27. PI has numerous broker and investment advisors serving as California agents for PI, and licensed and registered in California through PI.

///

FIRST AMENDED COMPLAINT

28.    At least one agent of PI has been maintaining physical presence in California on behalf of PI since June 26, 2019.

**THOMAS E. BROOKHOUZEN**
CRD# 1751693

Currently employed by and registered with the following Firm(s):

Ⓑ **PINNACLE INVESTMENTS, LLC**
514 N. DIAMOND BAR BLVD
SUITE B
DIAMOND BAR, CA  91765
CRD# 142910
Registered with this firm since: 06/26/2019

29.    Defendants provides detailed and personalized services in the United States and California by managing its customers' businesses and employees directly from the customer's work site and by assuming its customers' contractual and legal rights and responsibilities under the laws of the state where the customer's business is located.

30.    Defendant PES is contractually authorized to affect payment from client companies to client company employees as part of payroll. PES provides payroll, tax preparation and employee benefits services to at least one client company with a California employee.

31.    Defendants maintain an interactive online portal that allows people in the United States, including within California, to exchange information with Defendants.

32.    After the filing of the original complaint, Plaintiffs have conducted jurisdictional discovery and found that PES has at least five client employees that reside in California who can access and/or logged in from California to PES's online portal. PES's online portal is a platform exclusive to the employees of PES's clients for the employees to view their paystubs and benefits, update personal information, and update California state tax withholdings. PES has set up the California payroll and California state tax account for at least one client company.

33.    Upon information and belief, at all times relevant to this Complaint, Defendants have purposefully maintained contacts within the State of California for the purpose of conducting business here. By conducting business in the State of California, Defendants purposefully avails itself to California laws through continuous and systemic contacts, or otherwise intentionally



6

FIRST AMENDED COMPLAINT

makes its services available in California, so as to render jurisdiction over itself by this Court consistent with traditional notions of fair play and substantial justice.

34.    Upon information and belief, Defendants remain in direct contact with customers located in California. Defendants has and continues to commit tortious acts in California, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of California. Defendants have committed acts within California that constitute Unfair Business Practices.

35.    Defendants are further subject to personal jurisdiction in California because Defendants have committed tortious acts within and directed to the State of California that are at issue in this suit. Defendants have made unlawful use of Plaintiffs' registered Pinnacle Trademark to actively conduct their business. As described more thoroughly below, each Defendant has sold, offered to sell, and/or participated in providing Defendants' services in California by using Plaintiffs' registered Pinnacle Trademark.

36.    Defendants have substantially interjected themselves into this jurisdiction and engaged in wrongful conduct giving rise to this suit in this jurisdiction, this Court's exercise of personal jurisdiction is proper.

**Allegations Common to All Claims for Relief**

**Pinnacle Trademark "Pinnacle Employee Services"**

37.    Plaintiff Michael Allen ("Allen") is the owner and registrant of the valid and subsisting United States trademark, the Pinnacle Trademark, consisting of the phrase "PINNACLE EMPLOYEE SERVICES", Registration No. 6,696,685 on Principal Register in the United States Patent and Trademark Office ("USPTO"), under which it provides human resources consultation, and payroll and employee benefits preparation. Attached as **Exhibit 2** is a true and correct copy of the registration certificate for the Pinnacle Trademark, as issued by the United States Patent and Trademark Office. Plaintiff Pinnacle Employee Services, Inc. was assigned the Pinnacle Trademark by Plaintiff Allen on or around April 12, 2022; the assignment is recorded with the United States Patent and Trademark Office, a true and correct copy of which is attached herein as **Exhibit 3**.

7

FIRST AMENDED COMPLAINT

38. The U.S. registration for the Pinnacle Trademark by Plaintiffs, with its registration certificate shown in **Exhibit 2**, is valid, subsisting, in full force and effect. The registration for the Pinnacle Trademark constitutes prima facie evidence of its validity and of Plaintiffs' exclusive right to use the Pinnacle Trademark pursuant to 15 U.S.C. § 1057(b).

39. Plaintiffs has used the Pinnacle Trademark in commerce continuously since the date of September 1, 2013, in connection with the offering, marketing, advertising, and promotion of comprehensive and cost-effective human resources assistance and consultation, payroll, and benefits services to small and medium-sized businesses.

40. As a result of this long-standing use, strong common law trademark rights have amassed in the Pinnacle Trademark. Plaintiffs' use of the mark has also built substantial goodwill in and to the Pinnacle Trademark, which has made the Pinnacle Trademark a valuable asset of Plaintiffs. Plaintiffs use the Pinnacle Trademark in advertising and promoting its business on online platforms. Attached hereto as **Exhibit 4** is a representative sample of the Pinnacle Trademark, showing Plaintiffs' use of the Pinnacle Trademark in connection with employee benefits services.

41. Plaintiffs has invested significant time, energy, and money in advertising, promoting, and selling services featuring the Pinnacle Trademark, as well as ensuring the high quality of services offered under the Pinnacle Trademark. Plaintiffs have provided its comprehensive employee benefits services over the years to minimize the administrative burden on business owners across the entire spectrum of the matters of payroll, tax, human resources support, and benefits, and also to assist businesses with increased compliance requirements resulting from the rapidly evolving legislation. The intuitive and modern approach of Plaintiffs have made Plaintiffs a commercial success within the employee benefits industry.

42. The goodwill associated with Plaintiffs' brand and the Pinnacle Trademark is of incalculable and inestimable value to Plaintiffs.

### Defendants' Unlawful Conduct

43. Plaintiffs' modern approach and success in assisting businesses with their employees have resulted in significant popularity. Due to the administrative and documentary

FIRST AMENDED COMPLAINT

nature of employee management, most of the services sold, specifically the services pertaining to payroll, are typically provided through online platforms. As a result, Plaintiffs regularly investigate suspicious internet activity to protect the Pinnacle Trademark and the goodwill of Plaintiffs' business.

44.     Specifically, Plaintiffs have identified Defendants, directly or through entities subject to their direction and control, as a fully interactive, e-commerce service provider, offering the exact same employee benefits, payroll, and human resources assistance related services on online platforms under the Pinnacle Trademark and using a domain name that is identical and therefore confusingly similar to the exact makeup of the Pinnacle Trademark.

45.     Plaintiffs discovered the unauthorized use of Defendants' use of Plaintiffs' Pinnacle Trademark within the content, text, and/or meta tags of its internet platforms to attract various search engines online relevant to consumer searches for business management services.

46.     Defendants are a multi-company enterprise that provide financial services as a collective group; Defendant PI is a dually registered broker-dealer/Investment Advisor; Defendant PES provides payroll, human resources and employee benefits assistance; and Defendant PHC is the parent company that owns and manages Defendants' business.

47.     Without permission, authorization, or consent from Plaintiffs, Defendants have used in commerce the Pinnacle Mark in connection with the advertising, marketing, promoting, sale, and/or offer the sale of Defendants' services.

48.     Without permission, authorization, or consent from Plaintiffs, Defendants have registered and used the domain name "PinnacleEmployeeServices.com" (the "Domain Name"), which is identical or confusingly similar to Plaintiffs' distinctive and federally registered Pinnacle Trademark. Defendants advertise and offer Defendants' services using the Pinnacle Trademark and on the Domain Name without authorization, a sample of which is attached hereto as **Exhibit 5**.

49.     Although the WHOIS record does not disclose the identity of the Domain Name registrant, Plaintiffs were able to identify Defendants as the party in control of the Domain Name by the information available on the websites used by Defendants and/or its affiliates.

9

FIRST AMENDED COMPLAINT

50.    Defendants use the same method of providing direct access to payroll on-site of the customer, the same personalized-to-customer benefits services, the same methods of an online portal for payment and account information, the same compliance assistance, and most importantly, the same wording of the Pinnacle Trademark.

51.    Defendants market and provide services that are confusingly similar to Plaintiffs' through the Domain Name. Consumers searching for Plaintiffs by way of using the Pinnacle Trademark "Pinnacle Employee Services" are redirected to Defendants' business because the Domain Name contains the exact wording as Plaintiffs' registered trademark.

52.    Defendants have no trademark or intellectual property rights to the Domain Name.

53.    Defendants benefit from Plaintiffs trademark rights, including by drawing internet users through online searches to Defendants' website.

54.    Redirected consumers are likely to be confused or deceived into believing that Defendants' business is sponsored, authorized, or endorsed by Plaintiffs, or that Defendants' business is associated or affiliated with Plaintiffs, resulting in lost revenue by Plaintiffs and ill-gotten profits for Defendants.

55.    Defendants' business and the Domain Name appear to unknowing customers to be authorized providers of the employee benefits services offered by Plaintiffs. The internet website operated under the Domain Name by Defendants appears sophisticated and accepts customer contact and sign-up, and upon information and belief, the option to tender direct payment to provide such services within the website.

56.    The relatedness of Defendants' operations to the services offered by Plaintiffs suggests to the public that the services are offered by and come from a common source –a conclusion which is incorrect and harmful to Plaintiffs' business and goodwill of the Pinnacle Trademark.

57.    Defendants operate a smartphone application, visible nationwide, which is advertised by Defendants as providing direct access to Defendants and its services from the customer's physical location.

58.    After the filing of the original complaint, Plaintiffs have conducted jurisdictional

10

FIRST AMENDED COMPLAINT

discovery and found that PES has at least five client employees that reside in California who can access and/or logged in from California to PES's online portal. PES's online portal is a platform exclusive to the employees of PES's clients for the employees to view their paystubs and benefits, update personal information, and update California state tax withholdings. PES has set up the California payroll and California state tax account for at least one client company.

59.     Plaintiffs' rights precede Defendants' any claim over the Pinnacle Trademark in priority of both registration and use. Plaintiffs own a valid and active federal registration for the Pinnacle Trademark. Defendants do not. However, Defendants concurrently employ and benefit from the Pinnacle Trademark, and use the complete and identical terms contained in the Pinnacle Trademark, PINNACLE EMPLOYEE SERVICES, to provide services virtually identical and/or confusingly similar to those already being provided by Plaintiffs under the Pinnacle Trademark.

60.     Plaintiffs have notified PHC of the infringement and unlawful use of the Pinnacle Trademark and the Domain Name on numerous occasions. PHC refused to settle the matter amicably and since then, has continued to make use of Pinnacle's registered federal trademark, and continues to do so, as described in detail below.

**Defendants' Agency**

61.     On information and belief, Defendants operated in concert with one another in their advertising, marketing, offering, distributing, and providing Defendants' confusingly similar services through the unlawful use of Plaintiffs' Pinnacle Trademark. Defendants intentionally induce one another to infringe or continue to provide confusingly similar services.

62.     Defendants are associated with one another through common physical addresses, financial accounts, employees, financial advisors, shareholders, attorneys, and other factors.

63.     PI's sole managing member is PHC. PHC's shareholders also serve as financial advisors on behalf of PI. PI is considered a disregarded entity for tax purposes and files income taxes with PHC LLC.

64.     PHC's COO Eric Krouse is also the COO of PI; the Options Principle of PI; maintains his multi-state brokerage license through PI; he is a registered Investment Advisor for PI; registered Broker for PI; according to 2023 FINRA reports; he is PHC's Chief Financial Officer

11

FIRST AMENDED COMPLAINT

("CFO"); a member of PHC's Board of Directors; PI's former CEO; PI's former Chief Compliance Officer; and the CEO of at least one other subsidiary of PHC, Pinnacle Capital Management LLC ("PCM").

65. Mark Pietrowski is both the CEO of PES and the Board Member of PHC, as well as the founder of PES, the Board Member of PES, and the former head of management for PHC in launching PHC's subsidiary PES.

66. PI's financial advisors also act as advisors for PCM. PI's parent company PHC is also the parent company for Pinnacle Advisors LLC (PA) and PCM, which are the advisory affiliates for PI and have the same physical location and supervisory staff as PI.

67. PA's COO is concurrently the CEO of PI; the financial advisor on behalf of PA LLC; the Vice President of PA LLC; the shareholder of PA LLC; the CFO of at least one other PHC subsidiary and PI advisory affiliate.

68. PHC's subsidiary PCM's CEO is also employed by PHC, PI and PA.

69. PHC wholly owns and controls PCM, and PI is the adviser and sponsor for PCM, and shares with PI further the entity PA LLC as an advisory affiliate, financial advisors, supervisory personnel, and management team.

70. PCM LLC's CEO of money management is also PCM LLC's COO and PI's former business Analyst.

71. PHC, PES and PI intentionally use and display the infringing name Pinnacle Employee Services in advertising and providing services on behalf of Defendants and other subsidiaries of Defendants.

72. Defendants have, without permission, authority, or license from Plaintiffs, commit, participate in, or otherwise knowingly contribute to using the Pinnacle Trademark to represent services confusingly similar to those provided by Plaintiffs.

73. According to PI's website, PHC's "Pinnacle Employee Services" is an employee benefits provider that often works in conjunction with PI's services and PES and PI are a "perfect union" that are "energized by one another" and "unstoppable."

///

12

FIRST AMENDED COMPLAINT

74.    Defendants each have the ability to control the actions of one another, fund the advertising activities of one another, and derive a direct financial benefit from the illegal acts of one another. In 2022, PI paid PHC over $600,000 in management fees; PI paid PHC over $800.000 in occupancy and shared administrative expenses; PES paid PI approximately $19,000 in commissions; PI paid PES approximately $30,000 in payroll and human resources administration fees.

75.    According to PHC, PHC oversees more than $2 Billion in client assets.

76.    PHC directs and/or remains complicit in the unlawful use of Plaintiffs' Pinnacle Trademark.  PHC's CEO Gregg Kidd owns PA, is a financial advisor for PI, and is the California agent and broker for PI since at least 2007. In an interview in 2022, he stated that PES is an opportunity for PHC and that it "smooths out profits for the company overall." According to Mr. Kidd, Defendants' adviser representatives are also encouraged to introduce and advertise PES within the scope of their duties.

**Defendants' Subsequent Infringement**

77.    Despite Plaintiffs' attempts at enforcing their rights over the Pinnacle Trademark, Defendants continue use the Pinnacle Trademark on their website and as their domain name to attract clients and to provide services and/or information on services.

78.    After Plaintiffs filed the original complaint in this action against PHC for unlawfully using Plaintiffs' Pinnacle Trademark "Pinnacle Employee Services" in providing confusingly similar services, on November 29, 2022, PHC submitted a secondary trademark application to the USPTO to register the rights to "Pinnacle Employee Services" (Serial No. 97695962).

79.    On November 30, 2022, the COO for both Defendant PHC and Defendant PI, Eric Krouse, signed a declaration under penalty of perjury and falsely stated that PHC does not use the trademark in question "Pinnacle Employee Services." But one day prior, on November 29, 2022, PHC submitted its trademark application to the USPTO and listed its company name PHC as the owner and applicant for the name "Pinnacle Employee Services." In its application, PHC certified to the USPTO that "[t]he applicant is using the mark in commerce on or in connection with the



FIRST AMENDED COMPLAINT

identified goods/services."

80.    Despite Defendants' actual awareness that Plaintiffs owned and used an existing trademark for "Pinnacle Employee Services" Defendant PHC falsely certified the following to the USPTO in its trademark application:

> To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

> To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

81.    On February 22, 2023, USPTO Deputy Commissioner issued a memo and found that Plaintiffs' registration and this instant lawsuit constitute relevant evidence for refusal and/or requirements on the following:

- Possible likelihood of confusion under Trademark Act Section 2(d) with U.S. Registration No. 6696685 for the mark PINNACLE EMPLOYEE SERVICES.
- Possible suspension of the application in light of the court proceeding in the United States District Court for the Eastern District of California, Case 2:22-cv-01367-CKD.

82.    Defendants' actions make this an exceptional case under 15 U.S.C. § 1117(a). Plaintiffs are entitled to, and hereby seek, an award of attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a).

83.    This is not the first time Defendants have made intentional misrepresentations. On May 5, 2023, the Securities and Exchange Commission ruled that Defendant PI, the wholly owned subsidiary of Defendant PHC, willfully violated federal by, among other conduct, making false and misleading statements and failing to disclose conflicts of interest from 2015 to 2022. SEC imposed sanctions on Defendant for over $390,000 (Case No. 3-21405).



FIRST AMENDED COMPLAINT

84.    On September 22, 2015, FINRA charged, and Defendant PI consented to FINRA's findings that Defendant PI failed to preserve business related communications and maintain/enforce a relevant supervisory procedure. FINRA imposed a monetary fine and censure on the Defendant. (2014038901201).

85.    To date Defendants continue to use the Pinnacle Trademark without Plaintiffs' authorization or consent.

86.    Defendants unauthorized use of the Pinnacle Trademark in connection with the advertising, promotion, offering, and performing of Defendants' services, specifically employee benefits services, in the United States, including California, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Pinnacle.

87.    The acts of Defendants constitute a willful infringement of the registered Pinnacle Trademark in violation of 15 U.S.C. § 1114, constitute an infringement of Plaintiffs' trademark, and constitute a violation of the federal trademark laws.

## COUNT I

### Federal Trademark Infringement (15 U.S.C. §1114)

### (by Plaintiffs against all Defendants)

88.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

89.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of the federally registered Pinnacle Trademark in connection with the sale of the same and/or confusingly similar type of services offered by Plaintiffs.

90.    Defendants have sold, offered to sell, marketed, advertised, and is still selling, offering to sell, marketing, and advertising employee benefits and payroll services using Plaintiffs' Pinnacle Trademark without Plaintiffs' permission.

91.    Plaintiffs are the exclusive owners of the Pinnacle Trademark. Plaintiffs' United States Registration for the Pinnacle Trademark is in full force and effect.

92.    Defendants have knowledge of Plaintiffs' rights in the Pinnacle Trademark and is willfully infringing and intentionally using the Pinnacle Trademark to offer the same and/or



15

FIRST AMENDED COMPLAINT

confusingly similar class of services as Plaintiffs. Defendants' willful, intentional, and unauthorized use of the Pinnacle Trademark Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin of the services provided by Plaintiffs among the general public and further enables Defendants to re-direct the stream of commerce to their own business by the unlawful use of the Pinnacle Trademark. These actions have caused and continue to cause injury to Plaintiffs.

93.    Defendants' use of the Pinnacle Trademark to offer confusingly similar services represents Defendants' services as emanating from or being authorized by Plaintiffs and places beyond Plaintiffs' control the quality of services advertised through the Pinnacle Trademark.

94.    Defendants' activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114. At all relevant times, Defendants had actual and direct knowledge of Plaintiffs' ownership and registration of the Pinnacle Trademark. Defendants' conduct is therefore willful and reflects Defendants' intent to exploit the goodwill and brand recognition associated with the Pinnacle Trademark.

95.    As a result of Defendants' wrongful conduct, Plaintiffs have suffered, and will continue to suffer, substantial damages. Under 15 U.S.C. § 117(a), Plaintiffs are entitled to recover its damages, which include the profits incurred by Defendants as a result of the wrongful use of the Pinnacle Trademark.

96.    Defendants' conduct entitles Plaintiffs to injunctive relief under 15 U.S.C. § 116(a). Plaintiffs' remedy at law is not adequate as Defendants' infringement of Plaintiffs' federally protected trademark constitutes harm to Plaintiffs such that Plaintiffs cannot recover in full by a monetary award alone – if Defendants' unauthorized use of the Pinnacle Trademark were to persist, it would cause further confusion to the general public as to the source, origin, or authenticity of the infringing services. Defendants' wrongful conduct, and the resulting damage to Plaintiffs still continue on this date.

97.    Plaintiffs are further entitled to recover its attorneys' fees and costs of suit under 15 U.S.C. § 1117.

/ / /



FIRST AMENDED COMPLAINT

**COUNT II**

**Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))**

**(by Plaintiffs against all Defendants)**

98.    Plaintiffs hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

99.    Defendants' foregoing wrongful acts constitute unfair competition in violation of 15 U.S.C. § 1125(a). Defendants' use of the confusingly similar name has caused and is likely to cause, a likelihood of confusion, deception, and mistake by creating the false and misleading impression that Defendants' services are provided by Plaintiffs, that Defendants is affiliated to Plaintiffs, and/or that Defendants have authorization by Plaintiffs.

100.    By using the Pinnacle Trademark in connection with its same and/or similar services, including employee benefits services, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the services offered by Defendants under Pinnacle's Trademark with intentional, willful, and malicious intent.

101.    Defendants' false designation of origin and misrepresentation of fact as to the origin of services to the general public involves the use of federally registered Pinnacle's Trademark and therefore, is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

102.    Defendants' conduct has caused and is likely to continue causing, substantial injury to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a) and 1117.

**COUNT III**

**Violation of Anti-Cybersquatting Consumer Protection Act (15 U.S.C. §1125(d))**

**(by Plaintiffs against all Defendants)**

103.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

104.    Upon information and belief, Defendants has registered, trafficked in, and used the Domain Name with the registrar Network Solutions, LLC. The Domain Name consists entirely of the Pinnacle Trademark word by word, and therefore, it is identical to Plaintiffs' federally



17

FIRST AMENDED COMPLAINT

registered intellectual property.

105.    Without Plaintiffs' authorization and, upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in the Pinnacle Trademark, Defendants operated a live website at the Domain Name, which remains active as of the filing of this Complaint. Attached hereto as **Exhibit 5** is the true and correct screenshot of the website Defendants maintain at the Domain Name as of July 31, 2022.

106.    Defendants have engaged in such actions with a bad faith intent to profit from the Pinnacle Trademark. Such bad faith is demonstrated, in part, by the fact that, prior to filing this action, Plaintiffs informed Defendants that the Domain Name consists entirely of Plaintiffs' registered trademark and that Defendants was not permitted to use the Pinnacle Trademark in any manner. Defendants did not cease using the Domain Name. At present, the Domain Name points to Defendants' website that makes unlawful use of the Pinnacle Trademark and provides services that are in competition with Plaintiffs' services in connection with the Pinnacle Trademark.

107.    Upon information and belief, Defendants have no rights in or to any trademark or phrase contained in the Domain Name and had no legitimate purpose for the continued use of the Domain Name.

108.    The Domain Name was confusingly similar, if not identical, to Pinnacle Trademark at the time Defendants registered the domain name, and it remains so today.

109.    The Domain Name does not resolve to any website or websites owned by Plaintiffs. Rather, it resolves to a website or websites controlled by Defendants, who profits from its use.

110.    Defendants did not believe and could not reasonably believe its use of the Domain Name constituted or constitutes fair use or was or is otherwise lawful.

111.    Because the Domain Name is confusingly similar and identical to the Pinnacle Trademark, and the website Defendants operates at the Domain Name provides, promotes, and depicts goods and services that are identical and related to Plaintiffs' services under the Pinnacle Trademark, consumers are likely to be confused into thinking that Plaintiffs authorized, approved, or is affiliated or connected with Defendants' website and the services offered on the Domain Name, when that is not the case.



18

FIRST AMENDED COMPLAINT

112. Upon information and belief, a significant amount of internet traffic pursuant to a search of the Pinnacle Trademark "Pinnacle Employee Services" is directed to Defendants, enabling Defendants to profit from the intellectual property rights and goodwill established by Plaintiffs. Defendants' unauthorized use of the Pinnacle Trademark and Domain Name carries a possibility of confusion in the marketplace and has likely caused actual consumer confusion.

113. Upon information and belief, Defendants' acts alleged herein are willful, with the deliberate intent to trade on the goodwill of the Pinnacle Trademark, cause confusion and deception online and in the marketplace, divert internet users looking for Plaintiffs' website or Plaintiffs' services under the Pinnacle Trademark to Defendants' website, and divert potential sales of Plaintiffs' services to Defendants and third parties from whom Defendants receive revenues.

114. As a result of Defendants' wrongful registration and use of the Domain Name, Plaintiffs has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiffs in its mark. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Pinnacle has no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct and orders that the Domain name be transferred to Plaintiffs.

115. Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Name to Plaintiffs or the cancellation of Defendants' registration of the Domain Name.

116. Plaintiffs are further entitled to recover its damages and Defendants' profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiffs are entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

117. Plaintiffs are further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT

## COUNT IV

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code § 17200 et seq.)

### (by Plaintiffs against all Defendants)

118.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

119.    Defendants' conduct as alleged herein constitutes unfair and deceptive acts or practices in the course of a business, trade, or in commerce, in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500, et seq.

120.    On information and belief, as a direct and proximate result of Defendants' wrongful conduct as described above, Defendants have gained revenues properly belonging to Plaintiffs.

121.    Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Plaintiffs, for which they have no adequate legal remedy.

122.    Plaintiffs seek restitution and injunctive relief restraining Defendants, their officers, agents, and employees, and all persons acting in concert with them, from further engaging in acts of unfair competition and/or fraudulent business acts against Plaintiffs and Plaintiffs' intellectual property.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for judgment against Defendants as follows:

1) That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

2) That the Court enter an order requiring Defendants, within ten (10) days of the entry of final judgment, upon Plaintiffs' election, either transfer to Plaintiffs or cancel the registration of the Domain Name and registrations of any other domain names owned or controlled by Defendants that are confusingly similar to the Pinnacle Trademark;

3) That the Court enter an order permanently enjoining Defendants, their affiliates, officers, representatives' agents, employees, successors, assigns, and all others in active concert or participation with them from:



20

FIRST AMENDED COMPLAINT

a. Using the Pinnacle Trademark and any reproduction, counterfeit, copy or imitation of the Pinnacle Trademark in any manner in connection with the offering, marketing, advertising, promotion, and performance of any services pertaining to employee benefits, human resources, payroll management, and any related service thereof on any platform or in any medium;

b. Using the Pinnacle Trademark, any reproduction, counterfeit, copy or imitation of the Pinnacle Trademark, and source designation of any kind in a manner is likely to cause confusion, mistake, deception, or public misunderstanding that such services are produced or provided by Pinnacle, or are sponsored or authorized by Pinnacle, or are in any way connected or relate to Pinnacle;

c. owning, registering, trafficking in, or otherwise using the Domain Name;

d. further infringing the Pinnacle Trademark and damaging Plaintiffs' goodwill;

e. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (d) above; and

f. granting such other and further relief as the Court may deem just and proper to prevent the public and trade from deriving the false impression that any website operated by or any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Pinnacle or constitute or are connected with Plaintiffs' services.

4) That the Court enter an order impounding and permitting destruction of all infringing products and material bearing the Pinnacle Trademark or otherwise infringe on the Pinnacle Trademark, including related materials, business records, signs, prints, advertisements, the domain name, and other internet material, in Defendants' possession and under Defendants' control,

5) That the Court enter an order requiring Defendants to abandon the USPTO trademark applications;



FIRST AMENDED COMPLAINT

6) That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

7) That the Court enter an order requiring Defendants to pay all general, special and actual damages which Plaintiffs have sustained or will sustain as a consequence of Defendants' unlawful acts, Defendants' profits from the unlaw conduct described herein, and together with its statutory damages; and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117, 15 U.S.C. § 1125, or otherwise allowed by law, and that Plaintiffs' damages, plus Defendants' profits, in connection with the unlawful conduct described herein, be enhanced, doubled, or trebled as provided by 15 U.S.C. § 1117, 15 U.S.C. § 1125,  or otherwise allowed by law;

8) That the Court enter an order requiring Defendants to pay Plaintiffs the costs of this action and reasonable attorneys' fees Plaintiffs have incurred in prosecuting this action in accordance with 15 U.S.C. § 1117 or otherwise allowed by law;

9) That the Court enter an order imposing punitive and exemplary damages on Defendants;

10) That the Court enter an order requiring Defendants to pay the maximum prejudgment interest allowed by law; and

11) That the Court grant Plaintiffs any further and additional relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury in this action.

Dated: 8/24/2023

Respectfully submitted,

**KROGH & DECKER, LLP**

By: _____
Michael D. Croddy
Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, INC. and
MICHAEL ALLEN

22

FIRST AMENDED COMPLAINT

# EXHIBIT 1



Find an Advisor   Why Pinnacle   Contact   Client Login

# Branch Locations

## Pinnacle is Nationwide

The best thing about working with Pinnacle Investments is you get the attention and service of a local firm while also taking advantage of our global reach. If you are an advisor looking to start an independent branch, please contact us for more information.

Locations shown on the map are both registered and non-registered branches to illustrate we have reps in cities across the country that are available to assist you wherever you are!





Fax: 518-514-1085

**Williamsville, NY**
5500 Main Street, Williamsville, NY 14221, USA
Phone: 716-633-2900
Fax: 716-633-2988

**Diamond Bar, CA**
920 North Diamond Bar Boulevard, Diamond Bar, CA 91765, USA
Phone: 800-982-0241

**East Granby, CT**
East Granby, CT, USA
Phone: 800-982-0241

**Ave Maria, FL**
Ave Maria, FL, USA
Phone: 800-982-0421

**Boca Raton, FL**
7601 North Federal Highway, Boca Raton, FL 33487, USA
Phone: 561-961-4044

**Estero, FL**
Estero, FL, USA

# EXHIBIT 2

# United States of America

### United States Patent and Trademark Office

## PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen  (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

# EXHIBIT 3

## TRADEMARK ASSIGNMENT AGREEMENT

This Trademark Assignment Agreement ("Trademark Assignment"), dated as of April 12, 2022, is made by MICHAEL ALLEN ("Assignor"), an individual; and PINNACLE EMPLOYEE SERVICES, INC., a California Corporation, located at 2377 Gold Meadow Way, Ste 100 Gold River, CA 95670 ("Assignee.") Assignor and Assignee may collectively be referred to as Parties.

WHEREAS, Assignor owns the entire right, title, and interest in and to certain trademarks, registered and unregistered, filed with the United States Trademark Office ("USPTO") as listed in attached **Schedule A** (the "Assigned Trademarks;")

WHEREAS, Assignor is the Chief Executive Officer of the Assignee;

WHEREAS, as of the date of this Trademark Assignment, Assignee has been and continues to conduct business and operations in connection with the name "Pinnacle Employee Services" with consistency, and as a result, has inured certain past, present, and future intellectual property rights, trademark rights, and the associated goodwill throughout the world, whether arising under federal law, state law, common law, foreign law or otherwise;

WHEREAS, Assignor acquired the right, title, and interest in the Assigned Trademark, as registered with the USPTO and identified further in **Schedule A** with the intent to provide for the federal protection and registration of the Assignee's use of the name "Pinnacle Employee Services;"

WHEREAS, Assignor now wishes to convey, transfer, and assign to Assignee the Assigned Trademarks of Assignor, and has agreed to execute and deliver this Trademark Assignment, for recording with the United States Patent and Trademark Office;

WHEREAS, Assignee desires to acquire all of Assignor's right, title, and interest, in and to the Assigned Trademarks together with all the goodwill of the business symbolized thereby, and Assignor desires to assign all such right, title, and interest in and to the Assigned Trademarks to Assignee, upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      **Assignment.** For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably conveys, transfers, and assigns to Assignee, and Assignee hereby accepts, all of Assignor's right, title, and interest in and to the following:

   a.   The trademark registrations and trademark applications set forth in **Schedule A** hereto and all issuances, extensions, and renewals thereof, collectively the Assigned

Trademarks, together with the goodwill of the business connected with the use of, and symbolized by, the Assigned Trademarks;

b.    All rights of any kind whatsoever of Assignor accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world;

c.    Any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; and

d.    Any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

2.    **Recordation and Further Actions.** Assignor hereby authorizes the Commissioner for Trademarks in the United States Patent and Trademark Office, and the officials of corresponding entities or agencies in any applicable jurisdictions to record and register this Trademark Assignment upon request by Assignee. Following the date hereof, Assignor shall take such steps and actions, and provide such cooperation and assistance to Assignee and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be necessary to effect, evidence, or perfect the assignment of the Assigned Trademarks to Assignee, or any assignee or successor thereto.

3.    **Representations and Warranties of Assignor.** Assignor represents and warrants to Assignee that the statements contained herein are true and correct as of the date hereof. For purposes of this section, "Assignor's knowledge," "knowledge of Assignor," and similar phrases shall mean the actual or constructive knowledge of Assignor himself or his authorized representative.

a.    **Authority of Assignor; Enforceability.** Assignor has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignor have been duly authorized by all necessary organizational action of Assignor, and when executed and delivered by both Parties, this Agreement will constitute a legal, valid, and binding obligation of Assignor, enforceable against Assignor in accordance with its terms and conditions.

b.    **No Conflicts; Consents.** The execution, delivery, and performance by Assignor of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

    i.    violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignor,

    ii.    violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation,

    iii.    conflict with, or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement or any of the Acquired Rights are subject, or

    iv.    result in the creation or imposition of any encumbrances on the Assigned Trademarks.

    v.    No consent, approval, waiver, or authorization is required to be obtained by Assignor from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignor of this Agreement, or to enable Assignee to register, own, use, and enforce the rights of the Assigned Trademarks.

c.    **Registrations and Applications.** Attached to this Trademark Assignment, **Schedule A** contains a correct, current and complete list of all registrations owned by Assignor in the Assigned Trademarks, specifying as to each, as applicable: the word mark and/or design, the record owner, the jurisdiction in which it has been granted or filed, the registration or application serial number, and the registration or application date. All required filings and fees related to the trademark registrations listed on **Schedule A** have been timely filed with and paid to the USPTO and other relevant governmental authorities and authorized registrars, and all such trademark registrations and applications have at all times been and remain in good standing. Assignor has provided Assignee with true and complete copies of all documents, certificates, correspondence, and other materials related to all such trademark registrations and applications.

d.    **Validity and Enforceability.** Assigned Trademarks are valid, subsisting, and enforceable in all applicable jurisdictions. No event or circumstance (including any failure to exercise adequate quality control or any assignment in gross without the accompanying goodwill) has occurred or exists that has resulted in, or would reasonably be expected to result in, the abandonment of any Assigned Trademarks.

4.    **Representations and Warranties of Assignee.** Assignee represents and warrants to Assignor that the statements contained in this Section are true and correct as of the date hereof.

a.    **Authority of Assignee; Enforceability.** Assignee has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Assignee have been duly authorized by all necessary organizational action of Assignee, and when executed and delivered by both parties, this

TRADEMARK ASSIGNMENT AGREEMENT

PINNACLE EMPLOYEE SERVICES, INC.

Agreement will constitute a legal, valid, and binding obligation of Assignee enforceable against Assignee in accordance with its terms and conditions.

b. **No Conflicts; Consents.** The execution, delivery, and performance by Assignee of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not:

   i. violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Assignee,

   ii. violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation, or

   iii. conflict with or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit under, any contract or other instrument to which this Agreement is subject.

   iv. No consent, approval, waiver, or authorization is required to be obtained by Assignee from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Assignee of this Agreement.

5. **Counterparts.** This Trademark Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Trademark Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Trademark Assignment.

6. **Successors and Assigns.** This Trademark Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

7. **Severability.** Any provision of this Trademark Assignment that is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions of this Trademark Assignment in such jurisdiction or rendering that or any other provision of this Assignment invalid, illegal or unenforceable in any other jurisdiction.

8. **Governing Law.** This Trademark Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Trademark Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of California, without giving effect to any choice or conflict of law provision or rule of any other jurisdiction.

TRADEMARK ASSIGNMENT AGREEMENT

PINNACLE EMPLOYEE SERVICES, INC.

9.    **Amendment and Modification.** This Trademark Assignment may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto.

IN WITNESS WHEREOF, Parties has duly executed and delivered this Trademark Assignment as of the date first written above.

Sign.: *Michael Allen*

**ASSIGNOR**
MICHAEL ALLEN

Sign.: *Michael Allen*

**ASSIGNEE**
PINNACLE EMPLOYEE SERVICES, INC.,
a California Corporation

By:    MICHAEL ALLEN
Title:  CHIEF EXECUTIVE OFFICER

**TRADEMARK ASSIGNMENT AGREEMENT**
**SCHEDULE A**

| Mark | Place of Registration | Registration No. | Registration Date |
|---|---|---|---|
| PINNACLE EMPLOYEE SERVICES | UNITED STATES PATENT AND TRADEMARK OFFICE | 6,696,685 | April 12, 2022 |

| Type | Address | Registry | First Use in Commerce |
|---|---|---|---|
| Service Mark Class 35: Human resources consultation; Payroll preparation | 2377 Gold Meadow Way Ste 100 Gold River, CA 95670 | Principal | September 1, 2013 |

# EXHIBIT 4



pinnaclehro.com/home

PAYCHECK LOGIN | HR LOGIN | PAYROLL LOGIN | 1-888-353-2976

PAYROLL | HUMAN RESOURCES | EMPLOYEE SCREENING | ABOUT | SUPPORT

FORMS | BLOG

Pinnacle Employee Services Human Resources, Payroll, Benefits

# A Full Service HR Provider

Pinnacle Employee Services is a full-service HR Management company. We are dedicated to assisting businesses with increased compliance requirements resulting from the rapidly evolving legislation. Our goal is to minimize your administrative burden across the entire spectrum of payroll, tax, HR and benefits, so that you can focus on running your business.

You will be impressed by how smoothly your payroll and HR functions will run when they are handled by Pinnacle. We provide the best-in class solutions that help you run your business better. These solutions allow you to focus on growing your business without the stressful and time consuming tasks of Payroll and Human Resource compliance.

With our cutting – edge technology, our services provide businesses an intuitive and comprehensive solution that delivers trouble free payroll services and strategic HR Outsourcing services. No matter what industry or size your business is, we have a solution for you.

To get started, contact Pinnacle Employee Services and we will put an action plan together to relieve you of those stressful and daunting payroll and human resource tasks.



GET COMPLIANT DOWNLOAD OUR FREE
**HR ASSESSMENT CHECKLIST**
✓
**DOWNLOAD NOW**

# EXHIBIT 5



## Owning a business shouldn't mean paying more for Employee Benefits, Payroll, and Human Resources tools.

We founded Pinnacle Employee Services to streamline these processes for you so you can focus on what's important: growing your business.



### Employee Administration

Our specialists pride themselves on becoming a trusted partner by learning your business, aligning with your goals, and being directly accessible.



### Payroll

You provide the wages and hours and we take care of the rest.



### Benefits

Strength in numbers through "economies of scale." We group small businesses together to get the purchasing power of a large group.



### Human Resources / Compliance

Fulltime HR presence at a fraction of the cost.

**KROGH & DECKER, LLP**
DEREK C. DECKER, SBN 232243
derekdecker@kroghdecker.com
MICHAEL D. CRODDY, SBN 198489
michaelcroddy@kroghdecker.com
555 Capitol Mall, Suite 700
Sacramento, California 95814
Telephone: 916.498.9000
Facsimile: 916.498.9005

Attorneys for Plaintiffs
PINNACLE EMPLOYEE SERVICES, INC. and
MICHAEL ALLEN

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINNACLE EMPLOYEE SERVICES, INC., a California Corporation; MICHAEL ALLEN, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> PINNACLE HOLDING COMPANY, LLC, a Delaware Limited Liability Company; PINNACLE EMPLOYEE SERVICES, LLC, a Delaware Limited Liability Company; PINNACLE INVESTMENTS, LLC, a New York Limited Liability Company; DOES 1-50, inclusive; <br><br> Defendants. | Case No.: 2:22-CV-01367-KJM-CKD <br><br> **PROOF OF SERVICE** |



1

PROOF OF SERVICE

## PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Sacramento. My business address is 555 Capitol Mall, Suite 700, Sacramento, California 95814. I am over the age of 18 years and not a party to the above-entitled action.

On August 24, 2023, I, Peter Vue, served the following documents:

**1. FIRST AMENDED COMPLAINT**

☐ via United States mail by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing mail in accordance with this firm's practice, whereby the mail is deposited in a United States mailbox in the City of Sacramento, California before the close of the day's business.

☒ via Electronic Mail from the email address: petervue@kroghdecker.com

on the parties to this action at the addresses indicated below:

| | |
|---|---|
| Corey A. Donaldson<br>Morgan T. Lynch<br>FERGUSON CASE ORR PATERSON LLP<br>1050 South Kimball Road<br>Ventura, CA 93004<br>cdonaldson@fcoplaw.com<br>mlynch@fcoplaw.com<br>mlopez@fcoplaw.com<br><br>James P. Youngs<br>HANCOCK ESTABROOK LLP<br>1800 AXA Tower I<br>100 Madison Street<br>Syracuse, NY 13202<br>jyoungs@hancocklaw.com | Attorneys for Defendants<br>PINNACLE HOLDING<br>COMPANY, LLC; PINNACLE<br>EMPLOYEE SERVICES, LLC; and<br>PINNACLE INVESTMENTS, LLC |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration is executed on August 24, 2023, at Sacramento, California.

_____
Peter Vue, Legal Assistant



2

PROOF OF SERVICE

# EXHIBIT E

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pinnacle Employee Services, Inc., a California corporation; Michael Allen, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> Pinnacle Holding Company, LLC, a Delaware limited liability company; Pinnacle Employee Services, LLC, a Delaware limited liability company; Pinnacle Investments, LLC, a New York limited liability company; DOES 1-50, inclusive, <br><br> Defendants. | No. 2:22-cv-01367-KJM-CKD <br><br> ORDER |

Plaintiffs Pinnacle Employee Services, Inc. (PES INC) and Michael Allen bring this trademark infringement action against defendants Pinnacle Holding Company (PHC), Pinnacle Employee Services, LLC (PES LLC), Pinnacle Investments, LLC (PI) and DOES 1-50.[1] Defendants PHC, PES LLC and PI (collectively Defendants) move to dismiss for lack of personal

---

[1] If defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

1

jurisdiction and for failure to state a claim because plaintiffs' federal trademark registration is invalid. Plaintiffs' counsel also moves to withdraw. For the reasons discussed below, the court **grants defendants' motion to dismiss for lack of personal jurisdiction** and **denies the motion to withdraw as moot**.

## I.    BACKGROUND

PES INC is a California corporation and Allen serves as its chief corporate officer and president. First Am. Compl. (FAC) ¶ 3, ECF No. 33. Plaintiffs provide payroll services and human resources support to business owners in Northern California. *Id.* Allen is the owner and registrant of a United States trademark consisting of the phrase "Pinnacle Employee Services," which Allen assigned to PES INC in April 2022. *Id.* ¶ 37.

In August 2022, plaintiffs filed a trademark infringement action against defendant PHC. *See generally* Compl., ECF No. 1. PHC then moved to dismiss the action for lack of personal jurisdiction and for failure to state a claim. *See* Prior Mot., ECF No. 18. After the motion was fully briefed, the court questioned whether it had jurisdiction because PHC did not have the requisite minimum contacts with California. *See* Prior Order (Apr. 17, 2023), ECF No. 24. However, the court allowed plaintiffs to conduct limited jurisdictional discovery, *see id.*, and later granted plaintiffs leave to file an amended complaint, *see* Prior Order (Aug. 23, 2023), ECF No. 32.

Plaintiffs' amended complaint names as defendants PHC, a limited liability company incorporated in Delaware, and two of its wholly owned subsidiaries—PES LLC and PI. *See* FAC ¶¶ 4–6. PES LLC and PI are limited liability companies incorporated in Delaware and New York respectively. *Id.* ¶¶ 4–5. PES provides payroll, human resources and employee benefits assistance, while PI is a dually registered broker-dealer/investment advisor. *Id.* Plaintiffs allege defendants either "directly or through entities subject to their direction and control" are using the same name and offering the exact same services. *Id.* ¶ 44.

In accordance with Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), defendants move to dismiss the action for lack of personal jurisdiction and for failure to state a claim. Mot.,

ECF No. 37.  Defendants' motion is fully briefed.  *See* Opp'n., ECF No. 38[2]; Reply, ECF No. 40.  Plaintiffs' counsel has also filed a motion to withdraw.  *See* Mot. to Withdraw (MTW), ECF No. 39.  Defendants filed a response to plaintiffs' motion, Response, ECF No. 41, and plaintiffs have replied, MTW Reply, ECF No. 42.

This court heard arguments on December 8, 2023.  Michael Croddy appeared for plaintiffs and Corey Donaldson and Morgan Lynch appeared for defendants.  *See* Mins. Hr'g, ECF No. 45.  At plaintiffs' counsel's request, the court first heard arguments related to defendants' motion to dismiss before turning to the motion to withdraw.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), defendants may move to dismiss for lack of personal jurisdiction.  While the plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant, the court "resolves all disputed facts in favor of the plaintiff."  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) ( citation omitted).  The court may consider evidence presented in affidavits in determining personal jurisdiction.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation marks and citation omitted).  However, the court may not assume the truth of allegations that are contradicted by affidavit.  *See Data Disc, Inc.*, 557 F.2d at 1284.

When there is no applicable federal statute governing personal jurisdiction, federal courts follow the law of the state in which the district court sits.  *Schwarzenegger v. Fred Martin Motor*

---

[2] At the outset, plaintiffs argue defendants failed to meet and confer and requests the court refuse to consider the motion to dismiss.  *See* Opp'n. at 6.  In support, plaintiffs point to an email and declaration purportedly showing defendants' failure to comply.  *See* Opp'n Ex. A, ECF No. 38-1; Michael D. Croddy Decl. ¶¶ 3–4, ECF No. 38-2.  In response, defendants point to the meet and confer certification outlined in the motion to dismiss and include a declaration outlining what occurred during the meet and confer.  *See* Mot. at 2; Reply at 2–3; Corey A. Donaldson Decl.¶¶ 3–4, ECF No. 40-1.  The court exercises its discretion to proceed and address defendants' motion on the merits.

*Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see* Fed. R. Civ. P. 4(k)(1)(A).  There is no applicable federal statute governing personal jurisdiction in this case, so this court applies California law. California authorizes its courts to exercise jurisdiction "to the full extent permissible under the U.S. Constitution," so the question is whether exercising jurisdiction over PHC, PES LLC and PI comports with due process.  *See Daimler AG v. Bauman,* 571 U.S. 117, 125 (2014); *see also* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

Due process mandates a nonresident defendant have "certain minimum contacts" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted).  "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations omitted). General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"Specific jurisdiction is very different." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017).  For the court to exercise specific jurisdiction, the lawsuit must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Id.* (alteration in original) (emphasis in original) (quotation marks and citations omitted).  In short, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quotation marks and citation omitted).  "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (quotation marks and citation omitted).

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*,

4

539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  Here, plaintiffs discuss general jurisdiction principles, but do not allege this court can exercise general jurisdiction over defendants.  *See generally* FAC; Opp'n at 8.[3]  Instead, plaintiffs allege defendants are subject to specific jurisdiction.  Opp'n at 12.  Accordingly, this case turns on whether plaintiffs have sufficiently established specific jurisdiction exists over the defendants.

## III.    DISCUSSION

The Ninth Circuit prescribes a three-prong test for analyzing specific jurisdiction claims. First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws."  *Schwarzenegger*, 374 F.3d at 802 (citation omitted).  Second, the claim must arise out of or relate to defendants' forum-related activities.  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted).  Finally, the exercise of jurisdiction must be reasonable.  *Id.*  The plaintiff must satisfy the first two prongs of this test. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If the plaintiff meets this burden, then the burden shifts to defendants to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The first prong of the specific jurisdiction analysis contains two distinct concepts— "purposeful direction" and "purposeful availment."  *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  However, "both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.'"  *Id.* (quoting *Burger King*, 471 U.S. at 475).  Courts look to the type of claim at issue to determine the appropriate analytical approach.  *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).  For suits

---

[3] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

5

that "sound in tort," like trademark infringement, the Ninth Circuit directs district courts to use the "purposeful direction" test. *Id.* (quotation marks and citation omitted). To determine whether a defendant "purposeful[ly] directed" its activities toward the forum, courts in turn apply the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. The *Calder* effects test requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 805 (quotation marks and citation omitted).

Here, plaintiffs allege defendants are subject to specific jurisdiction because "[d]efendants regularly transact business in the State of California, committed tortious acts within and directed to the State of California, and [p]laintiffs' claims arise from those activities." FAC ¶ 15. To support this allegation, plaintiffs point to (1) PES LLC's California contacts uncovered during jurisdictional discovery, *see* Opp'n at 12; (2) defendants' purported trademark infringement and trademark-related conduct, *id.* at 12–13; (3) PI's in-state conduct, *see id.* at 13; and also invoke (4) an agency personal jurisdiction theory, *id.* at 13. However, as explained below, the court finds plaintiffs do not meet their burden in establishing specific jurisdiction.

### 1.    PES LLC's California Contacts

Plaintiffs allege PES LLC's contacts with California provide sufficient minimum contacts to satisfy the specific jurisdiction requirements. Specifically, plaintiffs represent that following jurisdictional discovery they found (1) PES LLC operates a website that five California client employees can access and (2) PES LLC has set up a "California payroll and California state tax account for at least one client company." FAC ¶ 32. The court finds these contacts insufficient to establish PES LLC expressly aimed its suit-related conduct toward California.

As the Ninth Circuit has explained, "operating a website in conjunction with something more—conduct directly targeting the forum—is sufficient to satisfy the express aiming prong." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023) ( quotation marks and citation omitted). To establish "something more," plaintiffs must allege either "the defendant [] has a forum-specific focus," the "defendant is specifically appeal[ing] to . . . an audience in a particular state" or the defendant "is actively targeting the forum state." *Briskin v. Shopify, Inc.*,

87 F.4th 404, 419–20 (9th Cir. 2023) (alteration in original) (quotation marks and citations omitted).  "This express aiming can be shown in different ways, such as through the subject matter of the website, the defendant's advertising, or other aspects of its business model."  *Id.* at 420 (citations omitted).

Here, PES LLC utilizes the domain name <PinnacleEmployeeServices.com> (the website).  *See* FAC ¶ 48; Eric D. Krouse Decl. ¶ 11, ECF No. 37-2.  Through this website, PES LLC's clients and its clients' employees can access a portal, which "provides customized information and data for each client and their employees relative to the payroll, benefits, human resource[s] and other services PES LLC provides to its clients."  Krouse Decl. ¶ 13; *see also* FAC ¶ 31.  Previously, the court found the operation of the website was insufficient to establish purposeful direction.  *See* Prior Order (Apr. 17, 2023) at 7–8.  Given the new facts plaintiffs allege with evidentiary support, the court now examines whether these new facts—specifically the existence of five client employees who can access PES LLC's online portal—establish the requisite "something more."

Defendants urge the court to consider *Crouch v. Ruby Corp.*, 639 F. Supp. 3d 1065, 1072 (S.D. Cal. 2022), which this court finds persuasive.  There, although defendants provided an online dating service available to individuals in California, where subscribers would pay to communicate with the matches defendants provided, the court determined plaintiffs had failed to allege there was "something more" as required by *Herbal Brands, Inc.*, 72 F. 4th at 1092.  *See Crouch*, 639 F. Supp.  at 1081.  Specifically, *Crouch* emphasized plaintiff did not allege how defendants targeted California—for example, the plaintiff did not allege "what amount of [d]efendants' business comes from California" or provide "any other information to suggest that California was targeted or exploited, specifically."  *Id.* (citing *Mavrix*, 647 F.3d at 1230).

Here, as with the defendants in *Crouch*, PES LLC provides a service.  Business entities and other organizations hire PES LLC to handle their employee-related responsibilities.  *See* Krouse Decl. ¶ 8.  Additionally, as with the defendants in *Crouch*, PES LLC "does not send marketing materials to or advertise in California."  *Id.* ¶ 17.  While plaintiffs state five client employees who reside in California can access the PES LLC portal, defendants argue these

7

connections are "random, fortuitous and attenuated."  Mem. at 9, ECF No. 37-1.  "While 'a single act can support jurisdiction,' the act must first 'create[ ] a "substantial connection" with the forum.'"  *Axiom Foods*, 874 F.3d at 1068 (quoting *Burger King*, 471 U.S. at 475 n.18).  In other words, "some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum."  *Burger King*, 471 U.S. at 475 n.18 (quotations marks and citations omitted).

Here, defendants provide information that only two California residents logged into PES LLC's portal on three separate occasions.  Krouse Decl. ¶ 16.  These California residents were employees who worked for PES LLC's clients.  *Id.* ¶ 9.  None of PES LLC's actual clients are California based businesses.  *Id.*  Further, PES LLC has "approximately 150 business clients, each of which have approximately anywhere from one to one-thousand employees."  *Id.* ¶ 17 (emphasis omitted).  Of all these employees, only five have resided in California.  *Id.*  These occasional acts by such attenuated contacts are insufficient to create the requisite "substantial connection" with California.  Accordingly, the court finds these contacts do not establish the "something more" needed to show PES LLC directly aimed its conduct toward California.

Finally, the court finds in this context that sending payroll into California and dealing with tax withholding for one client company is also not sufficient.  Defendants argue "[t]hough it may have sent payroll into California and dealt with tax withholding . . . that conduct was merely a product of non-clients happening to live in California, unrelated to PES, LLC or its business activities."  Mem. at 10.  The court also agrees setting up payroll and tax withholding for one client's employees in this context is an attenuated connection insufficient to establish purposeful direction, even if setting up payroll and a tax account for a client is related to PES LLC's business activities.  *See* Krouse Decl. at ¶ 8 (explaining PES LLC provides "its clients services such as employee administration . . . [and] payroll").

Accordingly, this court concludes plaintiffs' allegations regarding PES LLC's connections to California are too attenuated and do not demonstrate PES LLC expressly aimed its conduct toward California.

**2.      Intentional Trademark Infringement**

Plaintiffs also point to defendants' purported trademark infringement and trademark-related conduct as actions sufficient to establish specific jurisdiction. *See* Opp'n at 12–13. However, this argument appears to refashion plaintiffs' prior argument, without success. *See* Prior Order (Apr. 17, 2023) at 6–7 (finding plaintiffs claim that PHC intentionally infringed the trademark, while knowing plaintiffs were California residents, cannot establish personal jurisdiction or satisfy the expressly aiming prong).

Here, plaintiffs allege they "notified PHC of the infringement and unlawful use of the Pinnacle Trademark and the Domain Name on numerous occasions." FAC ¶ 60. However, as discussed previously, following the Supreme Court's decision in *Walden v. Fiore*, defendants' knowledge of plaintiffs' strong contacts with the forum does not "drive the jurisdictional analysis." 571 U.S. at 289–90; Prior Order (Apr. 17, 2023) at 6–7. Instead, the jurisdictional inquiry focuses on defendants' own contacts with the forum. Accordingly, the court finds plaintiffs' focus on defendants' alleged trademark infringement is not sufficient to confer specific jurisdiction.

**3.      PI's In-State Conduct**

Plaintiffs also point to a series of contacts PI has with California to support the allegation there is sufficient in-state conduct to establish this court's jurisdiction. *See* FAC ¶¶ 20–28; Opp'n at 13. Specifically, plaintiffs point to g, *inter alia*, PI's California brokerage license, its brokers and investment advisors licensed in California, and its physical branch office located in California. *See* FAC ¶¶ 20–28. However, as defendants point out, none of these contacts arise out of or relate to plaintiffs' trademark infringement claims. *See* Mem. at 14–15.

For specific jurisdiction to exist over PI, plaintiffs' claim must "arise[] out of or relate[] to the defendant's forum-related activities." *Axiom Foods*, 874 F.3d at 1068 (quoting *Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 1776. The Ninth Circuit employs a "but for test" to determine whether the plaintiff's claims arise out of or relate to the defendants' conduct.

9

*Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). "This requirement is met if, but for a defendant's forum-related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Long v. Authentic Athletix LLC*, 2016 U.S. Dist. LEXIS 142729 at *6 (N.D. Cal. Oct. 14, 2016) (quotation marks and citations omitted)).

Here, but for PI's California related activities, plaintiffs would still have been harmed by trademark infringement. Plaintiffs allege defendants infringed on "the Pinnacle Trademark, consisting of the phrase 'Pinnacle Employee Services'"—not Pinnacle Investments. *See* FAC ¶ 37. Accordingly, this court finds allegations of PI's business activities in California are insufficient to establish personal jurisdiction over it for purposes of this trademark infringement action.

**4.      Agency Theory of Personal Jurisdiction**

Lastly, the court finds plaintiffs do not allege any sufficient connections between PHC and California and instead rely on imputing PHC's subsidiaries' contacts to maintain personal jurisdiction.[4] *See* Opp'n at 11; *see generally* FAC. However, because this court finds neither PES LLC's nor PI's contacts with California are sufficient to establish personal jurisdiction, the court finds no need to assess the viability of plaintiffs' agency theory. Accordingly, the court finds it cannot exercise jurisdiction over PHC.

In sum, because defendants do not have sufficient minimum contacts with California, this court cannot exercise personal jurisdiction over PHC, PES LLC or PI.

**IV.     CONCLUSION**

For the reasons above, the court **grants defendants' motion to dismiss**. Plaintiff's complaint is hereby dismissed without prejudice and without leave to amend. *See Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (dismissals for lack of personal jurisdiction are to be without prejudice). The Clerk of Court is directed to **close** the case. Plaintiffs' counsel's /////

---

[4] Plaintiffs do allege PHC's Chief Operative Officer has been actively licensed in California as a broker through PI since September 10, 2007. *See* FAC ¶ 23. However, as discussed above, California related activities under the name "Pinnacle Investments" do not cause plaintiffs harm and are insufficient for purposes of the instant personal jurisdiction analysis.

10

motion to withdraw is moot given the court's dismissal of this action.  The **motion to withdraw**

**is denied** for that reason.

This order resolves ECF Nos. 37 and 39.

IT IS SO ORDERED.

DATED:  January 31, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT F

PTO- 1597
Approved for use through 01/31/2025. OMB 0651-0055
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Section 7 Request Form

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 6696685 |
| **SERIAL NUMBER** | 90376137 |
| **MARK SECTION** | |
| **MARK** | mark |
| **LITERAL ELEMENT** | PINNACLE EMPLOYEE SERVICES |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **OWNER SECTION (current)** | |
| **NAME** | PINNACLE EMPLOYEE SERVICES, INC. |
| **INTERNAL ADDRESS** | STE 100 |
| **MAILING ADDRESS** | 2377 GOLD MEADOW WAY |
| **CITY** | GOLD RIVER |
| **STATE** | California |
| **ZIP/POSTAL CODE** | 95670 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **OWNER SECTION (proposed)** | |
| **NAME** | PINNACLE EMPLOYEE SERVICES, INC. |
| **DBA/AKA/TA/Formerly** | DBA Pinnacle Employee Services |
| **MAILING ADDRESS** | 2377 GOLD MEADOW WAY |
| **CITY** | GOLD RIVER |
| **STATE** | California |
| **ZIP/POSTAL CODE** | 95670 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **PHONE** | 19163707849 |
| **EMAIL** | XXXX |
| **LEGAL ENTITY SECTION (current)** | |
| **TYPE** | corporation |
| **STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF INCORPORATION** | California |
| **LEGAL ENTITY SECTION (proposed)** | |

| TYPE | corporation |
|---|---|
| STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF INCORPORATION | California |

## EXPLANATION OF FILING

I need a new certificate mailed to me showing new ownership.

## ATTORNEY INFORMATION

| NAME | Samuel K Swenson |
|---|---|
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | THE SWENSON LAW FIRM |
| INTERNAL ADDRESS | STE 105 |
| STREET | 8788 GREENBACK LN |
| CITY | ORANGEVALE |
| STATE | California |
| POSTAL CODE | 95662 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| PHONE | 916-333-0833 |
| FAX | 9164593111 |
| EMAIL | sam@swensonlawfirm.com |

## CORRESPONDENCE INFORMATION

| NAME | SAMUEL K SWENSON |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | sam@swensonlawfirm.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | erica@swensonlawfirm.com |

## PAYMENT SECTION

| SECTION 7 FEE – Amendment filed is the correction of an immaterial error that was the fault of the USPTO | 100 |
|---|---|
| TOTAL FEES DUE | 100 |

## SIGNATURE SECTION

| DECLARATION SIGNATURE | /michael allen/ |
|---|---|
| SIGNATORY'S NAME | MICHAEL ALLEN |
| SIGNATORY'S POSITION | Owner |
| DATE SIGNED | 10/13/2023 |
| SIGNATURE METHOD | Signed directly within the form |
| REQUEST SIGNATURE | /michael allen/ |
| SIGNATORY'S NAME | MICHAEL ALLEN |
| SIGNATORY'S POSITION | Owner |
| DATE SIGNED | 10/13/2023 |

| ROLE OF AUTHORIZED SIGNATORY | Owner/Holder not represented by an attorney |
|---|---|
| SIGNATURE METHOD | Signed directly within the form |
| CONCURRENT 8, 8 &15, OR 8 &9 FILED | YES |
| **FILING INFORMATION SECTION** | |
| SUBMIT DATE | Fri Oct 13 15:47:06 ET 2023 |
| TEAS STAMP | USPTO/S7R-XX.XXX.XXX.XXX-20231013154707521577-6696685-850bfc9ed5a73c906e7cf5cdd9f7838a592d7b685f61e363ca289ff69b07e6a9e-CC-47066360-20231013152222993561 |

PTO- 1597
Approved for use through 01/31/2025. OMB 0651-0055
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## Section 7 Request Form

**To the Commissioner for Trademarks:**

The registrant requests the following amendment(s) to registration no. **6696685** PINNACLE EMPLOYEE SERVICES(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/90376137/large) has been amended as follows:

**EXPLANATION OF FILING**
I need a new certificate mailed to me showing new ownership.

**OWNER AND/OR ENTITY INFORMATION**
**Registrant proposes to amend the following:**
**Current:** PINNACLE EMPLOYEE SERVICES, INC., a corporation of California, having an address of
   2377 GOLD MEADOW WAY STE 100
    GOLD RIVER, California 95670
   United States
**Proposed:** PINNACLE EMPLOYEE SERVICES, INC. DBA Pinnacle Employee Services, a corporation of California, having an address of
   STE 100
   2377 GOLD MEADOW WAY
   GOLD RIVER, California 95670
   United States
   XXXX
   19163707849

The owner's/holder's current attorney information: Samuel K Swenson. Samuel K Swenson of THE SWENSON LAW FIRM, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

   STE 105
   8788 GREENBACK LN
   ORANGEVALE, California 95662
   United States

The phone number is 916-333-0833.

The fax number is 9164593111.

The email address is sam@swensonlawfirm.com

**Correspondence Information**
SAMUEL K SWENSON
PRIMARY EMAIL FOR CORRESPONDENCE: sam@swensonlawfirm.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): erica@swensonlawfirm.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

**FEE(S)**
Fee(s) in the amount of $100 is being submitted.

**SIGNATURE(S)**
**Declaration Signature**
The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

Signature: /michael allen/     Date: 10/13/2023
Signatory's Name: MICHAEL ALLEN
Signatory's Position: Owner
Signatory's Phone: 9163707849
Signature method: Signed directly within the form

**Request Signature**
Signature: /michael allen/     Date: 10/13/2023
Signatory's Name: MICHAEL ALLEN
Signatory's Position: Owner

Signatory's Phone: 9163707849

Signature method: Signed directly within the form
The signatory has confirmed that he/she is not represented by an authorized attorney, and that he/she is either: (1) the owner/holder ; or (2) a person or persons with legal authority to bind the owner/holder; and if he/she had previously been represented by an attorney in this matter, either he/she revoked their power of attorney by filing a signed revocation with the USPTO or the USPTO has granted this attorney's withdrawal request.

The registrant is filing a Declaration of Use of Mark under Section 8; a Combined Declaration of Use of Mark under Sections 8 & 15; or a Combined Declaration of Use of Mark/Application for Renewal of Registration of Mark under Sections 8 & 9 in conjunction with this Section 7 Request.

Mailing Address:    SAMUEL K SWENSON
  THE SWENSON LAW FIRM
  STE 105
  8788 GREENBACK LN
  ORANGEVALE, California 95662
Mailing Address:    Samuel K Swenson
  THE SWENSON LAW FIRM
  STE 105
  8788 GREENBACK LN
  ORANGEVALE, California 95662

PAYMENT: 6696685
PAYMENT DATE: 10/13/2023

Serial Number: 90376137
Internet Transmission Date: Fri Oct 13 15:47:06 ET 2023
TEAS Stamp: USPTO/S7R-XX.XXX.XXX.XXX-202310131547075

21577-6696685-850bfc9ed5a73c906e7cf5cdd9
f7838a592d7b685f61e363ca289ff69b07e6a9e-
CC-47066360-20231013152222993561

# United States of America
## United States Patent and Trademark Office

## PINNACLE EMPLOYEE SERVICES

**Reg. No. 6,696,685**

**Registered Apr. 12, 2022**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Michael Allen  (UNITED STATES INDIVIDUAL)
2377 Gold Meadow Way
Gold River, CALIFORNIA 95670

CLASS 35: Human resources consultation; Payroll preparation

FIRST USE 8-6-2013; IN COMMERCE 9-1-2013

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "EMPLOYEE SERVICES"

SER. NO. 90-376,137, FILED 12-11-2020



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

| | |
|---|---|
| **From:** | TMOfficialNotices@USPTO.GOV |
| **Sent:** | Tuesday, January 25, 2022 00:50 AM |
| **To:** | XXXX |
| **Cc:** | XXXX |
| **Subject:** | Official USPTO Notice of Publication Confirmation: U.S. Trademark SN 90376137: PINNACLE EMPLOYEE SERVICES |

## *TRADEMARK OFFICIAL GAZETTE* PUBLICATION CONFIRMATION

**U.S. Serial Number:** 90376137
**Mark:** PINNACLE EMPLOYEE SERVICES
**International Class(es):** 035
**Owner:** Michael Allen
**Docket/Reference Number:**

The mark identified above has been published in the Trademark Official Gazette (TMOG) on Jan 25, 2022.

**To Review the Mark in the TMOG:**

Click on the following link or paste the URL into an internet browser: https://tmog.uspto.gov/#issueDate=2022-01-25&serialNumber=90376137

On the publication date or shortly thereafter, the applicant should carefully review the information that appears in the TMOG for accuracy. For corrections or amendments after publication, please use the Post-Approval/Publication/Post-Notice of Allowance (NOA) Amendment Form, accessible at https://teas.uspto.gov/office/ppa. For general information about this notice, please contact the Trademark Assistance Center at 1-800-786-9199.

**Significance of Publication for Opposition:**

* Any party who believes it will be damaged by the registration of the mark may file a notice of opposition (or extension of time therefor) with the Trademark Trial and Appeal Board. If no party files an opposition or extension request within thirty (30) days after the publication date, then eleven (11) weeks after the publication date a certificate of registration should issue.

To check the status of the application, go to https://tsdr.uspto.gov/#caseNumber=90376137&caseType=SERIAL_NO&searchType=statusSearch or contact the Trademark Assistance Center at 1-800-786-9199. Please check the status of the application at least every three (3) months after the application filing date.

To view this notice and other documents for this application on-line, go to https://tsdr.uspto.gov/#caseNumber=90376137&caseType=SERIAL_NO&searchType=documentSearch. NOTE: This notice will only become available on-line the next business day after receipt of this e-mail.

 **UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**

Commissioner for Trademarks
www.uspto.gov

## OFFICIAL USPTO NOTICE OF PUBLICATION UNDER 12(a)

**U.S. Application Serial No.**  90376137
**Mark:**  PINNACLE EMPLOYEE SERVICES
**International Class(es):**  035
**Owner:**  Michael Allen
**Docket/Reference No.**

**Issue Date:**  January 5, 2022

**Your mark is scheduled to publish in the** *Trademark Official Gazette* **(TMOG) on January 25, 2022**.

**Your mark appears to be entitled to register** on the Principal Register, subject to any claims of concurrent use.

**What happens when your mark publishes.**  Within 30 days of the publication date, any party who believes it will be damaged by the registration of the mark may file a notice of opposition (or extension of time) with the Trademark Trial and Appeal Board.  If no objection is filed, we will issue a registration.

**View your mark in the TMOG** after the publication date at **https://tmog.uspto.gov/** by selecting your publication date in the "issues" field, entering your serial number in the "search by" field, and clicking on the magnifying glass.

**Ensure that the information in the TMOG is correct.**  If any information is incorrect, promptly request correction using the "Post-Approval/Publication/Post-Notice of Allowance (NOA) Amendment" form at **https://teas.uspto.gov/office/ppa/**.  For more information, see **https://www.uspto.gov/trademark/trademark-updates-and-announcements/procedures-submitting-amendmentscorrections-trademark**.

**Direct questions** about this notice to the Trademark Assistance Center (TAC)at 1-800-786-9199 (select option 1) or **TrademarkAssistanceCenter@uspto.gov**.

---

**Email Address(es):**

sam@swensonlawfirm.com
erica@swensonlawfirm.com

| | |
|---|---|
| **From:** | TMOfficialNotices@USPTO.GOV |
| **Sent:** | Wednesday, January 5, 2022 04:08 AM |
| **To:** | XXXX |
| **Cc:** | XXXX |
| **Subject:** | Official USPTO Notification of Notice of Publication: U.S. Trademark SN 90376137: PINNACLE EMPLOYEE SERVICES |

<u>NOTIFICATION OF "NOTICE OF PUBLICATION"</u>

Your trademark application (U.S. Serial No. 90376137) is scheduled to publish in the *Official Gazette* on Jan 25, 2022.  To preview the Notice of Publication, go to the Trademark Status & Document Retrieval (TSDR) database, accessible at <u>https://tsdr.uspto.gov/search.action?sn=90376137</u>.  If you have difficulty accessing the Notice of Publication, contact the Trademark Assistance Center (TAC) by e-mail at <u>TrademarkAssistanceCenter@uspto.gov</u> or by telephone at 800-786-9199.

**PLEASE NOTE:**
1. The Notice of Publication may not be immediately available but will be viewable within 24 hours of this e-mail notification.
2. You will receive a second e-mail on the actual "Publication Date," which will include a link to the issue of the *Official Gazette* in which the mark has published.

Please confirm that the correspondence information shown in TSDR is correct. If the correspondence information is not correct, please update this information using the online Change of Correspondence Address Form, accessible at <u>https://teas.uspto.gov/ccr/cca</u>.

Do NOT hit "Reply" to this e-mail notification. If you find an error in the Notice of Publication, update the information using the Post-Approval/Publication/Post-Notice of Allowance (NOA) Amendment Form, accessible at <u>https://teas.uspto.gov/office/ppa</u>.

| Trademark Snap Shot Publication Stylesheet |
|---|
| (Table presents the data on Publication Approval) |

## OVERVIEW

| SERIAL NUMBER | 90376137 | FILING DATE | 12/11/2020 |
|---|---|---|---|
| REG NUMBER | 0000000 | REG DATE | N/A |
| REGISTER | PRINCIPAL | MARK TYPE | SERVICE MARK |
| INTL REG # | N/A | INTL REG DATE | N/A |
| TM ATTORNEY | JOHNSON, DONALD OLVIN | L.O. ASSIGNED | 104 |

## PUB INFORMATION

| RUN DATE | 12/21/2021 |
|---|---|
| PUB DATE | N/A |
| STATUS | 681-PUBLICATION/ISSUE REVIEW COMPLETE |
| STATUS DATE | 12/21/2021 |
| LITERAL MARK ELEMENT | PINNACLE EMPLOYEE SERVICES |

| DATE ABANDONED | N/A | DATE CANCELLED | N/A |
|---|---|---|---|
| SECTION 2F | NO | SECTION 2F IN PART | NO |
| SECTION 8 | NO | SECTION 8 IN PART | NO |
| SECTION 15 | NO | REPUB 12C | N/A |
| RENEWAL FILED | NO | RENEWAL DATE | N/A |
| DATE AMEND REG | N/A | | |

## FILING BASIS

| FILED BASIS | | CURRENT BASIS | | AMENDED BASIS | |
|---|---|---|---|---|---|
| 1 (a) | YES | 1 (a) | YES | 1 (a) | NO |
| 1 (b) | NO | 1 (b) | NO | 1 (b) | NO |
| 44D | NO | 44D | NO | 44D | NO |
| 44E | NO | 44E | NO | 44E | NO |
| 66A | NO | 66A | NO | | |
| NO BASIS | NO | NO BASIS | NO | | |

## MARK DATA

| STANDARD CHARACTER MARK | YES |
|---|---|
| LITERAL MARK ELEMENT | PINNACLE EMPLOYEE SERVICES |
| MARK DRAWING CODE | 4-STANDARD CHARACTER MARK |
| COLOR DRAWING FLAG | NO |

## CURRENT OWNER INFORMATION

| PARTY TYPE | 10-ORIGINAL APPLICANT |
|---|---|

| NAME | Michael Allen |
|---|---|
| ADDRESS | 2377 Gold Meadow Way<br>Gold River, CA 95670 |
| ENTITY | 01-INDIVIDUAL |
| CITIZENSHIP | United States of America |

## GOODS AND SERVICES

| INTERNATIONAL CLASS | 035 |
|---|---|
| DESCRIPTION TEXT | Human resources consultation; Payroll preparation |

## GOODS AND SERVICES CLASSIFICATION

| INTERNATIONAL CLASS | 035 | FIRST USE DATE | 08/06/2013 | FIRST USE IN COMMERCE DATE | 09/01/2013 | CLASS STATUS | 6-ACTIVE |
|---|---|---|---|---|---|---|---|

## MISCELLANEOUS INFORMATION/STATEMENTS

| CHANGE IN REGISTRATION | NO |
|---|---|
| DISCLAIMER W/PREDETER TXT | "EMPLOYEE SERVICES" |

## PROSECUTION HISTORY

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM |
|---|---|---|---|---|
| 12/20/2021 | CNSA | O | APPROVED FOR PUB - PRINCIPAL REGISTER | 008 |
| 12/15/2021 | RCCK | S | SUSPENSION CHECKED ? TO ATTORNEY FOR ACTION | 007 |
| 06/10/2021 | GNS3 | O | NOTIFICATION OF LETTER OF SUSPENSION E-MAILED | 006 |
| 06/10/2021 | GNSL | F | LETTER OF SUSPENSION E-MAILED | 005 |
| 06/10/2021 | CNSL | R | SUSPENSION LETTER WRITTEN | 004 |
| 06/03/2021 | DOCK | D | ASSIGNED TO EXAMINER | 003 |
| 02/19/2021 | NWOS | I | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | 002 |
| 12/15/2020 | NWAP | I | NEW APPLICATION ENTERED IN TRAM | 001 |

## CURRENT CORRESPONDENCE INFORMATION

| ATTORNEY | Samuel K Swenson |
|---|---|
| CORRESPONDENCE ADDRESS | SAMUEL K SWENSON<br>THE SWENSON LAW FIRM<br>8788 GREENBACK LN<br>STE 105<br>ORANGEVALE, CA 95662 |
| DOMESTIC REPRESENTATIVE | NONE |

# PINNACLE EMPLOYEE SERVICES

| To: | Michael Allen (sam@swensonlawfirm.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 90376137 - PINNACLE EMPLOYEE SERVICES - N/A |
| **Sent:** | June 10, 2021 11:53:02 AM |
| **Sent As:** | ecom104@uspto.gov |
| **Attachments:** | Attachment - 1<br>Attachment - 2<br>Attachment - 3 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90376137

**Mark:** PINNACLE EMPLOYEE SERVICES

**Correspondence Address:**
  SAMUEL K SWENSON
  THE SWENSON LAW FIRM
  8788 GREENBACK LN
  STE 105
  ORANGEVALE, CA 95662
**Applicant:** Michael Allen

**Reference/Docket No.** N/A

**Correspondence Email Address:**

sam@swensonlawfirm.com

## SUSPENSION NOTICE
### No Response Required

**Issue date:** June 10, 2021

**The application is suspended** for the reason specified below.  *See* 37 C.F.R. §2.67; TMEP §§716 *et seq.*

The pending application below has an earlier filing date or effective filing date than applicant's application.   If the mark in the application below registers, the USPTO may refuse registration of applicant's mark under Section 2(d) because of a likelihood of confusion with the registered mark(s).  15 U.S.C. §1052(d); *see* 37 C.F.R. §2.83; TMEP §1208.02(c).  Action on this application suspended until the prior-filed application below either registers or abandons.  37 C.F.R. 2.83(c).  Information relevant to the application below is provided in this letter.

    - U.S. Application Serial No. 90284799

**Suspension process.**  The USPTO will periodically check this application to determine if it should remain suspended.  *See* TMEP §716.04.  As

needed, the trademark examining attorney will issue a letter to applicant to inquire about the status of the reason for the suspension.  TMEP §716.05.

**No response required.**  Applicant may file a response, but is not required to do so.

/Donald Johnson/
Donald O. Johnson
Examining Attorney
Law Office 104
571-272-7831
don.johnson@uspto.gov

**Print: Jun 7, 2021**                              **90284799**

**DESIGN MARK**

**Serial Number**
90284799

**Status**
NON-FINAL ACTION - MAILED

**Word Mark**
PINNACLE EMPLOYEE SERVICES

**Standard Character Mark**
No

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
Pinnacle Holding Company, LLC LIMITED LIABILITY COMPANY NEW YORK 507
Plum St., Suite 120 Syracuse NEW YORK 13204

**Goods/Services**
Class Status -- ACTIVE.  IC 035.  US  100 101 102.  G & S: Payroll
administration and management services.  First Use: 2014/11/18.  First
Use In Commerce: 2014/11/18.

**Goods/Services**
Class Status -- ACTIVE.  IC 036.  US  100 101 102.  G & S:
Administration of employee benefit plans concerning insurance and
finance; Claims administration in the field of workers' compensation.
First Use: 2014/11/18.  First Use In Commerce: 2014/11/18.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "EMPLOYEE SERVICES"
APART FROM THE MARK AS SHOWN.

**Description of Mark**
The mark consists of an icon of two triangular figures representing
people positioned to the left of the words Pinnacle Employee Services.

**Filing Date**
2020/10/28

**Examining Attorney**
BROWNE, LUCY ELLEN

-1-

**Print: Jun 7, 2021**                                    **90284799**

**Attorney of Record**
George R. McGuire



| To: | Michael Allen (sam@swensonlawfirm.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 90376137 - PINNACLE EMPLOYEE SERVICES - N/A |
| **Sent:** | June 10, 2021 11:53:04 AM |
| **Sent As:** | ecom104@uspto.gov |
| **Attachments:** | |

**United States Patent and Trademark Office (USPTO)**

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **June 10, 2021** for
**U.S. Trademark Application Serial No. 90376137**

Your trademark application has been reviewed by a trademark examining attorney.  As part of that review, the assigned attorney has issued an official letter.  Please follow the steps below.

**(1)  Read the official letter.**  No response is necessary.

**(2)  Direct questions** about the contents of the Office action to the assigned attorney below.

/Donald Johnson/
Donald O. Johnson
Examining Attorney
Law Office 104
571-272-7831
don.johnson@uspto.gov

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

## GENERAL GUIDANCE

· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.

· **Beware of misleading notices sent by private companies about your application.**  Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees.  All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**

*** User:djohnson2 ***

| # | Total Marks | Dead Marks | Live Viewed Docs | Live Viewed Images | Status/ Search Duration | Search |
|---|---|---|---|---|---|---|
| 01 | 1 | 0 | 1 | 1 | 0:01 | 90376137[SN] |
| 02 | 454 | N/A | 0 | 0 | 0:01 | *p{"iy"}{"n"1:2}{v}{"ck"}l*[bi,ti] not dead[ld] |
| 03 | 3802073 | N/A | 0 | 0 | 0:01 | "035"[cc] |
| 04 | 268 | 0 | 266 | 252 | 0:01 | 2 and 3 |
| 05 | 808 | N/A | 0 | 0 | 0:01 | *mpl{v}{"iy"}e*[bi,ti] not dead[ld] |
| 06 | 16148 | N/A | 0 | 0 | 0:12 | *{"sz"}{v}rv{"iy"}{"szc"}{v}*[bi,ti] not dead[ld] |
| 07 | 2 | 0 | 2 | 2 | 0:01 | 2 and 5 and 6 |

Session started 6/7/2021 9:04:01 AM

Session finished 6/7/2021 10:18:43 AM

Total search duration 0 minutes 18 seconds

Session duration 74 minutes 42 seconds

Defaut NEAR limit=1ADJ limit=1

Sent to TICRS as Serial Number: 90376137

*** User:djohnson2 ***

| # | Total Marks | Dead Marks | Live Viewed Docs | Live Viewed Images | Status/ Search Duration | Search |
|---|---|---|---|---|---|---|
| 01 | 1 | 0 | 1 | 1 | 0:01 | 90376137[SN] |
| 02 | 454 | N/A | 0 | 0 | 0:01 | *p{"iy"}{"n"1:2}{v}{"ck"}l*[bi,ti] not dead[ld] |
| 03 | 3802073 | N/A | 0 | 0 | 0:01 | "035"[cc] |
| 04 | 268 | 0 | 266 | 252 | 0:01 | 2 and 3 |
| 05 | 808 | N/A | 0 | 0 | 0:01 | *mpl{v}{"iy"}e*[bi,ti] not dead[ld] |
| 06 | 16148 | N/A | 0 | 0 | 0:12 | *{"sz"}{v}rv{"iy"}{"szc"}{v}*[bi,ti] not dead[ld] |
| 07 | 2 | 0 | 2 | 2 | 0:01 | 2 and 5 and 6 |

Session started 6/7/2021 9:04:01 AM

Session finished 6/7/2021 10:18:42 AM

Total search duration 0 minutes 18 seconds

Session duration 74 minutes 41 seconds

Defaut NEAR limit=1ADJ limit=1

Sent to TICRS as Serial Number: 90376137

# PINNACLE EMPLOYEE SERVICES



← → C ⟳ 🔒 pinnaclehro.com/home

PAYCHECK LOGIN | HR LOGIN | PAYROLL LOGIN | 1-888-353-2976

PAYROLL | HUMAN RESOURCES | EMPLOYEE SCREENING | ABOUT | SUPPORT

FORMS | BLOG



## A Full Service HR Provider

Pinnacle Employee Services is a full-service HR Management company. We are dedicated to assisting businesses with increased compliance requirements resulting from the rapidly evolving legislation. Our goal is to minimize your administrative burden across the entire spectrum of payroll, tax, HR and benefits, so that you can focus on running your business.

You will be impressed by how smoothly your payroll and HR functions will run when they are handled by Pinnacle. We provide the best-in class solutions that help you run your business better. These solutions allow you to focus on growing your business without the stressful and time consuming tasks of Payroll and Human Resource compliance.

With our cutting – edge technology, our services provide businesses an intuitive and comprehensive solution that delivers trouble free payroll services and strategic HR Outsourcing services. No matter what industry or size your business is, we have a solution for you.

To get started, contact Pinnacle Employee Services and we will put an action plan together to relieve you of those stressful and daunting payroll and human resource tasks.



GET COMPLIANT DOWNLOAD OUR FREE
HR ASSESSMENT CHECKLIST
DOWNLOAD NOW

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 90376137**
**Filing Date: 12/11/2020**

*NOTE: Data fields with the* **\*** *are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

---

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| **\*MARK** | PINNACLE EMPLOYEE SERVICES |
| **\*STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | PINNACLE EMPLOYEE SERVICES |
| **\*MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| **\*OWNER OF MARK** | Michael Allen |
| **\*MAILING ADDRESS** | 2377 Gold Meadow Way |
| **\*CITY** | Gold River |
| **\*STATE** (Required for U.S. applicants) | California |
| **\*COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **\*ZIP/POSTAL CODE** (Required for U.S. and certain international addresses) | 95670 |
| **\*DOMICILE** | XXXX |
| **PHONE** | 916-370-7849 |
| **\*EMAIL ADDRESS** | XXXX |
| **WEBSITE ADDRESS** | pinnaclehro.com |
| **LEGAL ENTITY INFORMATION** | |
| **\*TYPE** | INDIVIDUAL |
| **\* COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF CITIZENSHIP** | United States |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **\*INTERNATIONAL CLASS** | 035 |

| | |
|---|---|
| **\*IDENTIFICATION** | Human resources consultation; Payroll preparation |
| **\*FILING BASIS** | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 08/06/2013 |
| FIRST USE IN COMMERCE DATE | At least as early as 09/01/2013 |
| SPECIMEN FILE NAME(S) | |
| **ORIGINAL PDF FILE** | SPE0-26033006101aa50051f3 7ae17c578d34-202012111445 39596904_._Pinnacle_Scree n_Shot_2020-12-11_at_12.0 3.40_PM.pdf |
| **CONVERTED PDF FILE(S)** (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\903\761\90376137\xml1\ FTK0003.JPG |
| **SPECIMEN DESCRIPTION** | Screenshot of website-URL https://www.pinnaclehro.com/home, taken on 12/11/2020- showing use of the mark advertising the related services. |
| **ADDITIONAL STATEMENTS SECTION** | |
| **\*TRANSLATION** (if applicable) | |
| **\*TRANSLITERATION** (if applicable) | |
| **\*CLAIMED PRIOR REGISTRATION** (if applicable) | |
| **\*CONSENT (NAME/LIKENESS)** (if applicable) | |
| **\*CONCURRENT USE CLAIM** (if applicable) | |
| **DISCLAIMER** | No claim is made to the exclusive right to use employee services apart from the mark as shown. |
| **ATTORNEY INFORMATION** | |
| **NAME** | Samuel K Swenson |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | The Swenson Law Firm |
| **INTERNAL ADDRESS** | Ste 105 |
| **STREET** | 8788 Greenback Ln |
| **CITY** | Orangevale |
| **STATE** | California |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **ZIP/POSTAL CODE** | 95662 |
| **PHONE** | 916-333-0833 |
| **FAX** | 9164593111 |
| **EMAIL ADDRESS** | sam@swensonlawfirm.com |
| **CORRESPONDENCE INFORMATION** | |

| NAME | Samuel K Swenson |
|---|---|
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | sam@swensonlawfirm.com |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | erica@swensonlawfirm.com |
| **FEE INFORMATION** | |
| **APPLICATION FILING OPTION** | TEAS Plus |
| **NUMBER OF CLASSES** | 1 |
| **APPLICATION FOR REGISTRATION PER CLASS** | 225 |
| ***TOTAL FEES DUE** | 225 |
| ***TOTAL FEES PAID** | 225 |
| **SIGNATURE INFORMATION** | |
| * **SIGNATURE** | /Samuel K Swenson/ |
| * **SIGNATORY'S NAME** | Samuel K Swenson |
| * **SIGNATORY'S POSITION** | Attorney of record, California Bar member |
| **SIGNATORY'S PHONE NUMBER** | 916-333-0833 |
| * **DATE SIGNED** | 12/11/2020 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

**Trademark/Service Mark Application, Principal Register**

**TEAS Plus Application**

**Serial Number: 90376137**
**Filing Date: 12/11/2020**

## To the Commissioner for Trademarks:

**MARK:** PINNACLE EMPLOYEE SERVICES (Standard Characters, see mark)
The literal element of the mark consists of PINNACLE EMPLOYEE SERVICES. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Michael Allen, a citizen of United States, having an address of
    2377 Gold Meadow Way
    Gold River, California 95670
    United States
    916-370-7849(phone)
    XXXX
Domiciled at: XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 035:  Human resources consultation; Payroll preparation

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 035, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 08/06/2013, and first used in commerce at least as early as 09/01/2013, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Screenshot of website-URL https://www.pinnaclehro.com/home, taken on 12/11/2020-showing use of the mark advertising the related services..

**Original PDF file:**
SPE0-26033006101aa50051f3 7ae17c578d34-202012111445 39596904_._Pinnacle_Scree n_Shot_2020-12-11_at_12.0 3.40_PM.pdf
**Converted PDF file(s)** (1 page)
Specimen File1

**Disclaimer**
No claim is made to the exclusive right to use employee services apart from the mark as shown.

For informational purposes only, applicant's website address is: pinnaclehro.com
The owner's/holder's proposed attorney information: Samuel K Swenson. Samuel K Swenson of The Swenson Law Firm, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at
    Ste 105
    8788 Greenback Ln
    Orangevale, California 95662
    United States
    916-333-0833(phone)
    9164593111(fax)
    sam@swensonlawfirm.com

Samuel K Swenson submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

The applicant's current Correspondence Information:

　　Samuel K Swenson
　　　PRIMARY EMAIL FOR CORRESPONDENCE: sam@swensonlawfirm.com
　　　SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): erica@swensonlawfirm.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

A fee payment in the amount of $225 has been submitted with the application, representing payment for 1 class(es).

**Declaration**

☑ **Basis:**
**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Samuel K Swenson/   Date: 12/11/2020
Signatory's Name: Samuel K Swenson
Signatory's Position: Attorney of record, California Bar member
Signatory's Phone Number: 916-333-0833
Payment Sale Number: 90376137
Payment Accounting Date: 12/11/2020

Serial Number: 90376137
Internet Transmission Date: Fri Dec 11 15:26:35 ET 2020
TEAS Stamp: USPTO/FTK-XXXX:XXXX:XXXX:XXXX:XXXX:XXXX:
XXXX:XXXX-20201211152635135061-90376137-
750539fb167dcf084d1f88f389fcaa03264771ed
7541c96113e5fab72e632ef168-CC-26335897-2

0201211144539596904

# PINNACLE EMPLOYEE SERVICES



PAYCHECK LOGIN | HR LOGIN | PAYROLL LOGIN | 1-888-353-2976

PAYROLL | HUMAN RESOURCES | EMPLOYEE SCREENING | ABOUT | SUPPORT

FORMS | BLOG



Pinnacle Employee Services Human Resources, Payroll, Benefits

## A Full Service HR Provider

Pinnacle Employee Services is a full-service HR Management company. We are dedicated to assisting businesses with increased compliance requirements resulting from the rapidly evolving legislation. Our goal is to minimize your administrative burden across the entire spectrum of payroll, tax, HR and benefits, so that you can focus on running your business.

You will be impressed by how smoothly your payroll and HR functions will run when they are handled by Pinnacle. We provide the best-in class solutions that help you run your business better. These solutions allow you to focus on growing your business without the stressful and time consuming tasks of Payroll and Human Resource compliance.

With our cutting – edge technology, our services provide businesses an intuitive and comprehensive solution that delivers trouble free payroll services and strategic HR Outsourcing services. No matter what industry or size your business is, we have a solution for you.

To get started, contact Pinnacle Employee Services and we will put an action plan together to relieve you of those stressful and daunting payroll and human resource tasks.



GET COMPLIANT DOWNLOAD OUR FREE

**HR ASSESSMENT CHECKLIST**

**DOWNLOAD NOW**