**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF NEW YORK**

PINNACLE HOLDING COMPANY, LLC and
PINNACLE EMPLOYEE SERVICES, LLC,

Plaintiffs,

v.

MICHAEL ALLEN and PINNACLE
EMPLOYEE SERVICES, INC.,

Defendants.

Civil Action No. 5:24-cv-239
(AJB/TWD)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

# Table of Contents

*PRELIMINARY STATEMENT*..................................................................................... *1*

*FACTUAL AND PROCEDURAL BACKGROUND*......................................................... *1*

*ARGUMENT*............................................................................................................. *3*

I.      PLAINTIFFS' PROPOSED AMENDMENT IS FUTILE BECAUSE IT CANNOT ESTABLISH PERSONAL JURISDICTION ........................................................... 3

II.    PERSONAL JURISDICTION MUST EXIST AT THE TIME THE COMPLAINT IS FILED AND CANNOT BE CREATED BY POST-FILING CONDUCT ...................... 5

III.    A REJECTED NEW YORK TRADEMARK APPLICATION DOES NOT CONSTITUTE "TRANSACTING BUSINESS" UNDER CPLR § 302(a)(1) ..................... 7

IV.    PLAINTIFFS' PROPOSED AMENDMENT IMPROPERLY SEEKS TO RELITIGATE ISSUES ALREADY DECIDED AND FAILS TO CURE THE JURISDICTIONAL DEFECT ........................................................................... 9

V.     EVEN IF THE APPLICATION WAS SUBMITTED IN 2023, PERSONAL JURISDICTION DID NOT EXIST AT THE FILING OF THIS ACTION ...................... 12

*CONCLUSION*......................................................................................................... *14*

## CASES

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007)........................................................... 5

*Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44 (2d Cir. 1991).................................................... 9

*Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243 (2d Cir. 2002) ............................................... 3

*McCabe v. Trombley*, 867 F. Supp. 120 (N.D.N.Y. 1994)................................................................. 3

*McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377 (1967) ................................................... 7

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc*., 507 F.3d 117 (2d Cir. 2007) .............................. 3

*Ruotolo v. City of New York,* 514 F.3d 184 (2d Cir. 2008) ........................................................... 10

**Statutes**

N.Y. Gen. Bus. Law § 360(h)........................................................................................................... 8

**Rules**

CPLR § 302(a)(1) ............................................................................................................................. 1

**PRELIMINARY STATEMENT**

Defendants Michael Allen and Pinnacle Employee Services, Inc., (the "Defendants"), through the undersigned counsel, hereby submit this Memorandum of Law in opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint [ECF No. 50].

**FACTUAL AND PROCEDURAL BACKGROUND**

This action arises out of a trademark dispute between Plaintiffs, New York–based entities, and Defendants Michael Allen and Pinnacle Employee Services, Inc. ("PES"), a California corporation and its California-resident principal. Plaintiffs commenced this action on February 16, 2024, asserting claims for trademark infringement, unfair competition, and declaratory relief. [ECF No. 1].

Defendants moved to dismiss the Complaint for lack of personal jurisdiction. [ECF No. 29]. Following briefing, the Court issued a Decision and Order dated September 2, 2025, concluding that Plaintiffs had not established personal jurisdiction over Defendants under CPLR § 302(a)(1). [ECF No. 43]. The Court permitted limited jurisdictional discovery. *Id.*

Plaintiffs now move for leave to file a Second Amended Complaint, asserting that Defendants' New York service mark application history supports re-pleading personal jurisdiction. [ECF No. 50].

Defendant PES is a California corporation with its principal place of business in California. Defendant Michael Allen is a resident of California. Despite Defendant Allen's representation on his New York service mark application, Defendants do not maintain offices, employees, clients, vendors, agents, or bank accounts in New York, do not market or advertise in New York, and do not derive revenue from New York customers. See Affirmation of Michael

1

Allen ("Allen Aff.") ¶¶ 2–3. Defendant Allen did not consult an attorney when filling out the application, and did not understand the legal significance of the "first use" field. Allen Aff. ¶15. In 2013, Defendant Allen rebranded his company under the name Pinnacle Employee Services and began offering services on a national level. Allen Aff. ¶13. When Defendant Allen filled out the application for his New York service mark, he understood "first use" to mean that he generally, in a non-legal sense, used the term in interstate commerce or nationally—not that PES began doing business in New York, and not that PES ever provided services to New York clients. *Id.*

On March 12, 2024, PES submitted an application to register a New York service mark with the New York Department of State. Allen Aff. ¶ 4; Ex. A. By email dated March 19, 2024, the Department of State informed Defendant Allen that the application would be rejected because the business card specimens submitted did not match the description provided in Section 5 of the application. Allen Aff. ¶ 5; Ex. B. That application was rejected, and no service mark registration issued as a result. Allen Aff. ¶¶ 6–7.

Following the rejection of the March 12, 2024 application, PES submitted a corrected service mark application addressing the specimen issue identified by the Department of State. Allen Aff. ¶ 8; Ex. C. The corrected application bears a date of March 19, 2023; however, as set forth in the Michael Allen Affirmation, the appearance of a 2023 date is the result of a typographical error, and the application was in fact submitted on March 19, 2024. Allen Aff. ¶ 9. On March 29, 2024, the New York Department of State transmitted a copy of the New York service mark certificate to Defendant Allen. Allen Aff. ¶ 10; Exs. D–E. The service mark registration issued on March 22, 2024. *Id.*

2

**ARGUMENT**

**I.    PLAINTIFFS' PROPOSED AMENDMENT IS FUTILE BECAUSE IT CANNOT ESTABLISH PERSONAL JURISDICTION**

Although Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires, courts routinely deny leave where a proposed amendment would be futile. An amendment is futile if it could not withstand a motion to dismiss, including where it fails to cure a jurisdictional defect. *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007); *McCabe v. Trombley*, 867 F. Supp. 120, 127 (N.D.N.Y. 1994). Plaintiffs therefore bear the burden of demonstrating that their proposed Second Amended Complaint would plausibly establish this Court's personal jurisdiction over Defendants. They cannot meet that burden here.

Plaintiffs' proposed amendment rests entirely on Defendants' New York service mark activity—specifically, two service mark applications submitted in March 2024, one of which was rejected and one of which resulted in a registration issued after this lawsuit was filed. Plaintiffs' motion places particular emphasis on an application bearing a "2023" date, but the evidentiary record establishes that this date was a typographical error and that no New York service mark application was filed in 2023 at all. Allen Aff. ¶¶ 7–11; Allen Aff. Exs. A–E.

A registration obtained after an action is commenced cannot retroactively supply jurisdiction that was absent at the time of filing. In *McCabe*, the court denied leave to amend where the plaintiff attempted to replead jurisdictional allegations without curing the underlying defect, holding that the proposed amendment "necessarily suffer[ed] from the same jurisdictional and pleading defects" as the original complaint. 867 F. Supp. at 127. The same is true here:

3

Plaintiffs' amendment does not add any pre-filing contacts with New York and therefore cannot change the jurisdictional analysis.

The case at bar fits squarely within the Second Circuit's guidance in *Lucente*. There, after the district court dismissed the plaintiff's claims, the plaintiff sought leave to amend in an effort to revive claims that were legally deficient as pleaded. 310 F.3d at 255–58. The Second Circuit affirmed denial of leave, emphasizing that amendment is futile where the proposed pleading could not survive a motion to dismiss, regardless of how the allegations are reframed. *Id*. at 258. The Court made clear that Rule 15 does not require courts to permit amendment where the underlying legal deficiency remains unchanged.

That principle applies with full force here. Plaintiffs' proposed amendment does not introduce any new pre-filing jurisdictional facts; instead, it confirms that all trademark activity on which Plaintiffs rely occurred after the Complaint was filed. Because the absence of personal jurisdiction at the time of filing is a legal bar—not a pleading defect—no amount of repleading can cure it. The proposed Second Amended Complaint would therefore be immediately subject to dismissal and is futile.

The Second Circuit's decision in *Port Dock* further reinforces this conclusion. There, the plaintiff sought leave to amend after dismissal, arguing that additional factual allegations could salvage claims the district court had already found legally deficient. 507 F.3d at 124–27. The Second Circuit rejected that effort, holding that amendment should be denied where "repleading would be futile" because it would not alter the legal outcome. *Id*. at 127. The Court emphasized that Rule 15 does not require courts to permit amendment where the dispositive legal flaw remains.

4

Here, as in *Port Dock*, amendment would not change the result. Plaintiffs cannot identify any conduct by Defendants before February 16, 2024 that would establish personal jurisdiction in New York. Their proposed amendment merely repackages post-filing trademark activity that the Court has already held cannot confer jurisdiction. Because the jurisdictional deficiency is incurable, leave to amend should be denied.

**II.  PERSONAL JURISDICTION MUST EXIST AT THE TIME THE COMPLAINT IS FILED AND CANNOT BE CREATED BY POST-FILING CONDUCT**

The Second Circuit has long held that personal jurisdiction is determined by a defendant's contacts with the forum state at the moment the action is commenced, and that later-occurring events cannot retroactively cure a jurisdictional defect. In *Klinghoffer v. S.N.C. Achille Lauro*, the court stated the rule unequivocally: "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed." 937 F.2d 44, 52 (2d Cir. 1991).

*Klinghoffer* arose from civil claims against the Palestine Liberation Organization ("PLO") and related entities stemming from the 1985 hijacking of the cruise ship Achille Lauro and the killing of an American passenger. *Id*. at 46–48. The plaintiffs sought to hale the PLO into a New York forum based on the organization's alleged New York presence and activities over time—most notably through offices and personnel connected to its U.N.-adjacent operations and other asserted New York-facing conduct. *Id*. at 49–53. The Second Circuit recognized that the jurisdictional question could not be decided by pointing to a defendant's general historical footprint or to contacts that may have existed at some point in the past or that arose later. Instead, the court emphasized that the proper inquiry is a time-specific snapshot: whether the defendant's forum contacts existed when each action was commenced. *Id*. at 52–53.

The Second Circuit did not accept the premise that jurisdiction could be inferred from the PLO's general notoriety or from the possibility that it maintained New York contacts at some point. Rather, it remanded for factual findings because the record did not establish whether the relevant New York contacts continued to exist at the jurisdictional moment when the particular complaints were filed. *Id*. at 52–53. In other words, *Klinghoffer* treated the jurisdictional inquiry as fixed at filing and rejected an approach that would allow jurisdiction to be justified by contacts that were "earlier" or "later" than the commencement date. *Id*. That is the opposite of a rolling, post hoc test; it is a strict "as-of-filing" rule.

That rule controls here. Plaintiffs commenced this action on February 16, 2024. [ECF No. 1]. At that time, Defendants had no New York service mark registration, and the record establishes that the New York service mark activity Plaintiffs now rely upon occurred only after suit was filed. Allen Aff. ¶¶ 6–11; Allen Aff. Exs. A–E. Specifically, Defendants' first application was submitted on March 12, 2024 and was rejected, and the subsequent corrected application (the one Plaintiffs point to as "2023") bears a typographical date error but was also submitted in March 2024 and led to the later-issued certificate. Allen Aff. ¶¶ 8–11; Allen Aff. Exs. A–E. Thus, even taking Plaintiffs' proposed allegations at face value, their jurisdictional theory depends on post-commencement trademark filings and a post-commencement registration.

*Klinghoffer* forecloses that maneuver. Just as the Second Circuit required proof of sufficient New York contacts at the time the complaint was filed—and treated later-developing or earlier, non-contemporaneous contacts as legally insufficient—Plaintiffs cannot manufacture jurisdiction here by pointing to trademark activity that arose only after February 16, 2024. 937

6

F.2d at 52–53. Accepting Plaintiffs' approach would convert personal jurisdiction into a moving target, allowing plaintiffs to file first and then attempt to "cure" jurisdiction later through subsequent administrative events. That is precisely what *Klinghoffer* rejects: jurisdiction must exist before a defendant is hauled into court, not as a consequence of later developments.

Accordingly, because Plaintiffs' proposed amendment relies exclusively on events occurring after the case was commenced, it cannot cure the jurisdictional defect previously identified by the Court in its September 2, 2025 Decision and Order. [ECF No. 43]. Under *Klinghoffer*, the amendment fails as a matter of law.

### III. A REJECTED NEW YORK TRADEMARK APPLICATION DOES NOT CONSTITUTE "TRANSACTING BUSINESS" UNDER CPLR § 302(a)(1)

Under CPLR § 302(a)(1), a New York court may exercise specific jurisdiction over a non-domiciliary only where the defendant has purposefully transacted business in New York and the cause of action arises from that transaction. The statute requires more than a tangential or incidental contact with the forum; it demands a showing of deliberate, New York-directed conduct by which the defendant avails itself of the privilege of conducting activities within the state and thereby invokes the benefits and protections of New York law. *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382 (1967). The Second Circuit has repeatedly emphasized that this inquiry focuses on the quality, not the quantity, of the defendant's forum contacts and rejects jurisdiction based on attenuated, fortuitous, or purely administrative connections. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252–53 (2d Cir. 2007).

A rejected New York trademark application does not satisfy this standard. Filing an application—particularly one that is denied—does not involve the sale of goods or services, does

not reflect participation in New York's commercial marketplace, and does not create any enforceable rights under New York law. New York's trademark statute requires bona fide use of a mark in the ordinary course of trade within the state, not merely an attempt to secure registration. N.Y. Gen. Bus. Law § 360(h). Here, the record confirms that Defendants' March 12, 2024 application was rejected by the Department of State due to deficiencies in the submitted specimens and did not result in any registration or statutory protection. Allen Aff. ¶¶ 8–9; Allen Aff. Exs. A, C. The rejection itself underscores the absence of qualifying in-state commercial activity and confirms that Defendants had not engaged in the type of New York-directed conduct contemplated by CPLR § 302(a)(1).

The Second Circuit's decision in *Best Van Lines* illustrates why Plaintiffs' jurisdictional theory fails as a matter of law. In that case, the defendant, an Iowa resident, operated a consumer-complaint website from outside New York that published allegedly defamatory statements about moving companies nationwide, including a New York-based plaintiff. 490 F.3d at 242–44. The website was accessible in New York, and the plaintiff alleged that the content caused reputational and economic harm within the state. *Id*. Despite those allegations, the Second Circuit held that jurisdiction under CPLR § 302(a)(1) was lacking because the defendant had not purposefully availed himself of the New York forum. *Id*. at 252–55. The court emphasized that the mere accessibility of a website in New York—even when coupled with alleged in-state injury—does not constitute transacting business absent deliberate, forum-directed commercial conduct. *Id*.

That reasoning applies with even greater force here. Unlike the defendant in *Best Van Lines*, Defendants did not operate a website aimed at New York consumers, solicit New York

business, or engage in any conduct directed at the New York marketplace. Instead, Plaintiffs rely on a single, unsuccessful administrative filing with a New York agency—an application that conferred no rights, involved no commercial exchange, and was rejected outright. Allen Aff. ¶¶ 8–9; Allen Aff. Exs. A, C. If a nationally accessible website alleged to harm a New York entity is insufficient to establish purposeful availment, then an isolated, non-commercial trademark application that never matured into a registration cannot plausibly constitute "transacting business" within the meaning of CPLR § 302(a)(1).

Accepting Plaintiffs' theory would lead to an untenable and constitutionally suspect result: any out-of-state entity could be haled into New York courts merely for attempting—and failing—to register a trademark, regardless of whether it engaged in any actual business activity in the state. No New York court has endorsed such an expansive view of CPLR § 302(a)(1), and doing so here would improperly collapse the distinction between administrative contact and purposeful commercial activity. Because Defendants' rejected trademark application does not reflect deliberate New York-directed business conduct and Plaintiffs' claims do not arise from any qualifying transaction in New York, CPLR § 302(a)(1) provides no basis for personal jurisdiction.

IV.    **PLAINTIFFS' PROPOSED AMENDMENT IMPROPERLY SEEKS TO RELITIGATE ISSUES ALREADY DECIDED AND FAILS TO CURE THE JURISDICTIONAL DEFECT**

In its September 2, 2025 Decision and Order, this Court squarely addressed—and rejected—Plaintiffs' reliance on Defendants' New York trademark activity as a basis for personal jurisdiction. [ECF No. 43]. After full briefing and consideration, the Court held that Plaintiffs had failed to establish personal jurisdiction under CPLR § 302(a)(1) because the only

New York service mark registration on which Plaintiffs relied issued after the filing of the Complaint and therefore could not establish jurisdiction at the time the action was commenced. *Id*. The Court expressly recognized that personal jurisdiction must exist at filing and cannot be created retroactively through post-filing conduct. *Id*.

Plaintiffs' proposed Second Amended Complaint does not alter that analysis in any meaningful respect. To the contrary, the proposed amendment confirms the same dispositive facts the Court already relied upon: that Defendants' service mark application activity occurred in March 2024 and that the only registration issued after Plaintiffs filed suit on February 16, 2024. Allen Aff. ¶¶ 8–11; Allen Aff. Exs. A–E; [ECF No. 1]. Plaintiffs now attempt to revive their jurisdictional theory by pointing to an alleged "2023" application—an argument premised on a typographical error in the date reflected on a corrected filing—but even Plaintiffs' own proposed pleading concedes that no New York service mark registration existed before suit was filed. [See ECF No. 50]. The amendment thus does not supply any new pre-filing jurisdictional facts; it merely repackages the same post-filing trademark activity this Court has already found insufficient.

The Second Circuit's decision in *Ruotolo v. City of New York* is directly on point and confirms that leave to amend is properly denied in these circumstances. In *Ruotolo*, the plaintiff, a retired NYPD sergeant, brought First Amendment retaliation claims based on speech the district court found was not constitutionally protected. 514 F.3d 184, 186–88 (2d Cir. 2008). After the district court dismissed the claims and entered judgment, the plaintiff sought leave to amend in an effort to introduce a new factual theory and revive claims that had already been deemed legally defective. *Id*. at 189–91.

10

The Second Circuit affirmed denial of leave to amend, emphasizing that Rule 15 does not permit amendment for the purpose of circumventing an adverse ruling or resurrecting claims that remain legally barred. *Id*. at 191–92. Critically, the court explained that even under Rule 15's liberal standard, district courts act well within their discretion when they deny leave where the proposed amendment fails to cure the defect previously identified and would merely allow the plaintiff to relitigate an issue already decided. *Id*. at 191 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The court stressed that amendment is improper where it would not change the legal outcome and would only prolong litigation despite the persistence of a dispositive legal flaw. *Id*. at 191–92.

That reasoning applies with full force here. As in *Ruotolo*, Plaintiffs previously advanced a jurisdictional theory that the Court has already considered and rejected—namely, that Defendants' New York trademark activity establishes personal jurisdiction. [ECF No. 43]. Plaintiffs now seek leave to amend not to correct a pleading deficiency, but to relitigate the same jurisdictional issue by reframing the timing and characterization of trademark filings that indisputably occurred after the action was commenced. Allen Aff. ¶¶ 8–11; Allen Aff. Exs. A–E. Just as in *Ruotolo*, the proposed amendment does not cure the legal defect; it merely attempts to plead around it.

Rule 15 does not authorize such an end-run around settled law or this Court's prior ruling. Where, as here, the proposed amendment fails to supply facts that would establish personal jurisdiction at the time of filing—and would therefore remain subject to dismissal as a matter of law—denial of leave to amend is not only appropriate, but compelled. *Ruotolo*, 514

11

F.3d at 191–92. Plaintiffs' proposed amendment improperly seeks to relitigate issues already decided and should be denied.

### V.    EVEN IF THE APPLICATION WAS SUBMITTED IN 2023, PERSONAL JURISDICTION DID NOT EXIST AT THE FILING OF THIS ACTION

Even assuming *arguendo* that Defendants had submitted a New York service mark application in 2023 and that the application had been rejected, that fact would not alter the jurisdictional analysis or cure the defect previously identified by the Court. A rejected trademark application—regardless of when it is filed—does not confer enforceable rights, does not reflect commercial exploitation of the New York marketplace, and does not constitute purposeful availment sufficient to support personal jurisdiction under CPLR § 302(a)(1).

Under New York law, specific jurisdiction requires a showing that the defendant purposefully transacted business in New York and that the cause of action arises from that transaction. *McKee Elec. Co. v. Rauland–Borg Corp*., 20 N.Y.2d 377, 382 (1967). Purposeful availment demands deliberate, forum-directed commercial activity by which the defendant invokes the benefits and protections of New York law. *Id*. Ministerial or preliminary acts that do not result in enforceable rights or market participation do not satisfy this standard.

A rejected trademark application falls squarely into that category. New York's trademark statute expressly conditions trademark rights on *bona fide use* of a mark in the ordinary course of trade within the state. N.Y. Gen. Bus. Law § 360(h). An application that is denied—whether due to deficiencies in specimens, form, or otherwise—creates no statutory rights, authorizes no use, and establishes no ongoing legal relationship with the State of New York. It is, at most, an

unsuccessful administrative filing that never matures into a cognizable legal or commercial interest.

Courts applying CPLR § 302(a)(1) have consistently rejected attempts to premise jurisdiction on attenuated or non-commercial contacts that do not reflect purposeful participation in New York's marketplace. In *Best Van Lines, Inc. v. Walker*, for example, the Second Circuit held that even operating a website accessible in New York and allegedly causing harm to a New York plaintiff was insufficient to establish jurisdiction absent deliberate New York–directed activity. 490 F.3d 239, 252–55 (2d Cir. 2007). If alleged reputational harm felt in New York, combined with nationwide online activity, does not constitute "transacting business," then an unsuccessful trademark application—an isolated, non-commercial administrative act—cannot possibly do so.

Accepting Plaintiffs' contrary theory would lead to an untenable result. Under Plaintiffs' logic, any out-of-state entity that merely *attempts* to register a New York trademark—successfully or not—would automatically subject itself to personal jurisdiction in New York courts, even if the application is rejected and no business is ever conducted in the state. No New York or federal court has endorsed such a sweeping and constitutionally suspect expansion of long-arm jurisdiction.

Accordingly, whether the rejected application is correctly understood—as the record reflects—as having been submitted and rejected in March 2024, or whether it is hypothetically assumed to have been submitted and rejected in 2023, the result is the same. A rejected application does not constitute purposeful availment, does not evidence the transaction of

13

business in New York, and cannot supply a basis for personal jurisdiction under CPLR § 302(a)(1).

Because Plaintiffs' proposed amendment relies on a legally insufficient theory that fails regardless of timing, it cannot cure the jurisdictional defect previously identified by the Court. The amendment would therefore be futile and should be denied.

## CONCLUSION

Because Plaintiffs' proposed Second Amended Complaint relies on legally insufficient facts and post-filing conduct that cannot establish personal jurisdiction, the proposed amendment is futile. For the foregoing reasons, Plaintiffs' Motion for Leave to File a Second Amended Complaint should be denied in its entirety.

Dated: December 19, 2025

Brooklyn, New York

By:    /s/ David D. Lin

LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: David@iLawco.com

*Counsel for Plaintiff*

14